UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSE LEE                                        CASE NO. 8:23-02996-VMC-AEP

     Plaintiff,

v.

CITY OF GULFPORT

     Defendant

## PLAINTIFF JESSE LEE'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF GULFPORT'S MOTION TO DISMISS

Plaintiff Jesse Lee, by and through undersigned counsel, responds to the City of Gulfport's Motion to Dismiss [DE 16] as follows:

## INTRODUCTION

Defendant City of Gulfport (hereinafter "GULFPORT") has repeatedly precluded Plaintiff JESSE LEE, (hereinafter "LEE" or "Plaintiff"), a resident of GULFPORT and a person of color, from operating as a mobile food vendor in Gulfport, while white mobile food vendors have consistently been allowed to operate. [DE 14-38] LEE asserts that he has been deprived of equal protection of the law by being treated less favorably by GULFPORT than white owners of mobile food dispensing vehicles. LEE also challenges as unconstitutionally vague a GULFPORT ordinance that allows mobile food-dispensing vehicles to operate on public property or within public rights-of-way only "subject to the approval of the city council" but which contains no standards by which such approval is granted or denied.

Additionally, LEE has been permanently trespassed from the GULFPORT Building Department and City Hall. [DE 1 ¶ 39-80] These permanent trespasses were issued pursuant to a

GULFPORT policy implemented at the time of those trespasses by which "supervisors of individual city facilities are empowered to issue trespass warnings whenever they have reason to believe an individual has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk." [DE 72] The trespass warnings issued to LEE and the policy under which the trespass warnings were issued violate his rights to substantive and procedural due process.

Defendant GULFPORT moves to dismiss the equal protection claim regarding preferential treatment of white mobile food vendors and the vagueness challenge to the standardless ordinance based upon "the doctrine of res judicata, or in the alternative, by the doctrine of collateral estoppel" because LEE was previously twice adjudicated guilty of the act of selling ice cream without a permit. [DE 15] GULFPORT also summarily asserts that LEE's rights to substantive and procedural due process have not been violated by being permanently banned from GULFPORT's City Hall and Building Department because GULFPORT's trespass policy "furthers a recognized public purpose" and therefore, according to Defendant, the policy should get a free pass from niceties like meaningful criteria and an established appeal process with procedures and burdens of proof and what not.  [DE 15]

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff that "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" has asserted a claim that is plausible on its face. *Id.* When considering a motion to dismiss, the court must accept all factual allegations of the complaint as true and

construe them in the light most favorable to the plaintiff. *Forsyth v. Woodforest Nat'l Bank, Inc*., No. 8:23-cv-2375-VMC-AAS, 2023 U.S. Dist. LEXIS 216698, at *3 (M.D. Fla. Dec. 6, 2023) citing *Jackson v. Bellsouth Telecomms*., 372 F.3d 1250, 1262 (11th Cir. 2004).

It is axiomatic that a court's review at the stage of a motion to dismiss is confined to the four corners of the complaint. *Crabb v. Ingram*, No. 23-cv-81212-MIDDLEBROOKS, 2024 U.S. Dist. LEXIS 62358 (S.D. Fla. Mar. 18, 2024), *citing St. George v. Pinellas Cnty*., 285 F.3d 1334, 1337 (11th Cir. 2002). The only documents that can be considered are "the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949, 959 (11th Cir. 2009). See also *Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d 1364, 1368 (11th Cir.1997) (per curiam) ("[A]nalysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto."), *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). (Courts must restrict their consideration "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.")

Legal conclusions can provide the framework of a complaint but must be supported by factual allegations. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, *Id*. at 679.

### LEE'S CLAIMS OF EQUAL PROTECTION AND VAGUENESS ARE NOT BARRED BY RES JUDICATA OR COLLATERAL ESTOPPEL

Although res judicata is not a defense under Rule 12(b), and generally should be raised as an affirmative defense under Rule 8(c), Fed. R. Civ. P., it may be raised in a Rule 12(b)(6) motion where the existence of the defense can be determined from the face of the complaint. *Solis v. Glob. Acceptance Credit Co., L.P.,* 601 F. App'x 767, 771 (11th Cir. 2015), *Concordia v.*

*Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982). In support of its claims of maybe res judicata and/or/maybe collateral estoppel, GULFPORT has appended various documents including two court orders entered December 16, 2021 by Pinellas County Court Judge John Carabello, one finding LEE guilty of "Sales Without a Permit," the other finding LEE guilty of "Outdoor Sales Without a Permit." Both orders direct LEE to pay "Fine and Costs in the amount of $205.00." Additionally, GULFPORT has appended a transcript of an evidently cherry-picked portion of the December 16, 2021 proceeding before Judge Caravello, and multiple documents purporting to be reports of the Gulfport Police Department.

A court may review documents filed in other judicial proceedings for the limited purpose of recognizing the "judicial act" taken or the subject matter of the litigation and issues decided, without converting the motion to dismiss to a motion for summary judgment. *United States Golf Learning Inst., LLC v. Club Managers Ass'n of Am.*, No. 8:11-cv-2184-T-33EAJ, 2012 U.S. Dist. LEXIS 31545, at *7 (M.D. Fla. Mar. 9, 2012)(citations omitted)  However, a district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *Holland v. City of Auburn*, 657 F. App'x 899, 901 n.3 (11th Cir. 2016) *citing SFM Holdings, Ltd. v. Banc of Am. Sec.*, LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). The police reports are not central to LEE's claims, should not have been attached to the motion to dismiss and should not be considered by this court at this stage in the litigation. See *Charlson v. Rutherford*, No. 3:15-cv-724-J-34MCR, 2016 U.S. Dist. LEXIS 186031 at *11 (M.D. Fla. Mar. 30, 2016). (Refusing to consider the police reports attached to the motion to dismiss on the basis that the documents were not central to the plaintiff's claim.)

GULFPORT asks this Court to hold that LEE was required to have raised his equal protection claim and his challenge to the mobile food vending ordinance based upon

unconstitutional vagueness in the county court criminal proceeding, and that by falling to do so he has waived those claims forever. Although LEE presumably could have challenged the constitutionality of the ordinance as a defense in the criminal proceeding, he could not have raised the equal protection claim or other cause of actions he has asserted here seeking monetary damages and declaratory relief for constitutional violations in the criminal case. *Carroll v. City of Detroit*, 410 F. Supp. 2d 615, 620 (E.D. Mich. 2006) ("The City contends that Plaintiffs should have raised their constitutional challenges to the ordinances in their criminal proceedings. Although Plaintiffs presumably could have challenged the constitutionality of the ordinances as a defense in their criminal proceedings, they could not have raised the cause of action they have asserted here. Plaintiffs seek damages and declaratory relief for constitutional violations pursuant to 42 U.S.C. § 1983; the City does not explain how Plaintiffs could have obtained such monetary and equitable relief in their criminal proceedings.") None of the cases cited by GULFPORT establish that a criminal defendant loses his right of access to a federal forum for hearing his constitutional civil claims if he did not previously raise them as a defense in a criminal proceeding.

GULFPORT asserts without any record evidence that LEE's "allegations in this suit are substantially the same as those he made in his defense of the State's case against him in the state court action, and any issues that he introduced for the first time in this action could have been presented in the state court action or in appeal to the state appeals court in the criminal case against him."  Therefore, according to GULFPORT, LEE is "precluded from now raising claims which he could have raised but failed to do so in the prior state court proceedings." [DE 15 pg 7] GULFPORT is wrong regarding these assertions.

First, none of the documents which GULFPORT appended to its motion to dismiss demonstrate that LEE asserted equal protection claims in his defense against the state action, or that LEE asserted the unconstitutionality of the ordinance challenged, and the orders signed by Judge Cabellero certainly do not address those issues. In fact, for some reason GULFPORT attached a portion of a transcript in which the judge announces that he does not think LEE's ice cream cart is a mobile food dispensing vehicle within the meaning of a state statute.

Second, the cases cited by GULFPORT as supporting the proposition that LEE is forever precluded from raising his constitutional challenges are easily distinguishable. In *McDonald v. Hillsborough Cty. Sch. Bd.*, 821 F.2d 1563 (11th Cir. 1987), the 11th circuit upheld dismissal of a §1983 claim by a teacher that had been terminated, allegedly in violation of his due process rights, because the teacher had already filed a similar suit as a plaintiff in state court and lost on those same claims. Unlike LEE, the plaintiff teacher had gone on the offense as a plaintiff in a state court civil action; the case does not remotely stand for the proposition that a defendant in a criminal matter may not subsequently bring constitutional claims in federal court.

To the contrary, there is ample authority for the proposition that preclusion doctrines do not extend from criminal prosecutions to later civil actions. *Andrews v. Haw. Cty.*, No. 11-00512 JMS/BMK, 2013 U.S. Dist. LEXIS 133352 (D. Haw. Sep. 17, 2013) *citing, Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999) ("[W]e decline to extend res judicata to bar this claim where there is no indication that Ingram and Collins, who would have been in a defensive posture during criminal proceedings on the obstruction charges, could have raised their § 1983 claims during those proceedings.")

*Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75 (1984) is also erroneously cited by GULFPORT for the assertion that because LEE did not raise claims of equal protection

and unconstitutional vagueness claims as a criminal defendant in county court, he has forever waived the ability to assert those claims. The plaintiff in *Migra* was also an educator who had gone on the offense, bringing a successful claim in state court for wrongful termination, and obtaining a state court judgment adjudicating only state claims before filing a case in federal court. A subsequent federal case was dismissed by the district court based upon the Full Faith and Credit Clause, and the Court of Appeals for the Sixth Circuit affirmed. The Supreme Court agreed that that state court judgment precluded Dr. Migra's subsequent federal § 1983 claims, pointing out that "petitioner was in an offensive posture in her state-court proceeding, and could have proceeded first in federal court had she wanted to litigate her federal claim in a federal forum." *Id.* at n.7. Unlike Dr. Migra, LEE was not in an offensive posture in the state-court proceeding.

Finally, in *Webber v. Mills*, 595 F. Supp. 514 (S.D. Fla. 1984), also cited by GULFPORT, the would-be federal litigant had unsuccessfully appealed a School Board decision upholding her termination as school principal to the state court of appeal, but purposely did not raise her constitutional claims in the state proceeding.  When she subsequently sought to assert her constitutional claims stemming from the same facts in federal court in a second lawsuit, the district court held she was precluded from doing so based upon res judicata. Unlike the Plaintiff in *Webber v. Mills*, LEE is not bringing a second lawsuit against GULFPORT after having already brought an unsuccessful case in state court.

The county court judge did not consider LEE's equal protection claims, and GULFPORT provides no authority for the proposition that violation of one's right to equal protection is a valid defense in a criminal case or could and must have otherwise somehow have been raised by LEE in the criminal proceeding. The county court judge also did not consider LEE's challenge to

GULFPORT's standardless ordinance requiring the city council's approval to operate mobile food-dispensing vehicles on public property or within public rights-of-way.

Collateral estoppel does not bar LEE's constitutional claims from being raised since they were not actually litigated in state court. Furthermore, LEE was not obligated to raise his constitutional issues to a county court judge as a defendant in a criminal case. *See Vinson v. Campbell Cnty. Fiscal Ct.*, 820 F.2d 194, 197 (6th Cir. 1987) ("Collateral estoppel or issue preclusion is not applicable in the present case because plaintiff's section 1983 action is not the same cause of action as the state's criminal case against her; neither the validity of the summons nor the legality of the arrest was litigated or decided in the prior state court proceeding.")

GULFPORT's efforts to dismiss any of LEE's claims based upon res judicata and/or collateral estoppel fail.

## LEE STATES A CAUSE OF ACTION FOR VIOLATION OF HIS RIGHT TO SUBSTANTIVE DUE PROCESS

Substantive due process examines whether the government's deprivation of a person's life, liberty or property is justified by a sufficient purpose. *United States v. Silvestre-Gregorio*, No. 2:18-CR-00155-JRG-CLC, 2019 U.S. Dist. LEXIS 92344, at *23 (E.D. Tenn. June 3, 2019) citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The gravamen of LEE's claims regarding GULFPORT's issuance of multiple permanent trespass warnings is that he has "a constitutionally protected liberty interest to be in parks or on other city lands of [his] choosing that are open to the public generally," *Catron v. City of St. Petersburg*, 658 F.3d 1260 (11th Cir. 2011) citing *City of Chicago v. Morales*, 527 U.S. 41 (1999), and that he has been permanently deprived of that constitutionally protected liberty interest without due process based upon

GULFPORT's trespass policy, which violates his rights to both substantive and procedural due process.

GULFPORT moves to dismiss count III, IV and V of the complaint which assert that permanently banning LEE from various public properties under GULFPORT's Trespass Policy violates LEE's right to substantive due process. GULFPORT asserts that under the "rational basis test" Plaintiff has failed to "state cognizable causes of action" in these counts.

To state a substantive due process claim, a plaintiff must allege (1) a deprivation of a constitutionally protected interest, and (2) that "the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation." *Executive 100, Inc. v. Martin Cnty.*, 922 F.2d 1536, 1541 (11th Cir. 1991) (quoted in *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016). A substantive due process claim must involve state conduct that "'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U. S. 833, 847(1998)

The right of a citizen to be on municipally owned properties that are open to the public is a constitutionally protected liberty interest. *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Citizens "have a constitutionally protected liberty interest to be in parks or on city lands of their choosing that are open to the public generally." *Id.*; *see also City of Chicago v. Morales*, 527 U.S. 41, 54 (1999) (recognizing that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment" and stating "an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage,' or the right to move 'to whatsoever place one's own inclination may direct.'").

Whether that protected liberty to remain on city owned land interest is a "fundamental interest" appears to be unresolved. *Catron v. City of St. Petersburg* acknowledged that a person may forfeit the right to enter public property by trespass or other violation of law, *Id.* at 1266, "[w]hether or not this interest is a fundamental right for purpose of substantive due process," citing *Doe v. City of Lafayette*, 377 F.3d 757, 770-73 (7th Cir. 2004). In *Doe*, the Court of Appeals distinguished an individual entering a park for innocent purposes from a pedophile entering a park in response to a sexual urge to watch children, noting that "[t]he historical and precedential support for a fundamental right to enter parks for enjoyment is, to put it mildly, oblique." However, even if the rights infringed by GULFPORT are not fundamental rights, it is still true that "[w]here a fundamental liberty interest does not exist, substantive due process nonetheless protects against the arbitrary and oppressive exercise of government power." *Peterka v. Dixon*, No. 4:23cv55-MW-MAF, 2023 U.S. Dist. LEXIS 196175, at *11-12 (N.D. Fla. Oct. 10, 2023), citing *Waldman v. Conway*, 871 F.3d 1283, 1292 (11th Cir. 2017).

GULFPORT asserts that its trespass policy is "not conscience shocking" and good enough to survive a "rational basis" challenge and therefore LEE's substantive due process claim should go unheard. However, unlike other trespass policies previously subject to constitutional scrutiny, which are typically limited to a year or two, GULFPORT's trespass policy allows a citizen to be permanently banned, in fact a permanent ban is the default under § 406.06 of the newly enacted "Written Directive 406," which states "Trespass warnings documented in accordance with this written directive shall be permanent unless a specific expiration date is requested by the issuing authority."

The trespass ordinance found to be unconstitutional in *Catron v. City of St. Petersburg* authorized individuals to be excluded from public property only for a limited time, one year for

first time violations and two years for all other violations, a sharp contrast to GULFPORT draconian permanent trespass warnings. GULFPORT has not cited a single case upholding a government's right to permanently bar a person from municipally owned property via a trespass warning.

A policy that allows a city official to permanently ban a citizen who has not committed a crime or violated any ordinance from city property, especially with no chance to appeal, as was the case with LEE's trespasses from City Hall and the Building Department, is so blatantly unconstitutional as to be "conscience shocking." GULFPORT has articulated no rational basis for permanently banning someone not convicted or even charged with a crime or civil infraction from being prevented from ever stepping foot on city property again, nor can it.

GULFPORT also asserts that this case should be dismissed because Plaintiff has not filed an appeal with the City Manager on any of the trespasses, and therefore "said counts must be dismissed as a matter of law." Conspicuously absent from GULFPORT's motion is any authority for this assertion. The trespasses from City Hall and the Building Department issued by GULFPORT to LEE, which are attached to the complaint, do not contain any notice regarding a right to appeal, [DE: 1-3], and the complaint alleges that LEE was not notified verbally or in writing of any procedure by which he could appeal a trespass warning. [DE: 1 ¶ 67, 69, 77] When LEE was trespassed from City Hall and the Building Department the trespass policy in effect at the time did not contain any appeal procedures and LEE was not provided instructions on how to appeal the permanent bans from City Hall and the Building Department. [DE: 1 ¶ 153, 154, 165 and 166] At this stage of a motion to dismiss all of those allegations must be presumed true. *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004).

A basic element of due process is the right to be heard by a neutral fact finder. See *Valley v. Sec'y, Fla. Dep't of Corr*., No. 16-17669-J, 2018 U.S. App. LEXIS 29307, at *11 (11th Cir. Oct. 17, 2018) (Even in non-trial hearings, a neutral fact finder is an indispensable aspect of due process.) *citing Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973).  However, at least one of the trespass warnings GULFPORT asserts LEE should have appealed to the City Manager, the permanent trespass from the Building Department, was issued by the <u>City Manager</u>.

Simply put, GULFPORT's assertion that LEE's substantive due process claims should be dismissed based upon his failure to file an appeal even though he was never noticed of any right to appeal and GULFPORT had (and still has) no ordinance providing an appeal or criteria that would be applied in the event of an appeal truly strains credulity and should be given short shrift by this court.

## LEE STATES A CAUSE OF ACTION FOR VIOLATION OF HIS RIGHT TO PROCEDRUAL DUE PROCESS

GULFPORT asseverates that "[u]nder the City's Trespass Policy, when a person causes a disruption of services or puts the safety of staff or the public at risk, that person is no longer at the City's facilities on legitimate City business; accordingly, City personnel are empowered to issue trespass warnings," citing to Exhibit 4 of Plaintiff's complaint. [DE:15 pg 18] First, "Written Directive 406," which is attached to the complaint as Exhibit 4 had not even been issued when LEE was trespassed from City Hall and the Building Department. Those trespasses were issued pursuant to a prior policy whereby "supervisors of individual city facilities are empowered to issue trespass warnings whenever they have reason to believe an individual has

caused or is likely to cause a disruption of services or put the safety of staff or the public at risk."

[DE 1-1]

Further, there is no requirement in GULFPORT's more recent Written Directive 406 that before a written trespass warning can be issued the recipient must have caused a disruption of services or put the safety of staff or the general public at risk. If an individual's actions are deemed by someone to be "harmful and/or disruptive to a reasonable person involved in government operations and/or its individual members" the individual can be permanently trespassed regardless of whether his or her conduct is found to violate any rule or law. Further, a person can be issued a trespass if his or her actions are "contrary to City of Gulfport policies, rules or regulations" also regardless of whether his or her conduct is found to violate any rule or law. Language very similar to the verbiage in "Written Directive 406" was found to not pass constitutional muster in *Catron v. City of St. Petersburg*, *Id*. at 1267-68.

> Section 20-30 provides a lot of discretion to many different city agents to issue trespass warnings for a wide range of acts. Given that these warnings operate like some kind of injunction, this situation creates a substantial risk of erroneous deprivation of liberty. Section 20-30 gives many different agents authority to issue a trespass warning: warnings can be issued by police officers, "city employees or officials . . . having control over" a particular city property, plus even the designees of city employees. §§ 20-30 (a)-(b). In addition, a wide range of acts could constitute a violation of "any city ordinance, rule or regulation, or state law or lawful directive of a city employee or official" and might result in a trespass warning: public indecency, littering, and even disobeying the lawful directions (for example, do not run around the pool) of a lifeguard in a public pool would seemingly all be included in that description. Furthermore, Section 20-30 provides no guidance to city officials (or their designees) or police officers in exercising their discretion to determine whether a person has actually committed a violation that permits issuance of a trespass warning: this lack of specificity suggests that whenever an authorized city employee thinks a violation has occurred, he may issue a trespass warning.

GULFPORT announces that LEE's procedural due process claims should be dismissed because after all "[a] person that causes a disruption of services or puts the safety of staff or the public at risk is not using the City's facilities under ordinary conditions or for their intended purposes." However, there is no evidence whatsoever before the Court that LEE ever used any City facility for anything other than their intended purposes or under ordinary conditions. The complaint alleges that LEE went to the Building Department to obtain a garage sale permit and went to City Hall to use an outside phone. [DE: 1¶52, 55, 56, 63] LEE was targeted for exclusion from the Building Department and City Hall without being offered any explanation as to why. These allegations must be accepted as true at the stage of a motion to dismiss. *Jackson v. Bellsouth Telecomms*., 372 F.3d 1250, 1262 (11th Cir. 2004).

In advocating dismissal of LEE's due process claims, GULFPORT contends that LEE has no absolute right to visit City Hall, the Building Department or the Gulfport Casino, an argument never made by LEE, and then cites to a case in which person being investigated for "threatening deadly violence against city officials" was successfully banned from city buildings without prior notice and an opportunity to be heard. Noticeably absent from GULFPORT's motion to dismiss is any indication that LEE has ever threatened anyone with anything, let alone threatened "city officials" with "deadly violence."

GULFPORT, apparently not realizing that the trespass warnings regarding City Hall and the Building Department were issued to LEE well before the issuance of "Written Directive 406," when GULFPORT had no appeal process whatsoever, claims that LEE's assertions regarding his inability to appeal "fly directly in the face of the terms of Written Directive 406, and specifically Sections 406.06, 406.072 and 406.08 of it." GULFPORT's counsel would do well to read the complaint and examine the exhibits more carefully; "Written Directive 406" was

issued January 5, 2022. [DE1-4] LEE was given a trespass warning permanently barring him from City Hall on September 4, 2020 [DE 1-2] and from the Building Department on September 14, 2021, [DE 1-3], before Written Directive 406 ever saw the light of day.

Notably, in footnote 3 on page 20 of GULFPORT's Motion to Dismiss, GULFPORT attempts to contrast its current trespass policy from the one found unconstitutional in *Catron v. City of St. Petersburg* by pointing out the 11th Circuit Court of Appeals invalidated the City of St. Petersburg's ordinance because "the City of St. Petersburg did not have any appeal or other procedure in place to allow challenges to trespass warnings." (emphasis in the original.) At the time LEE was issued trespass warnings permanently excluding him City Hall and the Building Department, GULFPORT did not have any appeal or other procedure in place to allow challenges to trespass warnings either.

While GULFPORT asserts "it is abundantly clear from a review of that policy that the City does have procedurally sufficient appellate remedies that were available, and are still available to Plaintiff but which he has yet to avail himself of (or allege that he has), and therefore he has failed to state a cognizable and recognized cause of action against the CITY OF GULFPORT in these counts."

First, as already indicated, the much-touted Written Directive 406 did not exist when LEE received his first and second trespass warnings so he could not possibly have availed himself of the right the appeal established therein, such that it is. Second, what is also abundantly clear is that GULFPORT has not enacted any ordinance providing an appeal from a trespass warning, nor established procedures or criteria by which the City Manager conducts an appeal of a trespass warning. Will a person appealing a trespass warning get a hearing, will Gulfport have to prove the person trespassed engaged in conduct that is "disruptive harmful and or unlawful?"

While those questions are not addressed in Written Directive 406. Whether a permanent trespass will be ever rescinded is apparently up to the unbridled discretion of City Manager James O'Reily.

In *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536 (D. Vt. 2014), plaintiff, the father of an autistic student, sued alleging a due process violation based upon the School District's issuance of two notices of trespass prohibiting him from entering onto its property. The Court, applying the *Matthews* test[1], found the notices against trespass "created a high risk of erroneous deprivation because they were not issued pursuant to any protocol, because they did not set out a process to contest the ban, and because Mr. Cyr did not receive a meaningful opportunity to contest his ban." In ruling that the trespass notices violated the plaintiff's due process rights, the Court emphasized the fact that, like the two trespass warnings received by LEE, "[n]either notice contained any explanation of the basis upon which it was issued." *Id.* at 552, citing *Taylor v. Rodriguez*, 238 F.3d 188, 193 (2d Cir. 2001) (notice must contain "specific facts underlying the allegation[s]" that led to the government's actions "because a hearing is not 'meaningful' if a [party] is given inadequate information about the basis of the charges against him."). Written Directive 406 lists what a "documented Trespass Warning" must contain in §406.03, noticeably absent from the list is an explanation for the basis for issuing the Trespass Warning.

---

[1] *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). To determine the process due, a court must balance the three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

A Section 1983 procedural due process claim requires a plaintiff to prove three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) citing *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). LEE has alleged that he has been deprived of his "a constitutionally protected liberty interest" to be in city buildings of his choosing that are open to the public generally. GULFPORT has not even asserted the absence of a state action. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978) (When execution of a government's policy or custom inflicts the injury the government as an entity is responsible under § 1983.) Finally, LEE has clearly alleged that there was no mechanism to challenge a trespass warning when he was trespassed from GULFPORT's City Hall and Building Department and that Written Directive 406 is woefully inadequate to protect the due process rights of individuals trespassed from GULFPORT's properties.

GULFPORT's motion to dismiss LEE's procedural due process claims fails to establish that LEE has not established a procedural due process claim and even helps make his claim for him.

## WRITTEN DIRECTIVE 406 IS UNCONSTITUTIONALY VAGUE

GULFPORT asserts in conclusory fashion that its current Trespass Warnings policy is not unclear as to what conduct is prohibited because "the conduct prohibited by the City's Trespass Policy is the very sort of conduct that has been criminalized both by the State of Florida and the City's Code of Ordinances. See, e.g., §§ 836.04 (Defamation), 836.05 (Threats; extortion), 836.12 (Threats), Fla. Stat.; see also, e.g., Gulfport, Fla., Code of Ordinances §§ 14-1 (Abusive or obscene language), 14-5 (Assault and battery), 14-19 (Disorderly conduct), 14-19 (Disturbing lawful assembly)." This argument overlooks the fact that a person may be

permanently trespassed from GULFPORT property in the absence of a violation of any

ordinance or law. A person can be given a trespass warning if his/her actions are "deemed to

be harmful and/or disruptive to a reasonable person involved in government operations and/or its

individual members" or their conduct "is contrary to City of Gulfport policies." The City of

Asheville's trespass policy recently survived a vagueness challenge in *Norris v. City of Asheville*,

No. 1:23-cv-00103-MR-WCM, 2024 U.S. Dist. LEXIS 37618 (W.D.N.C. Mar. 4, 2024). The

challenged policy states:

> A person's access to a City parks may be restricted if that person
> violates any of the following while in a City park or on City
> property: City park rule, City Parks and Recreation Department
> program rule, City ordinance, State law, Federal law.
>
> A person who violates any of the above while in a City park may
> be issued a restricted access notice. This notice may be issued by
> any employee of the City's Parks and Recreation Department
> ("Parks Department") or the Asheville Police Department ("APD")
> upon an observed violation of any Park rule. This notice may also
> be provided by a member of the APD at the time of arrest or
> citation for any misdemeanor or felony offense committed in a
> City park.
>
> The length of restriction imposed shall be as follows: 1. Violation
> of any park rule or Parks and Recreation Department program rule
> — 6 months. 2. Violation of any City ordinance or the commission
> of any offense punishable as a misdemeanor under federal or state
> law — 1 year. 3. The commission of any offense punishable as a
> felony under federal or state law, repeated violation of Park rules,
> and/or repeated commission of misdemeanor offenses — 3 years.

The Court, in finding the policy was not unconstitutionally vague, noted that although the City's

trespass policy "can indeed be triggered by a wide range of violations, all of these violations are

otherwise proscribed by city, state, and federal laws. As such, the Plaintiffs have not sufficiently

alleged that the Policy fails to provide adequate notice of what conduct is prohibited because

such notice is provided by reference to existing laws and policies." In sharp contrast to

Asheville's Policy, within GULFPORT a virtually unlimited range of individual conduct can give rise to a permanent Trespass Warning, regardless of whether the conduct is proscribed by city, state, or federal law.  Once the Trespass Warning is received, an individual is subject to arrest and criminal prosecution if he or she steps foot on the subject City property ever again. Individuals within GULFPORT are not provided adequate notice of what conduct could be deemed "harmful" or "contrary to City of Gulfport Policy" and Written Directive 406 lacks sufficient standards to prevent arbitrary and discriminatory enforcement.

### LEE's REQUEST FOR INJUNCTIVE RELEIF IS NOT PREMATURE AND HE HAS STANDING TO REQUEST INJUNCTIVE RELEIF

GULFPORT snidely asserts that LEE's requests for Injunctive and/or Declaratory Relief are not ripe because "it does not appear that LEE intends to avail himself of available administrative appeals to the City Manager's Office. Apparently, Plaintiff would prefer skip these appeals and have this Honorable Court intervene on his behalf, despite the fact that the City Manager is the final-decision maker for the CITY OF GULFPORT on a day-to-day basis, sans decisions of the City Council." If GULFPORT understood the complaint, it would realize that when the trespass warnings were issued to LEE there was no "administrative appeals process." Furthermore, the newly created "administrative appeals process" would require LEE to appeal a trespass warning issued by the City Manager to the City Manager. GULFPORT fails to identify any authority requiring LEE to exhaust administrative remedies in the circumstances present in this case, but has accurately adduced that LEE would prefer to skip an appeal conducted by the same person who issued one of the trespass warnings based upon unspecified criteria, and conducted pursuant to non-existent procedural rules.

GULFPORT also cites to *City of Los Angeles v. Lyons*, 103 S. Ct. 1660 (1983) asserting that LEE "failed, moreover to establish the basic requirements of the issuance of equitable relief in these circumstances—the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies as law." *City of Los Angeles v. Lyons* concerned a preliminary injunction, relief LEE has not sought.  Next, GULFPORT appears to be arguing that LEE lacks standing to seek declaratory relief based upon *Kerr v. City of West Palm Beach*, 875 F.2d 1546 (11th Cir. 1989) because "the City's policy is not unconstitutional on its face and as such LEE request (sic) for Injunction (sic) and Declaratory Relief are at best "hypothetical" and premature because LEE has not appealed any of the trespass warnings. Whether GULFPORT's trespass warning policies are unconstitutional on their face is an issue to be decided by the Court, not GULFPORT, and yet again, GULFPORT cites no authority for LEE to have appealed trespass warnings issued when GULFPORT had no provision allowing an appeal of a trespass warning. GULFPORT cites no authority requiring LEE to avail himself of an opportunity to appeal provided by a policy enacted after the trespass warnings were issued, and which lacks criteria to decided whether an appeal will be granted, procedure by which the appeal will be considered or access to a neutral fact finder.

In *Kerr*, plaintiffs had been injured as a result of being apprehended by police dogs, and in addition to other relief, plaintiffs asked that the City's policies regulating the use of the canine unit be declared unconstitutional, and sought to enjoin the Department from continuing to use its canine unit in an unconstitutional manner.  The Eleventh Circuit upheld denial of the requested declaratory and injunctive relief, declining to consider the constitutionality of municipal policies in the abstract. In so ruling, the Court noted that "appellants have not contended that they will again be unlawfully seized by one of the City's police dogs." LEE is not asking this court to

perform an assessment of the abstract constitutionality of GULFPORT's trespass policy. LEE is currently suffering direct injury as a result of the trespass policy, he is permanently precluded from accessing public places in the City of Gulfport under threat of arrest.

Further, *Kerr v. City of West Palm Beach* provides no authority for the assertion that the GULFPORT trespass policy "is not unconstitutional on its face."

Finally, GULFPORT asserts that "Plaintiff has not and cannot and cannot, establish that the granting of the relief sought would not disserve the public interest." Plaintiff is not required to do so at the stage of a motion to dismiss. It is unclear why GULFPORT has cited *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994), which was an appeal of a preliminary injunction, relief that LEE has not sought, and was issued after a hearing, not at the stage of a motion to dismiss.

WHEREFORE, Plaintiff JESSE LEE, by and through his undersigned counsel, for the foregoing reasons, move this Honorable Court for Entry of an Order denying the City of Gulfport's Motion to Dismiss.


Respectfully submitted this 6th day of May, 2024.


MARCY I. LAHART, P.A.
BY:*/s/ Marcy LaHart*
Marcy I. LaHart, Esq.
Florida Bar No. 0967009
Marcy@floridaanimallawyer.com
249 SE Tuscawilla Road
Micanopy, FL 32667
(352) 545-7001

**CERTIFICIATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of May, 2024 a true and correct copy of the foregoing has been furnished via CM/ECF electronic mail service to the Clerk of the Court who will send electronic notice to all counsel of record and pro se litigants.

BY: /s/ Marcy LaHart
Marcy LaHart, Esq.