UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSE LEE,

      Plaintiff,

      v.                        CASE NO.: 8:23-cv-02996-VMC-AEP

CITY OF GULFPORT,

      Defendant.

_____/

## <u>DEFENDANT, CITY OF GULFPORT'S AMENDED MOTION TO DISMISS</u>

COMES NOW, Defendant, CITY OF GULFPORT, by and through its undersigned counsel, pursuant to Local Rule 3.10 and Rule 12(b), Fed. R. Civ. P., and moves this Honorable Court to dismiss Plaintiff's Amended Complaint [Doc. 28] for failure to state a claim and/or cognizable cause of action against Defendant, and in support thereof states:

(1)    On December 29, 2023, Plaintiff initiated this civil action via his Complaint for declaratory and injunctive relief and damages in this Honorable Court.

(2)    The Amended Complaint [Doc. 28] (hereinafter "Amended Complaint") and unopposed Motion for Leave to file an Amended Complaint was filed by Plaintiff on July 1, 2024.

(3)    Defendant moves to dismiss this case on several grounds, first that several of the counts contained in Plaintiff's Amended Complaint (Counts 1, 2, 9, and 12) are barred by the doctrine of res judicata or, in the alternative, by the doctrine of collateral

estoppel, in that a state court has previously adjudicated the same, or substantially similar, issues in a prior criminal action brought by the State of Florida against Jesse Lee regarding the same ordinance that the CITY OF GULFPORT is being sued, in part, herein.

(4)     Defendant also additionally moves to dismiss Plaintiff's Amended Complaint on the grounds that the City's Trespass Policy does not violate Lee's substantive due process rights, and that said trespass policy is procedurally sufficient and that Plaintiff's Amended Complaint does not constitute an actionable section 1983 procedural due process claim, in that its terms and language are clear and concise, and legally insufficient.

(5)     Defendant also moves to dismiss Plaintiff's Amended Complaint on the grounds that its Trespass Policy does not violate either the Substantive or Procedural Due Process Clauses due to vagueness, and that its "Written Directive 406" in that Trespass Policy is clear, concise, and unequivocal and that it is not void on grounds of vagueness.

(6)     Finally, Defendant moves to dismiss Plaintiff's Amended Complaint on the grounds that Plaintiff is not entitled to either declaratory or injunctive relief with regards to any and all allegations regarding the City Mobile Food Vendor ordinance, or on any directives related  thereto on the grounds that said subject matters are not yet ripe for adjudication by this Court since the ordinance is not facially unconstitutional, and because Plaintiff has not complied with the conditions precedent to bringing this action in that he has not yet availed himself as to the appeal process outlined in the Policy, or

alleged same, prior to initiating this litigation.  As such, he has failed to exhaust all administrative appellate remedies prior to filing this lawsuit in Federal District Court.

On December 16, 2023, JESSE LEE was found guilty of the offense of Outdoor Sales Without a Permit and also the offense of Sales Without Permit after a trial.  *See* Composite Exhibit "A" attached hereto, which is a Final Judgment of guilt in Case Numbers 20-14077-MO and 20-14469-MO respectively, and a trial transcript of the ruling explaining, the Honorable County Court Judge, John Carballo's, reasoning on this subject attached as Exhibit B.[1] *See* Exhibit "B." The Court held that Plaintiff's bicycle ice cream "cart" was not a mobile food dispensing vehicle as defined by Fla. Stat. § 509.102, and thus Plaintiff was guilty as charged.  *See* Exhibit "A."  He did not pursue any appeal. As to those charges and convictions, Defendant asserts entitlement to res judicata and/or collateral estoppel.

## I.    RES JUDICATA AND COLLATERAL ESTOPPEL

Question:  Whether Counts 1, 2, 9 and 12 of Plaintiff's Amended Complaint are barred in part as a matter of law by the doctrine of res judicata or, in the alternative, barred as a matter of law by the doctrine of collateral estoppel in light of the prior state court judgments adjudicating Plaintiff guilty of both ordinance violations?

Federal courts must give the same preclusive effect to state court judgments that the judgment would be given in the state courts from which the judgment emerged.  See

---

1   A Court, ruling on a motion to dismiss under Rule 12(b)(6), may "consider not only the complaint, but also facts extractable from documentation annexed to," or "incorporated by reference" into the complaint, and matters susceptible to judicial notice.  *Baker v. City of Madison, Ala*, 67 F.4th at 1277 (11th Cir. 2023).

28 U.S.C. § 1738 (1988) (provided that "judicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State…". See also *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 83-84 (1984) (extending the preclusive effect of a prior state court judgment in a § 1983 action to claim preclusion); *Allen v. McCurry*, 449 U.S. 103-04 (holding that the full faith and credit statute requires federal courts to apply issue preclusion rule in § 1983 actions where the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issues decided in a prior state court proceeding).

The district court's determination regarding the availability of res judicata as a defense is a conclusion of law. *Davis Cox v. Summa Corp.,* 751 F.2d 1507 (9th Cir. 1985). The Full Faith and Credit Act, 28 U.S.C. S 1738, requires that federal courts "give a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

The Supreme Court has defined res judicata, often referred to as "claim preclusion", as meaning that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." See, *Kremer v. Chemical Construction Corp.*, 46 U.S. 461, 466 N. 6 (1982). Under the doctrine of res judicata, a final judgment on the merits of an action bars the parties to an action or their privies from relitigating issues that either were or could have been

raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.*

Where the first suit is brought in state court and the second suit is brought in federal court based on diversity, state law of res judicata is to be applied. *Commercial Box & Lumber v. Uniroyal,* 623 F.2d 371, 373 (5th Cir. 1980); *Cleckner v. Republican Van & Storage Co.*, 556 F.2d 766, 768 (5th Cir. 1977). Similarly, when a federal court exercises federal question jurisdiction and is asked to give res judicata effect to a state court judgment, it must apply the "res judicata principles of the law of the state whose decision is set up as a bar to further litigation." *Hernandez v. City of Lafayette,* 699 F.2d 734, 736 (5th Cir. 1983) (citing *ED Systems Corp. v. Southwestern Bell Telephone Co.*, 674 F.2d 453, 457 (5th Cir. 1982). See *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). See also *St. John v. Wisconsin Employment Relations Board,* 340 U.S. 411, 71 S.Ct. 375, 95 L.Ed. 386 (1951); *Rollins v. Dwyer*, 666 F.2d 141 (5th Cir. 1982). Pursuant to Florida law, there are four identities that must be present for res judicata to apply: (1) Identity of the thing sued for; (2) Identity of the cause of action; (3) Identity of the parties; and (4) Identity of the quality in the person for or against whom the claim is made.

*Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1509-10 (11th Cir. 1985), cert. Denied, 475 U.S. 1107 (1986); *Albrecht v. State*, 444 So. 2d 8, 12 (Fla. 1984), *superseded* by statute on other grounds as stated in 448 So. 2d 566 (Fla. DCA 1984).

The first factor is satisfied in the prior action.   The State of Florida prosecuted Jesse Lee, and on December 16, 2021, he was found guilty of the offense of conducting Outdoor Sales Without a Permit and also the offense of conducting Sales Without a Permit, which was required by the City of Gulfport.   *See* attached Exhibit "A," composite, for the two consolidated cases in which Plaintiff was found guilty of violating Section 22-6.12(b) of the Gulfport ordinances requiring a permit on 10/27/20 to operate an ice cream stand.  Identity of the thing sued for therefore exists.  See *Valdes v. Ruiz*, 354 So.2d 1269 (Fla. 3d DCA 1978).

For that second factor to be satisfied, the law requires ... that the claims or causes of action be substantially the same.... Identity of causes of action is defined by similarity of the facts essential to the maintenance of both actions.  *Gordon v. Gordon*, 59 So. 2d 40 (Fla.1952); *Smith v.2786 Florida East Coast Railway Company*, 151 So. 2d 70 (Fla. 3d DCA 1963).  *Pumo v. Pumo,* 405 So.2d 224, 226 (Fla. 3d DCA 1981).

If the testimony [and documents] produced in the first action is essentially the same as the testimony that would be required to try the second action, then it is proper to conclude that both actions are founded on the same cause of action.  *Gordon v. Gordon*, 59 So. 2d 40 (Fla. 1952), cert. denied, 344 U.S. 878, 73 S.  Ct. 165, 97 L.Ed. 680 (1952).

An exception to the "identity of the causes of action" requirement applies as to any issue presented in the second action which was, or could have been, litigated in the first action. *Albrecht v. State*, 444 So. 2d at 12; *Poinciana Chinawear, Inc. v. Forsythe*, 136 So. 2d 337 (Fla. 1962). All the facts that gave rise to [Jesse Lee's] Complaint against the party named in this suit had occurred prior to his initiation of the [federal] suit against the CITY OF GULFPORT. Thus, [Jesse Lee's] allegations in this suit are substantially the same as those he made in his defense of the State's case against him in the state court action, and any issues that he introduced for the first time in this action could have been presented in the state court case, or in an appeal to the state appeals court in the criminal case against him. *McDonald v. Hillsborough County School Bd.*, 821 F.2d 1563, 1565 (11th Cir. 1987). However, Mr. Lee is precluded from now raising claims which he could have raised but failed to do so in the prior state court proceedings. See *Migra* 465 U.S. at 83-84; *Webber v. Mills*, 595 F. Supp. 514, 515-516 (S.D. Fla. 1984); *Albrecht,* 444 So. 2d at 11-12.

Jesse Lee was again found criminally guilty of Outdoor Sales Without Permit and Sales Without a Permit in County Court, yet he is currently suing the City of Gulfport in this case under Count 1, asserting deprivation of Mr. Lee's right to equal protection of law for the denial of Mr. Lee operation of a mobile food delivery vehicle. Also, Count 2 alleges that the Gulfport mobile food vendor ordinance is unconstitutionally vague. Counts 9 and 12 seek injunctive and declaratory relief and are

also alleged in reference to the criminal case previously adjudicated in Pinellas County Court. *See* Exhibit A.

The third factor necessary to establish res judicata, identity of the parties, also exists in this case as to said counts.  See *Beline v. City of Deland*, 731 F. Supp. 464, 467 (M.D. Fla. 1989) (noting that "identity of parties" includes not only the identical parties, but those in privity with those originally named). See also *McDonald v. Hillsborough Co. sch. Bd*., 821 F.2d 1563, 1565-66 (11th Cir. 1987).  As to identity of the parties, it is not necessary that the parties to both actions be identical.  A judgment is also conclusive as to those in privity with the parties.  *Hay v. Salisbury*, 92 Fla. 446, 109 So. 617 (1926); *McGregor v. Provident Trust Co*., 119 Fla. 718, 162 So. 323 (1935).  [A] [plaintiff] cannot avoid the doctrine of res judicata by joining [other] in [privity] in an action based on the same claim asserted against the board in the state court.  *Hay v. Salisbury*, 92 Fla. 446, 109 So. 617 (1926).  While the parties to the federal action may be nominally different from those in the state action, they are in effect the same parties.  *Knabb v. Duner,* 143 Fla. 92, 93, 196 So. 456, 457 (1940).

The fourth factor is also satisfied in this case because the parties in the state action had the same incentive to adequately litigate the claims as would the parties to the federal action.  If these conditions are present, any point raised and decided in the former suit "cannot again be drawn in question in any future action between the same parties." *McGregor v. Provident Trust Co.,* 162 So. 323, 327 (Fla. 1935).

In summary, for the doctrine of res judicata to apply, a party must establish the existence of four elements, to-wit: (1) The state forum was a court of competent jurisdiction; (2) the parties, or their privities, in the state action are present in the federal action; (3) the plaintiff's claims in the state action are identical to the claims stated in the federal action; and (4) the state court entered final judgment on the merits. *See*, *Decker v. City of Plantation*, 706 F. Supp. 851 (S.D. Fla. 1989); see also, *Citibank v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990).

## COLLATERAL ESTOPPEL

It is important to observe that there is a distinction between res judicata and estoppel by judgment, sometimes referred to as 'collateral estoppel'.  In *Gordon v. Gordon*, 59 So. 2d 40, 44 (Fla. 1952), the Florida Supreme Court stated:

> 'A great many courts and textbook writers treat 'res adjudicata' and 'estoppel by judgment' as synonymous. The most erudite legal minds appear to have difficulty in stating the difference which they consider exists between them. We find no occasion to discuss the slight difference which some authors limn between the terms 'estoppel by judgment', 'estoppel by verdict' or 'conclusiveness of verdict.' These expressions are oftentimes used interchangeably. Although dissertations have come to our attention in which the doctrine of res adjudicata is considered as a subdivision or branch of the law of estoppel, strictly and technically speaking, such treatment is not proper. The former is founded upon the sound proposition that there should be an end to litigation and that in the interest of the State every justiciable controversy should be settled in one action in order that the courts and the parties will not be pothered[2] for the same cause by interminable litigation. On the other hand, estoppel rests upon equitable principles. 50 C.J.S., Judgments, s 593. Even so, the

---

2  Pothered- A. confused or fidgety flurry of activity: B. agitated talk or controversy usually over a trivial matter.

ultimate purpose of estoppel by judgment is to bring litigation to an end. *The difference which we consider exists between res judicata and estoppel by judgment is that under res judicata, a final decree or judgment bars a subsequent suit between the same parties based upon the same cause of action and is conclusive as to all matters germane thereto that were or could have been raised, while the principle of estoppel by judgment is applicable where the two causes of action are different, in which case, the judgment in the first suit only estops the parties from litigating in the second suit issues—that is to say points and questions—common to both causes of action and which were actually adjudicated in the prior litigation.'* (emphasis added)

When res judicata does not apply to bar an entire claim, the doctrine of collateral estoppel may nonetheless prevent re-litigation of particular issues actually litigated and decided in prior suits. *CitiBank v. Data Lease Financial Corp*., 904 F.2d 1498, 1501 (11th Cir. 1990). The distinction between res judicata and collateral estoppel becomes significant if we determine that res judicata is not applicable because of the absence of any one of those four essential factors. *Seaboard Coastline R. Co. v. Indus. Contracting Co*., 260 So. 2d 860, 864–65 (Fla. 4th DCA 1972).

If res judicata does not apply, the question then arises as to whether the entry of a summary judgment [or an order of dismissal] can be supported upon the theory of collateral estoppel. The Supreme Court has defined "collateral estoppel" (otherwise known as issue preclusion) as meaning that "once a court decides an issue of fact or law necessary to its judgment, that decision precludes re-litigation of the same issue on a different cause of action between the parties." *Kremer v. Chemical Construction Corp*., 46 U.S. 461, 466 n.6 (1982). Collateral estoppel therefore would be applicable where the second action between the same parties is upon a different claim or demand, with the

judgment of the prior action operating as an estoppel only as to those matters in issue or points controverted and based upon the determination of the finding, final judgment or verdict that was rendered. *Id.* According to the *CitiBank* court, the elements of collateral estoppel include: (1) the same issue being involved in both suits; (2) the issue must have been actually litigated; (3) the determination of the issue must have been a necessary part of the judgment; and (4) the party against whom the decision was asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. *CitiBank v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990); *see also Air Parts v. Avco Corp.*, 736 F.2d 1499 (11th Cir. 1984). It is essential that the question common to both causes of action was actually adjudicated in the prior litigation. *Youngblood v. Taylor,* 89 So. 2d 503 (Fla. 1956).

Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case. As courts often recognize, res judicata and collateral estoppel relieve parties of the costs and aggravation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. at 94 (1980).

The Florida Supreme Court specifically authorized the use of such defensive collateral estoppel in *Zeidwig v. Ward,* 548 So. 2d 209, 214 (Fla. 1989). The Florida Supreme Court in that case held that "where a defendant in a criminal case has had a full and fair opportunity to present his claim in a prior criminal proceeding, and a judicial

determination is made that he has received the effective assistance of counsel, then the defendant/attorney in a subsequent civil malpractice action brought by the criminal defendant may defensively assert collateral estoppel." *Zeidwig*, 548 So. 2d at 214; (quoting) *Vazquez v. Metro. Dade Cnty.*, 968 F.2d 1101, 1106 (11th Cir. 1992).   In approving the use of defensive collateral estoppel in that criminal-to-civil context, the Florida Supreme Court in *Zeidwig* held that a criminal defendant, as a plaintiff, is prohibited from relitigating the same issue that was litigated in prior criminal proceedings. *Zeidwig*, 548 So. 2d at 209.   In *Zeidwig*, the Florida Supreme Court "approve[d] the rationale expressed in the Restatement (Second) of Judgments § 85 (1982), entitled 'Effect of Criminal Judgment in Subsequent Civil Action,'" in upholding the use of defensive collateral estoppel in a non-mutual, criminal-to-civil context. *Zeidwig*, 548 So. 2d at 209. Section 85(2)(a) of the Restatement (Second) adopts in the criminal-to-civil context the standards for issue preclusion contained in Section 29 of the Restatement (Second), which discusses collateral estoppel in the context of civil-to-civil cases without mutuality. Section 29, in turn, adopts the standard employed in Section 27 of the Restatement (Second) for assessing claims of collateral estoppel in mutual, civil-to-civil situations.   Section 27 of the Restatement (Second) of Judgments (1982) states as follows:

> "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

Accordingly, the *Zeidwig* case and its use of defensive collateral estoppel should be applied in this criminal to civil context as to each of the two criminal cases on the food permit ordinance violations at issue. *Zeidwig,* 548 So. 2d at 214.

## II.    THE CITY'S TRESPASS POLICY DOES NOT VIOLATE LEE'S SUBSTANTIVE DUE PROCESS RIGHTS

In his Complaint, Plaintiff asserts that the City of Gulfport Police Department's Trespass Policy[3] violated his rights to substantive due process under the Fourteenth Amendment.  "[C]onduct by a government actor [,however,] will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003).

In the context of this case, Plaintiff's claims completely fail because the City's Trespass Policy clearly furthers a recognized public purpose; that is, preventing an individual's conduct that either has caused, or is likely to cause, a disruption of services or put the safety of staff or the public at risk.  On page 1 of Written Directive 406,[4] in the "Policy" section and description, it specifically states that it is the policy of the City to maintain an environment which is open and accessible to the public; however, when an individual's actions are deemed to be harmful and/or disruptive to a reasonable person involved in government operations and/or its individual members, or where the individual's actions are contrary to law, a trespass warning may be given to that

---

3 *See* Document 1-4.
4 *See* Document 1-4.

individual to maintain an environment free of those disruptive, harmful, and/or unlawful influences. The policy description further states that another objective is to establish controls and methods to be followed in issuing a trespass warning to a person on City of Gulfport property, and lastly it also outlines an appeal process whereby the person may apply to have a trespass warning withdrawn in order to be able to again have access to City-provided programs, facilities and services.

Written Directive 406 further has several sections regarding documenting, and following the trespass warning procedures (Section 406.03, 406.031 & 406.04), as well as a section on investigations and arrests for trespass after warning (Section 406.05), and sections on the duration of the warning (Sections 406.06 & 406.072), and on trespass from public buildings or property (Sections 406.07 & 406.071), and finally on the appeal process (Section 406.08). [*See* Doc. 1-4]. Section 406.07 specifically states that, when an individual's actions are deemed to be harmful and/or disruptive to a reasonable person involved in government operations and/or its individual members, or are harmful, disruptive or contrary to City policies, rules and regulations, a trespass warning may be given to that individual. Moreover, the appeal process is specifically delineated in Section 406.08 and states that any trespassed individual may file an appeal to the City Manager's office to have the trespass warning repealed or amended. This is entirely consistent with the law. "The Government, like any private landowner, may preserve the property under its control for the use to which it is lawfully dedicated." *Sentinel Commc'ns Co. v. Watts*, 936 F.2d 1189, 1201 (11th Cir. 1991). Similarly, the government "workplace, like any place of employment, exists to accomplish the business of the

employer." *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 805, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). "It follows that the Government has the right to exercise control over access to the [government] workplace in order to avoid interruptions to the performance of the duties of its employees." *Id.* at 805-06, 105 S. Ct. 3439." "…[A]s the United States Supreme Court acknowledged in *Adderley v. Florida*, 385 U.S. 39, 87 S. Ct. 242, 17 L.Ed.2d 149 (1966), this ***public access may be expressly limited to the extent necessary for the orderly functioning of the public facility***." (Emphasis added).

Given this precedent, the Court should conclude that the City's Trespass Policy is neither facially irrational nor arbitrary.  An ordinance violates the Due Process Clause's prohibition on "arbitrary" government action only if it lacks a "substantial relation to the public health, safety, morals, or general welfare." See *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S. Ct. 114, 121, 71 L.Ed. 303 (1926).  In Counts 3, 4 and 5 of Plaintiff's Complaint, Plaintiff alleges that he was permanently banned from City Hall (Count 3), from the Building Department (Count 4) and City Casino (Count 5) in violation of the Substantive Due Process Clause of the 14th Amendment.  However, nowhere in these three counts does Plaintiff allege that he has pursued, or attempted to pursue, the available administrative appellate procedures outlined in Section 406.08.  As a result, it is plainly evident from Written Directive 406[5] that Plaintiff has not properly pled a cause of action, in that he clearly has failed to allege compliance with the necessary condition

_____

5 *See* Document 1-4.

precedent to this cause of action, namely filing an appeal with the City Manager on *any* of the two trespass warnings, and therefore said counts must be dismissed as a matter of law.

"The substantive component of the Due Process Clause protects those rights that are 'fundamental', that is, rights that are 'implicit in the concept of ordered liberty'." *McKinney v. Pate,* 20 F. 3rd 1550, 1556 (11th Cir. 1994). To withstand a substantive due process challenge, a legislative enactment cannot be "arbitrary, capricious or without a rational or reasonable relationship to the public health, safety, morals, or general welfare". *Euclid v. Ambler Realty Co.*, 272 U.S. 366, 395 (1926). Where, as here, the legislation being challenged does not deprive an individual of a "fundamental right", the Court applies the "rational basis" test to determine whether it is constitutional. *219 S. Atlantic Blvd. Inc., v. City of Fort Lauderdale*, 239 F. Supp. 2d 1265, 1276 (S.D. Fla. 2002) (citing *Georgia Manufacturers Housing Association, Inc. v. Spalding Co.*, 148 Fed 3d 1304, 1307 (11th Cir. 1998). The rational basis test consists of a two-pronged inquiry: (1) the court must identify a legitimate government purpose; and, (2) the court must determine whether "a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose". *Haves v. City of Miami*, 52 F.3d 918, 921 – 22 (11th Cir. 1995). In *Rodriguez v. City of Gulfport*, 2023 WL 3504882 (M.D. Fla. 2023) (citing *Peery v. City of Miami*, 977 F.3d 1061,1071 (11th Cir. 2020), the Court (Judge Mizelle) held that although a plaintiff might have a "liberty interest" to be on City of

Gulfport lands that are generally open to the public, that interest is neither fundamental nor limitless.

It is therefore clear under the "rational basis" test that Plaintiff has failed to state cognizable causes of action in Counts 3, 4, and 5 of his Complaint, and therefore, said counts should be dismissed as a matter of law.

## III.   THE CITY'S TRESPASS POLICY IS ALSO PROCEDURALLY SUFFICIENT

Counts 6, 7, and 8 of Plaintiff's Complaint all allege procedural due process violations based on his alleged bans from City Hall, Building Department and City Casino. A Section 1983 procedural due process claim requires a plaintiff to plead and prove three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and a (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). The Due Process Clause requires "that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case'". *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). In order to determine whether Defendant violated Plaintiff's procedural due process rights, the Court must first determine whether the government action at issue is "adjudicative" or "legislative." When government action is "legislative," individuals impacted by such action are not entitled to procedural due process beyond that which the legislative process affords them. *75 Acres, LLC v. Miami–Dade Cnty., Fla.*, 338 F.3d 1288, 1294 (11th Cir. 2003) ("[W]hen a regulation is legislative in nature, the legislative

process (wherein elected officials are accountable to the electorate) is all the process that is due.")

To determine whether any ordinance satisfies the constitutional requirement of procedural due process, the 11th Circuit employs the *Matthews v. Eldridge*, 424 U.S. 319 (1976) balancing test – see *Catron v. City of St. Petersburg*, 658 F.3d at 1267 –

> Identification of the specific dictates of due process generally requires consideration of three distinct factors:  First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation for such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Under the City's Trespass Policy, when a person causes a disruption of services or puts the safety of staff or the public at risk, that person is no longer at the City's facilities on legitimate City business; accordingly, City personnel are empowered to issue trespass warnings.  [*See* Doc. 1-4, pp. 1-2].  As such, the person forfeits any liberty interest in visiting City facilities, such as City Hall, Gulfport Marina or the Gulfport Casino, *see Catron*, 658 F.3d at 1266, and the City can legally restrict access to those facilities "without impacting constitutionally-protected liberty interests," *see Harrison v. Palmer*, No. 4:13cv131-WS, 2014 WL 11412696, at *4 (N.D. Fla. Nov. 5, 2014).  Though the Gulfport Marina and Casino are government buildings, like City Hall, the public has no constitutional right to visit City Hall "under all conditions and at all times."  *See Catron*, 658 F.3d at 1267 n.5. The government is empowered control of its property "for the use

to which it is lawfully dedicated." *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129-30, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981) (citation omitted). The City also has a recognized and legitimate interest in enacting policies to promote sanitation, public health, safety and aesthetics of its public property. *Joel v. City of Orlando*, 323 F.3d 1353, 1358 (11th Cir. 2000).

Moreover, Plaintiff must show "not only a constitutionally-protected [liberty] interest, but also a governmental deprivation of that constitutionally-protected [liberty] interest." *Arrington v. Helms*, 438 F.3d 1336, 1348 (11th Cir. 2006). Here, Plaintiff's claim fails because, if a person forfeits the asserted liberty interest, then there has been no unconstitutional deprivation. *See Occupy Fort Myers*, 882 F. Supp. 2d at 1338-39 (holding there was no likelihood of success on the merits where there was no liberty interest in plaintiffs' use of the park).

A person that causes a disruption of services or puts the safety of staff or the public at risk is not using the City's facilities under ordinary conditions or for their intended purposes. The park in *Catron* was open to the public generally, and the trespass ordinance prevented plaintiffs' ordinary use of the park.  658 F.3d at 1266-67.  In *Catron*, the Eleventh Circuit stated the due process rights at issue were to use the "parks under the ordinary conditions in which these parks are made available to the general public." *Id*. at 1267 n.5.  There can be no question that the City may, however, limit the use of its properties to ordinary conditions for its intended purpose. *Id.*; see also *Occupy Fort Myers*, 882 F. Supp. 2d at 1338-39 (holding no liberty interest exits permitting protests in a public

park in any way or at any time); *Woodbury v. City of Tampa Police Dep't.*, No. 8:10-CV-0772-T-30AEP, 2010 WL 2557677, at *1-2 (M.D. Fla. June 8, 2010) (holding a parent did not have a liberty interest to visit their child's school and that a school district could indefinitely bar the parent's access to school "to maintain order and prevent disruptions"), *report and recommendation adopted* 2010 WL 2557534 (June 23, 2010).

In sum, neither LEE nor any other person has an absolute right to visit City Hall, the Building Department, City Casino or any other governmentally controlled facility. Where the City limits the use of its facilities based on a violation of the Trespass Policy, it does not violate liberty interests. *See Vincent v. City of Sulphur*, 805 F.3d 543, 548 (5th Cir. 2015) (holding a plaintiff "under investigation for threatening deadly violence against city officials" did not have a clearly established "right to notice and a hearing before being banned from entering city buildings").

Furthermore, although Plaintiff alleges in Counts 6, 7, and 8 that the Trespass Policy does not contain any procedures for a hearing to appeal the imposition of an exclusion from municipal property, and that he has not had the opportunity for a review of the duration of the trespass policy that prohibits him from being at City Hall or the Building Department. Section 406.08, titled "Appeal", specifically references that the trespassed individual may file an appeal with the City Manager's office to have the trespass warning repealed, or amended. [*See* Doc 1-4, p.4]. In his Amended Complaint, Plaintiff has made no allegation whatsoever that he has complied with, or satisfied, that administrative condition precedent, but it is abundantly clear from a review of that policy

that the City does have procedurally sufficient appellate remedies that were available, and are still available to Plaintiff but which he has yet to avail himself of (or allege that he has), and therefore he has failed to state a cognizable and recognized cause of action against the CITY OF GULFPORT in these counts.

## IV.   THE CITY'S TRESPASS POLICY IS NOT VAGUE

Plaintiff brings "vagueness" claims in Counts 9, 10 and 11 of his Complaint. Under long-established due-process principles, a law or regulation is only "void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Unconstitutionally vague laws or regulations fail to provide "fair warning" of what is required, and they consequently encourage its "arbitrary and discriminatory enforcement" by giving government officials the sole ability to interpret the scope of the law. *Id*. at 108–09, 92 S.Ct. 2294. To thwart these problems, the concept of due process "insist[s] that laws give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id*. at 108, 92 S.Ct. 2294. The courts do not "expect mathematical certainty from our language." *Id*. at 110, 92 S.Ct. 2294. Thus, "[v]agueness arises when a statute is so unclear as to what conduct is applicable that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Mason v. Fla. Bar*, 208 F.3d 952, 958 (11th Cir.2000); see also *Roberts v. U.S. Jaycees*, 468 U.S. 609, 629, 104 S. Ct. 3244, 3256, 82 L.Ed.2d 462 (1984) ("The void-for-vagueness doctrine reflects the principle that a statute which either forbids or requires the doing of

an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." (internal quotation marks omitted)).   To succeed on a vagueness challenge, the complainant must demonstrate that the law is impermissibly vague in all of its applications. See *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95, 102 S. Ct. 1186, 71 L.Ed. 2d 362 (1982).

Here, the conduct prohibited by the City's Trespass Policy is the very sort of conduct that has been criminalized both by the State of Florida and the City's Code of Ordinances. *See*, *e.g.*, §§ 836.04 (Defamation), 836.05 (Threats; extortion), 836.12 (Threats), Fla. Stat.; *see also*, *e.g.*, Gulfport, Fla., Code of Ordinances §§ 14-1 (Abusive or obscene language), 14-5 (Assault and battery), 14-19 (Disorderly conduct), 14-19 (Disturbing lawful assembly). Furthermore, "…as the United States Supreme Court acknowledged in *Adderley v. Florida*, 385 U.S. 39, 87 S. Ct. 242, 17 L.Ed.2d 149 (1966), this ***public access may be expressly limited to the extent necessary for the orderly functioning of the public facility***." (Emphasis added).

Additionally, the phrase "has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk" is not unconstitutionally vague. In fact, it is perfectly clear and unambiguous.  A person of normal intelligence understands what these terms mean. What is more, the "vagueness" alleged here is no more vague than the Trenton, New Jersey, ordinance in *Kovacs v. Cooper*, 336 U.S. 77, 69 S. Ct. 448, 93 L.Ed. 513 (1949), which prohibited "loud and raucous noises." The Supreme Court

upheld that ordinance and in doing so, it explained that though the words "loud and raucous" "are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden." *Id*. at 79, 69 S. Ct. 448.  So too is the terminology "… has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk. "Additionally, the trespass charges against the Plaintiff have been subsequently dropped.

Accordingly, counts 9, 10 and 11 of Plaintiff's Complaint should be dismissed as a matter of law.

## V.   INJUNCTIVE/DECLARATORY RELIEF ARE PREMATURE, AND CLAIMS FOR PLAINTIFF LACKS STANDING

LEE requests *Injunctive* and/or *Declaratory* Relief on subject matters that are not yet ripe for this Court in Counts 9 through 12 of Plaintiff Amended Complaint, due to the fact that it does not appear that LEE intends to avail himself of available administrative appeals to the City Manager's Office.  Apparently, Plaintiff would prefer to skip these appeals and have this Honorable Court intervene on his behalf, despite the fact that the City Manager is the final-decision maker for the CITY OF GULFPORT on a day-to-day basis, *sans* decisions of the City Council.

As in the case of *City of Los Angeles v. Lyons*, 103 S. Ct. 1660 (1983), LEE has "failed, moreover, to establish the basic requirements of the issuance of equitable relief in these circumstances—the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies as law." *Id.* at 1666.  Also, as the 11th Circuit held in case of *Kerr v. City of West Palm Beach*, 875 F.2d 1546 (11th Cir. 1989)**,** the Court affirmed

the district court's holding that Kerr lacked standing to seek injunctive or declaratory relief:

> "…the Department's policy does not *require* its officers to act unconstitutionally. Under both *Garner* and *Lyons,* **such general policies are not unconstitutional on their face**; appellants therefore have no standing to seek injunctive or declaratory relief against the policy's continued usage. *See generally Mitchell v. City of Sapulpa,* 857 F.2d 713, 720 (10th Cir.1988) (Plaintiff, who was unlawfully seized pursuant to an Oklahoma statute that ostensibly violated the dictates of *Garner*, had no standing under *Lyons* to seek a declaratory judgment as to the statute's constitutionality.). (emphasis added).

Similarly, in this instant case, the City's policy is not unconstitutional on its face, and as such LEE's request for Injunction and Declaratory Relief are at best "hypothetical" at this point, and premature, since he has not appealed any of the trespass warnings from any of the three City buildings.

Lastly, Plaintiff has not, and cannot, establish that the granting of the relief sought would not disserve the public interest. *See Church v. City of Huntsville*, 30 F.3d 1332 at 1345 (11th Cir. 1994). Accordingly, the relief sought in Counts 9-12 should be denied and those counts should be dismissed.

WHEREFORE, Defendant, CITY OF GULFPORT, respectfully requests that this Honorable Court grant Defendant's, CITY OF GULFPORT, Motion to Dismiss.

Respectfully submitted this  9th  day of September, 2024.

　　　　　　　　　　　　　　　 /s/ Donovan A. Roper　　　　　　　　　
　　　　　　　　　　　　　　　DONOVAN A. ROPER, ESQUIRE
　　　　　　　　　　　　　　　Florida Bar No.:  0858544

## Certificate of Compliance with Local Rule 3.01(g)

The undersigned certifies that in compliance with Local Rule 3.01(g), he has contacted Plaintiff's attorney, and she is opposed to the relief sought herein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this  9th  day of September, 2024, I electronically submitted the foregoing with the Clerk of Court using the CM/ECF system, who will send electronic notice to all parties and pro se litigants.

　　　　　　　　　　　　　　　 /s/ Donovan A. Roper　　　　　　　　
　　　　　　　　　　　　　　　DONOVAN A. ROPER, ESQUIRE
　　　　　　　　　　　　　　　Florida Bar No.:  0858544
　　　　　　　　　　　　　　　Roper & Roper, P.A.
　　　　　　　　　　　　　　　116 North Park Avenue
　　　　　　　　　　　　　　　Apopka, FL 32703
　　　　　　　　　　　　　　　TEL:  407-884-9944
　　　　　　　　　　　　　　　FAX:  407-884-4343
　　　　　　　　　　　　　　　email@roperandroper.com
　　　　　　　　　　　　　　　blewis@roperandroper.com
DAR/RDR　　　　　　　　　　　ckeep@roperandroper.com