UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSE LEE,                                    CASE NO. 8:23-02996-VMC-AEP

     Plaintiff,

v.

CITY OF GULFPORT,

     Defendant.


## PLAINTIFF JESSE LEE'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF GULFPORT'S AMENDED MOTION TO DISMISS

Plaintiff JESSE LEE ("LEE"), by and through undersigned counsel, responds to the

Defendant CITY OF GULFPORT's ("GULFPORT") "Amended" Motion to Dismiss [DE 29] as

follows:

## INTRODUCTION

LEE has challenged the constitutionality of an ordinance requiring approval from

GULFPORT's city council to operate a mobile food-dispensing vehicle on public property or

within the public rights of way. The ordinance provides no procedure by which to seek such

approval nor criteria by which approval a is to be evaluated, instead leaving approval wholly to

the city council's unbridled discretion. LEE, a person of color, also asserts violation of his right

to equal protection as multiple white individuals have been allowed to operate mobile food-

dispensing vehicles on Gulfport public property without permits, while LEE has twice been cited

for the exact same conduct.

GULFPORT asserts that LEE's claims are barred by *res judicata* because LEE was cited

and found guilty of "Outdoor Sales without A Permit" and "Sales Without Permit." GULFPORT

raised the identical defense in its Motion to Dismiss [the original] Complaint [DE 15] and, as explained in LEE's Response in Opposition [DE 17], GULFPORT was wrong. GULFPORT is still wrong. Contrary to GULFPORT's contentions of res judicata and collateral estoppel, LEE was not obligated to raise his equal protection claims as a defendant in the state criminal action, nor was he required to raise his constitutional challenges to a different ordinance than the one he allegedly violated.

LEE was permanently trespassed from GULFPORT's City Hall and Building Department, with no right to appeal, under the auspices of a GULFPORT policy that allowed city facility supervisors to trespass individuals forever if the supervisor "had reason to believe an individual caused or is likely to cause a disruption in services or put the safety of the staff or public at risk." [DE: 28 ¶ 39-81, DE 28-1.] In the case *sub judice*, LEE challenges that policy and his two permanent trespasses on the grounds that they violated his right to substantive and procedural due process. Contrary to GULFPORT's contentions of res judicata and collateral estoppel, LEE was not obligated to raise his equal protection claims in the state criminal action, nor was he required to raise his constitutional challenges to a different ordinance than the one he allegedly violated. GULFPORT repeatedly asserts, without a single citation to authority, that LEE's substantive and procedural due process claims must be dismissed because he has failed to avail himself of "the available administrative appellate procedures outlined in Section 406.08." However, this "administrative appellate procedure" was created almost a year and a half after LEE received his first trespass warning, and consists of two sentences, neither of which hint at the criteria that would be applied in such an appeal or the procedures that would be followed.

Among GULFPORT's claimed grounds for dismissal is that GULFPORT's "Written Directive 406" is "clear, concise, and unequivocal and that it is not void on grounds of

vagueness." While that description is hardly accurate, it is also irrelevant. Written Directive 406, which was not effective until January 5, 2022, [DE 1-4], some 14 months after LEE was trespassed from City Hall, and almost four months after LEE was trespassed from the building department, is not challenged in the Amended Complaint [DE 28].

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff that "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" has asserted a claim that is plausible on its face. *Id.* When considering a motion to dismiss, the court must accept all factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Forsyth v. Woodforest Nat'l Bank, Inc.*, No. 8:23-cv-2375-VMC-AAS, 2023 U.S. Dist. LEXIS 216698, at *3 (M.D. Fla. Dec. 6, 2023) citing *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004).

It is axiomatic that a court's review at the stage of a motion to dismiss is confined to the four corners of the complaint. *Crabb v. Ingram*, No. 23-cv-81212-MIDDLEBROOKS, 2024 U.S. Dist. LEXIS 62358 (S.D. Fla. Mar. 18, 2024), *citing St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). The only documents that can be considered are "the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). See also *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir.1997) (per curiam) ("[A]nalysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto."), *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)(Courts must restrict their

consideration "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.").

Legal conclusions can provide the framework of a complaint but must be supported by factual allegations. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, *Id*. at 679.

## LEE'S CLAIMS OF EQUAL PROTECTION AND VAGUENESS ARE NOT BARRED BY RES JUDICATA OR COLLATERAL ESTOPPEL

GULFPORT wastes this Court's time by yet again asking that it hold that LEE was required to have raised his equal protection claim and his challenge to the mobile food vending ordinance based upon unconstitutional vagueness in the county court criminal proceeding, and that by falling to do so he has waived those claims forever. Res judicata may be raised in a Rule 12(b)(6) motion only where the existence of the defense can be determined from the face of the complaint. *Solis v. Glob. Acceptance Credit Co., L.P.,* 601 F. App'x 767, 771 (11th Cir. 2015), *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982). In this case, it cannot.

GULFPORT does not base its res judicata claim on the face of the Amended Complaint. GULFPORT has appended to its Amended Motion to Dismiss two documents entitled "JUDGMENT & SENTENCE" entered December 16, 2021, by Pinellas County Court Judge John Carabello: one finding LEE guilty of "Sales Without a Permit," the other finding LEE guilty of "Outdoor Sales Without a Permit." Both documents direct LEE to pay "Fine and Costs in the amount of $205.00." Additionally, GULFPORT has appended a two-page transcript of only the portion of the proceeding in state court in which the judge announced his ruling.

GULFPORT claims that in the prior proceeding in which LEE was found guilty of "Outdoor Sales without a Permit" and "Sales Without A Permit" LEE was "found guilty of violating Section 22-6-12 (b) of the Gulfport ordinances requiring a permit on 10/27/20 to operate an ice cream stand." None the less, according to GULFPORT: "Identity of the thing sued for therefore exists."

In support of this cryptic pronouncement GULFPORT cites "*Valdez v. Ruiz*" which is actually *Valdes v. Ruas*, a case in which a person allegedly injured in an automobile accident sued the other driver and his insurer, and then apparently unhappy with the first jury verdict sued the same other driver and his insurer again, also for "personal injuries sustained in the same accident which was the subject matter of the previous litigation." Not surprisingly, Valdes's attempt to get a second bite at the proverbial apple was unsuccessful based upon res judicata. *Valdes v. Ruas*, 354 So. 2d 1269, 1270 (Fla. 3rd DCA 1978). This is LEE's first suit for damages stemming from the constitutional violations alleged herein.

GULFPORT goes on to assert that "Thus, [Jesse Lee's] allegations in this suit are substantially the same as those he made in his defense of the State's case against him in the state court action, and any issues that he introduced for the first time in this action could have been presented in the state court case, or in an appeal to the state appeals court in the criminal case against him." [DE 29 at 7.] First, it is axiomatic that one cannot raise an issue for the first time on appeal. Second, If LEE had raised allegations in the bench trial in state court that truly are "substantially the same" to his claims in the instant case, presumably GULFPORT would have provided the relevant portion of the transcript proving that LEE made allegations which are "substantially the same" as the claims in this suit. Instead, GULFPORT has attached to its motion to dismiss two pages of the transcript reflecting only the judge's ruling.

Furthermore, LEE could not have raised his equal protection claim or other causes of action he has asserted here seeking monetary damages and declaratory relief for constitutional violations in the criminal case. See *Carroll v. City of Detroit*, 410 F. Supp. 2d 615, 620 (E.D. Mich. 2006) ("The City contends that Plaintiffs should have raised their constitutional challenges to the ordinances in their criminal proceedings. Although Plaintiffs presumably could have challenged the constitutionality of the ordinances as a defense in their criminal proceedings, they could not have raised the cause of action they have asserted here. Plaintiffs seek damages, and declaratory and injunctive relief for constitutional violations pursuant to 42 U.S.C. § 1983; the City does not explain how Plaintiffs could have obtained such monetary and equitable relief in their criminal proceedings."). None of the cases cited by GULFPORT establish that a criminal defendant loses his right of access to a federal forum for hearing his constitutional civil claims if he did not previously raise them as a defense in a criminal proceeding.

The cases again cited by GULFPORT in its renewed assertion that LEE is forever precluded from raising his constitutional challenges in this case remain easily distinguishable. For example, in *McDonald v. Hillsborough Cty. Sch. Bd.*, 821 F.2d 1563 (11th Cir. 1987), the 11th Circuit upheld dismissal of a §1983 claim by a teacher that had been terminated, allegedly in violation of his due process rights, because the teacher had already filed a similar suit as a plaintiff in state court and lost on those same claims. Unlike LEE, the plaintiff teacher had gone on the offense as a plaintiff in a state court civil action; the case does not remotely stand for the proposition that a defendant in a criminal matter may not subsequently bring constitutional claims in federal court.

To the contrary, there is ample authority for the proposition that preclusion doctrines do not extend from criminal prosecutions to later civil actions. *Andrews v. Haw. Cty.*, No. 11-00512

JMS/BMK, 2013 U.S. Dist. LEXIS 133352 (D. Haw. Sep. 17, 2013) *citing, Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999) ("[W]e decline to extend res judicata to bar this claim where there is no indication that Ingram and Collins, who would have been in a defensive posture during criminal proceedings on the obstruction charges, could have raised their § 1983 claims during those proceedings."). LEE was also in a defensive posture in the prior action.

*Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75 (1984) is also again cited by GULFPORT for the erroneous assertion that because LEE did not raise claims of equal protection and unconstitutional vagueness claims as a criminal defendant in county court, he has forever waived the ability to assert those claims. The plaintiff in *Migra* was, just like the teacher in *McDonald v. Hillsborough Cty. Sch. Bd, supra,* an educator who had gone on the offense, bringing a successful claim in state court for wrongful termination, and obtaining a state court judgment adjudicating only state claims before filing a case in federal court. A subsequent federal case was dismissed by the district court based upon the Full Faith and Credit Clause, and the Court of Appeals for the Sixth Circuit affirmed. The Supreme Court agreed that that state court judgment precluded Dr. Migra's subsequent federal § 1983 claims, pointing out that "petitioner was in an offensive posture in her state-court proceeding, and could have proceeded first in federal court had she wanted to litigate her federal claim in a federal forum." *Id.* at n.7. Unlike Dr. Migra, LEE was not in an offensive posture in the state court proceeding.

Finally, in *Webber v. Mills*, 595 F. Supp. 514 (S.D. Fla. 1984), also cited again by GULFPORT, the would-be federal litigant had unsuccessfully appealed a School Board decision upholding her termination as school principal to the state court of appeal, but purposely did not raise her constitutional claims in the state proceeding. When she subsequently sought to assert her constitutional claims stemming from the same facts in federal court in a second lawsuit, the

district court held she was precluded from doing so based upon res judicata. Unlike the Plaintiff in *Webber v. Mills*, LEE is not bringing a second lawsuit against GULFPORT after having already brought an unsuccessful case in state court.

Collateral estoppel also does not bar LEE's constitutional claims from being raised because his constitutional claims were not actually litigated in state court, and LEE was not obligated to raise his constitutional issues to a county court judge as a defendant in a criminal case. *See Vinson v. Campbell Cnty. Fiscal Ct.*, 820 F.2d 194, 197 (6th Cir. 1987) ("Collateral estoppel or issue preclusion is not applicable in the present case because plaintiff's section 1983 action is not the same cause of action as the state's criminal case against her; neither the validity of the summons nor the legality of the arrest was litigated or decided in the prior state court proceeding.").

Citing *CitiBank v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990), GULFPORT correctly identifies four elements of collateral estoppel, specifically: (1) the same issue being involved in both suits; (2) the issue must have been actually litigated; (3) the determination of the issue must have been a necessary part of the judgment; and (4) the party against whom the decision was asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. None of those elements are satisfied here.

As to the first element, the constitutional issues raised in this case are not the same issues considered in the prior case in which LEE was found guilty of the heinous act of selling ice cream without a permit. Second, the issues raised by LEE in this case were not actually litigated; the judge did not consider LEE's equal protection claim, or the constitutionality of Section 13-84(2) of the City of Gulfport Code of Ordinances, or the constitutionality of the trespass warnings that are the subject of this suit. The arrest which LEE asserts was in retaliation for him

exercising his First amendment rights happened after the state court trial, obviously it was not actually litigated. Third, it was not necessary for the county court judge to rule on LEE's constitutional claims to convict LEE of unpermitted ice cream sales. And fourth, LEE, as a defendant in a criminal proceeding involving unpermitted ice cream sales, did not have a "full and fair" opportunity to litigate his entitlement to damages or injunctive relief from GULFPORT's equal protection violations, an unconstitutionally vague ordinance or this claims that the permanent trespass warnings violate his due process rights. GULFPORT's repeated efforts to dismiss any of LEE's claims based upon res judicata and/or collateral estoppel are disingenuous, and sorely lack a solid legal or factual basis.

### SECTION II OF GULFPORT'S MOTION TO DISMISS ADDRESSES CLAIMS NOT MADE IN THE AMENDED COMPLAINT

In the second section of GULFPORT's AMENDED MOTION TO DISMISS, GULFPORT expounds at length upon the virtues of its "Written Directive 406" and concludes that LEE's substantive due process claims "completely fail because the City's Trespass Policy clearly furthers a recognized public purpose; that is, preventing an individual's conduct that either has caused, or is likely to cause, a disruption of services or put the safety of staff or the public at risk." Again, when LEE was trespassed from City Hall and the Building Department, Section 406.08's "administrative appellate procedures" did not exist, nor did "Written Directive 406." In his Amended Complaint LEE does not challenge the much touted "Written Directive 406," which was invented <u>after</u> LEE received the two trespass warnings identified in the instant suit.

GULFPORT asserts on page 15 of it Amended Motion to Dismiss that:

> In Counts 3, 4 and 5 of Plaintiff's Complaint, Plaintiff alleges that he was permanently banned from City Hall (Count 3), from the Building Department (Count 4) and City Casino (Count 5) in

> violation of the Substantive Due Process Clause that he has
> pursued, or attempted to pursue, the available administrative
> appellate procedures outlined in Section 406.08.

The Amended Complaint does not assert that LEE was *banned from* the City Casino; Count 5 of the Amended Complaint asserts that LEE was *arrested at* the City Casino in retaliation for exercising his 1st amendment rights. DE 28. Even if Section 406.08's "administrative appellate procedures" had existed when the trespass warnings were issued to LEE, as explained above, the "administrative appellate procedures" are so grossly inadequate as to be laughable.

GULFPORT then asserts that the rational basis test applies (to what is unclear), and pronounces in conclusory fashion that "it is therefore clear under the 'rational basis' test that Plaintiff has failed to state a cognizable causes of action in Counts 3, 4 and 5 of his complaint."

To state a substantive due process claim, a plaintiff must allege (1) a deprivation of a constitutionally-protected interest, and (2) that "the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation." *Executive 100, Inc. v. Martin Cnty.*, 922 F.2d 1536, 1541 (11th Cir. 1991) (quoted in *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016). A substantive due process claim must involve state conduct that "'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U. S. 833, 847(1998).

LEE has stated a prima facia case for violation of his due process claims. The right of a citizen to be on municipally-owned properties that are open to the public is a constitutionally-protected liberty interest. *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Citizens "have a constitutionally protected liberty interest to be in parks or on city lands of their choosing that are

open to the public generally." *Id.*; *see also City of Chicago v. Morales*, 527 U.S. 41, 54 (1999) (recognizing that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment" and stating "an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage,' or the right to move 'to whatsoever place one's own inclination may direct.'"). Even if the rights infringed by GULFPORT are not fundamental rights, it is still true that "[w]here a fundamental liberty interest does not exist, substantive due process nonetheless protects against the arbitrary and oppressive exercise of government power." *Peterka v. Dixon*, No. 4:23cv55-MW-MAF, 2023 U.S. Dist. LEXIS 196175, at *11-12 (N.D. Fla. Oct. 10, 2023), citing *Waldman v. Conway*, 871 F.3d 1283, 1292 (11th Cir. 2017).

A trespass ordinance found to be unconstitutional in *Catron v. City of St. Petersburg, supra,* authorized individuals to be excluded from public property only for a limited time, one year for first time violations and two years for all other violations, a sharp contrast to GULFPORT draconian permanent trespass warnings. GULFPORT has not cited a single case upholding a government's right to permanently bar a person from municipally owned property via a trespass warning, even if there were adequate standards in place and a right to a hearing.

The policy challenged in the Amended Complaint allows a city official to permanently ban a citizen who has not committed a crime or violated any ordinance from city property essentially if the city official simply doesn't like the cut of his/her jib. LEE's permanent trespasses from City Hall and the Building Department, issued without explanation as to the factual basis and without a right to appeal, are so blatantly unconstitutional as to be "conscience shocking." GULFPORT has articulated no rational basis for permanently banning an individual not convicted or even charged with a crime or civil infraction from city owned property based

upon a city official's premonition that the individual "is likely to cause a disruption of services or put the safety of staff or the public at risk." LEE has unequivocally stated a cause of action for violation of his right to substantive due process.

## LEE STATES A CAUSE OF ACTION FOR VIOLATION OF HIS RIGHT TO PROCEDRUAL DUE PROCESS

GULFPORT asseverates that "[u]nder the City's Trespass Policy, when a person causes a disruption of services or puts the safety of staff or the public at risk, that person is no longer at the City's facilities on legitimate City business; accordingly, City personnel are empowered to issue trespass warnings," citing again to "Written Directive 406." This ignores the fact that a person need not have caused a disruption of services or put the safety of staff or the public at risk to be trespassed, an individual can be permanently banned from any GULFPORT property if a city official merely *THINKS* the individual "is likely" to cause a disruption of services or endanger staff or the public.

Furthermore, while LEE certainly does not concede that "Written Directive 406" with its vague standards and two sentence "administrative appeal procedure" comes close to providing sufficient due process to a person who has been permanently or even temporarily banned from City property, "Written Directive 406" is not an ordinance, and it is not part of this case.  LEE's trespass warnings were issued pursuant to a policy whereby "supervisors of individual city facilities are empowered to issue trespass warnings whenever they have reason to believe an individual has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk." [DE 28-1.]

GULFPORT asserts that:

> Under the City's Trespass Policy, when a person causes a disruption of services or puts the safety of staff or the public at risk, that person is no longer at the City's facilities on legitimate City business; accordingly, City personnel are empowered to issue trespass warnings. [*See* Doc. 1-4, pp. 1-2]. As such, the person forfeits any liberty interest in visiting City facilities, such as City Hall, Gulfport Marina or the Gulfport Casino, *see Catron*, 658 F.3d at 1266, and the City can legally restrict access to those facilities "without impacting constitutionally-protected liberty interests," *see Harrison v. Palmer*, No. 4:13cv131-WS, 2014 WL 11412696, at *4 (N.D. Fla. Nov. 5, 2014).

The government property from which a citizen was banned in *Harrison v. Palmer* was an office suite that is not generally open to the public but required a key card or pin number for access, which is hardly analogous to City Hall.

Finally, GULFPORT is correct that the 11th Circuit acknowledged in *Catron v. City of St. Petersburg*, 658 F.3d 1260 (11th Cir. 2011), that a person may may forfeit his/her liberty right to be "in parks or on other city lands of their choosing" by "trespass or other violation of law." However, the trespass ordinance ruled unconstitutional in *Catron v. City of St. Petersburg* was found to violate procedural due process because, <u>just like the policy challenged in this case</u>, the ordinance did not provide for any type of hearing or appeal before depriving an individual of his or her right to be on City property. *Id.*

GULFPORT goes on to say that "Plaintiff's claim fails because, if a person forfeits the asserted liberty interest, then there has been no unconstitutional deprivation." This pronouncement is incorrect, even if a person has through his or her conduct done something so egregious as to justify being banned from city property, the individual is still entitled to due process. Further, there is no showing, nor can there be at the stage of a motion to dismiss, that LEE has done anything that should result in the forfeiture of his liberty interest in being at City Hall or at the Gulfport Building Department.

On page 20 of its Amended Motion to Dismiss, GULFPORT again states:

> although Plaintiff alleges in Counts 6, 7, and 8 that the Trespass
> Policy does not contain any procedures for a hearing to appeal the
> imposition of an exclusion from municipal property, and that he
> has not had the opportunity for a review of the duration of the
> trespass policy that prohibits him from being at City Hall or the
> Building Department. [sic] Section 406.08, titled "Appeal",
> specifically references that the trespassed individual may file an
> appeal with the City Manager's office to have the trespass warning
> repealed, or amended. [See Doc 1-4, p.4].

GULFPORT's actual trespass policy that was in effect when the two trespass warnings were issued to LEE and is challenged in the instant lawsuit, did not contain any provision for an appeal. Per the Defendant, City Manager James O'Reily, "the City maintains a policy whereby supervisors of individual city facilities are empowered to issue trespass warnings whenever they have reason to believe an individual has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk." [DE 28-1] Moreover, LEE was never told he could appeal his trespass warnings, and the trespass warnings themselves contain no mention of an appeal. LEE was trespassed pursuant to a policy that -- just like the policy found unconstitutional in *Catron v. City of St. Petersburg* -- failed to allow for any sort of hearing or appeal. Even if the much-touted Section 406.08 had existed at the time of LEE's trespass, it contains no criteria and provides for an appeal to the same person who caused him to be issued trespass warnings in the first place. Procedural due process requirements dictate that LEE be given an opportunity for a *de novo* hearing before a neutral fact finder, at which GULFPORT would have the burden to prove it had a legitimate basis to deprive LEE of his right to be present on public property. See *Fla. Dep't of Transp. v. J. W. C. Co*., 396 So. 2d 778, 788 (Fla. 1st DCA 1981) ("the burden of proof, apart from statute, is on the party asserting the affirmative of an issue before an

administrative tribunal") citing *Balino v. Department of Health and Rehabilitative Services*, 348 So.2d 349 (Fla. 1st DCA 1977).

In advocating dismissal of LEE's due process claims, GULFPORT contends that LEE has no "absolute right" to visit City Hall, the Building Department, or the Gulfport Casino, citing a case in which a person being investigated for "threatening deadly violence against city officials" was successfully banned from city buildings without prior notice and an opportunity to be heard. [DE: 29 at 20] Noticeably absent from GULFPORT's Motion to Dismiss is any indication, much less evidence, that LEE has ever threatened anyone with anything, let alone threatened "city officials" with "deadly violence."   LEE has NEVER asserted that his right to visit City Hall or the Building Department is "absolute." As clearly alleged in the initial complaint and the Amended Complaint, LEE asserts that he had a right to due process before GULFPORT can permanently ban him from accessing City property, hardly a proposition that should be controversial.

In *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536 (D. Vt. 2014), plaintiff, the father of an autistic student, sued alleging a due process violation based upon the School District's issuance of two notices of trespass prohibiting him from entering onto its property. The Court, applying the *Matthews* test[1], found the notices against trespass "created a high risk of erroneous deprivation because they were not issued pursuant to any protocol, because they did not set out a process to contest the ban, and because Mr. Cyr did not receive a meaningful

---

[1] *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).  To determine the process due, a court must balance the three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

opportunity to contest his ban." *Id.* In ruling that the trespass notices violated the Mr. Cyr's due process rights, the Court emphasized the fact that, like the two trespass warnings received by LEE, "[n]either notice contained any explanation of the basis upon which it was issued." *Id.* at 552, citing *Taylor v. Rodriguez*, 238 F.3d 188, 193 (2d Cir. 2001) (notice must contain "specific facts underlying the allegation[s]" that led to the government's actions "because a hearing is not 'meaningful' if a [party] is given inadequate information about the basis of the charges against him.").

A Section 1983 procedural due process claim requires a plaintiff to prove three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) citing *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). LEE has alleged that he has been deprived of his "a constitutionally protected liberty interest" to be in city buildings of his choosing that are open to the public generally. The Amended Complaint satisfies the first element. As to the second element, even GULFPORT has not asserted the absence of a state action. See *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 98 S. Ct. 2018 (1978) (when execution of a government's policy or custom inflicts the injury the government as an entity is responsible under § 1983). Finally, LEE has clearly alleged that there was no mechanism to challenge a trespass warning when he was trespassed from GULFPORT's City Hall and Building Department, nor was he ever advised of any right to appeal. GULFPORT's motion to dismiss LEE's procedural due process claims fails to show that LEE has not established a procedural due process claim, and even helps make his claim for him.

## RESPONSE TO SECTION IV OF GULFPORT'S AMENDED MOTION TO DISMISS

GULFPORT next asserts that Plaintiff brings vagueness claims in Counts 9, 10 and 11 of the Amended Complaint. GULFPORT is incorrect. In Count 9, Plaintiff asks for a declaration that Section 13-84(2) of the City of Gulfport Code of Ordinances is facially unconstitutional and unconstitutional as applied to LEE. In Count 10, he asks for a declaration that GULFPORT's Trespass Policy is facially unconstitutional and unconstitutional as applied to LEE. In Count 11, LEE asks the court to enjoin GULFPORT from preventing him from visiting City Hall and the Building Department.

LEE does challenge GULFPORT's trespass policy as vague in Count 8. GULFPORT's claims that the policy is not vague because "the conduct prohibited by the City's Trespass Policy is the very sort of conduct that has been criminalized both by the State of Florida and the City's Code of Ordinance." [DE 29 at 22.] The Trespass Policy challenged by Lee does not actually prohibit any conduct. [DE 28-1.]

GULFPORT also asserts that the determination of whether an individual "has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk" is no vaguer than a determination of which noises are "loud and raucous," a standard once upheld by the US Supreme Court. The Court held that while "loud and raucous" "are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden." *Kovacs v. Cooper*, 336 U.S. 77, 79 (1949). Notably, the Supreme Court did not uphold an ordinance that contemplated deprivation of a constitutionally protected liberty interest based upon a government official's determination that an individual was likely to be "loud and raucous." Visitors to GULFPORT's municipally owned buildings and

parks do not have, through daily use or otherwise, a "sufficiently accurate concept" of the conduct that will cause a city official to conclude he or she is likely to cause a disruption of services or put the safety of staff or the public at risk.

## LEE's REQUEST FOR INJUNCTIVE RELEIF IS NOT PREMATURE AND HE HAS STANDING TO REQUEST INJUNCTIVE RELEIF

GULFPORT again snidely asserts that LEE's requests for Injunctive and/or Declaratory Relief are not ripe because:

> it does not appear that LEE intends to avail himself of available administrative appeals to the City Manager's Office. Apparently, Plaintiff would prefer skip these appeals and have this Honorable Court intervene on his behalf, despite the fact that the City Manager is the final-decision maker for the CITY OF GULFPORT on a day-to-day basis, sans decisions of the City Council [DE 29 pg 23]

The trespass warnings were issued to LEE at a time when, indisputably, there was no "administrative appeals process" in existence. Even if the "administrative appeals process" supposedly created by a "Written Directive" applied to trespass warnings issued before the "process" existed, the much hailed two sentence "administrative appeals process" would require LEE to "appeal" a trespass warning issued by the City Manager to the City Manager. A basic element of due process is the right to be heard by a neutral fact finder. See *Valley v. Sec'y, Fla. Dep't of Corr.*, No. 16-17669-J, 2018 U.S. App. LEXIS 29307, at *11 (11th Cir. Oct. 17, 2018) (even in non-trial hearings, a neutral fact finder is an indispensable aspect of due process) *citing Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973).

GULFPORT is correct that LEE would "prefer to skip" an "appeal" based upon unspecified criteria conducted pursuant to non-existent procedural rules by the same person who caused the trespass warnings to be issued in the first place. GULFPORT fails to identify any authority whatsoever requiring LEE to exhaust administrative remedies before challenging the

constitutionality of trespass warnings and the amorphous trespass policy under which they were issued.

In his Response in Opposition to GULFPORT's Motion to Dismiss the initial complaint, LEE pointed out that GULFPORT's citation to *City of Los Angeles v. Lyons*, 103 S. Ct. 1660 (1983), for the assertion that LEE "failed, moreover to establish the basic requirements of the issuance of equitable relief in these circumstances—the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies as law" was misplaced because *City of Los Angeles v. Lyons* concerned a preliminary injunction, relief not sought in this case. Nonetheless, GULFPORT persists in claiming that LEE is not entitled to injunctive relief based upon a legal standard that does not apply to LEE's claims, but rather applies only to requests for preliminary injunctions.

GULFPORT again argues that LEE lacks standing to seek declaratory relief based upon *Kerr v. City of West Palm Beach*, 875 F.2d 1546 (11th Cir. 1989), because "the City's policy is not unconstitutional on its face and as such LEE request for Injunction (sic) and Declaratory Relief are at best 'hypothetical' and premature because LEE has not appealed any of the trespass warnings from any of the three City buildings."

The Amended Complaint clearly alleges that LEE has been issued trespass warnings banning him from two city buildings, not three. Whether GULFPORT's trespass warning policies are unconstitutional on their face is an issue to be decided by the Court, not GULFPORT. Yet again GULFPORT recites its administrative exhaustion mantra while providing <u>no authority</u> for the proposition that administrative exhaustion is a condition precedent to LEE's claims herein. GULFPORT has not even cited a case that would have required LEE to

exhaust administrative remedies before raising his constitutional challenges, even if an adequate process had existed when the trespass warnings were issued.

In *Kerr*, plaintiffs had been injured as a result of being apprehended by police dogs, and in addition to other relief, plaintiffs asked that the City's policies regulating the use of the canine unit be declared unconstitutional, and sought to enjoin the Department from continuing to use its canine unit in an unconstitutional manner. The Eleventh Circuit upheld denial of the requested declaratory and injunctive relief, declining to consider the constitutionality of municipal policies in the abstract. In so ruling, the Court noted that "appellants have not contended that they will again be unlawfully seized by one of the City's police dogs." LEE is not asking this Court to perform an assessment of the abstract constitutionality of GULFPORT's trespass policy. LEE is currently suffering direct injury as a result of the trespass policy; he is permanently precluded from accessing public places in the City of Gulfport under threat of arrest. His claims for injunctive relief are hardly hypothetical. Further, *Kerr v. City of West Palm Beach* provides no authority for the assertion that the GULFPORT trespass policy "is not unconstitutional on its face."

Finally, GULFPORT asserts that "Plaintiff has not and cannot establish that the granting of the relief sought would not disserve the public interest." Plaintiff is not required to do so at the stage of a motion to dismiss. In support of its observation that, at the stage of a motion to dismiss, LEE has not proven the injunctive relief he seeks would not be a disservice to the public interest, GULFPORT has cited *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994), which, like *City of Los Angeles v. Lyons,* involved an appeal of a <u>preliminary</u> injunction, relief that LEE has not requested.

WHEREFORE, Plaintiff JESSE LEE, by and through his undersigned counsel, for the foregoing reasons, moves this Honorable Court for Entry of an Order denying the City of Gulfport's Amended Motion to Dismiss [DE 29] and ordering GULFPORT to promptly answer the Amended Complaint.

Respectfully submitted this 20th day of September, 2024.

MARCY I. LAHART, P.A.
BY:*/s/ Marcy LaHart*
Marcy I. LaHart, Esq.
Florida Bar No. 0967009
Marcy@floridaanimallawyer.com
249 SE Tuscawilla Road
Micanopy, FL 32667
(352) 545-7001


## CERTIFICIATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of September, a true and correct copy of the foregoing has been furnished via CM/ECF electronic mail service to the Clerk of the Court who will send electronic notice to all counsel of record and pro se litigants.

BY: /s/ Marcy LaHart
Marcy LaHart, Esq.