UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSE LEE                                           CASE NO. 8:23-cv-02996-VMC AEP

      Plaintiff

v.

CITY OF GULFPORT
&
JAMES O'REILLY

      Defendants

## PLAINTIFF JESSE LEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 Plaintiff JESSE LEE ("LEE" or "Plaintiff") hereby moves for partial summary judgment[1] against Defendants CITY OF GULFPORT ("GULFPORT") and JAMES O'REILLY ("O'REILLY") on his claims of substantive and procedural due process violations based on having been permanently banned from public property and buildings owned by GULFPORT without a right to appeal.

LEE respectfully requests the Court enter an order:

- Determining that GULFPORT and O'REILLY have violated LEE's constitutional rights by permanently banning him from city owned property;

- Permanently enjoining GULFPORT from further enforcement of the trespass warnings issued to LEE and from issuing permanent or open ended trespass warnings that ban individuals from city owned property;

- Permanently enjoining GULFPORT from issuing trespass warnings banning individuals from city owned property without notice of right to a hearing and adoption of provisions providing meaningful review of an individual's exclusion from city property;

- Declaring Plaintiff is entitled to his attorney's fees and costs incurred in this action;

- Granting a trial for determination of LEE's entitlement to compensatory and punitive damages and consideration of any other remaining issues.

---

[1] This Court is well versed with the summary judgment standard. *See* Fed. R. Civ. P. 56(a), *Nike, Inc. v. Fox*, No. 8:23-cv-2873-VMC-AAS, 2025 U.S. Dist. LEXIS 75598, at *13-14 (M.D. Fla. Apr. 21, 2025), *Kamnerdpila v. City of St. Petersburg*, No. 8:23-cv-2724-VMC-NHA, 2025 U.S. Dist. LEXIS 59652, at *12-13 (M.D. Fla. Mar. 31, 2025).

## STATEMENT OF UNDISPUTED FACTS

1. LEE, a resident of GULFPORT, has been "indefinitely" banned from GULFPORT's City Hall since September 4, 2020 and permanently banned from GULFPORT's Building Department[2] since September 14, 2021. Both trespass warnings indicate they were issued at the behest of O'Reilly. Ex. 1 (Declaration of Jesse Lee) ("Lee Dec.") ¶ 2, 3, 4, 5; DE 28-2, 28-3.

2. GULFPORT's City manager, O'REILLY, directed that the trespass warnings be issued to LEE pursuant to a GULFPORT policy that allows supervisors of city facilities to issue a trespass warning permanently banning an individual from returning to the facility under threat of arrest anytime the supervisor feels the individual "has caused or is likely to cause a disruption of public services or put the safety of staff or the public at risk." Ex. 2 (O'Reilly Dep. Tr. Jan. 21, 2025) ("O'Reilly") 45:13-20.

3. LEE would like to be able to visit city-owned properties in GULFPORT to pay his utility bill, request, pay for and receive public records, and speak with public officials. Lee Dec. ¶ 7.

4. Pursuant to GULFPORT's trespass policy, it is not necessary that the supervisor issuing the trespass warning have personally observed the conduct that led to the trespass warning being issued, O'Rielly 45:22-25, 46:1-6, or that the trespassed individual has been warned either verbally or in writing prior to being permanently banned from GULFPORT property. *Id.* 47:24-25, 48:1-2.

5. O'REILLY admitted he directed LEE be trespassed from City Hall, *Id.* 17:6-25 and stated that LEE was trespassed based upon someone having made a complaint, but he did not know who had complained, *Id.* 18: 4-11 and recalled that LEE was trespassed from City Hall because LEE had been "pulling on the door or something" at the building department. *Id.* 19:2-6.

6. O'REILLY also testified that LEE was trespassed from City Hall on September 4, 2021 based upon LEE's conduct at the building department because "it was an expansion of his behaviors in City Hall and also at the building department. We were under COVID lockdown, and he did not want to leave." *Id.* 71:9-15.

7. GULFPORT's former police chief testified that the police officers who delivered the trespass warning to LEE "were under no obligation to investigate anything, so they did not ask any questions

---

[2] The Building Department is also known as the Community Development Department. Vincent 16:16-21.

about what happened, or why they were being asked to issue a trespass warning." Ex. 3 (Robert Vincent Dep. Tr. April 16, 2025)("Vincent") 22:1-10

8. An investigation conducted months later revealed that LEE had allegedly repeatedly pushed a handicapped access button outside the building department, which was interpreted as "trying to force his way into the building" but had not actually entered the building. Vincent 22:20-24:17

9. LEE was trespassed from the Building Department on September 14, 2021 when he attempted to obtain public records. Lee Dec. ¶ 4

10. On July 26, 2022, at O'REILLY's direction, GULFPORT's then Chief of Police Robert Vincent sent an email to all police department employees "clarifying" LEE was permanently excluded from the entire "City Hall Campus," not just inside "City Hall/Community Development office" buildings. O'Reilly 61:7-62:13, Vincent 17:3-17.

11. Chief Vincent also wrote to LEE informing LEE that he was trespassed from the "entire campus" and not just city hall and the building department. Vincent 18:25-20:17.

12. According to O'REILLY, in addition to the "entire City Hall campus," LEE at some unknown date had also been trespassed from the GULFPORT casino because LEE was allegedly aggressive during a constituent meeting with a former state representative and because of LEE's attitude towards city staff. However, no written trespass warning banning LEE from the casino was produced by Defendants. O'Reilly, 26:1-25.

13. Neither of the trespass warnings issued to LEE describe any actions or conduct by LEE that caused him to be permanently banned from city property, nor was he informed of why he was being trespassed. Lee Dec. ¶ 2, 4

14. At least prior to 2024, when a trespass warning is given to an individual barring them from returning to city property, the police department did not make any determination that there was a reasonable basis for the recipient to be banned. Vincent 10:1-25, 11:1-6.

15. GULFPORT's former Police Chief stated: "we didn't issue trespass warnings, we just delivered them," *Id.* and that as GULFPORT's City Manager O'REILLY has the right to trespass somebody from city owned property "for any reason or no reason at all." Vincent 47:4-7.

16. O'REILLY conceded that he controls the duration of a trespass and has never issued a trespass for a

shorter duration than "permanent or indefinite." O'Reilly 39:16-41:13.

17. Similarly, GULFPORT's former Police Chief testified that he had "never in 30 years with the police department," seen a trespass warning for a duration other than indefinite or permanent:

> *That's what I was taught when I first started, that it was, the trespass warning, once you issued it, was always in effect, unless the person who issued it, asked for it to be rescinded, and that's been the practice forever, as far as I knew.* Vincent 11:7-15

18. Although at some point the GULFPORT police department added to trespass warnings being issued the statement that "Trespass warnings issued for city property may be appealed to the City Manager's office, 727-893-1009," Vincent 56:19-24, there was no such statement on the trespass warnings issued to LEE. DE 28-2, 28-3.

19. GULFPORT has no ordinance or even a written policy that requires that individuals be allowed to appeal trespass warnings issued for city property or the duration of such a trespass warning or be given notice of such a right. O'Reilly 24:5-9.

20. No written criteria or written procedural rules governing appeals from trespass warnings have been adopted by GULFPORT. O'REILLY explained that if LEE wants the trespass warnings issued to him (at O'REILLY's behest) to be terminated, O'REILLY would "meet with him and then have a conversation—discussion with them" and that he would "inquire of the police department if there was any additional complaints filed on Mr. Lee or other staff." *Id*. 21:22-25, 22:1-13.

21. O'REILLY was unable to say how much time without additional complaints must pass before a trespass would be rescinded. *Id.* 23:8-22.

22. No one has ever appealed a trespass warning banning them from GULFPORT property. *Id.* 23:13-16.

23. If someone did appeal a trespass warning, O'REILLY would decide the appeal based upon a conversation the individual and "if there's any other complaints" and if in his opinion "we're not continuing sustaining the behaviors that have created" the trespass warning.  *Id.* 23: 17-21.

24. O'REILLY stated that if an individual is not happy with his decision regarding an appeal of a trespass warning, that person could ask the City Council to override his decision, but this right to a subsequent appeal to the City Council is also not codified in GULFPORT's code.  *Id.* 22:15-23:7.

25. O'REILLY was put on notice that trespassing an individual from public property without due

process violates the individual's constitutional rights and claims to have sought clarification from the City Attorney, *Id.* 58: 14-61:6, but no written request for such clarification has been produced by Defendants, and similarly, no memo, email or other writing from the City Attorney has been produced opining that it is constitutional to permanently trespass individuals from city property, with or without due process.

## ARGUMENT

### LEE IS ENTITLED TO SUMMARY JUDGMENT REGARDING THE PERMANENT/ INDEFINITE TRESPASS WARNINGS

Today and every day since September 4, 2020 LEE has been precluded from visiting GULFPORT's city hall under the threat of arrest. A little more than a year later, on September 14, 2021, LEE went to the Gulfport building department to request public records and was issued a second "trespass warning" banning him returning. Later LEE was informed that he was not allowed anywhere on GULFPORT's "entire City Hall campus."

It is undisputed that the trespass warnings were delivered to LEE by police offers at the direction of O'REILLY, that no city ordinance or policy provides a citizen trespassed from city owned property the right to an appeal, and that the trespass warnings given to LEE did not inform LEE of the basis for their issuance or of an ability to appeal. The undisputed facts establish that GULFPORT's trespass policy violates LEE's rights to procedural and substantive due process.

### A. Procedural Due Process

A claim under section 1983 asserting a "denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Yarbrough v. Decatur Hous. Auth*., 941 F.3d 1022, 1026 (11th Cir. 2019)

LEE would like to be able to visit GULFPORT owned properties for benign purposes such as paying his utility bill, picking up public records, and speaking with city officials regarding matters that concern him. Indisputably, LEE has a protected liberty interest in lawfully visiting city property that is open to the public. *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1267 (11th Cir. 2011), *Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115, 1127 (M.D. Fla. 2019) ("Plaintiffs have a constitutionally protected liberty interest to be in parks or other city lands of their choosing

that are open to the public generally. This right is likely extended to City Hall.") (internal citation omitted)

Defendants have not attempted to argue that the City Manager directing GULFPORT police officers to issue trespass warnings permanently banning citizens from city-owned property does not constitute state action. Accordingly, this Court must determine whether LEE was provided "constitutionally inadequate process" based upon the three factor *Mathews* balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Mathews balancing test mandates consideration of :

> three distinct factors: First, the private interest that will be affected by the
> official action; second, the risk of an erroneous deprivation of such interest
> through the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's interest,
> including the function involved and the fiscal and administrative burdens
> that the additional or substitute procedural requirement would entail.
> *Catron*, 658 F.3d at 1267.

As to the first element, the Eleventh Circuit has long acknowledged "a constitutionally protected liberty interest to be in parks or on other city lands . . . that are open to the public generally." *Catron*, 658 F. 3d at 1266 (11th Cir. 2011) (citations omitted)

The GULFPORT trespass policy poses a great risk of erroneous deprivation of a protected liberty interest. The GULFPORT trespass policy allows a city official to direct that an individual be permanently banned from city property, and there is no requirement that the recipient of such a warning be notified of the right to challenge the warning or be enlightened as to the basis of the warning. While, at some point after the issuance of the trespass warnings to LEE, the police department began including a statement on the trespass warnings that: "*Trespass warnings issued for city property may be appealed to the City Manager's office, 727-893-1009,*" even if LEE had received notice that he could appeal the trespass warnings he was issued to the City Manager, the very same person that directed their issuance, no ordinance has been enacted by GULFPORT which requires the recipient be given a right to appeal a trespass warning banning them for city property.

It is well established law that the ordinance or policy impacting a protected right itself must provide for notice and a hearing, and that a gratuitous hearing does not cure a due process deficiency. See *Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424 ("It is not enough that the

owners may by chance have notice, or that they may as a matter of favor have a hearing. The law

must require notice to them, and give them the right to a hearing and an opportunity to be heard.")

GULFPORT's trespass policy is virtually indistinguishable from the ordinance held to pose

a "substantial risk of erroneous deprivation of liberty" in *Catron*, 658 F.3d 1267-8, "because the

trespass ordinance provides no procedural means for a warning-recipient to challenge the warning."

In *Catron* the 11th circuit could just as easily have been describing GULFPORT's trespass policy

when it noted:

> *Section 20-30 provides a lot of discretion to many different city agents to issue trespass warnings for a wide range of acts. Given that these warnings operate like some kind of injunction, this situation creates a substantial risk of erroneous deprivation of liberty. Section 20-30 gives many different agents authority to issue a trespass warning: warnings can be issued by police officers, "city employees or officials . . . having control over" a particular city property, plus even the designees of city employees. §§ 20-30 (a)-(b). In addition, a wide range of acts could constitute a violation of "any city ordinance, rule or regulation, or state law or lawful directive of a city employee or official" and might result in a trespass warning: public indecency, littering, and even disobeying the lawful directions (for example, do not run around the pool) of a lifeguard in a public pool would seemingly all be included in that description. Furthermore, Section 20-30 provides no guidance to city officials (or their designees) or police officers in exercising their discretion to determine whether a person has actually committed a violation that permits issuance of a trespass warning: this lack of specificity suggests that whenever an authorized city employee thinks a violation has occurred, he may issue a trespass warning.*

Addressing the third factor in the *Mathews* test, the Government's interest, and burdens that

additional procedural requirements would impose, unequivocally GULFPORT has "the right to

exercise control over access to the [government] workplace in order to avoid interruptions to the

performance of the duties of its employees." *Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115,

1123 (M.D. Fla. 2019), quoting *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S.

788, 805-06. Further, requiring a person trespassed from GULFPORT property must be provided a

meaningful opportunity for a hearing before a neutral factfinder[3] would come at the cost of

---

[3] A basic element of due process is the right to be heard by a neutral fact finder. *See Valley v. Sec'y, Fla. Dep't of Corr.*, No. 16-17669-J, 2018 U.S. App. LEXIS 29307, at *11 (11th Cir. Oct. 17, 2018) (Even in non-trial hearings, a neutral fact finder is an indispensable aspect of due process.) *citing Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973). Even if LEE had been advised of a right to appeal, a gratuitous opportunity to appeal to the very same person that issued the trespass warnings does not pass constitutional muster, and would not do so even if there were criteria to govern O'REILLY's currently unbridled authority to uphold or rescind permanent trespass warnings from city property. It has been held that a chief of police cannot fairly determine the validity of a tow, *Hale v. Tyree*, 491 F. Supp. 622, 626

expediency and impose upon GULFPORT some additional expense. However, as noted by the 11th Circuit, "an evident process for such challenges has significant value in avoiding mistakes. Even if it is impractical for the City to provide a pre-warning hearing to "assure that there are reasonable grounds to support" the trespass warning, the City must provide some post-deprivation procedure to satisfy the requirements of the Due Process Clause." *Catron* 658 F.3d 1268. GULFPORT's interests are not significantly burdened by requiring that individuals trespassed from city property be provided a meaningful opportunity for review.

No genuine or material facts prevent the determination that GULFPORT violated LEE's right to procedural due process by failing to provide LEE notice of the conduct that resulted in his being trespassed, or to notify him of an opportunity to be heard regarding the issuance of the trespass warnings. See *Bates v. Town of Cavendish*, 735 F. Supp. 3d 479, 504 (D. Vt. 2024) (With regard to the potential of an erroneous deprivation, the Trespass Notice "w[as] not issued pursuant to any protocol," "did not set out a process for contesting the [ban]," gave [the recipient] "no meaningful opportunity to contest" it, and does not provide "any explanation of the basis upon which it was issued.") (citations omitted)

**B. Substantive Due Process**

Defendants claimed that the LEE is challenging a "nonexistent" policy of permanently banning individuals from public places and claimed the "City has no such policy, nor does Mr. O'Reilly." [DE 47 pg 16] Yet O'REILLY testified that he determines the duration of a trespass warning and has never issued a trespass for a shorter duration than "permanent or indefinite." Similarly, GULFPORT's former police chief Robert Vincent testified he had "never in 30 years with the police department," seen a trespass warning for a duration other than indefinite or permanent, and *"that's been the practice forever."* Municipal liability attaches if final policymakers, including the chief of police and city manager, acquiesced in a longstanding practice that constitutes the entity's standard operating procedure. *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1480

_____

(E.D. Tenn 1979), and that a mayor of a town cannot serve as a judge in the town traffic court. *Ward v. Village of Monroeville*, 409 U.S. 57 (1972). O'REILLY as city manager cannot review his own decision to issue a trespass.

(11th Cir. 1991) citing *Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989) ("The court should examine not only the relevant positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law.")

Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense. *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003). To prove a substantive due process claim, a plaintiff must demonstrate (1) deprivation of a constitutionally protected interest, and (2) that the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation. *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016) (quoting *Executive 100, Inc. v. Martin Cnty*., 922 F.2d 1536, 1541 (11th Cir. 1991).

As to the first element, LEE has demonstrated that he has been deprived a constitutionally protected interest, the right to visit an expanding list of city-owned properties within GULFPORT for what is now approaching five years. Further, the deprivation of that right will be open ended if not permanent if Defendants prevail in this case. Like the plaintiffs in *Catron*, 653 F. 3d 1260, 1266, LEE has a constitutionally protected liberty interest to be in parks or on other city lands of his choosing that are open to the public generally. *See also City of Chicago v. Morales*, 527 U.S. 41, (1999) (plurality opinion) (citations omitted) ("[A]n individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage,' or the right to move 'to whatsoever place one's own inclination may direct.'")

In considering whether the deprivation of a constitutionally protected interest violates substantive due process, a different evaluative frameworks applies to "legislative" and "executive" actions. See *Littlejohn v. Sch. Bd. of Leon Cty.,* 132 F.4th 1232, 1239 (11th Cir. 2025) citing *McKinney v. Pate*, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994) (en banc). "Executive" action violates a plaintiff's substantive due-process rights . . . if the action "shocks the conscience." *Id.*

O'REILLY's unilateral decision to direct the GULFPORT police to issue permanent trespass warnings to LEE is indisputably an executive rather than a legislative decision. *McKinney v. Pate*, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994)( "Executive acts characteristically apply to a limited number of persons" and "typically arise from the ministerial or administrative activities of

members of the executive branch.")

Permanently or indefinitely banning a citizen from city properties under threat of arrest via a trespass warning, without revealing the basis of the trespass or providing an opportunity for review by a neutral decision maker, is "arbitrary or conscience shocking in a constitutional sense." The ordinance found unconstitutional in *Catron* only authorized trespass warnings of a limited duration. *Catron*, 658 F.3d 1265 (11th Cir. 2011) ("For first-time violations, the trespass-warning period may not exceed one year; for all other violations, the trespass-warning period may not exceed two years.") Some cases have held that bans from public property of limited duration were acceptable, see for example, *Williams v. Town of Greenburgh*, 535 F.3d 71, 75-76 (2d Cir. 2008) (finding that "[plaintiff's] expulsion and <u>temporary exclusion</u> from [a municipal Community] Center did not deprive him of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment")(emphasis added); *Peterson v. City of N. St. Paul*, 2021 U.S. Dist. LEXIS 217680, 2021 WL 5235092, at *3 (D. Minn. Nov. 10, 2021) ("The City's one-year ban of [plaintiff] from City Hall did not deprive [him] of a protected liberty interest[.]"), *Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115, 1123 (M.D. Fla. 2019) ("Further, Sheets' ban is limited in time (one year) and geographic scope  (City Hall and the Annex). Weighed against the City's evidence, Sheets offers no legal support for saying this limited restriction is unreasonable. Nor has Sheets pointed to a single instance in which the City issued open-ended bans from government property.") However, there exists no precedent upholding either a permanent or open-ended ban from public property, nor has any authority for such a draconian measure been cited by Defendants.

There are no disputed facts precluding entry of summary judgment as to LEE's claim that the Defendants have violated his rights to substantive due process.

## CONCLUSION

For the foregoing reasons, Plaintiff JESSE LEE respectfully request the Court to determine he is entitled to summary judgment on his claims that Defendants CITY OF GULFPORT and JAMES OREILLY have violated his rights to substantive and procedural due process, and grant a trail as to damages and his remaining claims.

Respectfully submitted on this 29th day of May, 2025.

MARCY I. LAHART, PLLC

/s/ Marcy I. LaHart, Esq.
FL Bar No. 0967009
Marcy@floridaanimallawyer.com
861 S. 40th Street
Tacoma, WA 98418
(561) 358-5436
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of May, 2025 a true and correct copy of the foregoing

has been furnished via CM/ECF electronic mail service to the Clerk of the Court who will send electronic

notice to all counsel of record.

/s/*Marcy LaHart*
Marcy LaHart

BY:/s/ Marcy LaHart
Marcy I. LaHart, Esq.
Florida Bar No. 0967009
Marcy@floridaanimallawyer.com
MARCY I. LAHART, P.A.
249 SE Tuscawilla Road
Micanopy, FL 32667
(352) 545-7001


**CERTIFICATE OF SERVICE**


I HEREBY CERITIFY that a true and correct copy of the foregoing was served on this 10th day of April ,

2025 by electronic mail to Donovan A. Roper Esq. and Dustyn Ring Esq., ROPER & ROPER, P.A. 116

North Park Avenue, Apopka, FL 32703 to the following email addresses:

 email@roperandroper.com

donroper@roperandroper.com

dring@roperandroper.com


BY: s/Marcy LaHart
Marcy LaHart, Esq.