407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

1   UNITED STATES DISTRICT COURT

2   MIDDLE DISTRICT OF FLORIDA          **ORIGINAL**

3   TAMPA DIVISION

4   CASE NO.: 8:23-CV-02996-VMC-AEP

5

6   JESSE LEE,

7   Plaintiff

8

9   V.

10

11  CITY OF GULFPORT,

12  Defendant

13

14  DEPONENT: JESSE LEE

15  DATE:    JANUARY 22, 2025

16  REPORTER: CHALEN CAFIERO

17

18

19

20

21

22

23

24

25

401 EAST JACKSON STREET,
SUITE 2370
TAMPA, FL 33602

315 EAST ROBINSON STREET,
SUITE 510
ORLANDO, FLORIDA 32801
CORPORATE

1                      APPEARANCES

2   ON BEHALF OF THE PLAINTIFF, JESSE LEE:

3   Marcy I. LaHart, Esquire

4   Marcy I. LaHart, P.A.

5   240 Southeast Tuscawilla Road

6   Micanopy, Florida 32667

7   Telephone No.: (352) 545-7001

8   E-mail: marcy@floridaanimallawyer.com

9

10  ON BEHALF OF THE DEFENDANT, CITY OF GULFPORT:

11  Donovan Roper, Esquire

12  R. Dustyn Ring, Esquire

13  Roper & Roper, P.A.

14  116 North Park Avenue

15  Apopka, Florida 32703

16  Telephone No.: (407) 884-9944

17  E-mail: donroper@roperandroper.com

18  dring@roperandroper.com

19

20  Also Present: Laura Smith, Videographer; James O'Reilly,

21  Roper's Client/City Official

22

23

24

25



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1                            INDEX

2                                           Page

3   PROCEEDINGS                              5

4   DIRECT EXAMINATION BY MR. ROPER          6

5

6                          EXHIBITS

7   Exhibit                                 Page

8     1    Photograph of Ice Cream Cart      32

9     2    Photograph of Ice Cream Cart 2     33

10    4    Barbra Banos Bully Sign          164

11    3    Photograph Gulf Port Casino      173

12    5    Photograph of Permit             189

13

14  CERTIFIED QUESTION

15         MR. ROPER:  I -- I'm simply asking, did he

16  consult with his own legal counsel at any point in time

17  prior to June 21, 2020, about the legality of operating

18  an ice cream cart within Gulfport City limits without a

19  permit. (Pg. 74)

20

21

22

23

24

25



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

```
 1                    STIPULATION
 2  The deposition of JESSE LEE was taken at SAINT
 3  PETERSBURG CONFERENCE CENTER, 8950 DOCTOR MLK JR. STREET
 4  NORTH, SUITE 160, SAINT PETERSBURG, FLORIDA 33702 on
 5  WEDNESDAY the 22ND day of JANUARY 2025 at 10:21 a.m.
 6  (ET); said deposition was taken pursuant to the FLORIDA
 7  Rules of Civil Procedure. It is agreed that CHALEN
 8  CAFIERO, being a Notary Public and Court Reporter for
 9  the State of FLORIDA, may swear the witness.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1              PROCEEDINGS

2        THE VIDEOGRAPHER:  All right, please stand by.

3    I'll get us on the record.

4        Good morning.  This is media number 1 to the

5    videotaped deposition of Jesse Lee in the matter of

6    Lee v. City of Gulfport, case number 8:23-cv-02996-

7    VMC-AEP. This deposition is being held at Saint

8    Petersburg Conference Center on January 22, 2025.

9    Time is approximately 10:19 a.m. Eastern Standard.

10        My name is Laura Smith.  I'm the videographer.

11    The court reporter today is Chalen Cafiero.

12        Counsel, will you please announce your

13    appearances for the record?  And the court reporter

14    will swear in the witness.

15        MS. LAHART:  Marcy LaHart for the plaintiff,

16    Jesse Lee.

17        MR. ROPER:  Donovan Roper on behalf of the City

18    of Gulfport and James O'Reilly, and also present is

19    my co-counsel, Dustyn Ring.

20        THE REPORTER:  Okay.  Could you please raise

21    your right hand for me, sir.

22        Do you solemnly swear or affirm that the

23    testimony you're about to give will be the truth,

24    the whole truth, and nothing but the truth?

25        THE WITNESS:  Yes.



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

1          THE REPORTER:  All right.  We may begin.

2                  DIRECT EXAMINATION

3          BY MR. ROPER:

4     Q.   Can you state your name for the record please,

5  sir?

6     A.   Jesse Lee.

7     Q.   Okay.  What's your middle initial, sir?  Do

8  you have one?

9     A.   No.

10     Q.   Okay.  And what is your date of birth?

11     A.   XX-XX-XXXX.

12     Q.   Okay.  And have you ever had your deposition

13  taken before, sir?

14     A.   Yes.

15     Q.   How many times?

16     A.   Just once.

17     Q.   Okay.  What type of case was that deposition

18  taken in?

19     A.   Work injury.

20     Q.   Work injury?

21     A.   Yeah.

22     Q.   So it was a workers' compensation proceeding?

23     A.   Yes.

24     Q.   Okay.  And when was that?  When was that

25  deposition taken?



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      A.   About a month-and-a-half ago, I think.

2      Q.   Okay.  And was that here in Saint Petersburg?

3      A.   It was in Gulfport.

4      Q.   Okay.  And what -- is that case still pending?

5  Is that case still going on?

6      A.   Yes.

7      Q.   Okay.  And so other than that one deposition

8  that was taken in that workers' compensation case about

9  a month-and-a-half ago, you -- you've never had your

10  deposition taken at any other time; is that correct?

11      A.   Not that I recall, but no.

12      Q.   Okay.  I'm sure that your attorney, either in

13  that prior case or in this case, Ms. LaHart, has

14  explained the ground rules of what a deposition is.

15  Obviously, you were present in the deposition of my

16  clients yesterday when their depositions were taken. But

17  it's essentially a question-and-answer session.

18          You're only required to testify to the best of

19  your ability, recollection, memory.  And if you don't

20  remember something or you can't recall something, you

21  cannot recollect something, please tell us.  I think I

22  speak for Ms. LaHart when I say we don't want you to

23  guess.  We don't want you to speculate.  We don't want

24  anyone to speculate, but most importantly, our own

25  clients, we don't want them guessing.  So if you don't

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  know, you can't recall, just please tell us, okay?  It's

2  -- there's nothing wrong with that, okay?

3       A.    Perfect.

4       Q.    And if you need to take any number of breaks,

5  just like we did yesterday, that's fine.  You just let

6  us know.  It's a fairly informal proceeding here in

7  deposition.  The formalities are, obviously, that this

8  is a legal proceeding deposition, so you're under oath.

9            You're required to testify to the best you

10 can, you know, truthfully, accurately, and to the best

11 of your memory.  And your answers are being recorded,

12 just like everybody speaking here today is being

13 recorded by both the court reporter and the

14 videographer.  But once we are off the record, it --

15 it's a very informal proceeding.

16           So unless there is a pending question, feel

17 free to ask to take any number of breaks for any number

18 of reasons, okay?

19      A.    (No verbal response.)

20      Q.    If you can, for the record, and again, so we

21 can all make sure that you -- we have accurate

22 testimony, if you can answer out loud with a yes, no, or

23 enunciate an answer as opposed to what some people do,

24 and that is nod or uh-huh, uh-huh.  And court reporters

25 and, you know, videographers, even, a lot of times

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  cannot pick that up with any degree of specificity as to

2  whether that was a yes, no, affirmative, negative, or

3  otherwise.

4         So if you could, you know, enunciate an answer

5  once I've finished the question, that would be

6  appreciated as well.

7     A.   Okay.

8     Q.   If you do not understand a question that I'm

9  asking you, or it gets into a line of questioning and

10  you become confused, please let us know.

11        Please ask me to rephrase it and tell me you

12  don't understand the question, and I will do my very

13  best to rephrase it and clarify what I'm asking so that

14  you can answer accordingly.

15    A.   Understood.

16    Q.   So just as you have been doing also thus far,

17  wait until I finish my question, because it will give

18  Ms. LaHart an opportunity to jump in and object if she

19  feels that my question is objectionable.  And it also

20  gives the court reporter an opportunity to get a more

21  accurate transcript, get a proper recitation of what the

22  question was, and then, of course, what Ms. LaHart's

23  objection is, if she makes one, and then more

24  importantly, what your answer is.

25        So as long as we can try to avoid what we did



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  at times yesterday, unfortunately, and that was talk

2  over each other, it -- you know, when sometimes we try

3  to help by answering a question that we know where the

4  questioner is going, all it does is makes a more muddled

5  deposition transcript.  So if you could just let me

6  finish before you answer the question, I'll do my very

7  best to let you finish your answer before I ask my next

8  question.  Fair enough?

9       A.   Sounds good.

10      Q.   Okay.  All right.  So I'm going to go through

11 and ask you some questions here today, you know, about

12 the various incidents.  Obviously, the first major one

13 was September 4th of 2020, but we'll also go over the

14 September 14, 2021, and April 23, 2023, incidents that

15 are the subject matter of this litigation.

16           But before we go into that, let me ask you

17 some questions about your background and your current

18 situation.  Let's talk about your current situation

19 first.  Where are you currently residing?

20      A.   I'm homeless.

21      Q.   You're homeless?  Okay.  Where are you living

22 at right now, if you are homeless?

23      A.   In my car.

24      Q.   Okay.  So you're literally sleeping in your

25 car right now and parking wherever you can?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      A.   Two different places, and every once in a

2  while, as I'm permitted, I sleep on someone's couch on

3  days like this.

4      Q.   Okay.  So you do not have a current

5  residential address.  Is that a fair statement?

6      A.   No.  I use a friend's business address to

7  receive mail.

8      Q.   Okay.  So if you are to be contacted at a --

9  let's say, a United States Postal mailing address, would

10 we mail you at that address?

11     A.   Well, normally my attorney would get it, or I

12 would just send it to Jackson (phonetic) -- in Gulfport,

13 and she gives it to me.

14     Q.   Okay.  Okay.  Do you have any plans at this

15 point in time to move into a different residential

16 situation?

17     A.   Not at the moment, no.

18     Q.   Okay.  How long have you been homeless and

19 essentially living out of your car?

20     A.   About a year-and-a-half, two years now.

21     Q.   Okay.  Have you ever resided in a trailer?

22     A.   When I was in Texas, yes.

23     Q.   Okay.  Have you ever resided in a trailer in

24 Gulfport, Florida?

25     A.   Well, I have a trailer, yeah, but I don't



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1 really reside in it.  I just store my stuff.

2     Q.   Okay.  But you've never lived in that trailer?

3     A.   Every once in a while, I'll stay in it and --

4 you know, because it's a little warmer, on occasion. But

5 no, I don't really live in it.

6     Q.   Okay.  And where is that trailer stored?

7     A.   It's behind a friend's place.

8     Q.   Okay.  And where is that friend's place

9 located?

10     A.   On Hull Street in Gulfport.

11     Q.   Okay.  And who -- what is the name of that

12 friend?

13     A.   Mike Algar.

14     Q.   Can you spell that last name for me?

15     A.   I don't know how to spell it.

16     Q.   You said it's Algar?

17     A.   Algar.

18     Q.   What is the extent of your educational

19 background, Mr. Lee?  How far did you go in school?

20     A.   I have certifications in electric, plumbing,

21 graphic designs.

22     Q.   Did you complete high school?

23     A.   Yes.

24     Q.   Okay.  Where did you go to high school?

25     A.   Hudson County -- Hudson County School of



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       **Toll Free 855-MYDEPOS**

1  Technology.

2       Q.   And where is that?

3       A.   North Bergen, New Jersey.

4       Q.   Okay.  And what year did you graduate?

5       A.   It's been a very long time.  I think I put it

6  in my response if I looked it up.

7       Q.   Okay.  Have you ever attended any college or

8  university?

9       A.   No.

10      Q.   Okay.  In order to get the electrical and

11  other certifications that you just referenced, did you

12  take any type of vocational technical courses?

13      A.   Yeah, same school.

14      Q.   And you've never attended any type of college

15  or university, though, right?

16      A.   No.

17      Q.   Okay.  Are you currently employed?

18      A.   No.

19      Q.   When is the last time that you were employed

20  either in a full-time position or a part-time position?

21      A.   It would have been sometime last year, but I

22  don't recall the date.

23      Q.   What -- where were you employed at that time?

24      A.   AWP.  It's a safety company that's in that --

25  does any type of construction closures.  American-



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1  something -- I forget what it's called.

2      Q.   What were you doing for them?

3      A.   Safety, so I would close down the streets, re-

4  navigate some traffic, stop signs, slow signs, that type

5  of thing.

6      Q.   Okay.  With regard to AWP construction

7  projects on -- in that area.

8      A.   Whoever the clients are, yeah.

9      Q.   Okay.  What was your job title with AWP?

10     A.   I'm trying to remember.  It's a little bit of

11 a weird name.  Honestly, I don't recall, but it was some

12 type of like safety coordinator.

13     Q.   Okay.

14     A.   Something in that area.

15     Q.   And how long did you work for AWP?

16     A.   Either a year or a little over a year.

17     Q.   Okay.  Were you injured at AWP on the job?

18     A.   Yes.

19     Q.   Okay.  What happened in that on-the-job injury

20 at AWP?

21     A.   I was in the process of lifting cones, and one

22 of the cones hit me in the side of the head.  And my

23 face went completely paralyzed -- well, my right side, I

24 should say.

25     Q.   And you filed a workers' compensation wage



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1  loss claim as a result of that industrial accident?

2      A.   Yes.

3      Q.   Did you have to stop working completely as a

4  result of that accident?

5      A.   Yes and no, so just depending on the stress

6  level, that type of thing.  I couldn't close my eye, so

7  that was a big thing.  I didn't want any more dust.  I

8  was worried about losing my eye, so -- and since my face

9  was paralyzed, I couldn't communicate properly.

10     Q.   Okay.  Do you remember when that accident

11 happened?

12     A.   No.  I would have to pull up the dates.

13     Q.   Okay.  Well, we'll go back to that one in a

14 while.  When you say yes and no, what was the -- what do

15 you mean by the yes part, or what do you mean by the no

16 part?

17     A.   What do you mean?

18     Q.   On whether or not that, you know, that injury

19 caused you to have to stop working completely?

20     A.   So the doctor wanted me to -- they said to

21 make sure that I exercise and use my face.  But at the

22 same time, you know, they said I had to have protective

23 gear, which I could not get my hand on, so the fear was

24 -- and they said that if I continued to keep getting any

25 type of dust in my eye, since I couldn't close it, they



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1 said that I would permanently lose my -- my eyesight.

 2      Q.   Okay.

 3      A.   So I went back to work, and it seemed --

 4 because, you know, again, they said stress levels, on

 5 one hand, they said, will make things worse, and so it

 6 was less stressful to go to work.  And they said that it

 7 wasn't since they -- you know.  But at some point or

 8 another, they said it just wouldn't be getting better,

 9 and it's -- if I continued to be in the atmosphere of

10 diesel trucks and dust being spewed up in the air.

11      Q.   Okay.

12      A.   And if I can't communicate, they said, with my

13 field supervisors or any type of threat on the job, then

14 they said I really wasn't, I felt, as 100 percent and

15 able to do my work.

16      Q.   Okay.  And fair to say that you haven't worked

17 since you left that job?

18      A.   Yes.

19      Q.   Okay, or -- and you're not still employed

20 there, correct?

21      A.   No, I'm not employed there.

22      Q.   Did you resign from that job, or were you

23 involuntarily terminated from that job?

24      A.   I resigned.

25      Q.   Okay.  And did you resign as a result of the



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 problems, the issues that you were having that you

2 described that resulted from that injury?

3      A.   Yes.

4      Q.   Okay.  Has any doctor or have any doctors told

5 you that you're gainfully unemployable at this point in

6 time from a physical perspective?

7      A.   I'm sorry, one more time for me?

8      Q.   Sure.  Has any doctor or have any doctors told

9 you that you're gainfully unemployable at this point in

10 time because of a physical injury, such as that on-the-

11 job injury you just talked about?

12     A.   No.

13     Q.   Okay.  Do you -- are you earning any type of

14 income at this point in time?  I know you said you

15 weren't employed.  But are you earning any type of

16 income at this point in time?

17     A.   Food stamps.

18     Q.   Okay.  So you get food stamps from the

19 government?

20     A.   Yes.

21     Q.   And how much in food stamps do you get either

22 on a weekly or on a monthly basis?

23     A.   I want to say maybe two and change every

24 month.

25     Q.   When you say two and change, $200?



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    A.   Yeah.  It's 200, like 50, maybe $201,

2  something like that.

3    Q.   On a monthly basis?

4    A.   Yes.

5    Q.   Okay.  Do you get any other -- any other type

6  of monetary benefits at this point in time, other than

7  the food stamps from the -- either the state or federal

8  governments?

9    A.   I -- I help out with an -- a neighbor to clean

10 her house every once in a while, you know, for ten or 15

11 bucks.

12   Q.   Okay.  Just do some handyman work?

13   A.   Well, no.  Just cleaning toilets, dishes.  I

14 do handyman work, yes, and some -- but installing locks,

15 that type of stuff, but it's rare.

16   Q.   Okay.

17   A.   Again, I'm trying to stay away from dust, that

18 type of thing.

19   Q.   Okay.  Are you currently living in your

20 vehicle in Gulfport city limits?

21   A.   Yes.

22   Q.   Okay.

23   A.   I park in the same alley as my trailer.

24   Q.   Okay.  Do you remember when you first moved to

25 the city of Gulfport, sir?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      A.   I want to say it was October of 2018.

2      Q.   Okay.  And where did you move from when you

3 moved to Gulfport in October of 2018?

4      A.   Texas.

5      Q.   What part of Texas?

6      A.   Portland.

7      Q.   Never heard of that.  And what is it near?

8      A.   Corpus.

9      Q.   Okay.  Corpus Christi?

10      A.   Yes.

11      Q.   I know where that is.  How long did you live

12 in that area of Texas?

13      A.   Maybe 12 to 14 years.

14      Q.   Okay.  And what type of work were you doing in

15 Corpus Christi that -- or that area of Texas?

16      A.   Electronics repairs.

17      Q.   And when you say electronic repairs, what type

18 of electronics and what type of repairs?

19      A.   Cell phones, tablets, i-watches, iPads, that

20 type of thing.

21      Q.   Okay.  Laptops?

22      A.   Nope.

23      Q.   Just the newer technology?

24      A.   Yes.

25      Q.   Okay.  Did you -- did you do any other type of



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  employment when you were living in Texas besides that?

2      A.   Yeah.  I worked in tech business, so I

3  repaired all their filters, motors, impellers,

4  diffusers, did all the electric, plumbing.

5      Q.   Okay.  And where did you live prior to Texas?

6      A.   Jersey.

7      Q.   Okay.  New Jersey?

8      A.   Yes.

9      Q.   What town in New Jersey?

10     A.   Jersey City.

11     Q.   Jersey City?  Okay.  And how long did you live

12  in Jersey City?

13     A.   For most of my life.

14     Q.   Okay.  Were you born up there?

15     A.   Yes.

16     Q.   Okay.  Have you ever been married, sir?

17     A.   Regrettably, no.

18     Q.   Why regrettably?

19     A.   I look forward to it one day.  Gay marriage

20  and sin wasn't a thing back in the day, so it wasn't

21  much of an option.

22     Q.   Okay.  And did you -- did you move to

23  Gulfport, Florida, for any particular reason?

24     A.   Nope.  Just, Jesus grabbed the wheel.  That

25  was it.  We got hit by a storm in Texas, Hurricane

MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1  Harvey, and 36 of our towns got decimated, and I lost 90

2  percent of everything I owned.  Whatever I had left

3  over, packed up, and just drove.

4       Q.   Until you ended up in Gulfport?

5       A.   Pretty much.

6       Q.   Okay.  Did you know anybody in Gulfport?

7       A.   No.  But I decided to go on a -- on a date,

8  and he showed me around, and I kind of fell in love with

9  the area and decided to stay.

10      Q.   Did you have any friends that lived in

11  Gulfport before that?

12      A.   Nope.

13      Q.   Have you ever filed any other lawsuits other

14  than the lawsuit that we're involved in here today, sir?

15      A.   Yes.

16      Q.   How many other lawsuits have you filed

17  previously?

18      A.   I have three.

19      Q.   Okay.  Can you take it one-by-one and tell me

20  about each of those three other lawsuits?

21      A.   Sea Breeze Manor.

22      Q.   Okay.  Are you suing Sea Breeze Manor, or is

23  Sea Breeze Manor suing you?

24      A.   No.  I sued Sea Breeze Manor.

25      Q.   Okay.  And what is the nature of the

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900         www.MILESTONEREPORTING.com         Toll Free 855-MYDEPOS

1  litigation against that?

2      A.    Theft of wages.

3      Q.    What is the controversy?

4      A.    He was deducting hours -- from my check when

5  he had no business to.

6      Q.    Okay.

7      A.    So eventually, I quit, and I took him to court

8  and won.

9      Q.    Okay.  So that was a wage and hour dispute?

10     A.    Yes.

11     Q.    Okay.  Were you represented by legal counsel?

12     A.    Yes.

13     Q.    Okay.  And you took them to suit, and you said

14 that they -- you prevailed?

15     A.    Yes.

16     Q.    Okay.  What was the final judgment?  Do you

17 know?

18     A.    Don't recall.

19     Q.    Okay.  But it was a monetary judgment in your

20 favor?

21     A.    Yes.

22     Q.    Okay.  And do you recall where that lawsuit

23 was filed?  What county?

24     A.    It should have been Pinellas County.

25     Q.    Okay.  And what was the second other piece of



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

1  litigation that you've previously filed?

2      A.   Well, it's the work injury.

3      Q.   Okay.  The workers' compensation claim?

4      A.   Yes.

5          MR. ROPER:  Why don't we take a quick break?

6          THE VIDEOGRAPHER:  At 10:42, we're going off

7      the record.

8          (OFF THE RECORD)

9          THE VIDEOGRAPHER:  At 10:44 a.m., we're back on

10     the record.

11          BY MR. ROPER:

12     Q.   All right.  Mr. Lee, we just took a brief

13 break here, but we're back on record.  We talked about

14 the second, what you considered, piece of litigation.

15         That was the workers' compensation claim that

16 you discussed previously against your former employer,

17 AWP?

18     A.   Yes.

19     Q.   Can you tell us about the third piece of

20 litigation that you are involved in?

21     A.   It's the same company.

22     Q.   AWP?

23     A.   Yes.

24     Q.   Okay.  And was that -- was this a civil

25 lawsuit?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      A.   Discrimination.

2      Q.   Okay.  What type of discrimination?

3      A.   I was being harassed for being gay.

4      Q.   Okay.  So it was sexual litigate -- sexual

5   harassment?

6      A.   It's a -- just --

7      Q.   Picking on you because you were gay?

8      A.   Yes.  Pretty much.  I was told -- they said to

9   stay on my gay side, and they didn't want my gay

10   everywhere.  And so I finally got tired of it and took

11   action.

12      Q.   Okay.  And where did you sue AWP?  Was that

13   also in Pinellas County?

14      A.   It's still in litigation, yes.

15      Q.   Okay.  But that is in Pinellas County Circuit

16   Court?

17      A.   I'm assuming so.

18      Q.   Do you recall when that lawsuit was filed?

19      A.   I want to say, sometime in March or last year.

20      Q.   Okay.  And who is your attorney in that case?

21      A.   I would have to pull it  up on my phone.

22      Q.   Okay.  You --

23      A.   I mean, her name is Lisa, but I don't know how

24   to pronounce her last name.

25      Q.   Okay.  Lisa something?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

1      A.    Yes.

2      Q.    Okay.  And do you have a trial date yet in

3  that case?

4      A.    No, I don't.

5      Q.    Have you had your -- well, you have not had

6  your deposition taken in that case, right?

7      A.    No.

8      Q.    Is your deposition scheduled in that case?

9      A.    Not yet.

10     Q.    Was your deposition taken in the -- I think

11  it's Sea Crest case, the first lawsuit we talked about?

12     A.    Sea Breeze.

13     Q.    Sea Breeze, sorry.  Was your deposition taken

14  in the Sea Breeze case?

15     A.    No.

16     Q.    Have you taken any type of over-the-counter or

17  other drugs or stimulants in the past 24 hours that

18  would affect your ability to answer questions truthfully

19  and fully today?

20     A.    Nope, but on coffee.

21     Q.    Okay.  And again, this is a standard question,

22  but have you ever been convicted of any felonies or

23  felony offenses or convictions involving false statement

24  or dishonesty?

25     A.    No.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Q.   Prior to moving to Gulfport, sir, as you were

2 talking about earlier, in October of 2018, had you ever

3 ran a food truck before?

4    A.   No.

5    Q.   Okay.  Before you moved to Gulfport, Florida,

6 in October of 2018, had you ever ran an ice cream cart

7 or vending business whereby you sold ice cream to the

8 general public?

9    A.   No.

10    Q.   Okay.  What was it or when was it that you

11 decided to sell ice cream, sir?

12    A.   When I saw other people doing it here in

13 Gulfport.

14    Q.   When you saw others doing it here in Gulfport?

15    A.   Yes.

16    Q.   Okay.  Do you remember when that was?  What

17 time period?

18    A.   Somewhere in January.  If I recall, I want to

19 say it was somewhere in January of 2019, or maybe kind

20 of late 2000 -- so maybe December or January.

21    Q.   Okay.  And when you say you saw others selling

22 ice cream, can you describe what you witnessed and what

23 you saw?

24    A.   Ice cream trucks.

25    Q.   Okay.  Ice cream trucks where?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1       A.    Downtown at the -- what's it called?  Rec

2  center on the beach, down Beach Boulevard, within city

3  streets.

4       Q.    Okay.

5       A.    They were all over the place.

6       Q.    Do you know whether those ice cream trucks

7  were there in connection with any type of special event

8  that was going on in the City of Gulfport?

9       A.    They were not.

10      Q.    They were not?

11      A.    No.

12      Q.    And how do you know that?

13      A.    Because there was no special event that day.

14      Q.    Okay.

15      A.    I mean, you --

16      Q.    Do you know the circumstances under which

17  those ice cream vending trunks that you discuss here

18  would have been permitted by the city or by the Gulfport

19  Merchants Association to sell ice cream?

20      A.    I -- you'll need to clarify.  You went from

21  one to the other, so which one would you like first?

22  City or --

23      Q.    Either the city or the Merchants Association.

24      A.    According to the city, it's never been allowed

25  within the history of the city, which was questionable.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1  According to Mr. O'Reilly, it's all in whose pocket gets

 2  paid.  As he then reminded me, and he said that if I

 3  didn't like the way things done in Gulfport, I can

 4  take my ass to Tampa, where it's more diverse and

 5  ethnic, while I'm asking questions on how that's being

 6  allowed, if it's never been allowed.

 7         So I don't know how they manage to do it, if

 8  it's not allowed.

 9     Q.   Okay.  Is it fair to say, sir, that you do --

10  because you were not involved in the permitting process

11  by the Gulfport Merchants Association, that you do not

12  know the circumstances by which those vendors were

13  permitted, when you saw those trucks; is that a fair

14  statement?

15     A.   Again, I think we're going two different

16  avenues right now.  We're talking strictly -- with no

17  special event, with them operating within the city

18  limits, in comparison to them operating this with the

19  special events.

20     Q.   Okay.  So that's not the question I'm asking.

21     A.   Okay.

22     Q.   So if you can just focus on the question that

23  I asked you --

24     A.   Okay.

25     Q.   -- and then we can get through this a lot


MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1 quicker, okay?

2     A.   Okay.

3     Q.   Is it fair to say, sir, that because you were

4 not involved in the permitting process, if any,

5 regarding those ice cream trucks that you claim you saw,

6 that you have no idea what the circumstances were behind

7 the permitting by the Gulfport Merchants Association and

8 those vendors in 2019 when you saw those trucks?

9     A.   Again, I'm still a little confused.  Are we

10 talking about the city's behalf or we're now on the

11 Merchants Association?

12     Q.   Okay.

13         MR. ROPER:  Mr. Court Reporter, can you read

14     back a question to this -- to Mr. Lee, to this

15     deponent?

16         (REPORTER PLAYS BACK REQUESTED QUESTION)

17         THE WITNESS:  Again, I'm still confused,

18     because there's three, in my mind -- it's in -- or

19     at least two, at the top of my mind, it's going to

20     be able to go through the permitting process.

21         You have -- the casino, which then is involved

22     -- a special event permits.  Then you have a special

23     event, it -- special -- excuse me, the event

24     permitting department itself, which offers --

25     certain permits.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1        So I'm trying to make sure that I clarify, are

2    we talking about the city's behalf, or strictly on

3    the casino's behalf, or are we talking about the

4    merchants, or GMCA, whatever they're called?

5        BY MR. ROPER:

6    Q.   Sir, I'm strictly talking about when you just

7    testified that in 2019, when you saw other ice cream

8    trucks that were in Gulfport, that you have no idea as

9    to whether they were or were not permitted to be there

10   by the City of Gulfport, or by the Gulfport Merchants

11   Association?  So very straightforward and simple

12   question.

13   A.   For what I observed there was no event

14   happening.  So I don't see how they would've been able

15   to get a permit.

16   Q.   Do you know what the circumstances behind

17   those vehicles being there, were from a permitting

18   perspective?

19   A.   Not at all.

20   Q.   That's what I was asking.  At what point in

21   time did you make the decision to start a mobile ice

22   cream vending business?

23   A.   Somewhere late December, early January --

24   January.

25   Q.   Of what year?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

1      A.    December would've been 2018, into 2019.

2      Q.    Okay.  How did you come up with that idea?

3      A.    I saw a market for it.  There wasn't anything

4 on the beach.  Again, I saw that it was being permitted,

5 so --

6      Q.    And what, if anything, did you do, at that

7 point, when you made that decision, to investigate, or

8 inquire about the permitting process to run a -- an ice

9 cream, mobile vending business?

10      A.    I went to their official page and I attempted

11 to pull up about mobile food vending.  Nothing was

12 generating.

13      Q.    When you say the official page, what are you

14 referring to?  Official page of what?

15      A.    Gulfport.

16      Q.    Okay.  So you went online?

17      A.    Yes.

18      Q.    Okay.  And you went to the City of Gulfport

19 official webpage and what?

20      A.    Typed in mobile food vendor, and nothing was

21 populating.  So then eventually went and applied, and

22 sent for the permit, somewhere in January and was

23 denied, and told Lisa that it's -- has never been

24 allowed -- in Gulfport.

25      Q.    Where did you go?  To whom did you apply?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    A.    Directly with the Building Department.

2    Q.    And who did you speak with at the Building

3 Department?  And when?

4    A.    I don't remember who I spoke with.  It was a

5 gentleman.

6    Q.    Okay.  Let me show you what I'll label as

7 Exhibit 1.

8          (EXHIBIT 1 MARKED FOR IDENTIFICATION)

9          MR. ROPER:  I'll get you a copy there --

10          BY MR. ROPER:

11    Q.    Is that you in that photograph, sir?

12    A.    Yes, it is.

13    Q.    Okay.  And is that your mobile ice cream

14 vending cart --

15    A.    Yes, it is.

16    Q.    -- behind you?  And is that the mobile vending

17 ice cream cart that you were utilizing in Gulfport, in

18 this subject time period, that's a -- our issue in this

19 lawsuit?

20    A.    Yes, it is.

21    Q.    Okay.  Did you ever alter it in any way,

22 shape, or form after this photograph?

23    A.    No.

24    Q.    Okay.  Do you still have that cart?

25    A.    I do.  It's in storage.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Q.   Okay.  And this particular photograph, I think

2  I know where it's located, but can you tell us what's in

3  the background?

4    A.   I think that's going to be the volleyball

5  beach access.

6    Q.   And for purposes of context, so the jury

7  understands where we're -- where this photograph was

8  taken, where is the photograph taken?

9    A.   It should be at the beach in Gulfport,

10 Florida.

11   Q.   Okay.  On what street?

12   A.   Shore Boulevard.  Okay.  Let me show you what

13 I'll label Exhibit number 2.  Is that the same ice crate

14 -- ice cream mobile vending machine?

15       (EXHIBIT 2 MARKED FOR IDENTIFICATION)

16   A.   Yes.

17       BY MR. ROPER:

18   Q.   And again, for purposes of context for the

19 jury or the judge that may be looking at this, what is

20 in the background of Exhibit number 2?

21   A.   Beach -- beach access.

22   Q.   Okay.

23   A.   I want to say it's casino, if anything.

24   Q.   Okay.  And the name of your mobile ice cream

25 vending business, at least at that point in time, is

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

1 Sweet Cheeks Snack Bar?

2      A.   Yes.

3      Q.   Okay.  When is the last time you've utilized

4 that ice cream mobile vending cart to sell ice cream

5 from?

6      A.   To actually sell?

7      Q.   Yes, sir.

8      A.   Was prior to the tickets.  But the last time I

9 took the cart out, I want to say was when I got the two

10 false tickets from the city.

11      Q.   Which when you got cited by Gulfport PD?

12      A.   Yes.

13      Q.   Okay.  Have you ever attempted to sell ice

14 cream from that mobile ice cream vending cart in other

15 municipalities, or other locations, besides the city of

16 Gulfport?

17      A.   No.

18      Q.   Any particular reason why not?

19      A.   Because I should be able to conduct business

20 just like anyone else.

21      Q.   Any other reasons that you haven't tried to

22 sell ice cream elsewhere other than the city of Gulfport

23 City limits?

24      A.   Nope.  I should be able to conduct city

25 business just like anyone else in Gulfport.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          *Toll Free 855-MYDEPOS*

1    Q.   Okay.  After you went to apply for a permit to

2 sell ice cream from this mobile ice cream vending cart,

3 what, if anything, did you do to try to obtain a permit

4 to operate that cart legally?

5    A.   Talking about through the city?

6    Q.   Well, at all, period.

7    A.   Well, I'm saying --

8    Q.   You told us what you did initially, right?

9    A.   In January, the time I applied for the

10 permit --

11    Q.   Okay.

12    A.   -- I was told yet again, that it was never

13 allowed.

14    Q.   Okay.  Who told you that?

15    A.   The person at the Building Department.

16    Q.   Do you recall who that person was?  Do you

17 know that individual's name?

18    A.   No, but I should have a copy of the permit

19 there.

20    Q.   Okay.  If you want to reach over and look at

21 something in order to refresh your memory, feel free to

22 do so, sir.

23    A.   I'm not sure if they're going to have his name

24 on it.  It just has the stamp that says denied.

25    Q.   Okay.  What did you do after that point, with

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  regard to trying to update a permit?

2       A.   Went to talk to city officials.

3       Q.   Who, specifically?

4       A.   Jim O'Reilly, Mayor, council members.

5       Q.   Okay.  Was that the first time you had ever

6  had any kind of interaction with Mr. O'Reilly?

7       A.   Yep.

8       Q.   Was with that -- was -- with regard to that

9  application?

10      A.   Yes.  I wanted to know why other people were

11 permitted to do it, and able to freely operate, and I'm

12 being told no.

13      Q.   Okay.  Do you recall having a phone call with

14 Mr. O'Reilly on January 16, 2019?

15      A.   I don't.

16      Q.   Okay.  You don't recall the fact that that

17 phone call went on for about an hour-and-a-half?

18      A.   I've had plenty -- plenty of calls with him.

19 I don't remember every last one of them.

20      Q.   What were you calling Mr. O'Reilly about, sir?

21      A.   It would've probably had to be on the subject

22 matter of the cart.  But, again, I don't remember that

23 conversation.  It was too -- too far back.

24      Q.   Do you dispute the fact that you were on the

25 phone for an hour-and-a-half or so with Mr. O'Reilly



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 that day? January 16th of 2019?

2     A. I have no idea.

3     Q. Do you remember calling him at about 1:00

4 p.m.?

5     A. I don't remember.

6     Q. Did you record that conversation, sir?

7     A. I know I recorded one conversation, a long

8 time ago, but I'm not sure if I still have it.

9     Q. Okay. When did you record a conversation with

10 my client, Mr. O'Reilly?

11     A. When I tried to file a complaint in regards

12 with the discriminatory practices. And he claimed and

13 said that he did not work for me, he only worked, for

14 the counsel. And that he had me no obligation, and I

15 did not pay for his salary, due to certain investments

16 through the city. That's what paid his salary. And he

17 owed me nothing at all. And that was pretty much it.

18     Q. When you say that you filed the discriminatory

19 charge, what -- when was that? Was that prior to

20 January 16th of 2019 or was that later?

21     A. No, I had conversations with him about the

22 discriminatory practices prior. I actually had them at

23 the council. At one point or another, on the council,

24 he decided to mock me, and said he didn't receive

25 anything, which then prompted me to send -- to file the



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1 letters on the 1st and 2nd of September.

2      Q.   Okay.  But when was it, sir, that you actually

3 tape recorded the conversation that you had with Mr.

4 O'Reilly?

5      A.   Don't remember.

6      Q.   Was that in 2019?

7      A.   I don't remember.

8      Q.   Was that in 2020?

9      A.   Still don't remember.

10      Q.   Was that in 2021?

11      A.   Still don't remember.

12      Q.   Or was that in 2022?

13      A.   Still don't remember.

14      Q.   Okay.  Did you inform Mr. O'Reilly that you

15 were recording that conversation?

16      A.   I did.

17      Q.   Okay.  So did you obtain Mr. O'Reilly's

18 permission before you recorded that conversation?

19      A.   Mr. O'Reilly was perfectly aware that every

20 single call that came in and out was recorded.

21      Q.   Sir, if you will answer my question.  Did you

22 obtain Mr. O'Reilly's permission to tape you -- to tape

23 the conversation, before you recorded it?

24      A.   Don't recall.

25      Q.   Do you still have that audio tape?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

1      A.    Probably not.

2      Q.    Probably not.

3      A.    It would've been on numerous devices I record,

4  so I haven't found anything else other than what I've

5  submitted to you so far.

6      Q.    How would Mr. O'Reilly have been aware that he

7  was being recorded?

8      A.    Because he used to put me on speakerphone, in

9  order for his associate, his employee, to listen into

10 our conversations from another room.

11     Q.    What does that have to do with --

12     A.    Well, it wasn't --

13     Q.    -- him knowing you were recording him or not?

14     A.    And then it wasn't a private conversation.  So

15 I wasn't being aware that he was putting someone else on

16 the other end until she started rambling on, as I was

17 complaining about her, from another room, and he

18 condoned it.

19          So it was never a private conversation to

20 begin with.  Our conversation has never been private

21 because they always had other people in the room

22 listening to our conversation.

23     Q.    That's not what we're talking about, though,

24 Mr. Lee.  We're talking about how would Mr. O'Reilly

25 know that you are surreptitiously recording him, if you

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1  don't tell him?

 2      A.   I did tell him.  I told him every single time

 3  I went to his office, I was recording.  Every single

 4  time, I would tell him I was recording.  He knew.

 5      Q.   Okay.  So you're saying that's on the audio

 6  tape?

 7      A.   Yeah.  If I still have it, it should be on

 8  there, yes.

 9      Q.   Okay.  Now, what were you talking about to Jim

10  O'Reilly between 1:00 p.m. and 2:30 p.m. on January 16th

11  of 2019, in that hour-and-a-half long phone call?

12          MS. LAHART:  Objection.  Asked and answered.

13      You can tell him again.

14          THE WITNESS:  I don't remember.

15          BY MR. ROPER:

16      Q.   Do you remember what he was saying to you?

17      A.   I don't remember.

18      Q.   Did you become verbally abusive in that

19  conversation with Mr. O'Reilly?

20      A.   I don't remember.

21      Q.   Were you shouting profanities for literally an

22  hour-and-a-half with Mr. O'Reilly, in that conversation

23  on January 16th of 2019, that lasted from 1:00 p.m. to

24  around 2:30 p.m.?

25      A.   I don't remember.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1     Q.   If you don't remember, then you will be unable
2  to rule out the fact that you were both verbally abusive
3  and shouting multiple profanities in that litigation.
4  Would you agree with me?

5          MS. LAHART:  Objection as to form.  You can
6     answer.

7          THE WITNESS:  What litigation?

8          MR. ROPER:  You can read the question back, Mr.
9     Court Reporter.

10         (REPORTER PLAYS BACK REQUESTED QUESTION)

11         THE WITNESS:  I still have the same question. I
12    have no idea what you mean by litigation.

13         BY MR. ROPER:

14    Q.   Okay.  You don't recall whether or not you
15 were abusive, verbally, and shouting profanities at Mr.
16 O'Reilly in that hour-and-a-half long conversation on
17 January 16th of 2019, correct?

18    A.   Do not know.

19    Q.   Okay.  Do you recall Mr. O'Reilly putting you
20 on speakerphone so that his assistant, Ms. Roach, could
21 hear what was being discussed in that conversation?

22    A.   I made numerous attempts to make sure that he
23 knew that I was a little hearing impaired, and not to
24 put me on speaker.  He continued doing the same thing.
25 He never informed me that other people were listening,

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1  nor did I gave my consent.

 2          Until one day, she started yelling, and

 3  combating what I was telling him, over a complaint I had

 4  about her.  And now I'm arguing between both of them. It

 5  could have been that day or not, who knows?  But I felt

 6  that it was very disrespectful, and to put -- putting me

 7  on a speaker, in order for her to confront me, as I'm

 8  complaining about her.

 9      Q.   Do you recall the fact that Mr. O'Reilly was

10  unable to address the matter at all, or even say his

11  piece, because you were continually shouting over him,

12  and would interrupt him at every time he tried say

13  something in that hour-and-a-half long conversation on

14  January 16th of 2019?

15      A.   I don't recall, no.

16      Q.   So you had a hour-and-a-half long conversation

17  with Mr. O'Reilly that day, and you don't recall at all

18  what was discussed?

19      A.   I've had multiple conversations within six

20  years with Mr. O'Reilly.  I don't recall every last one

21  of them.  Could I have been disrespectful?  Yes.  But

22  after you told my ass to take my ass to Tampa, where

23  it's more diverse and more ethnic, he lost my respect

24  quite a bit ago.

25      Q.   Would you agree with me, sir, that you have



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

1 been continually verbally abusive with Mr. O'Reilly

2 since your initial meeting with him on January 16th of

3 2019?

4      A.   Possibly.

5      Q.   Possibly?

6      A.   Yeah.  Well, I mean, when you lose my respect,

7 you don't do anything, you treat me like a second class

8 citizen, you afford me no rights, no abilities to be

9 able to exercise, file any complaints.  None of it.

10 Nothing was investigated.

11          Six years, he had every opportunity of doing

12 any type of forum, meeting.  He was in a position of

13 power, and utilized that position in order for him to

14 condemn me instead of assisting me.

15          So yeah, I don't think -- and I was too

16 polite. I could have been angry, again, after numerous

17 times of attempting to open up my business, while

18 everyone else is being able to roam free and do whatever

19 they want. I'm being attacked, ticketed, harassed.

20          So yes, I -- I -- I could only imagine what

21 comes out my mouth when I'm pissed off.  But he does the

22 same thing.

23      Q.   Your testimony is that Mr. O'Reilly does the

24 same thing that you do?

25      A.   Yeah.  He's pulled off of the side of his car,



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  and cursed at me.  Actually, the day before, the same

2  day I got trespassed, he was in his car mocking me.  But

3  refused to release the videotape on that.

4      Q.   So you agree with us, then -- do you agree

5  with me, then, that you have been, on several occasions,

6  since your initial conversation with Mr. O'Reilly, back

7  on January 16th of 2019, on multiple interactions with

8  Mr. O'Reilly since then, you have been verbally abusive

9  towards him?

10     A.   Could possibly be, yes.

11     Q.   Okay.

12     A.   If treated a little bit better, with respect

13  it would've probably been a little different.

14     Q.   Well, you were calling Mr. O'Reilly for

15  something, right?  On January 16th of 2019?

16     A.   Yes.

17     Q.   But as we sit here today, you don't remember

18  what?

19     A.   I'm going to assume that it had to be over the

20  cart in the business.  Policies, procedures, rules.  I

21  may have asked a ton of questions I've been asking,

22  trying to figure out to why things are the way they are.

23     Q.   Okay.  But you called him, right?

24     A.   Don't recall.

25     Q.   But you will agree with us that from the very



**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 beginning of the dispute about the ice cream cart, that

2 you were, from the very first conversation, verbally

3 abusive to Mr. O'Reilly?

4      A.    That's not true.

5      Q.    Well, you just agreed that you were.

6      A.    No.  We me tat the -- I forget what the event

7 is that's in front of the historical museum.  And we met

8 in public, prior to that.  Listen, I was being polite,

9 still trying to figure things out, until he decided to

10 run a meeting, to be had in person to person, to pretty

11 much tell me is all whose palms get greased.

12          And again, that if I don't like the way things

13 were done here in Gulfport, to take my ass to Tampa,

14 where it's more diverse and more ethnic.

15      Q.    Okay.  Do you remember there being multiple

16 occasions during the December -- or, excuse me, January

17 16, 2019, hour-and-a-half long conversation, whereby Mr.

18 O'Reilly, when he is trying to speak to you, you would

19 shout him -- shout over him, and not allow him to answer

20 your question?

21      A.    I have a tendency of interrupting people.

22 It's a habit of mine, so not disputing that.

23      Q.    Okay.

24      A.    I apologize for it a lot of times, but at the

25 same time, I don't really hold other people accountable



**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

1  when they do it to me, so -- but no, I -- I honestly

2  don't remember what the conversation.

3      Q.   Okay.  But you're not ruling out that in that

4  conversation, you -- because of you -- of the tendency,

5  on your part, to do that, you may have cut him off?

6      A.   Yeah.  That's a habit of mine.  It's been

7  habit for -- for quite some time.

8      Q.   How long?  Your entire life?

9      A.   Mostly.  I mean, as a Latino, we tend to have

10  16 different conversations in a minute, so --

11      Q.   16 different conversations in the minute?  I'm

12  not Latino, so --

13      A.   Yeah, we tend to go back and forth in between

14  family, and you got to kind of keep up to say your part

15  on certain issues.  And then kind of come together with

16  whatever it is that you want to talk about after, kind

17  of stuff.

18      Q.   Okay.

19      A.   But yeah, it's not necessarily an appropriate

20  habit to have.  But, again, it's not the first time

21  someone's done it to me, and I'm not necessarily

22  bothered by it.  And if he's done it to me, I honestly

23  would've never called him out for it either.  So I don't

24  tend to be a hypocrite.

25      Q.   Do you recall whether you were acting in that



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1 | type of manner when you spoke to Mr. O'Reilly for an

 2 | hour-and-a-half on January 16th, of 2000 --

 3 |     A.   No idea.  Mr. O'Reilly has brought my bad side

 4 | out for quite some time.

 5 |     Q.   Including that conversation, right?

 6 |         MS. LAHART:  Objection.

 7 |         THE WITNESS:  I still don't remember the

 8 |     conversation at all, so --

 9 |         BY MR. ROPER:

10 |     Q.   Okay.

11 |     A.   We can speculate all day long.

12 |     Q.   Okay.  Did you have a in-person meeting, six

13 | days later, with Mr. O'Reilly, on January 22, 2019, at

14 | City Hall, at 9:30 in the morning?

15 |     A.   Possibly.  I don't remember.  I think I had

16 | two meetings with him, if I remember correctly.

17 |     Q.   Okay.  Was that your initial meeting in

18 | person, with Mr. O'Reilly?

19 |     A.   I don't remember.

20 |     Q.   Do you recall any prior occasion, before the

21 | ice cream cart application process, whereby you would've

22 | had an in-person meeting with Mr. O'Reilly at Gulfport

23 | City Hall?

24 |     A.   I remember it had to do with the ordinance.

25 | If I remember the date -- I don't remember the date,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**
407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1 exactly, or what transpired but I know one of the

2 conversations, and it was explained to me that it was

3 easier to write what was acceptable than it was to write

4 what wasn't acceptable.

5         So therefore the lack of something being

6 written means it's not permitted.  So the absence of

7 something means it's not allowed in Gulfport, which is

8 the reason why I didn't send -- you couldn't pull any of

9 the information on their site.

10        So I'm supposed to know by it not being

11 written, that it's not permitted.  And that apparently

12 Gulfport has never allowed, it in the history of the

13 town.  But yet I'm still asking questions to how the

14 other people were able to run.

15     Q.   Okay.

16     A.   And his response to me, I think was, I don't

17 see it.  When in reality, the only thing you have to do

18 is hear it.  But, again, I'm still reporting it, and

19 nothing is being done.  So I mean, that -- I remember

20 one conversation happening, and then the second one, I

21 repeated it twice already.

22     Q.   Okay.  That ran far field from what the

23 original question was.  So let me go back to what my

24 question was.  Do you recall meeting in person with Jim

25 O'Reilly, regarding anything at all, prior to your ice



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

1 cream cart application process?

2    A.   We're talking about strictly on the ice cream

3 cart, prior?

4    Q.   At all.  At all.  Did you ever meet with my

5 client, Mr. O'Reilly, regarding anything at City Hall

6 before the ice cream cart application issue?

7    A.   Not that I recall.

8    Q.   Okay.  Now, do you recall a meeting at 9:30

9 a.m. at City Hall, on January 22, 2019?

10    A.   I don't remember the -- a precise date.

11    Q.   Do you remember the meeting?

12    A.   I remember one of the meetings, which I just

13 told you, prior to this.

14    Q.   When was the -- what was the other meeting

15 with Mr. O'Reilly, that you recall?

16    A.   Him telling me that sentence, only whose palms

17 get greased.  And pretty much told me if I didn't like

18 the way things were done here in Gulfport, to take my

19 ass to Tampa, where it's more diverse and ethnic.

20    Q.   Which incident happened first?

21    A.   The second one was the one I just mentioned.

22 And the first one, the way -- with the -- it was easier

23 to write was -- it was easier to write what was

24 acceptable than it was -- isn't to write what wasn't

25 acceptable, apparently.  And therefore, if it's not


MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

1  written, it's not permitted.  So that was the first

2  meeting.  And then the second one is when he decided to

3  get obnoxious.

4      Q.   When he decided to get obnoxious?

5      A.   Was that a question?

6      Q.   Yeah.

7      A.   Yes.

8      Q.   Okay.  Now, did you request the January 22,

9  2019 meeting at City Hall --

10     A.   I don't recall.

11     Q.   -- with Mr. O'Reilly?

12     A.   I'm assuming so, if I had to make an

13 appointment with him.  But I don't recall the date.

14     Q.   So you recall asking for the meeting?  Not the

15 other way around?

16     A.   I don't recall asking for the meeting at all.

17 Listen, I could have easily just shown up that day, and

18 if he was available, we would've sat down.  I don't know

19 if I actually called to set up a meeting.

20     Q.   Was that meeting in Mr. O'Reilly's office?

21     A.   Both times, yeah, that we had the meeting, it

22 was in his office.

23     Q.   Okay.  Do you recall how long that meeting

24 lasted?

25     A.   I don't.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Q.   Do you recall what the purpose of that meeting

2  was?

3    A.   It was for me to ask questions about the

4  regulations and rules on the mobile food vending

5  business.

6    Q.   Okay.  And did you ask Mr. O'Reilly questions?

7    A.   Sure I did.  Yeah.

8    Q.   And did Mr. O'Reilly respond?

9    A.   Like I said, he said that it wasn't permitted.

10  It's never been allowed in Gulfport.  So again, asking

11  this, and why are these other people running around

12  freely, and able to operate?  He expressed, saying that

13  he hasn't seen them.

14       But the only thing I to do is hear them,

15  because they're very loud.  That's the intention of an

16  ice cream truck, it's very loud, to draw in attention,

17  so people know that you're coming, within, you know, a

18  few blocks.

19       And I just don't see how I'm being told that

20  it's not been allowed in Gulfport, in its entire

21  history.  And yet I've been told from numerous

22  resources, including residents who have been there for

23  34 years -- as they call it, an original -- that they've

24  been buying ice cream for 45 years with their kids.

25    Q.   Did Mr. O'Reilly, in that January 22, 2019

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1  meeting at City Hall, explain to you about the Gulfport

 2  Merchants Association permitting process and special

 3  events related to --

 4      A.   He said -- at that moment, he said that I

 5  would've been able to show up and and sign up, yes.

 6      Q.   Okay.

 7      A.   So that -- that day, actually, went and tried

 8  to speak to them, in regards to me getting in, and met

 9  up with Marsha (phonetic).

10      Q.   Marsha who?

11      A.   Think her last name was Warner.

12      Q.   I'm sorry, you were speaking a little low.  I

13  didn't hear what you said.  Winter?

14      A.   No, Warner.

15      Q.   Warner, okay.  So just to confirm your

16  testimony, so in that January 22, 2019 meeting at City

17  Hall with Mr. O'Reilly, he did explain to you about the

18  Gulfport Merchants Association and the special events

19  permitting process to get the permit that you were

20  seeking; is that a fair statement?

21      A.   I don't remember him telling me anything about

22  a special events permit, but he said I could joins in

23  the Tuesday market.

24      Q.   Okay.  So he -- but he told you about the

25  market and the --



MILESTONE **|** REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900         www.MILESTONEREPORTING.com         Toll Free 855-MYDEPOS

1      A.    GMCA, yes.

2      Q.    Okay.  And the acronym for that is the

3 Gulfport Merchants Association, right?

4      A.    Commerce or something like that.

5      Q.    Yeah.  But that -- that's correct?  That's the

6 entity you're referring to with that acronym, right?

7      A.    Yes.

8      Q.    Okay.  And after Mr. O'Reilly gave you that

9 information, you said you went down and you spoke to Ms.

10 Warner at the Merchants Association?

11     A.    Yes.

12     Q.    Okay.  Was that the same day?

13     A.    If I remember correctly, yeah.  It may have

14 possibly --

15     Q.    Okay.

16     A.    -- could've been the next day.  But --

17     Q.    And what did you ask her, and what did she

18 tell you?

19     A.    I told her that I wanted to join with my ice

20 cream cart, and she pretty much laughed and said that

21 O'Reilly was always interfering with their markets, and

22 don't even bother even joining because he has already

23 made sure to go tell eight other people to get back to

24 her to tell her to let me into the event.  So there was

25 no need for me to apply because I was going to get

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  denied anyway.

2        Q.   Did she tell you that in those words?

3        A.   Yeah.

4        Q.   Okay.

5        A.   I mean, give or take, but -- I don't want you

6  to be too precise, but yeah, that's pretty much it, that

7  he'll end up going through eight other people, which

8  then get to Justin Shea.  Justin Shea would then go to

9  the GMCA and tell them not to allow.

10        Q.   Did Ms. Warner tell you that Mr. O'Reilly had

11  called her and told her to interfere with your

12  application?

13        A.   She didn't say anything that he had called.

14  She said, he would eventually backhand her.  So it would

15  go until eight other people to eventually show up to

16  Justin Shea, to then tell her, which was in charge of

17  the GMCA at that moment, to disqualify me from getting

18  in.

19        Q.   Okay.  Did you know Ms. Warner prior to

20  that --

21        A.   Nope.

22        Q.   -- conversation?

23        A.   She wasn't a fan of him.

24        Q.   Okay.  And was there anyone else in the room

25  when that conversation happened?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      A.   It was out in the streets.

2      Q.   Okay.  Is that a yes or a no?  Was there

3 anybody in the area that would've overheard that

4 conversation?

5      A.   I don't recall.  It's a long time ago.  I'm

6 sure there would've been people around.  But --

7      Q.   Did you record that conversation?

8      A.   Nope.

9      Q.   When's the last time you saw Ms. Warner?

10      A.   I don't remember.  She passed away with

11 cancer, so it's been, I think, a little over a year-and-

12 a-half now, two years.

13      Q.   Okay.  And what did you do -- what did you

14 say, if anything, in response to what Ms. Warner told

15 you?

16      A.   Thank you.  Appreciate her being blunt and not

17 running me around in circles.  I wasn't offended in the

18 slightest, just happy to have met a person who is

19 willing to be blunt and straightforward with me.

20      Q.   Okay.  Since that initial approach with Ms.

21 Warner at the Gulfport Merchants Association and that

22 conversation that you just testified to, have you taken

23 any steps at all with the Merchants Association to apply

24 for a permit to sell ice cream in your mobile ice cream

25 vending cart?



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      A.   Prior or after?

2      Q.   After.

3      A.   After the new law was passed?

4      Q.   I said, after that meeting on --

5      A.   I'm sorry.

6      Q.   -- January 22nd of 2019?

7      A.   I think maybe one time.  I reached out to

8  Susan King.

9      Q.   Susan King?

10     A.   Yeah.  She was running the Tuesday market.

11 And apparently, I was not allowed to join because I --

12 cart had wheels.

13     Q.   When did you speak to Susan King?  Do you

14 remember?

15     A.   It would have to be pulled up by -- but I

16 provided that documentation to you already.

17     Q.   Would that have been in early 2019?

18     A.   I don't remember.

19     Q.   Okay.  Now, you said you spoke with Susan

20 King. Did you actually reach out to Ms. King in regards

21 to a permit application, or was it just an outreach for

22 information?

23     A.   No, I wanted to join.  But --

24     Q.   But you wanted to join the GMA?

25     A.   Yeah.  And then I was told, yet again, that



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  the city did not permit mobile food vending businesses

2  inside the events, and they did not want to get shut

3  down or harassed by O'Reilly by allowing me to operate

4  my business within the event.

5      Q.   Who told you that?

6      A.   Susan King.

7      Q.   Susan King told you that exactly?  Is that

8  your testimony?

9      A.   Not exactly, but within those guidelines.

10      Q.   What exactly did Susan King tell you then,

11  sir?

12      A.   If I knew exactly what she had said verbatim,

13  I would've just told you.  But again, within those elms

14  (phonetic) that the city does not allow it to happen.

15  Jim O'Reilly would not accept it.

16      Q.   Did she tell you that, verbatim?

17      A.   It's on the text message, so yeah, I would

18  have to pull it up.

19      Q.   Did you ever actually file another

20  application, written application, with the Gulfport

21  Merchants Association for a permit to sell ice cream

22  from your mobile ice cream vending cart?

23      A.   Can you repeat the last part again, please?

24          MR. ROPER:  Please read the question back.

25          THE WITNESS:  He starts moving that book and it



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

1    eats through what you're saying.  So --

2         (REPORTER PLAYS BACK REQUESTED QUESTION)

3         THE WITNESS:  I was denied.  Why would I be

4    filing another when I was told blatantly --

5         BY MR. ROPER:

6    Q.   Sir, just listen to the question and answer

7  the question.  This is not an argument session.  This is

8  a question --

9    A.   Well, I'm not arguing.

10   Q.   -- and if you let -- if you let me finish --

11   A.   Okay.  Sorry.

12   Q.   -- okay?  Because if we keep letting -- like

13  this, we're going to be all day today, and maybe longer,

14  okay?

15   A.   I generally do have an hearing issue.  So when

16  people are typing, everything else, it makes it a little

17  difficult.

18   Q.   Yeah.  But you tend, as you already admitted,

19  to cut people off.

20   A.   Yeah.  Okay.  And I apologize.

21   Q.   That is not conducive to a deposition process.

22   A.   Again, my apologies.

23   Q.   Okay.  Do -- did you ever file another

24  application with the GMA to sell ice cream after the

25  initial one that we talked about?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1       A.   I was never permitted to join.

2       Q.   Yes or no, sir?

3       A.   No, I guess.

4       Q.   Okay.  Now, going back to the January 22, 2000

5  [sic], meeting at City Hall in Mr. O'Reilly's office, do

6  you know how long you were there?

7       A.   No.  I don't remember.

8       Q.   Okay.  Do you remember a repetition of the

9  phone call in which you were, again, verbally abusive to

10 Mr. O'Reilly?

11      A.   I've had plenty of conversations, and I don't

12 remember all of them.  Sorry.

13      Q.   I did not hear what you said, sir.  I'm sorry.

14      A.   I don't remember.

15      Q.   Okay.  So you do not recall a lengthy meeting

16 at City Hall with Mr. O'Reilly in which you were

17 verbally abusive and berating him verbally; is that

18 correct?

19      A.   I don't remember, no.

20      Q.   Do you recall being confrontational with Mr.

21 O'Reilly in that in-person meeting on January 22, 2019?

22      A.   Possibly, but no, I don't remember.

23      Q.   Do you remember interrupting him repeatedly?

24      A.   Possibly, but I don't remember.

25      Q.   Do you recall Ms. Roach being present in that



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

 1 meeting?

 2      A.   No.  She was in her office, if I remember

 3 correctly.  Most of the times with the door open, but

 4 she was just a skip outside.  So --

 5      Q.   Okay.  So she could hear everything that was

 6 being discussed in there?

 7      A.   Probably.

 8      Q.   Did you record that conversation?

 9      A.   No.

10      Q.   Do you recall a late May, 2020, call to City

11 Hall, you were trying to meet -- trying to reach Mr.

12 O'Reilly, and spoke with Ms. Roach?

13      A.   Don't remember the date, but if it's just the

14 one I'm thinking of where I repeatedly attempted to

15 schedule appointments, then yes, that would be the last

16 time I spoke to Ms. Roach.

17      Q.   And you were trying to schedule appointments

18 for what, sir?

19      A.   For a return call.

20      Q.   For a return call?  For what?

21      A.   I don't remember at the very moment, but it

22 would've been in regards to again, the ice cream

23 business.

24      Q.   In late May of 2020?

25      A.   Possibly.  I don't remember the date.



MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Q.    Okay.  Do you recall being verbally abusive

2  and profane with Ms. Roach on that conversation?

3    A.    I do.

4    Q.    And why were you using profanity, and why were

5  you verbally abusive?

6    A.    Well, I attempted to make some -- several

7  attempts for appointments.  She took it, kept telling me

8  she was making the appointment, and that I would never

9  get a call back for weeks on end.  Then the one day she

10  tells me no, I never had a conversation with her, I

11  never attempted to file for an appointment, so I did.  I

12  called her a lying biatch.

13    Q.    You called her a lying bitch?

14    A.    Yes.  And that's when she was eavesdropping in

15  my conversation.  So she immediately transferred me to

16  Jim O'Reilly.  And as I'm explaining things to Mr.

17  O'Reilly, she's chirping in.  And --

18    Q.    Did you also call her a fucking liar?

19    A.    Probably.

20    Q.    Did you also call her a fucking lying bitch?

21    A.    Probably.

22    Q.    Now, sir, why would you call anyone those

23  words?

24    A.    Because I don't like liars.  I don't want

25  people wasting my time.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

1    Q.   Do you think that that is acceptable behavior

2    in a professional setting?

3    A.   Well, do you think it's acceptable behavior

4    for her to lie to me?

5    Q.   That's not --

6        MS. LAHART:  Can we take a break?

7        MR. ROPER:  There's a pending question --

8        MS. LAHART:  Yes.

9        MR. ROPER:  -- then we can take a break.

10        BY MR. ROPER:

11    Q.   Do you think it is acceptable, in professional

12    conduct on official business, to call a public servant,

13    a fucking bitch, a fucking liar, and a fucking lying

14    bitch, yes or no?

15    A.   That's how it felt at the moment.  So --

16    Q.   Is that a yes or a no, sir?

17    A.   I don't have an opinion either way on it.

18    Q.   So that's neither a yes, nor a no?

19    A.   I don't know how to respond to it.  I -- I

20    don't regret saying it.

21        MR. ROPER:  Okay.  We can take a break now.

22        THE VIDEOGRAPHER:  11:37.  We're going off the

23    record.

24        (OFF THE RECORD)

25        THE VIDEOGRAPHER:  11:48.  We are back on the



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      record.

2              BY MR. ROPER:

3      Q.   Mr. Lee, we're now back on the record and
4  you're back under oath.  We were talking about a
5  conversation that you recalled having with Ms. Roach in
6  June of 2020.  Do you remember calling her that day and
7  asking for documentation regarding violations of food
8  trucks?

9      A.   You talking about Ms. Roach?

10     Q.   Yes.

11     A.   I don't remember.

12     Q.   Okay.  Do you remember what she told you?

13     A.   No.

14     Q.   Do you recall sending an e-mail to Mr.
15 O'Reilly on June 8th of 2020, asking for a formal
16 complaint to be put against him and his receptionist,
17 with you claiming that his receptionist argued with him,
18 was combative, and hung up on him -- or hung up on you,
19 excuse me, mid- conversation?

20     A.   No, I don't.

21     Q.   Okay.  Do you recall that same e-mail of June
22 8, 2020, to Mr. O'Reilly saying that Mr. O'Reilly had
23 told you that he would put in a request with the city
24 attorney, Mr. Salzman, for him to look at -- look up the
25 laws, referencing the definition of "mobile vending" in



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  the Florida Statutes?

2        A.    I don't remember.

3        Q.    Okay.  Do you recall that same e-mail alleging

4  that there has never been a written determination from

5  the city attorney, and that you had asked for e-mails,

6  phone logs, texts, tickets, and warnings, to be e-mailed

7  to you and put in writing on food truck and food cart

8  violations?

9        A.    I don't remember the e-mail itself, but I do

10  remember requesting the information.

11       Q.    Okay.  Do you recall speaking with Ms. Roach

12  on June 8th of 2020, and being agitated and belligerent

13  towards her from the very beginning of the call?

14       A.    I do not.

15       Q.    Okay.  Did -- do you recall her telling you

16  that while she had not spoken to Mr. O'Reilly on the

17  previous Friday, she did give him, and he did receive,

18  the message that you had called?

19       A.    I don't remember that day.

20       Q.    Okay.  Do you recall demanding to know who

21  took the call, if it wasn't her?

22       A.    Don't remember.

23       Q.    Okay.  Do you recall at around that point is

24  when you called her a fucking bitch, a fucking liar, and

25  a fucking lying bitch?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      A.    I only remember cursing at her one time.

2  But --

3      Q.    You do recall her -- calling her those words

4  though, right?

5      A.    If I remember correctly, yes.  I called her a

6  lying bitch.

7      Q.    And as you testified earlier, it's possible

8  that you also called her those other two things?

9      A.    I don't remember calling her the other two

10  things, but it is very possible that I did call her a

11  lying bitch.  Yes.

12      Q.    Do you deny calling her a fucking lying bitch,

13  or a fucking liar?

14      A.    I mean, I don't remember the conversation.

15  So --

16      Q.    Do you recall Ms. Roach telling you that she

17  would have the city manager call you and wished you a

18  good day and then hung up?

19      A.    I don't remember the conversation that day,

20  no.

21      Q.    Do you recall immediately calling back after

22  she hung up the phone with you and asked -- and then put

23  on the phone with Mr. O'Reilly who had just walked in?

24      A.    I don't remember that day, no.

25      Q.    Do you recall, upon the phone being handed by

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1  Ms. Roach to Mr. O'Reilly, that you were ranting at him

 2  and also calling Ms. Roach a fucking bitch and a fucking

 3  lying bitch to Mr. O'Reilly?

 4      A.   I don't remember calling or saying that with

 5  him, no.

 6      Q.   Did you ask for her to be fired by him over

 7  the -- your complaints?

 8      A.   I don't remember.

 9      Q.   Do you remember being on the phone for 45

10  minutes in that call with Mr. O'Reilly?

11      A.   No.

12      Q.   Do you recall being continuously unpleasant,

13  vitriolic, and verbally assaulting both Mr. O'Reilly and

14  Ms. Roach in that second conversation that lasted about

15  45 minutes?

16      A.   I don't remember, no.

17      Q.   Do you deny doing that?

18      A.   I don't deny calling her a lying bitch.

19      Q.   Do you deny being repeatedly unpleasant,

20  vitriolic, and verbally assaulting both Mr. O'Reilly and

21  Ms. Roach for 45 minutes in that phone call of -- second

22  phone call of June 8, 2020?

23      A.   I don't remember the conversation.

24      Q.   So you -- that's your testimony?

25      A.   I remember portions of certain things that I



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

 1  would've complained about, and then remembering I put it

 2  in writing at some point and submitted it to him.

 3      Q.   Okay.  Now, the following day, June 9, 2020,

 4  did you send an e-mail to the mayor, city council, and

 5  city manager, requesting a formal complaint against both

 6  Ms. Roach and the city manager, and again, in that e-

 7  mail, calling her a liar?

 8      A.   I don't remember the e-mail.

 9      Q.   You don't recall sending that e-mail?

10      A.   No, I don't.

11      Q.   You don't remember requesting a formal

12  complaint against both Ms. Roach and the city manager,

13  Mr. O'Reilly, and calling her a liar that day in an e-

14  mail?

15      A.   I don't remember, no.

16      Q.   Okay.  Do you recall later in the morning on

17  June 9th of 2020, you actually showed up at City Hall?

18      A.   What was the date?

19      Q.   June 9, 2020?

20      A.   I don't recall.

21      Q.   Do you recall meeting Mr. O'Reilly in the

22  lobby of City Hall?

23      A.   I don't know the -- the date.  I remember

24  saying -- yes, submitting a complaint, if I remember, on

25  a specific date.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Q.   Okay.  Do you remember meeting with Mr.

2  O'Reilly in the lobby of City Hall after you went down

3  there that day, the same day you requested that a formal

4  complaint against Mr. O'Reilly and Ms. Roach be filed,

5  and that that e-mail was sent to the mayor, city

6  council, and city manager?

7    A.   I don't remember the date itself.

8    Q.   Okay.  Do you remember launching into a

9  profanity-laced and rage-filled verbal assault against

10  Mr. O'Reilly out in the lobby --

11    A.   That's --

12    Q.   -- of City Hall?

13    A.   No.

14    Q.   You don't recall that?

15    A.   Nope.  The video was submitted.

16    Q.   You have video of that?

17    A.   They do.

18    Q.   Do you have video of it?

19    A.   Yeah, I would've submitted it to you if I had

20  it.

21    Q.   Sir --

22    A.   If we're talking about the same day, I

23  would've requested and sent the camera -- security

24  camera system. And I know that was sent to me.  I don't

25  know if it was on the same day or not.  Listen, that

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1   would've been, in my opinion, the day that I submitted a

 2   complaint.

 3        Q.   My question to you, sir, is pretty simple.  Do

 4   you, at this point in time, have possession of a video

 5   of that incident?

 6        A.   I don't remember, but if I did, I would've

 7   submitted it.

 8        Q.   Submitted it to whom, sir?

 9        A.   In discovery.

10        Q.   To my office?  Is that what you're saying?

11        A.   I'm assuming that, hopefully, you got it, but

12   if not, I can go and see if I have it.

13        Q.   I'm simply asking you, sir, when you're saying

14   submitting, you're not indicating who you're submitting

15   it to so I can get a clearer record as to what your

16   answer is.

17        A.   I thought if it's in discovery it was asked,

18   and I submitted it in discovery.

19        Q.   Well, the reason I ask is because I have not

20   seen any such video of a June 9, 2020 incident in the

21   lobby of City Hall in which you were launching into a

22   very anger-filled and profanity-laced yelling escapade

23   against Mr. O'Reilly and Ms. Roach in the lobby of City

24   Hall.

25            MR. RING:  Can I interject?


MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

1          MR. ROPER:  Well, no.

2          MR. RING:  Sorry.

3          BY MR. ROPER:

4     Q.   That's all I'm asking you.  Do you know if --

5     A.   There was no launching or verbal or anything,

6  and so the video won't show that.

7     Q.   Okay.

8     A.   But the video will show in this -- in this --

9  them at the door, reading, and me at the entrance

10 patiently waiting for them to proceed forward.

11    Q.   Okay.  Now, do you know how long you were in

12 City Hall in the lobby in that encounter?

13    A.   No.

14    Q.   Do you remember having a loud disagreement

15 with Mr. O'Reilly about Ms. Roach and your complaints on

16 June 9th of 2020 when you were at City Hall in the

17 lobby?

18    A.   No.

19    Q.   Were you aware that Lori Roach put out a

20 statement on June 11th of 2020 detailing a number of

21 prior interactions with you and asserting that you had

22 created a hostile work environment for her?

23    A.   I was not made aware of that until later, but

24 yes, I am aware of it.

25    Q.   Are you aware that Lori Roach's account that



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 you have made continuous hateful and incendiary comments

2 and utilized acerbic or aggressive methods of

3 communication that started as early as January 16th of

4 2019 with her immediately?

5     A.   I don't remember as to what she asserted.

6     Q.   Have you ever seen a copy of her statement?

7     A.   Yes, I think I requested it.

8     Q.   Okay.  Do you feel -- or what is your position

9 on her allegations that you had created a hostile work

10 environment for her in mid -- or by mid-June of 2020?

11     A.   That it was done in retaliation to me

12 submitting a complaint against her.

13     Q.   So you treated that strictly as retaliatory?

14     A.   Yes.

15     Q.   Nothing else?  Not that it was justified and

16 factual?

17     A.   I didn't find most of it factual at all.

18 Other than the fact that, yes, I may have called her a

19 lying bitch.  That's it.

20     Q.   Okay.  And used profanity, right?

21     A.   Well, I think bitch is profanity, so --

22     Q.   Okay.  But you used other profanities with

23 her?

24     A.   Not that I recall.  I think that was the only

25 time I ever used profanity against her.  Other times, we

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1  had a cordial relationship.

 2      Q.   Okay.  But you don't deny and you don't recall

 3  calling her a fucking bitch, right?

 4          MS. LAHART:  Objection.  Asked and answered.

 5          BY MR. ROPER:

 6      Q.   Is that true?

 7      A.   And like I said, I -- I possibly called her a

 8  lying bitch.  Yes.

 9      Q.   No.  The question was: You don't recall

10  whether or not you called her a fucking bitch?

11      A.   No.

12      Q.   Is that true?

13      A.   I don't recall calling her a fucking bitch,

14  no.

15      Q.   But you can't deny it either, can you?

16      A.   Well, I don't recall.

17      Q.   Is that a yes?

18      A.   I just don't remember.  And it's in -- I mean,

19  the only thing I remember calling her was a lying bitch.

20  That's it.

21      Q.   Now, prior to June 21 of 2020, had you ever

22  obtained any type of permit from the Gulfport Merchants

23  Association to sell ice cream in Gulfport?

24      A.   What was the date?

25      Q.   June 21st of 2020?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      A.   No.

2      Q.   So on June 21, 2020, when you were approached

3  by Gulfport police officers while you were operating

4  your ice cream cart, and you told officers that you did

5  not have a license or a permit with the City of Gulfport

6  Permits Department, why were you selling ice cream at

7  that point in time?

8      A.   Because we were preempted to the state and as

9  long as I have my state license I was able to operate.

10 And Chapter 13 of their rules say the only thing I have

11 to do is show up in conjunction with a special event. So

12 that's what I did was follow the actual Chapter 13 rules

13 that they implemented in order for me to run my

14 business.

15     Q.   Did you ever consult with legal counsel prior

16 to June 21 of 2020 regarding the legality or the

17 illegality of operating an ice cream cart in Gulfport

18 without a permit?

19     A.   Counsel for the city or outside counsel in

20 general?

21     Q.   Any kind of legal counsel whatsoever?

22     A.   I mean, I've spoken to attorneys, yes, prior

23 to that.

24     Q.   About that issue?

25          MS. LAHART:  Objection.  What he's spoken to



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1     attorneys about is privileged.

2          (CERTIFIED QUESTION)

3          MR. ROPER:  I -- I'm simply asking, did he

4     consult with his own legal counsel at any point in

5     time prior to June 21, 2020, about the legality of

6     operating an ice cream cart within Gulfport City

7     limits without a permit.

8          MS. LAHART:  And he's already answered that

9     question.

10         MR. ROPER:  Well, no, he hasn't, with all due

11    respect.  So that's why I keep going back to it

12    because, like many questions --

13         MS. LAHART:  Well, I'm going to direct him

14    not --

15         MR. ROPER:  -- that I ask, he's not directly

16    answering it.

17         MS. LAHART:  I'm going to direct him not to

18    answer any questions regarding what he has talked to

19    any attorney about ever.

20         MR. ROPER:  I am not asking about the content

21    of it.  I'm simply asking, did you consult with an

22    attorney about that issue?  That's it.

23         MS. LAHART:  And I'm telling him not to answer

24    the question.

25         MR. ROPER:  Then I will certify that.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1          MS. LAHART:  Right.

2          MR. ROPER:  And I will ask for taxation with

3     attorney's fees in the motion to compel.

4          MS. LAHART:  Knock yourself out.

5          MR. ROPER:  Sure.  Will do, Counselor.  Why

6     don't we go off the record for lunch break?  We can

7     have a discussion about the length of it when we go

8     off the record.

9          THE VIDEOGRAPHER:  At 12:06, we're going off

10     the record.

11          (OFF THE RECORD)

12          THE VIDEOGRAPHER:  At 1:08 p.m., we are back on

13     the record.

14          MS. LAHART:  We're back on the record.  I would

15     like to address something.  I think that what

16     somebody speaks to their attorney about is

17     privileged, but I also am mindful that attorneys

18     save their objections for things that will matter.

19          So as to the question of whether he talked to

20     an attorney about whatever you are asking him about,

21     I'm going to object for the record on the basis of

22     relevance.  I don't think that it has anything to do

23     with any claim or issue in this case.  And then I'm

24     going to direct that the witness answer the

25     question.


MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1       MR. ROPER:  Okay.  That -- that's fine.  I

2   think the purposes of the record, though, we should

3   probably go back and ask the court reporter to read

4   back that question just so that Mr. Lee hears it

5   again and can answer that specific question.  Is

6   that possible, sir?

7       THE REPORTER:  What question was it?

8       MR. ROPER:  It was the certified question.

9       THE REPORTER:  Sure.

10      MR. ROPER:  The question about consulting with

11  legal counsel about the legality of permitting.

12      MS. LAHART:  Mr. Roper, can't you just ask the

13  question again?

14      MR. ROPER:  Well --

15      MS. LAHART:  It doesn't have to be verbatim,

16  does it?

17      MR. ROPER:  Well, since it was certified, I

18  would prefer, if possible, if -- give the court

19  reporter a couple more seconds here.  I think he's

20  getting close. I think that, to the extent it was

21  certified, that it would be appropriate to read it

22  back verbatim.  That -- that's my only concern.

23      (REPORTER PLAYS BACK REQUESTED QUESTION)

24      THE REPORTER:  That's not the one.

25      (REPORTER PLAYS BACK REQUESTED QUESTION)



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1          THE REPORTER:  I think that's it right there.

2              (REPORTER PLAYS BACK REQUESTED QUESTION)

3          BY MR. ROPER:

4      Q.   Okay.  So Mr. Lee, we're back on the record

5  and that is the pending question that your attorney has

6  just informed us that she's going to allow you to

7  respond to.

8      A.   I --

9      Q.   So please do.

10     A.   I don't recall having a conversation with my

11 attorney in regards to pulling a permit -- Gulfport.

12     Q.   Okay.

13         MS. LAHART:  That wasn't the question that was

14     asked.

15         THE WITNESS:  I don't --

16         MS. LAHART:  But if you're happy with that

17     answer, let's move on.

18         BY MR. ROPER:

19     Q.   No, the question was whether you consulted

20 with any personal legal counsel about the legality of

21 operating an ice cream vending stand within Gulfport

22 City limits without a permit prior to doing so?

23     A.   No, I don't remember.

24     Q.   Okay.  Is it no you didn't or no --

25     A.   I can't --

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1     Q.   -- you cannot remember?

2     A.   I can't remember.

3     Q.   Okay.  Did you have a personal lawyer, or did

4  you have a lawyer on retainer back in June of 2020?

5     A.   If it's the one I'm thinking about, yes.  He

6  was taking on the casein regards to the tickets for the

7  court.

8     Q.   Who was that attorney?

9     A.   I think if I remember correctly, it's John

10  Hernandez, possibly.

11     Q.   Okay.  Is Mr. Hernandez the attorney that

12  represented you in the case that went to a bench trial

13  on December 16 of 2021?  Did he represent you in that

14  case?

15     A.   Yes.

16     Q.   Okay.  He was not there at trial, though,

17  correct?

18     A.   Yes.

19     Q.   Okay.  Now, as I understand it, that lawyer

20  represented you in that case up until trial; is that

21  correct?

22     A.   Yes.

23     Q.   And did he withdraw from representing you

24  prior to that trial?

25     A.   Yes.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

1    Q.   Okay.  And so when you proceeded in that bench

2  trial on December 16 of 2021 in Pinellas County in front

3  of the Honorable John Carballo, County Court Judge, you

4  represented yourself, pro se; is that correct?

5    A.   Yes.

6    Q.   Are you aware that the city attorney, Mr.

7  Andrew Salzman, for the City of Gulfport, had actually

8  volunteered all of his intended witnesses for purposes

9  of that December 16, 2021 bench trial or non-jury trial,

10 to your attorney to ask as many questions as he wanted

11 at a meeting prior to trial that day?

12       MS. LAHART:  Objection as to form.  You can

13    answer.

14       THE WITNESS:  I -- I remember him making

15    mention of it, yes.

16       BY MR. ROPER:

17    Q.   Okay.  So do you -- following that meeting

18 with Mr. Salzman and all of the City of Gulfport's

19 intended witnesses for the December 16, 2021 trial in

20 case numbers 20-14077-MO and 20-14469-MO, after that

21 meeting, your attorney withdrew from representing you?

22       MS. LAHART:  Objection.  Same objection.  You

23    can answer.

24       THE WITNESS:  Shortly after, yes.

25       MS. LAHART:  Okay.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1          BY MR. ROPER:

2       Q.    Okay.  Were those -- do you know who those

3    witnesses were?

4       A.    No.

5       Q.    Do you know if those are the same, very same

6    exact witnesses that were called at trial?

7       A.    No idea.  Sorry.

8          MS. LAHART:  Objection as to form.  You may

9      answer.

10          THE WITNESS:  I have no idea.

11          BY MR. ROPER:

12      Q.    Okay.  Okay.  Now, when we last left off

13   before lunch, Mr. Lee, we were talking about the

14   statement that Lori Roach, from the City of Gulfport,

15   had issued claiming a hostile work environment had been

16   created for her based on your prior actions.  Do you

17   recall that line of questioning?

18      A.    Yes.

19      Q.    So let me ask you if you remember an event

20   that occurred ten days later on June 21st of 2020.  Do

21   you recall being approached by police officers from

22   Gulfport PD while you were in the midst of operating

23   your ice cream cart?  Do you recall that event?

24      A.    Yes.

25      Q.    Okay.  Where were you that day and how long



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  had you been there selling or trying to sell ice cream

2  before the officers approached you?

3       A.   I wasn't selling.

4       Q.   I'm sorry?

5       A.   I wasn't selling.  My cart wasn't loaded.

6       Q.   Okay.  Where were you, then, and what were you

7  doing if you weren't selling ice cream that day?

8       A.   Protesting.

9       Q.   Okay.  Where were you at the time you were

10  approached by the police?

11      A.   In front -- I was on Beach Boulevard, close to

12  Shore Boulevard, but I'm trying to remember the address

13  itself.  In front of a -- I think a crystal place,

14  Country Charms, something like that.

15      Q.   Okay.  And you just said that you were

16  protesting?

17      A.   Yes.

18      Q.   Protesting what, sir?

19      A.   The new ordinance.

20      Q.   Okay.  Had you filed an application for any

21  type of permit to conduct that protest?

22      A.   To conduct a protest?

23      Q.   Yes, sir.

24      A.   No.

25      Q.   Okay.  What -- what's funny about that?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1    A.   I didn't realize in order for you to protest

2  you had to apply for a permit.

3    Q.   Okay.  And where were you standing or where

4  were you physically located when the officers approached

5  you?

6    A.   Off and towards the curb.

7    Q.   Okay.  Were you in the public right-of-way, or

8  were you on private property?

9    A.   Public right-of-way.

10    Q.   Okay.  And when you say you were protesting,

11  how were you protesting, sir?

12    A.   Their new ordinance, Chapter 13.

13    Q.   How were you protesting, sir?

14    A.   Well, it said the only thing I had to do was

15  show up in conjunction with a special event.  And that's

16  exactly what I did, was show up in conjunction with a

17  special event and still was harassed.

18    Q.   Did you have your ice cream cart with you at

19  the time?

20    A.   I did, yes.

21    Q.   Okay.  Was it -- was it there on the sidewalk?

22    A.   It wasn't on the sidewalk itself, no.  It was

23  -- you have your sidewalk where people walk and then you

24  have it in the other area that's closer to the curb.

25    Q.   Okay.  And was it in front of any business or

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

1  adjacent to any business?

2      A.   Yeah, it was in front of a -- a business.

3      Q.   Which business?

4      A.   Country Charm, Let It Be Ice Cream.  I forget

5  what the other one was going to be called.  It's a hot

6  dog place that opened up, or sandwich shop of some sort.

7      Q.   Did you obtain permission from any of those

8  business owners to place your ice cream cart there

9  before you started protesting on June 21st of 2020?

10     A.   No, I didn't.

11     Q.   Any particular reason why not?

12     A.   Because I was following the ordinance, and in

13 order for me -- my business with authority from the

14 city, who said the only thing I had to do was show up in

15 conjunction with a special event, which is what I did,

16 showed up in conjunction with a special event.

17     Q.   And that's based upon your interpretation of

18 what the Gulfport ordinance says?

19     A.   No.  It's what was said by Metcalf the

20 Building Department manager or the one who runs it, that

21 I never had to apply with a special event.  The only

22 thing I had to do was show up, side to side, and run my

23 business.

24     Q.   And who said that to you?

25     A.   Metcalf.  That was said in court.



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900         www.MILESTONEREPORTING.com         Toll Free 855-MYDEPOS

1    Q.    Okay.  That you only needed just to show up

2 for the event.  You didn't need a permit?

3    A.    Nope.

4    Q.    Has has anybody else from the City of Gulfport

5 allegedly told you that, besides Metcalf?

6    A.    Nope.

7    Q.    When -- will you agree with me that everybody

8 else, including Mr. O'Reilly, had informed you that the

9 contrary was necessary, that you needed to get a permit

10 from the Gulfport Merchants Association in order to sell

11 ice cream there?

12    A.    No, they didn't.

13    Q.    Is that a yes or a no, sir?

14    A.    No.

15    Q.    That's a no?  Did Mr. O'Reilly tell you you

16 needed to have a permit issued by the Gulfport Merchants

17 Association to sell first?

18    A.    No.

19    Q.    He never told you that?

20    A.    Not after the new law came by.  At the very

21 beginning of this thing, before the new law, yes, that I

22 would have to join in this in a Tuesday market.  After

23 the new law was introduced, when we were preempted to

24 the state and the state only, that's when I started

25 protesting.  And that's when the Chapter 13was done.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    Q.   Okay.  So prior to June 21st of 2020, had you

2  ever gone back to Gulfport since the recent statutory

3  change in food dispensing vehicles to ask the city to

4  reconsider or just simply to reapply for a permit?

5    A.   Reapply with who?

6    Q.   With the -- either the City of Gulfport or the

7  Gulfport Merchants Association?

8    A.   No.

9    Q.   Why not?

10    A.   It was my impression it was just never going

11  to happen.  It was just a waste of time.

12    Q.   So you thought -- I'm sorry.

13    A.   Sorry.

14    Q.   I didn't mean to cut you off.

15    A.   No, I'm sorry.

16    Q.   So you thought it would be a futile move if

17  you were to reapply?

18    A.   Yeah.  I would have been told no, no, no.  And

19  clearly they don't want me at the event.

20    Q.   Okay.  So how were you exactly protesting,

21  sir? Did you have a sign?

22    A.   No, just me merely showing up.  So the law was

23  clear that we're preempted to the state and the state

24  only.  So how long as we have our license, no longer is

25  the city allowed to charge any permits, applications,

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

1  fees, any permits.  So when they pass a new law -- and

2  number 3, it also states that yes, the city does get the

3  opportunity of regulating it.  It's not going to be

4  misconstrued that they don't have the opportunity of

5  doing that.  But as long as they don't screw with number

6  2.  So by pushing us off on brick-and-mortar businesses

7  at a Tuesday market for us to be -- again, be charged

8  fees, applications, permits, you just violated that law.

9        And Chapter 13 again says the only thing I

10 have to do is be in conjunction with a special event in

11 order for me to run my business.  So on following the

12 new ordinance, verbatim, and that was clarified in court

13 that, again, I never had to apply with any Tuesday

14 market or any event.  The only thing I needed to do was

15 show up, side by side, and run my business.  And I was

16 still ticketed and ticketed with something that I was

17 not even allowed to get.

18        So I would've applied for that permit if I was

19 allowed to get the permit.  But again, that was also

20 proven in court that they gave me false tickets.  So how

21 do -- am I supposed to apply for something -- to go back

22 to answer your further question, how was I supposed to

23 get the permit if no one has ever been allowed to get it

24 other than brick-and-mortar businesses?

25      Q.   Now, on June 21st of 2020, do you remember the



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

1 two -- or do you remember the officer or officers that

2 approached you?

3     A.   I remember they sent Officer MacIntyre, and I

4 forget the other one.

5     Q.   Okay.  And what did Officer MacIntyre or the

6 other officer say to you at first when they approached

7 you on June 21, 2020?

8     A.   I -- I don't remember exactly what they said

9 to me at the very beginning, but I know we got into the

10 conversation about racial discrimination and

11 discriminatory practices and that I was tired of being

12 bullied and not allowed to open up my business.  And I

13 told them I'm out there protesting.

14     Q.   When you say racial discrimination, what are

15 you referring to, sir?

16     A.   The fact that other white-owned businesses are

17 able to operate freely, without the consent, without

18 permits, no licensings, no tags, no license plates. They

19 can shut down some city sheets, city -- not streets, but

20 you know, parking spots, run their business, no

21 hesitation, no harassment, no tickets.  And here I am

22 being harassed for trying to open up something as simple

23 as a cart.

24     Q.   Do you have any independent knowledge or

25 information to indicate, one way or the other, whether



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 those other businesses or those other individuals that

2 were operating, you know, either vending machines or

3 stands or food trucks, had a permit to do so or not?

4     A.   Yeah.  I requested it from the city, from

5 Justin Shea, including the city itself.  And again,

6 Justin Shea replied back they were not permitting us to

7 be operating. The council member, Paul Ray reached out

8 and it was sent to O'Reilly and asked the same thing.

9 Why is she operating?  I felt it wasn't allowed.  And

10 again, she still didn't get any ticket.  She was able to

11 run her business three or four times after again, no

12 hesitation whatsoever.  No special permits, no licenses,

13 no business license.  None of it.  She never had any of

14 it.

15     Q.   Do you know, though, if those folks worked

16 with the Gulfport Merchants Association to obtain either

17 permitting or permission before operating there?

18     A.   I, again, would have no knowledge of that.

19 But if they had to pull a permit directly from the city

20 in order for them to have that special event, it would

21 only have been done on special days, either Tuesday.

22 This was done on an off-day.

23     Q.   So you've never followed up with the Gulfport

24 Merchants Association in that regard.  Is that the case?

25     A.   Nope.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1     Q.   Why not?  If they're the ones that are

2   policing and putting on the activities, why haven't you

3   followed up with them instead of City Hall?

4     A.   Well, because again, Justin Shea said if there

5   was no special permit -- no special event.  There was no

6   permits pulled for anybody.

7          So why would I need to go and have a

8   conversation with the Merchants Association, when they

9   need to ask Justin Shea for permission in order for them

10  to run an event.  It has to be approved by the city.

11    Q.   I have no idea what you just said, sir, but I

12  want to leave it alone.

13    A.   Well, in order for the actual event to be

14  thrown, or any special event to be thrown in town, it

15  would have to go through Justin Shea in the casino.  If

16  Justin Shea is unaware of any event, that means the --

17  the Merchants Association would have had no business or

18  interaction with that happening.

19    Q.   Well, I'll reiterate my last comment.  My

20  question, though, to you is not about the casino.  We're

21  talking about the events of June 21 of 2020, and my

22  question to you was focusing in on, prior to that date,

23  had you ever inquired of the Gulfport Merchants

24  Association about getting a permit application to be

25  able to sell ice cream as a result of the statutory

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1 changes that occurred just prior to June of 2020?

2     A.   There was no need for it.  Again, as long as I

3 abided by the ordinance, I was in conjunction with a

4 special event that was already approved by the city, I

5 was able to run my business.

6     Q.   Okay.

7     A.   I didn't need to ask for permission.

8     Q.   Okay.  So the answer is no, you did not; is

9 that correct?

10    A.   I did not.  And that would've been in

11 contradiction to the new law by forcing us to pay fees

12 and permits and applications.

13    Q.   Now, you were not ticketed on June 21st of

14 2020, correct?

15    A.   No.  I was made aware by the officer that

16 apparently O'Reilly was going to change the ordinance,

17 and be warned that it was going to be resulting in more

18 tickets.  And then later on that week, it was either

19 Monday or Tuesday, I was ticketed with not getting a

20 permit that I could not access or apply.

21    Q.   You sure about that date?

22    A.   I want to say it was --

23    Q.   A week later?

24    A.   I want to say it was about Monday or Tuesday,

25 yeah, next week.  I'm not sure, but if I remember it's



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1  likely would've been either Monday or Tuesday after.

 2      Q.   Okay.  Isn't it true that you were

 3  continuously begging those police officers on June 21,

 4  2020, to write them a ticket -- or write you a ticket so

 5  that you could file a lawsuit against the city?

 6      A.   Yep.  Because I wanted to prove, again, that

 7  their new ordinance was in violation of the new law.

 8      Q.   According to your interpretation of same,

 9  right?

10      A.   Yeah.  According to Metcalf, I never had to

11  apply for a permit, and according to the law I don't

12  have to apply for a permit.  I'm preempted to the State

13  and as long as I'm State licensed, I can work.  They are

14  not allowed to put anything or implement anything that

15  allows for extra fees, permits, applications or anything

16  else.  And again, that was already done, and the fact

17  that they're forcing this on other businesses in order

18  for them to apply those fees, applications, fines or

19  whatever the case might be, is in direct conflict with

20  the actual law.  That's the whole protest.  So yes, I

21  wanted the tickets because I wanted to go to court and

22  revamp it because they would not listen to me.

23      Q.   Now, let's move forward to September 4 of

24  2020. This would've been the initial trespass that you

25  are suing over.  What was your purpose for being down at



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  City Hall that day?

2      A.   I wasn't at City Hall that day.

3      Q.   Okay.  What was your purpose of being in the

4  Building Department that day?

5      A.   To get access to a permit.

6      Q.   What type of permit?

7      A.   Garage sale permit.  I'm hoping I'm saying

8  that correctly.

9      Q.   Okay.  And where did you go at first?

10     A.   I went to the Building Department.

11     Q.   Okay.  Now, September 4 of 2020, that was in

12  the middle of the COVID pandemic; would you agree with

13  me?

14     A.   Yes.  Yes.  They had a table outside, yes.

15     Q.   Was there any type of either a federal, state

16  or county lockdown because of the pandemic at that time?

17     A.   Unaware.

18     Q.   Okay.  You're not aware of whether there was

19  or wasn't?

20     A.   I know it was during COVID, yes.  But whether

21  it was required or not, I'm not sure of that.

22     Q.   Okay.  Did you go in the Building Department

23  that day?

24     A.   Did not.

25     Q.   Okay.  Could you gain access that day?



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      A.    No.

2      Q.    Okay.  Do you know why?

3      A.    No.  It just had a sign on the door.  It says

4 due to COVID, Building Department is not available.

5      Q.    Okay.  So when you tried the door for the

6 Building Department, it was locked?

7      A.    I never tried the door.

8      Q.    Okay.  So when you approached the door, did

9 you see the sign that said, "closed due to COVID"?

10      A.    I didn't approach the door.  It already had a

11 sign.  The table was there.  I was looking for my

12 application in that specific table, but it wasn't there.

13 So there was another gentleman that was there too

14 waiting for a permit.

15           So I went and knocked on the door and see if

16 anyone answered, but no one answered so I went to my car

17 and I drove over to the city hall, which is when he

18 started confronting me while I was in my car, but I was

19 already on the phone with the receptionist.  I don't

20 know who it was, but she said, Mr. Lee, just head back.

21 I have him coming out and he's going to give you the

22 application.

23           So when I got back, the other gentleman was

24 already in his car.  I knocked on his door and said,

25 hey, they're coming out to assist me so that way you can

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  get assistance since you were here first.  We went.  The

2  guy came out.  I'm not sure who it was at that very

3  moment, but he gave me the application.  It's apparently

4  a free application so not much of an issue.  I filled it

5  out.  He's dealing with the other guy going back and

6  forth, I guess, reviewing whatever the paperwork is. But

7  then when I attempted to give him my paperwork, he now

8  started using COVID as an excuse to invalidate him

9  taking it.

10         Meanwhile he's out there with no mask.  He's

11 out there touching another guy's paper.  Why are you

12 mistreating me indifferently when you're not treating

13 him the same, which today it could be part of a simple

14 signature.  Just give me the approval.  I'll put it in

15 for you.  We could have dealt with it differently, and

16 he continued to keep treating me differently and

17 refusing to move forward while touching everyone else's

18 paperwork.  So I don't understand what the difference

19 was, claiming that I had to put mine's in a box for a

20 few days before he got to it, and he's not doing the

21 same thing with the next person.

22      Q.   But seriously, what's the big deal?

23      A.   What -- exactly my point.  It is a big deal.

24 If -- if it's a --

25      Q.   What is the big deal from your perspective,



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 though?  I mean, he processed your --

2      A.   I don't like -- he didn't process anything.

3 He refused to touch my paperwork, but yet he's still

4 touching the other person's paperwork and saying, oh, I

5 can't touch yours because of COVID.  But here you are

6 touching everyone else's due to COVID, so what is the

7 big deal?  I guess it is the question, right, because --

8      Q.   That's my question of you.  Not your question

9 of me or anybody else.

10     A.   Oh.  I mean, I didn't see a big deal at all at

11 the very moment.  I figured if he was willing to touch

12 the other guy's paper, I don't understand why he's

13 treating me differently.  So I guess the big deal is

14 treat everyone the same.  Don't come out utilizing COVID

15 as an excuse and then mistreat people.

16     Q.   Did he refuse to process your application for

17 that garage sale permit?

18     A.   No.  He just said he had to be put in a box.

19     Q.   Okay.  And what else?

20     A.   Had to be put in a box for a few days, and

21 that's pretty much it.  That's when I asked for a

22 supervisor so I could file a complaint.  He refused to

23 get me the supervisor, which then I went back to City

24 Hall and I picked up the phone and called for police

25 assistance in order for me to be able to file a


MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  complaint.  They -- they were already outside.  Well,

2  they were showing up at the same time, I -- I guess was

3  picking up the phone, and I got trespassed from City

4  Hall.

5       Q.   Okay.  We're going to play a videotape and

6  then I'll -- we'll listen to and watch it and then I'll

7  ask you some questions, sir, okay?

8            (VIDEO RECORDING PLAYED)

9            MR. ROPER:  Can you just pause it right there?

10            BY MR. ROPER:

11       Q.   Sir, we -- we've just paused it at the break

12  of -- let's see here.

13            MR. ROPER:  What is that up there?

14            MS. LAHART:  00:01:19.

15            BY MR. ROPER:

16       Q.   00:01:19.  Do you -- do you consider that tone

17  of voice to be aggressive?

18       A.   No.

19       Q.   So you --

20       A.   Just me being polite.

21       Q.   -- don't think that that's an aggressive tone?

22       A.   No, I don't.

23       Q.   You just indicated that -- to that officer

24  that you were speaking to that you didn't consider that

25  aggressive, but that you can get more aggressive than

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1  that?

 2      A.   Well, my formulation of aggressive, that's not

 3  aggressive.

 4      Q.   Okay.

 5      A.   Believe me, if I was being aggressive, it

 6  would've been way out of hand.

 7      Q.   How so?

 8      A.   I would've probably been cursing him out so --

 9  but that's me talking to him.  He's trespassed me for

10  something to simply because of what -- what exactly am I

11  being trespassed for?  I've never been at the City Hall

12  that day.

13      Q.   For creating a disturbance again?

14      A.   Where?

15      Q.   At City Hall?

16      A.   I wasn't in City Hall that day.

17      Q.   I was talking about at City Hall, with your

18  interactions with that individual at the table?

19      A.   That's the Building Department.  That's not

20  City Hall.

21      Q.   Well, it's a -- it's a municipal complex,

22  right?

23      A.   It's still a Building Department.  They have

24  their own address.  City Hall has its own address.

25      Q.   I -- I'm well aware of that, sir, right?  But



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1 that's why there was a trespass requested by city

2 management was because of the fact that you were

3 creating a disturbance at the Building Department

4 earlier.

5         MS. LAHART:  Is that a question?

6         MR. ROPER:  Yeah.  That is a question.

7         THE WITNESS:  And what disturbance would that

8    be?  Asking for a supervisor?

9         BY MR. ROPER:

10    Q.   I have no idea.  I wasn't there, sir.  My

11 question to you though is, you were asking just now why

12 were you being trespassed.  Did -- were you not told by

13 that officer in this footage that we just watched that

14 you were being trespassed because you were creating a

15 disturbance at the Building Department?

16    A.   No.  He said City Hall.

17    Q.   Okay.  Now, you had gone over to City Hall in

18 between going to the Building Department the first time

19 and the second time, correct?

20    A.   Yes.

21    Q.   Okay.  And what were you doing when you went

22 over to City Hall from the immediately adjacent Building

23 Department?

24    A.   Well, you just have to drive out into the

25 streets and -- and then drive back into a parking lot to



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1 get to the City Hall.

2     Q.   Okay.  What did you do at City Hall?

3     A.   I -- I didn't go in City Hall.  I was in my

4 car and having a conversation with them.

5     Q.   What did you do at City Hall?

6     A.   I was --

7     Q.   Where did you go?  Who did you speak with?

8 What did you do at City Hall before you returned to the

9 Building Department?

10     A.   I was in my car with the main line number,

11 with the receptionist, asking her if I can get in touch

12 with someone from the Building Department to get the

13 permit.

14     Q.   Okay.  And was that a heated discussion?

15     A.   No.

16     Q.   Okay.  What did that individual tell you?

17     A.   She was polite and said, hey, I reached out

18 and he should be coming out.  Just head back.

19     Q.   Okay.  And then you headed back immediately?

20     A.   Yep.

21     Q.   Did you go inside City Hall?

22     A.   Nope.

23     Q.   Did you attempt to enter City Hall?

24     A.   No, I didn't.

25     Q.   Okay.  Now -- so you returned to the Building



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  Department after that conversation in the parking lot

2  with that attendant?

3      A.   Yes.

4      Q.   Okay.

5          MR. ROPER:  You can play the tape again.

6          (VIDEO RECORDING PLAYED)

7          BY MR. ROPER:

8      Q.   Did you call that officer a big schmuck?

9      A.   I did, yes.

10     Q.   Why, sir?

11     A.    I don't think that's going to be proven when

12  you hear him calling me a douche bag and placing wagers

13  and bets on my arrest.  He acts one way when he's off

14  camera and another way when he's in front of a camera.

15     Q.   Do you think it's confrontational to use

16  terminology like a schmuck in front of a police officer

17  in a situation like that?

18     A.    I mean, he should be trained, right?

19     Q.   That's not answering the question.  Do you

20  think that that's confrontational for you to do that?

21     A.   No.

22     Q.   You don't think it's confrontational to call a

23  police officer, to his face, a giant schmuck?

24     A.   Nope.

25     Q.   Okay.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1          (VIDEO RECORDING PLAYED)

2          BY MR. ROPER:

3     Q.   Mr. Lee, do you consider that behavior on your

4  part to be acceptable?

5     A.   Again, I'm being me.  I'm being upfront,

6  forward.  I'm not doing anything that's causing a large

7  scene.  Yeah.  I'm -- I'm confronting people violating

8  my rights.  What -- what part of this should I be

9  comfortable with?

10    Q.   I -- I'm asking about your behavior, sir.  Do

11 you see or -- strike that.  Can you understand, sir, how

12 others who deal with you when you're acting like that

13 could perceive that behavior to be not only verbally,

14 but physically aggressive?

15    A.   Well, I look at it this way.  It started off

16 very polite, baking pies, very respectful.  That got me

17 nowhere, other than people ignoring me, bullying me,

18 harassing me, and mistreating me.  What's the difference

19 now between me being polite then?  I didn't get anywhere

20 with them.  Not once did he ever do anything about

21 nothing.  No one did anything about nothing.  No one

22 documented anything.  No one was assisting me.

23         So yeah, after a few years to me, this sort of

24 being tormented over nonsense, I'm sorry.  I lose my

25 patience, but that is not aggressive.  I can assure



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1  that's way -- way -- it's like 6 percent of me being a

 2  pain in the butt.

 3      Q.   Does that videotape that you took, right, on

 4  your cell phone, correct?

 5      A.   Yes.

 6      Q.   Does that fairly and accurately represent your

 7  behavior on that day in question?

 8      A.   No, not -- not prior to the Building

 9  Department, no.

10      Q.   No.  I'm asking you --

11      A.   You're talking about -- you --

12      Q.   -- on that day, September 4, 2020, does that

13  videotape from your cell phone camera fairly and

14  accurately represent your behavior and your statements

15  that day at City Hall?

16      A.   Are we talking about this specific video?

17      Q.   Yeah.

18      A.   Well, yes, I mean, got the video.

19      Q.   Okay.  Were you arrested that day?

20      A.   No.

21      Q.   Did you try -- did you try to go into City

22  Hall after that incident with the police where you were

23  served with a trespass warning?

24      A.   No.

25      Q.   Did you understand at any point in time after

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900         www.MILESTONEREPORTING.com         Toll Free 855-MYDEPOS

1  September 4th of 2020, that the reason you had been

2  trespassed from Gulfport City Hall that day, September

3  4, 2020, was because you were creating a problem for the

4  folks inside those municipal complexes?

5       A.  It's interesting to me how a police report

6  that was filed prior claimed the complete opposite.

7       Q.  Can you answer the question, sir?

8       A.  I don't remember having any incidences other

9  than trying to have a conversation.  I don't remember

10  lifting my voice up, cursing ever in City Hall.  I have

11  some video that would reflect that.  I mean, I may have

12  done it over the phone but never in person.

13       Q.  But have you understood since September 4 of

14  2020 that you were disturbing the workplace of those

15  public employees?

16       A.  I wasn't in City Hall.

17       Q.  That you were disturbing the work environment,

18  sir?

19       A.  I -- I was never in City Hall.

20       Q.  I didn't say it had to be City Hall.  I said,

21  do you understand, in the aftermath of September 4th of

22  2020, that you were disrupting public employees' work

23  environment by your behavior outside of both the

24  Building Department and the City Hall that day?

25       A.  I -- I just don't understand how exactly



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

 1  asking --

 2      Q.   Sir, can you -- can you answer the question,

 3  yes or no?

 4      A.   No, I don't understand it at all because I

 5  never had a problem with the Building Department other

 6  than asking for a supervisor, and then me getting

 7  trespassed from City Hall.  I --

 8      Q.   I thought you just said that you wanted to

 9  file a claim against the individual who wouldn't take

10  your garage sales permit.

11      A.   Yeah.  That's what I just said.  I wanted to

12  file a complaint against him.  Then I went to City Hall

13  and to try to get someone to assist me.

14      Q.   Okay.

15      A.   I don't see how that's unreasonable.

16      Q.   But you don't feel that your behavior was

17  confrontational in any way, shape or form?

18      A.   I don't.

19      Q.   You don't feel that it was verbally abusive?

20      A.   I don't.

21      Q.   You think that it's okay to call people a big

22  giant schmuck?

23      A.   Well, again, it's exactly how I felt that

24  moment.

25      Q.   Okay.  But you don't see or feel that that is



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  in any way creating a disturbance in a public employment

2  office?

3      A.   What public employment office?  I wasn't in

4  a --

5      Q.   Where public employees work, sir.  City Hall.

6  The Building Department.

7      A.   I was outside in a parking lot being falsely

8  trespassed from a building that I was never in.  So yes,

9  I was upset.

10     Q.   In your opinion, were you acting reasonably

11 that day, sir?

12     A.   Yes.  Uh-huh.

13     Q.   At all times?

14     A.   I'm sure I could have done better at some

15 points, but --

16     Q.   And you think that your behavior on that

17 videotape we just watched from September 4 of 2020, that

18 that was an appropriate behavior by an adult?

19     A.   After two years of nonsense, I think I did

20 pretty good.

21     Q.   So the answer would be yes?

22     A.   Yes.

23     Q.   Okay.  Moving forward a month-and-a-half or so

24 to October 27th of 2020, were you aware of a call to the

25 folks at the city by Barbara Banno, B-A-N-N-O, for the

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1  court reporter's purposes, the president of the Gulfport

2  Merchants Association, that you were illegally selling

3  ice cream and that you had not been previously approved

4  to do so by the Merchants Association?

5      A.   I'm not aware of the call, no.

6      Q.   Were you approached by any police officers on

7  October 27, 2020, while you were selling ice cream?

8      A.   I wasn't selling ice cream, and yes, I was

9  approached.

10      Q.   Okay.  If you weren't selling ice cream that

11  day when you were approached, what were you doing?

12      A.   Protesting.

13      Q.   And when you say you were protesting, what

14  were you doing?

15      A.   I had a sign on my cart that says Barbara

16  Banno is a bully, and I provided the law, the new law

17  referencing -- it's in the 501 -- or 502.102.

18      Q.   You furnished that to whom?  The police or to

19  Ms. Banno?

20      A.   No.  Her employee, the one that was running

21  the illegal Pig and the Pole (phonetic), came out and

22  decided to rip my sign off my cart and take off with it.

23      Q.   The sign that said Barbara Banno is a bully?

24      A.   Yes.

25      Q.   And why did you have that sign at that time

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1  and date?

2      A.   Again, protesting.  They incited Chapter 13.

3  They're the ones that had the city do it in

4  contradictions to the law.

5      Q.   Do what, sir?

6      A.   Pass Chapter 13, pushing us -- on their events

7  and bypassing the laws that does not permit anything to

8  be implemented that would require additional fees,

9  permitting, or applications.

10      Q.   Had you ever applied with Barbara Banno or her

11  assistant for a permit to sell ice cream prior to 10-27-

12      20?

13      A.   I had no reason for it.  Again, I just had to

14  be in conjunction with a special event in order for me

15  to run my business.

16      Q.   So the answer is no; is that correct?  So your

17  answer is no, sir?

18      A.   I said yes.

19      Q.   Is that correct?

20      A.   I did.  You didn't hear me.  Yes, that's

21  correct.

22      Q.   Now, on -- going back quickly here to the

23  September 4 incident, I know we had moved on from that

24  but one other question.  Do you recall attempting to

25  open the door to the Building Department on September 4



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  of 2020 because you thought they should have dealt with

2  you in person?

3      A.   That never happened.

4      Q.   And this would've been before you were ever

5  trespassed?

6      A.   That never happened.

7      Q.   That never happened?

8      A.   No.

9      Q.   So you did not recall, or you did not actually

10 attempt to open the door on the Building Department on

11 September 4 of 2020, due to the fact that you thought

12 they should have been dealing with you in person?

13     A.   Nope.  I mean, that's what I was accused of.

14     Q.   Now.  I'm -- I guess I'm not understanding,

15 moving forward again to the October 27, 2020 incident,

16 why you felt that Barbara Banno was a bully?

17     A.   Because, yet again, they implemented something

18 that bypassed the law so we couldn't join her to begin

19 with at the very beginning and now we can't join again.

20 So they have complete access to who can or cannot come

21 in.  Then they have access to be able to raise --

22 they're not limited to what they can charge, so if they

23 like one white person, want to charge them 40 bucks, and

24 they don't want the other person in, they can charge 3,

25 $400.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1          So the city pushed us off on them, again, to

2   bypass a law.  It clearly states in the law, you cannot

3   mess with number 2.  That, yeah, you have the rights to

4   regulate us, but do not in any way think that you can

5   put in any permit anything that is going to contradict

6   number 2.  And that's exactly what they did.

7          So instead of giving us clear guidance, they

8   went ahead and pushed us off on brick and mortar

9   businesses so they can have control over us and the

10  Tuesday market so they can have control over us, again,

11  additionally charging permits, applications, fees,

12  something that they cannot do.

13         And Barbara Banno assisted them.  She showed

14  up and because of her they went ahead and implemented

15  Chapter 13.  She's the one that pushed us off on the

16  Tuesday markets.  I never wanted to be part of our

17  Tuesday markets once we got our rights back.  I just

18  wanted to be able to be somewhere off on the side.

19         He's the one that pushed me off on Tuesday

20  market.  They're the ones who implemented it, not me.

21  They're the ones who told me I had to show up in

22  conjunction with any special event and annoy them to run

23  my business.  I think that's in poor taste of her and

24  including the city manager to do.  I never wanted

25  conflicts with the Tuesday market.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      Q.   Were you charged with any type of -- or strike

2   that.  Were you cited on October 27, 2020 for anything?

3      A.   With another fictitious ticket, yes.

4      Q.   I'm sorry?

5      A.   With another fictitious ticket, in my opinion,

6   yes.

7      Q.   On the 27th of October, 2020?

8      A.   That's the second time I went out to protest

9   is what we're talking about?

10     Q.   Yes, sir.

11     A.   Yes.  I was given a ticket.

12     Q.   Okay.  But not that day, right?

13     A.   No.  I was given a ticket immediately that

14  day, yes.  It is a reflection of the first one that was

15  delivered to my house.

16     Q.   So your testimony is that you recall a

17  trespass warning or a citation being issued to you that

18  day, October 27 of 2020; is that correct?

19     A.   There was two, yes.  The person who stole my

20  sign off my cart decided to run into the store.  I went

21  to retrieve my sign.  Then I got trespassed from the

22  business, although I'm not the one that inflicted it.

23  I'm not the one who invited her over to steal from me.

24          She admitted to the cop that she stole it

25  because she was offended.  Nothing was done with her.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1 | She wasn't brought up on charges.  She wasn't arrested

 2 | for stealing.  She literally mocked me and then I got a

 3 | ticket for running my business.  Yes, sir.

 4 |     Q.   Isn't it true that you were not served with a

 5 | notice to appear for violation until November 2, 2020 at

 6 | 12:22 p.m.?

 7 |     A.   I have no idea what you're talking about right

 8 | now.

 9 |     Q.   Now, do you recall a second incident that

10 | occurred on November 3, 2020?  And I think that's the

11 | episode that you're talking about in which Jennifer

12 | Kimbrel approached your cart and ripped off a poster

13 | that was attached to the cart?

14 |     A.   I may have had the dates confused then.  All

15 | right.  Clearly got the dates confused with the June

16 | 21st one, I think, because I think you're right.  It --

17 | it was October and November that I got the two tickets.

18 | So I'm not sure where we left off -- June 21st.

19 |     Q.   Okay.  So moving back here now --

20 |     A.   Which one are we going back to?

21 |     Q.   Okay, so October 27th --

22 |     A.   Okay.  Yes.

23 |     Q.   -- 2020.  Ms. Banno calls to report that you

24 | are selling ice cream --

25 |     A.   Yes.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

1      Q.   -- that and that you had not been approved to

2   do so by the Gulfport Merchants Association, correct?

3      A.   Yes.  Yes.  Now, that I remember it.

4      Q.   Okay.  Do you recall whether or not a citation

5   or a trespass warning was issued that day?

6      A.   No, she was trying to have me trespassed from

7   the city sidewalk.

8      Q.   Okay.  So you weren't issued a citation or

9   trespass warning that day?

10     A.   No.

11     Q.   You packed your stuff up and left the area

12  without further issue that day, correct?

13     A.   Yes.

14     Q.   Now, moving forward on November 3, 2020, is

15  that when Jennifer Kimbrel approached your cart and

16  ripped off the poster that had been attached to it that

17  said Barbara Banno is a bully?

18     A.   Yes.

19     Q.   Okay.  Did the manager of Stella's, Marilyn

20  Baker, at that point on November 3, 2020 request that

21  you be trespassed from her business?

22     A.   Yes.  When I went into retrieve my sign.  So

23  yes.  Yes.  I got trespassed from Barbara Banno's or

24  Stella's or whatever you want to call it.

25     Q.   From Marilyn Baker, the manager at Stella's?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      A.   I don't know if she was the manager or not.

2      Q.   Okay.  Is she the one though that asked the

3  police to serve you a trespass warning?

4      A.   I guess she was directed to, but yes, she's

5  the one that came out and ordered it.

6      Q.   Okay.  Were you -- do you recall the police

7  officer from Gulfport PD that you spoke to that day?

8      A.   It would've been MacIntyre and Dillard.

9  Officer Dillard.

10     Q.   Okay.  And do you recall what those officers

11 said to you that day?

12     A.   Not 100 percent, no, but pretty much, sorry,

13 we have to give you another ticket, I think.  And I

14 wasn't really expecting anything less.

15     Q.   Were you given a trespass warning that day?

16     A.   I was, yes.

17     Q.   Were you given any type of ticket or permit

18 violation that day?

19     A.   Yes.

20     Q.   And you had the ice cream cart with you that

21 day on that -- on the sidewalk in front of Stella's?

22     A.   It wasn't on the sidewalk, no.

23     Q.   Where was it then?

24     A.   It was parked on the dirt underneath the tree.

25     Q.   Where in relation to Stella's?



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      A.   I guess slightly, if you're looking at

2 Stella's in the front, if it was one through 100, I was

3 literally at like the 90 percent mark at the left side.

4 So just ten percent was left over and that possibly

5 would've been slightly in front of her -- her place.

6      Q.   Okay.  So adjacent to her business, Stella's?

7      A.   I was in front, yes.

8      Q.   Okay.  And did she also ask the police to

9 trespass your ice cream cart along with you that day?

10     A.   I don't recall her coming out, no.

11     Q.   Okay.

12     A.   I do remember the mayor coming out on her

13 behalf.

14     Q.   Did you have either Marilyn Baker or Stella's

15 establishment permission to place your ice cream cart in

16 front of or adjacent to their business that particular

17 day, November 3, 2020?

18     A.   Again, as I said prior, I didn't need

19 permission.  The city gave me permission.  I was

20 following Chapter 13 of their ordinance.

21     Q.   Okay.  One more time.  Can you answer the

22 question please, sir?

23     A.   No, I never bother asking.

24     Q.   Okay.  Were you issued a notice to appear that

25 day by Gulfport PD, given the fact that you did not have

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  a permit to sell products at the farmer's market, from

2  the Gulfport Merchants Association?

3      A.   Are we talking about getting a ticket?

4      Q.   Yes.

5      A.   Yes.  I was given a ticket that day.

6      Q.   Were you arrested that day?

7      A.   No, I wasn't.

8      Q.   Okay.  Did you depart the area after being

9  served that notice to appear or the ticket as well as a

10 trespass warning?

11     A.   Well, I mean, the mayor decided to come out

12 and call me an asshole and everything else.  So, you

13 know, I stood around for that entertainment, but then

14 yeah, shortly after, I left.

15     Q.   Okay.  And you're referring to the mayor.  Can

16 you put a name with the mayor at the time?

17     A.   Mayor Henderson.

18     Q.   And where was he?

19     A.   Right on the same area that I was.

20     Q.   You're saying he came out and called you an

21 asshole?

22     A.   He did.

23     Q.   Is that on tape?

24     A.   It is, yes.

25     Q.   Okay.  And you have that tape still?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

1      A.   I think I would've submitted it to my

2  attorney.

3      Q.   Sir, can you just answer the question?  Is

4  that a yes or a no?

5      A.   It should be posted online, but yes.  Could

6  easily pull it up for you, if you want to see it.

7      Q.   And do you have an -- any idea as to why the

8  mayor would call you an asshole?

9      A.   You would have to ask him.

10     Q.   Do you recall what names you called him that

11 day?

12     A.   I'm going to have to pull up the video.

13     Q.   Is that a no?

14     A.   You asked me to say what names I called him.

15 I would have to pull up the video.

16     Q.   Is that because you can't remember?

17     A.   I can't remember off the top of my head.  I'm

18 sure I responded in kind.

19     Q.   By calling him names?

20     A.   Probably called him the town drunk.  Yep.

21     Q.   So you called the mayor of Gulfport the town

22 drunk?  That's a yes?

23     A.   Yes.

24     Q.   What other names did you call the mayor of

25 Gulfport besides the town drunk?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       **Toll Free 855-MYDEPOS**

1      A.   Again, I would've to pull up the video.  Would

2  you like me to it pull up?

3      Q.   Sure.

4           THE WITNESS:  If you don't mind going to

5      AcroAmanda's page, YouTube?  Actually, it's maybe on

6      my phone.

7           MR. O'REILLY:  I think we have the video

8      somewhere.

9           THE WITNESS:  And by the way, did you get the

10     video we sent of the officer's body cam with him

11     calling me a douche bag and an asshole?

12          MR. ROPER:  I do not recall that.  No.

13          THE WITNESS:  Yeah.  I really want to make sure

14     I get that to you.  Since I'm being held to a

15     standard, I want to make sure they'll still apply.

16          MR. ROPER:  Move to strike.  Non-responsive.

17          THE WITNESS:  Let me know if you can't find it.

18          MR. RING:  Okay.

19          THE WITNESS:  It would have been November 3rd.

20          THE VIDEOGRAPHER:  Would now be okay time for a

21     restroom break?

22          MR. ROPER:  Sure.  Absolutely.  Let's take a

23     quick restroom break.

24          THE VIDEOGRAPHER:  At 2:12, we're going off the

25     record.


MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

1        (OFF THE RECORD)

2        THE REPORTER:  At 2:22 p.m., we are back on the

3    record.

4        BY MR. ROPER:

5    Q.   Okay.  We're back on the record, Mr. Lee.  We

6    talked about the November 3, 2020 incident.  And do you

7    recall an incident -- oh, strike that.

8        Following the November 3, 2020 incident, did

9    you lodge several continuous complaints claiming racial

10   discrimination with the Pinellas County State Attorney's

11   office?

12   A.   Well, I remember attempting to.

13   Q.   Do you remember calling there and not only

14   calling continually, but clogging up their phone lines,

15   trying to register your claims of racial discrimination

16   by Gulfport with the Pinellas County State Attorney's

17   Office, on and prior to November 19, 2020?

18   A.   What I remember was calling to ask about

19   Jennifer -- not -- that's not Jennifer.  The owner of

20   the Pig and the Pole.  Kimberly something.  I forget

21   what her name was.  I was told by the officer that I

22   would need to contact the state attorney's office in

23   order for them to file the charges because due to COVID,

24   apparently they were not making any arrests.

25        So I attempted to call up and apparently, they

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1 had an idea of who I was and they thought that I was

2 talking about my case, which I wasn't.  I was trying to

3 get information, if they were going to end up allow me

4 to file charges or follow through with the -- with the

5 theft.

6          And he just hung up the phone because he kept

7 saying, I can't talk to you about your case.  And I

8 wasn't talking about the case.  I was talking about

9 specifically figuring out if I can file charges against

10 this woman.  And every single time I called up, they

11 just kept hanging up, and they wouldn't service me.

12     Q.   And when you say file charges about this

13 woman, are you referring to Barbara Banno?

14     A.   No.  I'm talking about this and the owner of

15 the Pig and the Pole who stole my sign off my cart.

16     Q.   Okay.  Were you claiming that that was racial

17 discrimination?

18     A.   Well, sure.  Yeah, well, if it was a Latino or

19 Black person stealing something off one of their

20 vendors, I'm pretty sure they would've gotten arrested,

21 handcuffed, thrown in jail.  Why is it that when a white

22 woman does it -- again, the same person who's been able

23 to operate her business prior to this with no hindrance,

24 no permits, no applications.

25          Why is it when she does it, I'm being laughed



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 at, and no handcuffs being placed on her.  And now I

2 have to figure out why the state attorney's -- is

3 unwilling to talk to me about the incident and why

4 they're hanging up the phone.  It's a little suspicious.

5      Q.   So you thought that was racial discrimination?

6      A.   It's definitely two different ways of treating

7 people.

8      Q.   Why couldn't it be because she just didn't

9 like your sign and didn't want you in front of that

10 business?

11      A.   I -- I'm not claiming that her stealing my

12 sign was based on race.  What I'm claiming is the fact

13 that she wasn't immediately arrested for her actions.

14 That if a Latino or a Black person who walked up to a

15 white booth and decided to steal someone else's sign,

16 because again, they were just merely offended and they

17 may have not liked it, it does not give us the authority

18 to steal.

19           We would've been arrested and thrown in jail.

20 This woman was allowed to do that to me and no

21 consequences, not by the city, not by the police

22 department, and certainly not by the state attorney's

23 department.

24      Q.   You have a driver's license on you, correct?

25      A.   Yes.  I put it back.



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      Q.    Do you have it on your person though?

2      A.    No, I put it back in the car.

3      Q.    Okay.  Do you know what race the Department of

4  Highway Safety and Motor Vehicles has you listed as?

5      A.    Native American.

6      Q.    Native American?

7      A.    Yes.

8      Q.    It doesn't have you listed as white or

9  Caucasian?

10     A.    No.

11     Q.    Okay.  So it does not have you listed as

12 Hispanic or Latino?

13     A.    No.

14     Q.    So why is it that you consider yourself

15 Latino?

16     A.    I'm Native American from Puerto Rico.  I'm

17 Taino.

18     Q.    Okay.  Moving forward.  On February 13, 2021,

19 do you recall being trespassed from three different

20 locations because you had been taunting businesses from

21 the right-of-way and disrupting business?

22     A.    I don't remember being trespassed.

23     Q.    You don't recall being trespassed from three

24 different locations on February 13, 2021?

25     A.    Is that where Barbara Banno is?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**
407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1      Q.   I don't know, sir.

2      A.   That's the only thing right now that I

3 remember.

4      Q.   Do you remember dealing with Officer Mills at

5 about 10:23 p.m.?

6      A.   I don't remember.  No.  I would need the name

7 of the businesses.

8      Q.   Do you recall being issued three different

9 trespass warnings and -- by Officer Mills and advised

10 that you had been trespassed from the Art Village

11 Courtyard?

12      A.   Yes.  That's when Barbara Banno solicited an

13 officer to lie to the businesses and have them trespass

14 me, yes.  I was not in the businesses.

15      Q.   Did you become irate when you were involved --

16 when you were informed by Officer Mills of the three

17 trespass warnings and demand to speak to his supervisor?

18      A.   Probably.  At my house, if I remember

19 correctly.  Yes, I was upset.

20      Q.   Did Officer Mills explain to you that he had

21 no actual involvement with the actual incidents

22 involving Mr. Lee?

23      A.   Are you talking involving the trespass?

24      Q.   Yes, sir.

25      A.   He probably didn't.  He was probably just



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1 serving it.

2      Q.   Okay.  Did he explain that to you though?

3      A.   I don't recall.

4      Q.   Did he try to explain that to you?  Do you

5 remember that?

6      A.   Don't recall.  It happened too -- a while

7 back.

8      Q.   Did you use profanity on that date with

9 Officer Mills?

10      A.   Don't recall.  But --

11      Q.   You don't recall using curse words?

12      A.   I don't.  No.

13      Q.   Moving forward to March 8, 2021, do you recall

14 a phone call to Gulfport Police Department wherein you

15 requested to file a complaint against a member of the

16 Gulfport Police Department?

17      A.   I don't recall either.  But you have the name

18 of the member?

19      Q.   It's on November -- or excuse me, March 8,

20 2021.  And I believe it was Officer MacIntyre.

21      A.   That I wanted to follow a complaint against

22 Officer MacIntyre?

23      Q.   Yes.

24      A.   I don't recall that, no.

25      Q.   Okay.  All right.  So on the following day,


MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1 | March 9, 2021, do you recall a interaction with

2 | Commander Stone who made contact with you wherein you

3 | were holding a poster that had a printout of a news

4 | article that was in reference to Christine Brown's

5 | husband saying "the N-word" and Brown defending him for

6 | using that term.

7 |     A.   You want to use the word?

8 |     Q.   I -- I'm just saying -- quoting directly where

9 | it says, "the N-word."

10 |     A.   Yeah.  I quoted the actual magazine.  Well,

11 | the article and since she was -- her husband was quoted

12 | on. Yes.

13 |     Q.   So explain to me why you were holding up a

14 | poster with that?

15 |     A.   Again, protest.

16 |     Q.   Okay.  Protesting what or whom, sir?

17 |     A.   Protesting Ms. Brown.

18 |     Q.   Why?

19 |     A.   Because she's never once listened to my

20 | complaints properly.  She's never followed through with

21 | documenting anything.  She just continued to keep

22 | allowing the issues to happen.  So I definitely showed

23 | up to make sure I formulated an opinion and my disdain

24 | for her actions and to show people exactly what her

25 | husband said.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      Q.   And what is it that he allegedly said, sir?

2      A.   Again, it's -- it's quite a bit far back.  I

3  know that I was being threatened with arrest for having

4  a sign considered a political sign, which wasn't.

5           Meanwhile, she wasn't attacked for having a

6  political sign on the sidewalk.  I know Stones went in

7  and got a measuring tape and measured me at 150 feet

8  into the next door neighbor's yard across the street,

9  but never bothered attacking her or approaching her --

10  violating laws.  Again, double standards.  But no, I --

11  I don't remember everything that was said that day.

12      Q.   Okay.  What -- where were you protesting that

13  day?

14      A.   I was on the city sidewalk.

15      Q.   Where?

16      A.   In front of City Hall.

17      Q.   Okay.  So you were standing on the sidewalk in

18  front of City Hall holding up a poster that said N-I-G-

19       G-E-R?

20      A.   Yeah, verbatim the word.

21      Q.   Okay.  And you were doing that as a sign of

22  protest?

23      A.   Yeah.  I'm why -- how -- how was a school

24  teacher who's been teaching our kids for a little over

25  30 years was okay telling her husband, at any given

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

1 moment it was okay, because it was acceptable at that

2 moment.

3          I mean, this is a city council member and a

4 school teacher for Pinellas County.  I find it a little

5 fascinating that she would be on the dais, you know, or

6 even condoning anything in an article out there, that

7 her husband went ahead and used such a nasty word.

8     Q.   I guess I'm trying to understand the point of

9 what you're protesting on March 9, 2021.  What is it

10 exactly that you're protesting that day?

11     A.   I have the abilities to confront my

12 government, right, under my First Amendment?

13     Q.   Yeah.  I'm trying to figure out the reason why

14 you're protesting on that particular day, in that

15 particular manner?

16     A.   Well, that would've been the election day.

17 She would've been outside and violating the law.  So I

18 figured this and I would join her and hold my own sign.

19 And at the same time, confront the fact that she has not

20 heard or listened to any of my complaints or documented

21 anything.  Neither has any other member, or this one

22 here, O'Reilly.

23     Q.   So you were protesting Council Member Brown?

24     A.   I was, yes.

25     Q.   Why were you doing that, though?  Simply



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 because her husband allegedly used the N word?

2      A.   He didn't allegedly do anything.  It was

3 literally quoted verbatim directly from his mouth.

4      Q.   Okay.  Did you protest that day for any other

5 reason besides that?

6      A.   Yeah.  For my disdain due to her behavior and

7 not listening to what's occurring here in the city.

8      Q.   Okay.  So you were doing it in response to

9 what you felt was her inattention to your complaints?

10     A.   Not just mines.

11     Q.   Who else's?

12     A.   You had Jim Gillespie (phonetic), who

13 complained at the dais.  You had Ms. -- Ray Rodriguez,

14 you had Samantha Ring, and I want to say maybe one other

15 person, Deborah Scufes (phonetic), who was protesting

16 the African Cemetery or Lincoln Cemetery.  All ignored.

17 Nothing was documented.  No follow-ups.

18     Q.   You left after you spoke to Commander Stone,

19 correct?

20     A.   I was threatened with arrest, yes, if I did

21 not leave the scene, he was going to arrest me.  This is

22 apparently this is for having a political sign, which

23 was not a political sign.  So yes, I definitely decided

24 I was going to hop in my car and leave and just avoid

25 further issues.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      Q.   Did you understand at the time that because of

2   the election season, as you just referenced, there was

3   150 foot zone prohibiting campaigning against any party

4   during an election?

5      A.   I wasn't campaigning.

6      Q.   Well, that's not the question I was asking

7   you. Are you aware that during any election, that

8   pursuant to the Florida statutes, there is a 150-foot

9   zone against campaigning against a party during an

10  election from the voting area?

11     A.   No.  I wasn't aware of a set of any laws like

12  that, but I wasn't campaigning.

13     Q.   Okay.  Do you recall Commander Stone handing

14  you a copy of a Florida statute?  It's specifically

15  Florida Statute Section 102.031 before you left?

16     A.   102.031?

17     Q.   Yes.

18     A.   I know they -- they gave me a piece of paper,

19  MacIntyre did, yes.  But he was only pointing at one

20  specific area of that paper.

21     Q.   And then you left?

22     A.   Yes.

23     Q.   Okay.

24     A.   I wonder if they gave the same advice to Ms.

25  Brown.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    Q.   Do you remember pulling over or signaling to

2   and pulling over a Gulfport police officer on April 21,

3   2021, telling him that you were being evicted because of

4   the money lost due to your situation and that you were

5   making statements in reference to filing lawsuits

6   against the City of Gulfport and Gulfport Police

7   Department?

8    A.   Can I get the date again on that one, please?

9    Q.   Sure.  April 21, 2021.

10    A.   And which officer was it?

11    Q.   I do not know.

12    A.   I've spoken to a lot of officers so I don't

13   recall.

14    Q.   This would be an officer that was driving by

15   that you waved at or signaled to to pull over, and they

16   did.

17    A.   I don't recall, but I say like, you know, hi

18   and bye to a lot of officers.

19    Q.   I'm sorry?

20    A.   I say hi and bye to a lot of officers.

21    Q.   Okay.  But you don't recall that day telling

22   him that you're -- you were being evicted because of the

23   money loss due to the situation and that you were going

24   to be filing lawsuits against the city and the police

25   department in Gulfport?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1        A.    I don't recall, no.  But --

2        Q.    Do you recall on June 30, 2021 whereby you

3   initiated an interaction with Gulfport Police, and it

4   was filled with numerous insults directed to Gulfport

5   police officers?

6        A.    Which officers?

7        Q.    Numerous officers.  Do you recall that event

8   of June 30, 2021?

9        A.    I don't.  No.

10       Q.    Okay.  Do you recall contacting Gulfport

11  Police on July 2, 2021 to try and file a complaint for

12  an alleged plot to have you arrested?  And that you

13  wanted to file a department-wide complaint as well as a

14  complaint against Officer Dillard, stating that Officer

15  Dillard turned off his camera during a call?

16       A.    Yeah, they were tampering with the cameras,

17  and on top of that, they invited me in and then tried to

18  have me arrested for trespass after the fact.

19       Q.    When was that?

20       A.    I don't remember the day.  But I do remember

21  just then trying to file a complaint.  Yes.

22       Q.    Okay.  And specifically on July 2, 2021, you

23  called Gulfport Police to file a complaint for an

24  alleged plot on their part to have you arrested,

25  correct?



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    A.    Yeah.  It was videotaped on their body camera.

2    Q.    Okay.  Moving forward in that same month to

3 July 22, 2021, why did you throw a disc at Commander

4 Stone, striking him in the back?

5    A.    I didn't throw a disc at him.

6    Q.    What did you do then?

7    A.    I was throwing the disc past the door line

8 because I could not go through the City Hall doors to

9 resolve my own problem.

10    Q.    Okay.

11    A.    So since I did not need it and since I

12 couldn't utilize it, I threw a past the door line and it

13 took off like a Frisbee by accident and hit the officer.

14    Q.    Okay.

15    A.    But I did not throw it at him.

16    Q.    But you threw it and it hit him?

17    A.    Yes, by accident.

18    Q.    And you were arrested for battery on a law

19 enforcement officer, correct?

20    A.    Yes.

21    Q.    And all of that was on body camera, correct?

22    A.    It was, yes.

23    Q.    And how did you plead to those criminal

24 charges of battery on a law enforcement officer in

25 regards to Commander Stone's incident of July 22, 2021?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1          MS. LAHART:  Objection.  You can answer.

2          THE WITNESS:  I was forced to plead guilty.  I

3     was hit with a six-page gag order.  Not allowing me

4     to call witnesses, talk about my frame of mind.

5     None of it.  The only thing that was going to be

6     played was a video that made me look like a

7     criminal, and I decided to plead guilty to something

8     that I was left with no other option to do.

9          BY MR. ROPER:

10    Q.   Who forced you to plead guilty?

11    A.   The state attorney's department, when they put

12   the infliction on me, they said that I could not, again,

13   bring in any officers to testify, could not present any

14   evidence, could not talk about my frame of mind.

15          It was only going to be that one portion of

16   the CD.  So before I faced five years in jail over an

17   accident, I decided to put my tail between my legs and

18   plead guilty to something that I did not intentionally

19   do.

20    Q.   By pleading guilty to the charges of battery

21   on a law enforcement officer, correct?

22    A.   Well, it's kind of sad that the officer would

23   try to put me in jail for five years over a CD touching

24   him by accident.  But yes, it did happen.  If I realized

25   it had happened.  If I believed him, I would've just



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  apologized.  But I just thought he was making it up. But

2  if the only thing that was going to be submitted was

3  that video, I wasn't about to take a chance, especially

4  since I was not allowed to introduce evidence, speak on

5  my frame of mind, call any witnesses.  I was capped off

6  at the knees at the very last minute.  Literally 15

7  minutes before jury trial, I had no other option other

8  than to take that plea deal.

9       Q.   Did you have legal counsel representing you in

10 that case?

11      A.   Yes, I did.

12      Q.   And did you enter into that plea of guilty

13 after being provided with the advice of your own legal

14 counsel?

15           MS. LAHART:  Objection.  Form.  You can answer.

16           THE WITNESS:  Well, I -- I guess.

17           BY MR. ROPER:

18      Q.   Okay.

19      A.   I saw him suffering more than I did, and he

20 was shaking, upset that we couldn't do anything about

21 it.  I tapped him on the arm and told him to ask for the

22 original deal, and I decided to take it.  It's not

23 because he pushed it.  It's because I already knew that

24 they would do anything in their power to make sure that

25 I was jailed.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      Q.   When you see -- when you said that he, you're

2  talking about his -- your attorney?

3      A.   Yes.

4      Q.   Okay.

5      A.   Or he, I'm talking about -- remind me what I

6  said if you don't mind.

7      Q.   Yeah.  You said that your attorney or he was

8  shaking?

9      A.   Yes.  He was up until 2:30 in the morning.

10 Yes.  Going through everything, getting all the evidence

11 and they, again, would not allow us to submit everything

12 at the very last minute.  So he had no way of defending

13 me at all.

14        And that's when I tapped him on the arm and he

15 said, let's go to the back and talk.  And I asked him,

16 to apply to him for the original deal.  And I decided

17 again to take something that I knew that I shouldn't

18 have gotten.  But it was a lot better than trying to

19 spend five years in jail over a dirty cop, in my

20 opinion.

21     Q.   So you think Commander Stone is a dirty cop?

22     A.   Again, it's a CD touching.  You don't try to

23 put someone in jail for five years over CD touching you

24 by accident.  So yes, that's -- that's an equivalent of

25 a dirty cop.  And you don't hold your cops accountable.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1  I mean, he is a professional standards person and he's

 2  never been once written up as cops in regards to them

 3  placing wages of bets on my arrest, or calling me douche

 4  bag or an asshole.  But when I called him a douche bag

 5  and asshole because he was so comfortable with it, he

 6  got pissed off.

 7      Q.   But you do not dispute the fact that you threw

 8  a disc that happened to strike the back of his knee and

 9  hamstring area?

10      A.   I do not dispute that, no.

11      Q.   Okay.

12      A.   I had no intentions of hitting him.  I

13  apologized for that.  He's definitely owed one and I

14  think I've done that already once I realized he was

15  telling the truth.  But --

16      Q.   So at some point after July 22, 2021, so as

17  not to risk a potential for serving five years in

18  prison, you pled guilty to battery on a law enforcement

19  officer for striking Commander Stone with that disc,

20  correct?

21      A.   Yes.

22      Q.   Correct?

23      A.   Yes.

24      Q.   Okay.  Now, do you understand how the folks at

25  Gulfport City Hall could view you as a threat?  That's



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1 | not a joke, sir.

 2 |     A.   Oh, man.  I -- I'm sorry that a simple CD

 3 | hitting an officer is your equivalent of being a threat.

 4 | I've never been arrested once prior to this.  I've never

 5 | been given a ticket prior to this city.  I've never had

 6 | any of these issues prior to the city.

 7 |          So no, I don't consider myself a threat.  I

 8 | would've never intentionally ever hit someone.  My mouth

 9 | is one thing, and then hitting, or assaulting, or

10 | threatening someone, I would've never done my entire

11 | life.

12 |     Q.   Okay.  So four days after that incident with

13 | Commander Stone and the disc that you threw at him.

14 |          MS. LAHART:  Objection.  Mischaracterize his

15 |     testimony.

16 |          BY MR. ROPER:

17 |     Q.   That you threw and that hit him.  Did you file

18 | a complaint of police corruption on July 26, 2021

19 | against Commander Stone?

20 |     A.   July what?

21 |     Q.   July 26, 2021, which is four days after you

22 | were arrested for battery on a law enforcement officer?

23 |     A.   I don't remember as to what I filed.  No.  I

24 | would have to look at it.

25 |     Q.   Okay.  So you don't recall four days after



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  that arrest wishing to file a complaint of police

2  corruption against Commander Stone?

3    A.   If I remember correctly, I think they were

4  tampering with the cameras again.  For me, it's in

5  essence destroying evidence.  So I would've filed

6  something, I guess, within that nature.  But I don't

7  remember 100 percent so --

8    Q.   All right.  Now, Mr. Lee, do you recall

9  independently the events of September 14, 2021, when you

10 were given a trespass warning for the Building

11 Department authorized by the city manager, Mr. O'Reilly?

12   A.   I thought that was one and the same according

13 to you.

14   Q.   Sir, could you answer the question?

15   A.   I am.  I'm just trying to make sure that we

16 clarify it.

17   Q.   Sir, this is an opportunity for you to answer

18 my question.

19   A.   Okay.  September --

20   Q.   Not debate, not have you ask me questions or

21 anything, right?  This is a question, answer session.

22   A.   Understood.

23   Q.   Okay?

24   A.   September?

25   Q.   Not for snide comments.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      A.    September?

2      Q.    September 14, 2021.  Do you remember getting a

3   trespass warning for the Building Department?

4      A.    Yes, I was trespassing for filing open records

5   requests.

6      Q.    All right.  Do you recall the events of that

7   day independently?

8      A.    I had received a call early morning by their

9   Building Department around like 6:45 or 7:00 something.

10  I attempted to call back the number several times.  I

11  want to say eight times.  No one answered.  I decided to

12  go in person.

13           At that point I was unaware if I was

14  trespassed or not trespassed earlier.  In the video that

15  -- that I was explaining that the -- Vandenberg forgot

16  to turn off -- the officer said there was a blanket

17  trespass on the entire thing.

18           So I wasn't sure if I should be able to go in

19  or not.  So I was requesting services in order for me to

20  get some public records because of the tickets, the

21  false tickets they gave me.

22     Q.    Okay.  So let's back up.  You got a call early

23  in the morning from a number that you determined later

24  on is City Hall?

25     A.    Yeah.  I should have a screenshot of it.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1     Q.   Okay.  So you -- they didn't leave a voicemail

2 message, correct?

3     A.   I don't use voicemail.

4     Q.   Okay.  So you don't know who called you --

5     A.   I don't.

6     Q.   -- at that point, right?

7     A.   No idea.

8     Q.   Okay.  So did you call that same number back?

9     A.   I did, yes.

10    Q.   Okay.  And your testimony is is that it rang

11 and rang, right?

12    A.   Yes.  No one picked up.

13    Q.   Okay.  And what time were you trying to call

14 City Hall?

15    A.   I would have to refer back to the photo, but I

16 figured if there were -- I wasn't calling City Hall.

17    Q.   Okay.  Where were you calling?  Just that

18 number?

19    A.   I was returning the call.  Yes.  So I figured

20 if they called me that early, they should be available

21 that early.  Yes.

22    Q.   How did you determine that that was Gulfport?

23 That was a Gulfport phone number?

24    A.   I think some type of message came up and it

25 said about it being the Building Department.  I might

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

 1  have left a voicemail, but I knew that it was from the

 2  Building Department.

 3      Q.   How did you know that?

 4      A.   By returning the call.

 5      Q.   Okay.  I thought you said no one answered.

 6      A.   No one did

 7      Q.   Did it go to a voicemail?

 8      A.   Possibly.  If I remember correctly, I think,

 9  yes.

10      Q.   Well, I'm trying to determine how you

11  determined that that was this -- a city number?

12      A.   Again, just dialed it back.

13      Q.   Okay.  But if nobody answered, how do you know

14  whose -- whose phone that was?

15      A.   I've already answered the question.

16      Q.   I didn't understand your answer.

17      A.   Called it back.

18      Q.   Okay.

19      A.   And it showed as the Building Department.

20  Whatever answer machine service was potentially there,

21  you know, probably told me it was the Building

22  Department.  I can pull up the photo; we can dial it

23  together.

24      Q.   Okay.  You recall the time of day that was?

25  Was it in the morning?



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       **Toll Free 855-MYDEPOS**

1      A.   It was in the morning, yes.

2      Q.   Okay.  What time did you go down to any

3  Gulfport building?  Whether it's Building Department,

4  City hall, or what?

5      A.   I don't know how to answer your question

6  because I'm confused what you consider the Building

7  Department or to City Hall?  So --

8      Q.   What did you do after you couldn't get through

9  to that number?

10     A.   I went to the Building Department.

11     Q.   Okay.  What time did you go to the Building

12  Department?

13     A.   Possibly around 8:00-ish.  Probably before

14  9:00.

15     Q.   In the morning?

16     A.   Yes.

17     Q.   And what did you do when you first got to the

18  Building Department?

19     A.   I opened up the door and had asked if I could

20  be assisted.

21     Q.   Okay.  All right.  Queue that up.  We're going

22  to show a video, and then I'll ask you some questions.

23     A.   Sure.

24          (VIDEO RECORDING PLAYED)

25          BY MR. ROPER:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

1      Q.   Did you just refer to the true fuckery of the

2  city of Gulfport?

3      A.   Yes.

4      Q.   Sir, why do you use that kind of profanity on

5  these --

6      A.   Because I can.  I'm an adult.

7      Q.   -- on these videotapes?

8      A.   Because I can and I'm an adult.  It's part of

9  my First Amendment rights.

10      Q.   Okay.

11      A.   And it truly predicts, literally predicts and

12  actually depicts exactly what's happening.  What you

13  missed on this here is the fact that there's no way for

14  anyone to pull on the inside of that door.  And that

15  report that he and the other ones falsified against me,

16  he's claiming that I was pulling on the front of the

17  door while he was pulling on the other side of the door.

18  And I was trying to force my way into a building, which

19  never happened.

20           And then they waited all the way into the

21  next, what, year or a year later for them to fabricate

22  some whatever reports.  You're claiming that I just

23  tried to force my way into a building.  Then you're

24  taking wagers and bets to who gets to arrest me first.

25  If that right there doesn't scream fuckery, I don't know

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  what does. But if indeed I was trying to force my way

2  into a building, you wouldn't need to place wagers and

3  bets. Could've just arrested me.

4        Then you don't wait all the way to the next

5  year for you to trespass me when I'm in the middle of

6  trying to get some evidence for my case based on tickets

7  and falsified tickets.  Tickets that I can't get.

8        So you'll hear the actual guy on the inside

9  admit he thought he got something.  But he can't get,

10  you know, any type of paperwork here; he's got to go

11  through City Hall.  But again, I'm a trespassed from

12  City Hall.

13        Again, more fuckery, because by law, I should

14  be able to attend and go into this building.  But now,

15  again, I'm unaware if I could even go in because they're

16  not clarifying any of it.  So again, I'm asking for

17  assistance.  I need to be able to get paperwork for

18  court.

19        I don't like people lying.  Which again, which

20  one is it?  Either I am forcing my way into a building

21  or I'm pressing a handicap button?  Because two clear

22  distinctions on what's happening.

23        But that's what was put up in the lobby of the

24  police department, that I was clearly attempting to

25  force my way into a building that was left there for a

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

1  year-and-a-half to two years.  He never bothered

2  rectifying it.  But if you go look at the reports that

3  was submitted to the city attorney, and then it was also

4  submitted and to the -- that was never reported at all.

5          They fabricated all that at the very end just

6  to slander me.  So yeah, what part of fuckery does not

7  apply to this situation is beyond me.  I'm surprised

8  you're more concerned  with my language than you are

9  with the disdain of their behavior.

10          MR. ROPER:  Can you start with that line for

11     me?

12          (VIDEO RECORDING PLAYED)

13          MR. ROPER:  Can you pause it there?

14          (VIDEO RECORDING STOPPED)

15          BY MR. ROPER:

16     Q.   So Mr. Lee, so was your only purpose of going

17  down to the public services or Building Department that

18  day to find out why they called you or somebody had

19  called you from that number?

20     A.   Well, that was my main purpose for going down.

21  Yeah.  But while I was there, I might as well record and

22  contradict the false statements that they applied.

23     Q.   Okay.

24     A.   So yeah, I took the opportunity and done it.

25  Yeah.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

1    Q.   Okay.  Did you have any other purpose besides

2  finding out why they had called you or you thought they

3  had called you that morning?

4    A.   Well, again, that was the thing.  Maybe they

5  already had the public records the -- you know, to give

6  me.  I -- I don't know.  That's why I was trying to find

7  out what was assisting or what was happening.

8         MR. ROPER:  All right.  Can you continue --

9          (VIDEO RECORDING PLAYED)

10         MR. ROPER:  Can we pause it?

11          (VIDEO RECORDING STOPPED)

12         BY MR. ROPER:

13    Q.   You made a statement there about your

14  employees, or "my employees," was your wording.  You

15  consider the employees of the City of Gulfport to be

16  your employees?

17    A.   I am a citizen, right?

18    Q.   Well, you're a citizen, as far as I

19  understand --

20    A.   I -- I deserve the same attention, respect,

21  that they would give any other citizen here.  So if

22  that's true, yes, she does work for me.  She's an -- an

23  employee specifically designed to work and to assist

24  citizens.  So yes, she's an employee.

25    Q.   Of you?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1     A.   Well, not of me.  For every citizen here in
2  the city, yeah.
3     Q.   Okay.  But your statement on the video just
4  now was, you were talking about them as being "my
5  employees," your employees?
6     A.   We pay them with tax money and everything else
7  for them -- they're designed to assist us.  Not one
8  point did she bother saying she couldn't assist me, she
9  didn't come out and greet me, didn't give me anything
10 whatsoever.
11          She could've easily just told me, we're not
12 going to service you today, and I would've left.
13    Q.   Do you know if she heard you?
14    A.   Five times, I think I asked.
15    Q.   Do you know if she heard you?
16    A.   Okay.  No, no.  No, I don't.
17    Q.   Okay.
18    A.   But in the video of the dash cam, she, I
19 guess, if I remember correctly, was commenting that she
20 did hear me.
21    Q.   While she was on the phone?
22    A.   No.  Prior.  Remember, this is like the third
23 or fourth time I've already asked for assistance.
24    Q.   Now, before we go back on the video, from the
25 incident the year before on September 4 of 2020, do you

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1 recall trying to open the door to the Building

2 Department on September 4 of 2020, because you thought

3 that they should've dealt with you in person before you

4 were ever even trespassed?

5      A.   No.  I wasn't trying to open up the door.

6      Q.   Okay.  And then on September 4 of 2020, you

7 told us that you had read the sign saying that, because

8 of the COVID lockdown, the building was closed, or that

9 they were closed, correct?

10      A.   Yes.

11      Q.   Did -- in this video of the September 14,

12 2021, incident that we're in the middle of watching and

13 we're pausing right now, you indicated that you -- well,

14 you did, you hit the handicap button for the door to

15 open, correct?

16      A.   Yes.  That was after the -- I asked for a

17 supervisor.

18      Q.   Okay.

19      A.   That wasn't prior.

20      Q.   Do you remember hitting the handicap access

21 button on September 4 of 2020, despite the fact that the

22 building was closed?

23      A.   I did not hit the handicap button prior.

24      Q.   Okay.  So on September 4 of 2020, your

25 testimony is that you did not hit the handicap access

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

1  button prior to being trespassed; is that correct?

2      A.   No, I hit the button on September 4th, but

3  when I was asking for his supervisor, he turned around

4  and said, no.  So then I tapped the button so the door

5  would stay open, and then asked him again for a

6  supervisor. That's the only time I did it.

7          MR. ROPER:  Can you start playing the tape

8      again, please?

9              (VIDEO RECORDING PLAYED)

10          MR. ROPER:  Can you pause it?

11              (VIDEO RECORDING STOPPED)

12          BY MR. ROPER:

13      Q.   Based on that comment just now on the

14  September 14, 2021, videotape, did you post that live on

15  Facebook?

16      A.   It was, yes.

17      Q.   Okay.

18      A.   But it was only able to be viewed by one

19  person.  So I was live to check myself and to make sure

20  no evidence was being destroyed, or if they decided to

21  tamper with their body camera again, or if they decided

22  to falsify another report or claim that I was doing

23  something I wasn't doing.  So yeah, I'd much rather have

24  something than nothing.

25      Q.   Was that the first time you had ever posted



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1 anything about the City of Gulfport or Gulfport PD on

2 Facebook?

3     A.   Probably no -- probably not.  Sorry.

4     Q.   Okay.

5     A.   I'm sure that I have other posts.

6     Q.   Okay.  And again, what was the reason for

7 posting that on Facebook?

8     A.   Again, it's technically in a file that's only

9 visible to me.  There's only certain ones that I

10 released.  But they only have access by two people who

11 can view it.  So it's not open to general public, but

12 reason why I'm doing it, because I got tired of them

13 lying and claiming that I did things that I never did.

14     Q.   Would it have been viewable by your friends on

15 Facebook?

16     A.   By only two.

17     Q.   Only two of your friends on Facebook?

18     A.   News reporters, yes.

19     Q.   News reporters for whom, sir?

20     A.   They're on their own channel, AcroAmanda and

21 Rights Crispy.

22     Q.   Are those First Amendment auditor

23 organizations?

24     A.   I -- they call themselves First Amendment

25 auditors.  They -- that's -- I mean, I'm not -- I'm not

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  titling them.

2      Q.   Are you a First Amendment auditor, or do you

3  consider yourself to be one?

4      A.   Nope.

5      Q.   Have you ever been a member of any First

6  Amendment auditor organization?

7      A.   Nope.

8      Q.   Are you friends with First Amendment auditors?

9      A.   I am, yes.

10      Q.   Who, in particular?

11      A.   Rights Crispy, AcroAmanda.  I know one, I

12  should know it.  James Madison.  And a few others, but

13  I'll have to go and look at their names, the channel

14  names.

15      Q.   And in your Facebook post, were the two posts

16  that were viewable, were they sent to those First

17  Amendment auditor folks on Facebook?

18      A.   They weren't sent to them.  They would have

19  access to them because I would've been able to just

20  approve specific people to view it.

21      Q.   So they would've had access to that?

22      A.   Yes.

23      Q.   Okay.  And have you ever given or sold any

24  video footage to any First Amendment auditor

25  organization or individual for posting on any of their


MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  social media sites, whether it's YouTube or otherwise?

2       A.   I've never sold anything, but yes, I would've

3  given them the access to videos.

4       Q.   To your videos involving the Gulfport

5  incidents?

6       A.   Yes.

7            MR. ROPER:  Can you start the tape back up

8       again?  Thank you.

9            (VIDEO RECORDING PLAYED)

10           THE WITNESS:  Your battery is running low.

11           (VIDEO RECORDING PLAYED)

12           MR. ROPER:  Can you --

13           (VIDEO RECORDING PLAYED)

14           BY MR. ROPER:

15      Q.   So Mr. Lee, the question I have to ask you at

16  this point is, again, your only purpose of being down at

17  the Building Department or Public Services Department

18  that day was to find out who had called you early that

19  morning -- earlier that morning, and why, correct?

20      A.   Well, that was one of the purposes, yeah.  I'm

21  -- I'm sticking around, still waiting for someone.  She

22  just said that someone was going to be assisting me, so

23  why would I be running off?

24      Q.   Okay.  But you're there, and you're waiting

25  for this entire time --


MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      A.    Uh-huh.  I'm patient.

2      Q.    -- for -- simply to find out who had called

3  you that morning?

4      A.    Well, I'm trying my best to figure out what's

5  happening.  I'm assuming they have a purpose for calling

6  me.  I'm just not sure what it is.  I would like to

7  know, yes.

8      Q.    Okay.  Okay.

9      A.    So right now, it's not my entire purpose.  I'm

10  going to entertain myself while waiting.

11     Q.    Okay.  But in this last section of the video,

12  you're bringing back up the original conflict, or one of

13  the original conflicts that you had with the city with

14  regards to that ice cream cart, correct?

15     A.    Yes.

16     Q.    So was that the real reason you were there

17  that day?

18     A.    No.  I'm just talking to my camera and --

19     Q.    Venting?

20     A.    Venting, and -- yep, taking things calm.

21  Clearly I'm not there badgering anyone, no yelling or

22  cursing at anyone.  But I've been left out so far for 18

23  minutes, ignored.  So they had the inclination to call

24  the police but yet not service me.  It -- it's

25  incredible.  Did -- did I curse at her?  Did I yell at



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 her?  Was I not polite?  Ma'am, good morning, all of it.

2        And still I'm being treated like shit, right?

3    Q.   So your position is, is that in this

4 particular video, it shows you being treated like shit?

5    A.   Well, no one has greeted me yet.  They

6 acknowledge I'm outside.  They know I'm outside.

7    Q.   Do you know what work activity they were in

8 the middle of doing?

9    A.   I was expecting that question again.  No idea.

10 Not at all.  It certainly was not servicing me, which is

11 part of their job, right?

12    Q.   And it's all --

13    A.   -- greeting someone and -- and saying, good

14 morning --

15        MS. LAHART:  Objection.  Argumentative.

16        THE WITNESS:  It is part of their job.

17    Acknowledging a person is part of their job.

18    Letting them know they're going to be assisting you

19    at some point in other -- is part of their job.  I

20    don't think that one specific thing should end

21    everyone's day at an office.

22        BY MR. ROPER:

23    Q.   Okay.

24    A.   And now there's no COVID restriction, what's

25 the excuse now?

1      Q.   What fundamental right do you have in

2   demanding the identity or purpose of someone who

3   allegedly called you at -- you know, before 7:00 a.m.

4   that morning on September 14th of 2021, in this video?

5      A.   I'm sorry.  Who's --

6           MS. LAHART:  Objection.  Calls for a legal

7      conclusion from a non-lawyer.  You may answer.

8           THE WITNESS:  I -- I just want to know where

9      you thought I was demanding.

10          MR. ROPER:  Can you read the question back,

11     court -- Mr. Court Reporter?

12          (REPORTER PLAYS BACK REQUESTED QUESTION)

13          MR. ROPER:  Well, it's what -- legitimate

14     right.

15          THE WITNESS:  Would you like to ask your

16     question?

17          BY MR. ROPER:

18     Q.   That was the question.  You weren't listening?

19     A.   I wasn't demanding at all.

20          MR. ROPER:  Can you replay the question for him

21     a second time so he can --

22          THE WITNESS:  No.  I thought you said something

23     different on top of that.  I thought you were making

24     a correction.

25          (REPORTER PLAYS BACK REQUESTED QUESTION)



**MILESTONE | REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

 1        THE WITNESS:  I wasn't demanding anything, nor
 2     did I think I was entitled to much.
 3        BY MR. ROPER:
 4     Q.   Okay.
 5     A.   Other than the fact someone did call me up, I
 6  would like to know what reason the call was made for.
 7  And if it was in regards to my public records request,
 8  picking up something, I -- I -- so what right do I think
 9  I have?  Apparently nothing at the very moment because
10  I'm not being treated as a citizen.  While other people
11  get serviced, I am not getting serviced at the very
12  moment.  So --
13     Q.   And --
14     A.   But call the cops on me.  That -- that I have
15  the rights for.  Again, simply just for trying to figure
16  out what's going on.
17     Q.   What fundamental legal right were you
18  asserting, sir, by trying to find out on September 14,
19  2021, who had called you earlier on?
20        MS. LAHART:  Objection.  Calls for a legal
21     conclusion.  Mr. Lee, you may answer the question.
22        THE WITNESS:  I am a citizen of the city.  I am
23     an American.  I think if any other citizen of the
24     city went in and decided to ask questions, I think
25     they have the same rights I do, right?  And I would

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      assert that they would return the favor on my

2      behalf, and I would have the same rights -- so when

3      -- when have they been stripped of me --

4          BY MR. ROPER:

5      Q.   Sir, once again, this is my question and your

6  answer session, not you asking me a bunch of questions.

7      A.   I just find your question a little facetious

8  at the very moment.  You're asserting that I don't have

9  rights and you're asking me what rights do I think I

10 have, when I felt they were quite clear, that as a

11 citizen and as a resident of the city, I have the right

12 on the Florida statute 119 to request public records.

13          I have the right to go in and conduct city

14 business.  I should be able to ask certain things, and I

15 should be able to inquire, like any other person.  I

16 don't know why they said no one's attending to me at

17 this very moment.

18          MR. ROPER:  Move to strike as nonresponsive.

19          BY MR. ROPER:

20     Q.   Is it your assertion that you have a

21 fundamental legal right to demand of city officials, who

22 it was that called you earlier that morning?

23          MS. LAHART:  Objection.  Calls for a legal

24     conclusion from a non-lawyer.  You may answer the

25     question, Mr. Lee.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

1          THE WITNESS:  I already answered it.  I said I

2      made no demands.  Do you hear me making any demands?

3          BY MR. ROPER:

4      Q.   I was asking you what legitimate legal right

5  or purpose you had in going to the Public Services

6  Building on September 14, 2021, to ask or demand why

7  somebody from that department apparently called you

8  earlier that morning before 7:00 a.m.?

9          MS. LAHART:  Objection.  Calls for a legal

10     answer from a non-lawyer.

11         MR. ROPER:  Yeah, yeah.  I know.  I've heard

12     that before and I'll give you a standing objection.

13     I'm just trying to see if I can get an answer that

14     is responsive to the question.

15         THE WITNESS:  I thought I did.  All right.  Let

16     me try.

17         BY MR. ROPER:

18     Q.   It would be helpful, sir, if you actually

19  listened to the question.

20     A.   I -- I'm listening.  I just find it very

21  sarcastic and backhanded at the very moment.  But I

22  mean, they have hours of operations on the door,

23  correct?

24     Q.   Sir, answer the question.

25     A.   Well, I -- if -- throughout the duration of



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1 the hours on the door, people can come in, people can

2 request services.  We have laws already in place to make

3 sure that those things are stipulated, to make sure we

4 can get public records, open records requests, whatever

5 the case might be.

6        So yeah, I should have any fundamental rights,

7 the same fundamental rights of anyone else throughout

8 these business hours.

9    Q.   So your only mission though that day, and

10 you've told us a couple of times, was to find out who

11 had called you and why earlier that morning, right?

12   A.   Right.

13   Q.   Right?  Is that correct?

14   A.   Was it --

15       MS. LAHART:  Yes or no?

16       THE WITNESS:  Yes.

17       BY MR. ROPER:

18   Q.   And you're asserting that you have a

19 legitimate fundamental legal right to do so; is that

20 correct?

21       MS. LAHART:  Objection.  You may answer the

22    question.

23       THE WITNESS:  I feel, yes, I do.

24       BY MR. ROPER:

25   Q.   Okay.  Thank you for answering that question.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1        MR. ROPER:  Continue playing the video, please,

2     Mr. Ring.

3            (VIDEO RECORDING PLAYED)

4            BY MR. ROPER:

5     Q.   Okay.  Mr. Lee, would you agree that the

6  videotape we just watched fairly and accurately

7  represents your actions and your behavior that

8  particular day?

9     A.   Sure.  Yes.

10    Q.   Okay.  And in light of the prior course of

11 conduct that preceded September 14, 2021 with the

12 various confrontations that you had had that we've gone

13 over in detail here in your deposition today, did it

14 occur to you on September 14, 2021 that you were

15 creating a disturbance for the folks at the City of

16 Gulfport?

17    A.   No.

18    Q.   As you sit here today, does that potential

19 arise in your mind that, you know, this can be viewed,

20 your behavior on this videotape, in light of the prior

21 course of conduct by you with regards to city staff,

22 police officers, elected officials, would've given them

23 some cause for concern that you were there to create a

24 disturbance?

25    A.   Asking for assistance is causing a


MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1  disturbance, then I guess I'm guilty.

 2      Q.   So is that a yes?

 3      A.   Repeat the question one more time for me.

 4          MR. ROPER:  Mr. Court Reporter, if you can read

 5      it back again.  Hopefully this time will get the

 6      whole question.  Not cut off the first three words.

 7          (REPORTER PLAYS BACK REQUESTED QUESTION)

 8          THE WITNESS:  No, I wasn't there to cause a

 9      disturbance.  Nothing I did would've arose for me

10      causing a disturbance other than asking for help and

11      public records.

12          BY MR. ROPER:

13      Q.   But you did just say if -- that if you're

14  charged, you're you stand accused?

15      A.   Say again.

16      Q.   Your testimony before that was that you're

17  guilty of that?

18          MS. LAHART:  Objection.  Mischaracterizes his

19      testimony.

20          BY MR. ROPER:

21      Q.   Okay.  Well, what did you say?

22      A.    I said, if -- if applying for services makes

23  me disturbing, then I guess I'm guilty of -- of just

24  that. If I'm not allowed to apply or ask for things and

25  that's going to be what causes a trespass I -- I've



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  forgotten what standards incident I need to apply at the

2  very moment in order for me to get anything.

3      Q.   Notwithstanding of the fact that you had pled

4  guilty several months before that to battery on a law

5  enforcement officer in that same area; is that correct?

6      A.   I already answered that question.

7      Q.   Well, you can answer it again.

8          MS. LAHART:  Humor him.  Answer it again.

9          THE WITNESS:  Again, I pled guilty in this

10     because I was forced to, not because I assaulted any

11     officer.  It was an accident.

12          BY MR. ROPER:

13     Q.   Were you arrested by Gulfport PD on September

14  14, 2021?

15     A.   I don't know for which case that was for.  Was

16  that for the --

17     Q.   No, that's the video we just watched.

18     A.   No.

19     Q.   Were you arrested that day?

20     A.   No.

21     Q.   Since September 14, 2021 to the present time,

22  have you ever filed a notice of appeal or an appeal to

23  the City of Gulfport pursuant to Gulfport Police

24  Department Written Directive 406?

25     A.   No.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      Q.    In regards to either of the trespasses --

2  trespass warnings that had been issued to you prior to

3  or on September 14, 2021?

4      A.    Were these warnings or actual trespasses?

5  That's --

6          MS. LAHART:  Answer the question.

7          THE WITNESS:  No.  No.

8          MR. ROPER:  Thank you, Ms. LaHart.

9          BY MR. ROPER:

10     Q.    Why?  Why not?

11     A.    I was never given the option to.

12     Q.    But prior to filing this lawsuit, you were

13 aware of that appellate remedy, correct?  Because you

14 cite it, your attorneys cite it repeatedly through the

15 lawsuit complaint itself.

16     A.    That's why we're here.  So my attorney can

17 take care of that.

18     Q.    Sir, it is vital in this process that you

19 listen to the question and that you answer it.

20     A.    Okay.

21     Q.    And the reason that this deposition is being

22 drawn out and probably the reason that you're going to

23 force us all to come back here at a later date to

24 continue this deposition is because you're not answering

25 the question.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1        Many of the direct, straightforward, easy to

2   understand and respond to questions, you engage in

3   verbal jousting or make some kind of sarcastic remark or

4   start asking me a question.  That doesn't do us any good

5   here.  Do you understand that?  Do you understand that

6   Mr. Lee?

7       A.   Yes.

8       Q.   Okay.  Well, we're going to take a quick break

9   so that you can have a chat with your attorney because

10  the more you conduct this type of obstructive behavior,

11  the more this is going to drag on for two or more days

12  of your deposition.  And I don't really want to do that,

13  but you're forcing my hand here with the way that we're

14  doing this, this far, okay?  We'll go off the record.

15          THE VIDEOGRAPHER:  At 3:48.  We're going off

16      the record.

17          (OFF THE RECORD)

18          THE VIDEOGRAPHER:  The time is 3:57.  We're

19      back on the record.

20          BY MR. ROPER:

21      Q.   Mr. Lee we are back on record.  Back under

22  oath.  My question -- or line of questioning that I was

23  asking you before the last break was: Whether or not you

24  were aware of the existence of Gulf Port Police

25  Department written directive 406 that was issued on

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  January 5th of 2022 that allows for an appeal of a

2  trespass warning on public property or in public

3  buildings?  Do you recall that line of questioning?

4       A.   Yes.

5       Q.   Okay, and I know you answered the question of

6  whether or not you had ever pursued an appeal of either

7  of the trespass warnings that were served on you prior

8  to September 14th of 2021 and you answered that with a

9  no; is that correct?

10      A.   Yes.

11      Q.   Were you aware of the existence of written

12 directive 406 of the Gulf Port Police Department prior

13 to filing suit in this case in 2023?

14      A.   I don't recall.

15      Q.   If your lawyers filed suit in this case on

16 December 29th of 2023, do you know when it was that you

17 first became aware of the existence of Gulf Port Police

18 Department written directive 406 passed on January 5th

19 of 2022?

20      A.   I don't recall this, but I'm going to assume

21 this and it was part of documents at some point.

22      Q.   I'm sorry.

23      A.   It was part of the -- the suit that I was --

24      Q.   In fact, it was attached as Exhibit 4 to the

25 initial lawsuit complaint.  Was it not?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    A.   Possibly.  I don't remember.

2    Q.   I can show you a copy of it.  Would you like

3 to see a copy of it to verify what I'm asserting?

4        MS. LAHART:  It's in the record.

5        BY MR. ROPER:

6    Q.   Well, he seems to, you know, I -- if he's

7 uncertain about it, I wanted to ask.

8    A.   Well, if it's in there, it's in there.  Yes.

9    Q.   Okay.  So I can show you at least the cover

10 page, but it's marked Exhibit 4 at the bottom to your

11 initial lawsuit complaint filed on 12-29-23.  There's a

12 total of five pages.  That's just the first one I handed

13 you.

14   A.   So where exactly am I looking at here?

15   Q.   That is a copy of Exhibit 4 to your initial

16 complaint.

17   A.   Yeah.  I'm trying to forgot it somewhere.  The

18 -- what's it called?

19   Q.   Appellate remedy?

20   A.   Yes.

21   Q.   That's on the other pages that I handed your

22 attorney that she just handed you towards the end.

23   A.   And you said it was 406 what?

24   Q.   It is at the end, sir, you have my only copy.

25   A.   Sorry.  Yes, it's here.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1     Q.    Okay.  And you've never pursued any appeal in

2  this case of either of those two trespass warnings,

3  correct?

4     A.    No.

5     Q.    Why not?

6     A.    Because I feel the person violating my rights

7  should not be the one  who has the authority to make

8  those decisions.

9     Q.    Okay.  Any other reasons besides that?

10    A.    That's --

11    Q.    That's it?

12    A.    That's it.

13    Q.    So you have made the conscious decision and

14 choice to deliberately not file an appeal of either of

15 those trespass warnings issued on or prior to September

16 14, 2021 to the Gulfport Police Department pursuant to

17 written directive 406.08; is that correct?

18    A.    Yes.

19    Q.    With regards to your arrest incident later on

20 in 2023 at the casino, my question to you is the same:

21 Have you ever filed an appeal with regard to that

22 trespass warning at the casino on that date, pursuant to

23 Gulfport Police Department written directive 406.08?

24    A.    On the date of my arrest?

25    Q.    No.  Since the date of that arrest.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

1     A.   I wasn't trespassed.

2     Q.   Sir, can you answer the question, please?

3     A.   I am.  I wasn't served any trespass notice.

4     Q.   Well, you didn't answer the question with a

5  yes or a no.  Did you file an appeal after that arrest?

6     A.   No.

7     Q.   Okay.  How hard is that?  Would you agree with

8  me that on April 27, 2023, prior to being arrested, you

9  were given a trespass warning by then Police Chief

10  Vincent?

11     A.   You said prior to April?  Prior to my arrest?

12          MR. ROPER:  Please read the question back for

13      the deponent.

14          (REPORTER PLAYS BACK REQUESTED QUESTION)

15          THE WITNESS:  Yes.

16          BY MR. ROPER:

17     Q.   Okay.  But since that time, you have not

18  pursued an appeal of that trespass warning pursuant to

19  Gulfport Police Department Written Directive 406, that

20  was passed previously to that date on January 5, 2022;

21  is that correct?

22     A.   Can you give me a minute?

23     Q.   If you could answer that question first I'll

24  give you as long as you want to take a break.

25     A.   I am again confused with your line of



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 questioning because I don't know what you mean by

2 trespass warning, trespass.  I'm answering your

3 questions only because I feel kind of forced to answer

4 yes or no for a moment, even if I'm confused.

5          But the last two questions, again, I would

6 like to know if we were talking about me being

7 physically given an actual trespass warning.  You said

8 prior or even after, I'm trying to figure out what the

9 dates are.

10    Q.   Okay.  I'll do my very best to clarify what

11 I'm asking, but you have --

12          MS. LAHART:  Can we go off the record for a

13     minute.

14          MR. ROPER:  Certainly.

15          THE VIDEOGRAPHER:  At 4:05 we're off the

16     record.

17          (OFF THE RECORD)

18          THE VIDEOGRAPHER:  At 4:09, we are back on the

19     record.

20          BY MR. ROPER:

21    Q.   Okay.  Mr. Lee, you were arrested at the

22 casino on April 27, 2023.  Do you recall that?

23    A.   Yes.

24    Q.   Okay.  Do you recall being told when you

25 arrived at the casino that day by Chief Vincent, that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  you were not welcome, but -- and that this was a private

2  event?

3      A.   Yes.

4      Q.   Do you remember him warning you that you were

5  not welcome on the property and that if you do come onto

6  the property, you will be asked to leave and that if you

7  do not leave, you will be arrested for trespassing?

8      A.   Yes.

9      Q.   Okay.  So would you agree with me that you

10 were given a verbal trespass warning at the casino

11 before being arrested on April 27, 2023 by Police Chief

12 Vincent?

13     A.   Yes.

14     Q.   Okay.  So let's get back to my original

15 question.  At any time subsequent to April 27, 2023,

16 have you ever filed an appeal pursuant to Gulfport

17 Police Department Written Directive 406.08 of that

18 verbal trespass warning by Chief Vincent on April 27,

19 2023?

20     A.   No.

21     Q.   And my next question to you is: Why not, prior

22 to filing this lawsuit?

23     A.   Because I wasn't trespassed.

24     Q.   You were arrested because you refused to

25 leave, right?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1       A.   I left the property.  I was on city property.

2  That was not part of the casino.  So yes, I did leave,

3  and I was arrested after for not leaving the city

4  property, which was not part of the event and which was

5  not part of the casino.

6       Q.   Okay.  We'll talk to that in a minute, but if

7  you can just answer the question.

8       A.   I didn't realize that a verbal trespass would

9  be the equivalent of an actual trespass.  I've been back

10 since then, and I haven't been arrested except for

11 trespass.  So that's where I'm confused.  I didn't

12 realize you had an appeal, a verbal trespass versus a

13 paper trespass, which is a little more obvious.  But --

14      Q.   Sir, once again.

15      A.   Okay.

16      Q.   I'm just asking you for a response.  Just

17 dispositive answer to a straightforward question.  Is

18 that a yes or a no?

19          MS. LAHART:  He gave you an answer to the

20      question.  He didn't realize that he had to appeal a

21      verbal trespass warning.

22          BY MR. ROPER:

23      Q.   All I'm asking for is a yes or a no.

24      A.   I did not know that I had to do it.  So no.

25 No, it would not --

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Q.   Okay.

2    A.   If I didn't know, I didn't realize it was a

3 thing.  Sorry.

4    Q.   A simple no or a yes --

5    A.   And I -- I'm learning myself today.  Thank you

6 for updating me on that.

7    Q.   You're learning yourself?

8    A.   I'm learning.  Definitely learning today.  It

9 is something I did not realize you had to appeal a

10 verbal trespass, so yes.  Thank you.

11    Q.   I simply asked you if you did, sir.

12    A.   No, because I wasn't aware of it.

13    Q.   Okay.  And you were arrested for trespassing

14 that day, right?  April 27, 2023?

15    A.   Yes.

16    Q.   Okay.  Dustyn, can you go to that video?  Now,

17 as we're cuing up Mr. Lee, this is the video -- this is

18 a video of the -- 27-23 incident.  Sorry.

19         (VIDEO RECORDING PLAYED)

20         BY MR. ROPER:

21    Q.   Okay.  Did you film that, sir?

22    A.   Yes, I did.

23    Q.   And did you receive an e-mail from Chief

24 Vincent the day before that event warning you not to

25 show up for that private event?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

1      A.   I received it after I got out of jail at 2:30

2  in the morning.

3      Q.   You read it after you got out of jail for the

4  first time at 2:30 in the morning?

5      A.   That's when I received it, yes.

6      Q.   Do you know what time the e-mail was actually

7  sent by Chief Vincent to you?

8      A.   No idea.

9      Q.   Can you controvert Chief Vincent's statements

10 that it was actually sent the day before April 27, 2023?

11     A.   I remember it's in the e-mail being generated

12 at 10:00-ish that morning, from what my things said, not

13 the date prior.

14     Q.   Okay.

15     A.   But then again -- again, I don't recall when

16 it was initiated.  I remember receiving it at 2:30.

17         MR. ROPER:  Now, Dustyn, if you could, this

18     clip is -- oh, it's right on me.  No wonder.  Thank

19     you. Now, Dustyn, if -- can you please rewind that

20     tape?

21         (VIDEO RECORDING PLAYED)

22         BY MR. ROPER:

23     Q.   Okay.  So you can pause it right there.  So

24 Mr. Lee, looking at the video, would you agree with me

25 that you're standing essentially between a handicap ramp

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  that Chief Vincent is standing at the very top of with

2  adjacent steps or stairs to your right as you're facing

3  Chief Vincent in the casino building?

4      A.   Yes.

5          MR. ROPER:  Okay.  And I think we're up to

6      Exhibit number 3, now?

7          MR. RING:  Yes, sir.

8          BY MR. ROPER:

9      Q.   Let me show you what I've marked as Exhibit 3.

10  This is a photograph of that area taken much more

11  recently since the hurricane, but let me ask you just to

12  look at that and let me ask you a couple of questions

13  about that.  Do you do you recognize that photograph?

14          (EXHIBIT 3 MARKED FOR IDENTIFICATION)

15      A.   Yes.

16          BY MR. ROPER:

17      Q.   Would you agree with me that that's the casino

18  building?

19      A.   To the left.  Yes.

20      Q.   Okay.  And in that photograph, Exhibit 3 for

21  the city, does that show the area where you were

22  standing as you're filming this video here, the April

23  27, 2023 incident at the Gulfport Casino?

24      A.   Yeah, it was in the public access.

25      Q.   Okay.  But you're standing pretty close to, or

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

 1 immediately adjacent to, that handicapped ramp that

 2 Chief Vincent is standing on, correct?

 3      A.   I'm about six foot from it.

 4      Q.   Okay.  And is that area depicted in Exhibit 3,

 5 the photograph I just handed you?

 6      A.   Would you like me to circle it?

 7      Q.   Sure.

 8      A.   That's where I was standing.

 9      Q.   Okay.

10           MS. LAHART:  Can I see that?

11           MR. ROPER:  Sure.

12           THE WITNESS:  Sorry.

13           MS. LAHART:  It's okay.

14           BY MR. ROPER:

15      Q.   And previously, had you actually walked either

16 up that handicap ramp or up the stairs onto that porch

17 there?

18      A.   Yes, I did.

19      Q.   Okay.  And why were you there that day?

20      A.   I was looking to make an appointment with Ian.

21      Q.   With Ian who?

22      A.   Council Member Ian O'Hara.

23      Q.   Okay.  And why were you meeting him there at

24 the casino that day?

25      A.   I wasn't meeting him there.  He just drove by

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  in his red car.  So I figured give him a little time, I

2  thought he was going to get coffee.  I was unaware that

3  there was an event.  So once I saw his red car out

4  front, I attempted to see if I could set up an

5  appointment with him.

6      Q.  Okay.

7      A.  And was told it was a private event, wasn't

8  allowed.  I stepped off.

9      Q.  Okay.  And would you agree with me that this

10  video that we just watched, and we can watch it again,

11  if necessary, fairly and accurately represents your

12  actions that day, to the extent they were videoed in

13  this video?

14      A.  Yes.

15      Q.  Okay.  Now, the e-mail that Chief Vincent sent

16  to you prior to this incident, but which you did not

17  read until after you got out of jail, stated, "I have

18  received intelligence indicating that either or both of

19  you may be planning to make an appearance at this event.

20  Please note that this is a private event, open only to

21  those who have been invited.

22          Since neither of you have been invited, I am

23  warning you that you are not welcome on the property. If

24  you do come onto the property, you will be asked to

25  leave.  If you do not leave, you will be arrested for

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  trespassing.  Likewise, if you harass any of the guests

2  or create a public disturbance, you may be arrested for

3  such conduct as well.  Please conduct yourselves

4  accordingly."

5        Do you recall reading that e-mail in the

6  aftermath of your arrest?

7    A.   Yes.

8    Q.   Do you recall who the other individual that e-

9  mail was directed to?

10   A.   Rodriguez.

11   Q.   Ry Rodriguez?

12   A.   Yes.

13   Q.   And is Ray Rodriguez a friend of yours

14  currently?

15   A.   He's never been a friend of mine.

16   Q.   Okay.  And are you an acquaintance of Ray

17  Rodriguez?

18   A.   Yes.

19   Q.   So you're not friends, but you're

20  acquaintances?

21   A.   Yes.

22   Q.   And how is it that you're acquainted then?

23  What is the nature of the acquaintance?

24   A.   With the issues of Gulfport.

25   Q.   His complaints against Gulfport and your

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       **Toll Free 855-MYDEPOS**

1 complaints against Gulfport; is that correct?

2     A.   Yes.

3     Q.   Is there any other basis other than that for

4 your acquaintance with Ray Rodriguez?

5     A.   Not really.

6     Q.   Have you harassed former Councilman Paul Ray

7 of the Gulfport City Council?

8     A.   You said harassed?

9     Q.   Yes, sir.

10     A.   Would you mind defining harassing?

11     Q.   Has Mr. Ray ever accused you of harassing him?

12     A.   Sure.  Yes.

13     Q.   Okay.  And what is it that he has accused you

14 of harassing him by doing?

15     A.   Confronting him, videotaping him, asking

16 questions.

17     Q.   And why have you been confronting Paul Ray in

18 the past?

19     A.   Every single time decided to tell me that I

20 can go do this, it was the opposite.  Anytime he offered

21 advice, again, never panned out.  Anytime I brought my

22 issues to him, never once did he document it or report

23 it to the city manager, which you would hope so, but I

24 couldn't get any further, other than running around in

25 circles.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1      Q.   And what were you requesting his assistance

2   regarding?

3      A.   Looking into the discriminatory practices.

4      Q.   The discriminatory practices of whom or what?

5      A.   Again, the racial discrimination issues

6   between white vendors being able to operate versus

7   Latinos or Blacks being able to do the same.

8      Q.   Have you ever used homophobic remarks with

9   regards to Paul Ray?

10     A.   No.

11     Q.   So you've never ever called him homophobic

12  names?  Is that your testimony?

13     A.   I -- I refer to them as the Queens of

14  Gulfport.

15     Q.   What's that?

16     A.   The Queens of Gulfport.  They're Gecko

17  (phonetic) Queens, or at least one of them is.

18     Q.   Okay.  Have you ever used any type -- other

19  type of homophobic comments with regards to Mr. Ray or

20  his husband?

21     A.   No.

22     Q.   Other than the Queens of Gulfport?

23     A.   Yes.

24     Q.   Have you ever driven by Paul Ray's residence

25  yelling his name and using your phone to video record

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1  him as you pass by his house, yelling things at his

 2  house?

 3      A.   I would never harass anyone at their house, so

 4  no.

 5      Q.   So your testimony is that he has -- you have

 6  never driven by his house at any point in time and

 7  verbally harassed him from the car as you were driving

 8  by, yelling things, videoing it on your cell phone; is

 9  that correct?

10      A.   No.  Never happened.

11      Q.   You're sure of that, sir?

12      A.   Pretty positive.

13      Q.   In any type of city events, have you ever

14  harangued Paul Ray or his husband from the right-of-way

15  or the sidewalk in that event?

16      A.   I have confronted him at events, yes.

17      Q.   Why?

18      A.   False arrest.  Asking him as to what he's

19  planning to do about it, and he would just ignore me

20  consistently.  Either go inside the casino or do

21  something different.  He would never respond or take

22  action.  He's the one claiming the -- have introduced

23  the HRO (phonetic) here in Gulfport, and yet we can't

24  seem to file anything with it.

25           So he's quite proud of gloating about it, but



MILESTONE **|** REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 not allowing people to do anything with it.  And there

2 was another gay person who was being harassed here too

3 and he did nothing about that either.

4　　　Q.　　Do you recall -- strike that.  With regards to

5 the April 27, 2023 incident at the casino, prior to

6 being placed under arrest, were you ever -- did you ever

7 agree to leave the position you were filming from, prior

8 to being arrested?

9　　　A.　　Say again?

10　　　Q.　　Sure.  We watched the video, and in fact, it's

11 frozen on the spot where you were videoing from.

12　　　A.　　Okay.

13　　　Q.　　Okay?  My question is: did you ever agree to

14 leave and actually leave from that spot, after being

15 told by Chief Vincent to do so?

16　　　A.　　Which spot?  The one I'm in now --

17　　　Q.　　The spot where you're filming, yes.

18　　　A.　　-- or the one I --

19　　　Q.　　The spot where where you're standing and

20 filming and --

21　　　A.　　Well, I agreed to leave the casino.  I

22 definitely left the casino.  I'm on public access right

23 now.  So no, I did not agree to leave because it was

24 open to the public.  It was that part of the casino.

25　　　Q.　　So would you agree with me that you're -- the



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900　　　　www.MILESTONEREPORTING.com　　　Toll Free 855-MYDEPOS

1  spot where that video is frozen right there, and if we

2  can -- well, we can see that evidently on here, but

3  would you agree with me that you stayed in that same

4  spot despite being told by Chief Vincent to leave?

5      A.  I wasn't exactly in that same spot.  I'm

6  pretty sure I was moving around in that area, but I was

7  in the area, yes.

8      Q.  Okay.

9      A.  And yes, he did ask me to leave the area, and

10  I refused to leave, yes.

11     Q.  Okay.  Why did you refuse to leave?

12     A.  Because everyone else was being allowed access

13  to it.  There was no closure.  There was no ties.  There

14  was nothing disallowing the public from entering that

15  area.  He admitted that in court, that he only targeted

16  me and Ray.  He allowed everyone else access.  It was

17  also openly admitted in court that again, he knew

18  better.  So that was that part of the casino, and you

19  could ask Justin -- got him recorded three times, their

20  boundary lines is to the white railings, and he knew

21  that.

22     Q.  Have you ever heard of the curtilage of a

23  structure or a building?

24     A.  Sure, yes.

25     Q.  Do you know what a curtilage means?



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      A.   It's city access.  If I'm correct, it allows

2  the city to access certain water meters, power lines.

3      Q.   That's an easement.

4      A.   Okay.  Then no, if you want to explain it.

5          MS. LAHART:  No.

6          BY MR. ROPER:

7      Q.   That's not my job here today, sir.

8      A.   All right.  Then, no, I don't.

9      Q.   Okay.  So do you know whether or not the point

10 where you're standing right there, that you refused to

11 move from that day, is or is not within the curtilage of

12 that casino building?

13     A.   So with the city sidewalk but, yeah,

14 everything would be a curtilage at the -- moment.  It's

15 open access to the public.

16     Q.   Sir, once again, if you understand what a

17 curtilage is then you can answer it, but I -- I'm simply

18 looking for a yes or a no.

19     A.   Would someone just give me the definition of a

20 curtilage?

21         MS. LAHART:  No.

22         THE WITNESS:  Okay.  I will assume anything

23     that's surrounding this business -- a building, that

24     you would consider curtilage?

25         MS. LAHART:  You're not asking the questions.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1          THE WITNESS:  Sorry.  I want to make sure that

2      I answer his question appropriately, but --

3          MS. LAHART:  You have.

4          THE WITNESS:  Okay.

5          BY MR. ROPER:

6      Q.   Do you know whether or not you're standing

7  within the curtilage at that spot in the still shot of

8  the video on that date, April 27, 2023, or no?

9      A.   If by curtilage you mean anything surrounding

10  the building, yes.

11     Q.   Okay.  You have accused Ms. Banno of being a

12  bully.  Barbara Banno.

13     A.   It's Banno.

14     Q.   Banno, right?

15     A.   Yes.

16     Q.   And why did you consider her to be a bully?

17     A.   Because she had no intention of letting me

18  into the event.

19     Q.   What event?

20     A.   Any event.  She was in part of a -- in charge

21  of the GMCA.  So no point doing anything if you're not

22  going to be allowed to do it, but why I find her most of

23  a bully is the fact that she went ahead with the city's

24  assistant to create Chapter 13 in order to assist them

25  in violating law, because that's what they're doing at

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1  the very moment with that in place.  Then to attack me

 2  for following rules and having officers come down and

 3  give me false tickets.  So that's bullying, yes.

 4      Q.   Okay.  Did you post -- I'm going to hand you

 5  and your attorney a copy of what I've labeled Exhibit

 6  number 4 for the city.  Did you post that on social

 7  media?

 8          (EXHIBIT 4 MARKED FOR IDENTIFICATION)

 9      A.   I don't recall.  Possibly.

10          BY MR. ROPER:

11      Q.   You don't recall, but possibly?

12      A.   Yeah, this was what was on my cart.

13      Q.   I'm sorry?

14      A.   This was the sign on my cart.

15      Q.   Okay.  And what social media website would

16  this have been posted on?

17      A.   Probably on the Voices of Gulfport.

18      Q.   Okay.  What would you post that on social

19  media, sir?

20      A.   Because she's currently assisting the city in

21  violating the Florida Statute law.  They created rules

22  and ordinances that clearly, even if you follow, she's

23  still out there bullying you.  She came out as an acting

24  entitled, telling the officer that she owned the

25  sidewalk, and the officer had to tell her, no.  She

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1  tried to have me trespassed from a sidewalk.  Like I'm

2  following rules, and I'm still being condemned over it.

3  Meanwhile, she's the one that assisted them in

4  implementing it.

5      Q.  Okay.

6      A.  She doesn't like it, unimplement it with him,

7  and give me the ability to open up my business, and give

8  me clear guidance and, you know, sections where I can go

9  to operate my business.  But if you're forcing me --

10  you're creating the problem.  She's creating the problem

11  and, again, you're in violation of the law.

12      Q.  Okay.  So in response, you create a poster

13  sign and you also post on social media online that

14  "Barbara Banos," B-A-N-O-S, "is a bully," exclamation

15  mark. "Know your rights," exclamation mark, and "boycott

16  Barbara Banos."

17      A.  Yep.  Yes.  If it is.  I'm not sure if I

18  posted.  I don't recall that, but I definitely had that

19  on my cart.

20      Q.  Okay.  Is that the sign that was -- you

21  testified to earlier was torn up?

22      A.  Yes.  It was a bigger one that I made.

23      Q.  Okay.  Do you -- would you agree with me that

24  the Pinellas County County Court in case numbers 20-

25  14077-MO and 20-14469-MO, in the bench trial of December



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

 1  16, 2021, ruled -- Judge John Carballo, ruled as a

 2  matter of law that your ice cream vending cart was not a

 3  food dispensing vehicle as defined by Chapter 509,

 4  Florida Statutes?

 5      A.   If I'm -- that's what he said, but I don't

 6  agree with him.  He bypassed --

 7          MS. LAHART:  That wasn't the question.

 8          THE WITNESS:  He --

 9          MR. ROPER:  Yes or no, sir.

10          THE WITNESS:  He declassified me, yes.

11           BY MR. ROPER:

12      Q.   All right.  And did you ever obtain a permit

13  from the Department of Business and Professional

14  Regulation?

15      A.   I received my license, yes.

16      Q.   Okay.  Could you let me finish my question.

17      A.   Oh, sorry.  I thought you ended it back there.

18      Q.   No.  Did you ever obtain a permit from the

19  Department of Business and Professional Regulation to

20  operate a mobile food dispensing vehicle in Gulfport

21  prior to your initial trespass warning and citation for

22  operating without a permit?

23      A.   Prior to my trespass warning?

24      Q.   Yes.

25      A.   I'm so confused with the ending of that



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1 though, but yes, I had a license through the State.

2      Q.   Did you have a license from DBPR, Department

3 of Business and Professional Regulation?

4      A.   Yes.  I had a license through the agency I was

5 supposed to go through.

6      Q.   Okay.  Here we go again.   Isn't it true,

7 sir, that you are -- the permit that you have is issued

8 by the Department of Agriculture and Consumer Services?

9      A.   There's two different regulatory agency, one

10 that deals with restaurants and one that deals with --

11 specifically with ice cream trucks.  The one I was

12 supposed to get my license to was specifically done

13 through that department.  They're one and the same, but

14 it's two separate --

15      Q.   They're not one and the same department, sir.

16      A.   That's how it was explained to me.

17      Q.   Okay.  Let's go back to it, okay?  The permit

18 that you had that you asserted entitled you to serve ice

19 cream on your cart in Gulfport, was that not issued by

20 the Department of Agriculture and Consumer Services?

21      A.   That was the one, yes, that determined my

22 licensing, yes.

23      Q.   Okay.  Do you have a permit, or have you ever

24 had a permit, to either sell ice cream or mobile food

25 dispensing in a vehicle from the Department of Business



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  and Professional Regulation?

2      A.   I was told that there were one -- I don't --

3           MS. LAHART:  Yes or no, God damn it.

4           THE WITNESS:  I thought my license was

5      specifically through them, so I -- I don't know.

6      I'll have to go look at my license.

7           MS. LAHART:  Apologies for my outburst.

8           MR. ROPER:  It's quite all right.  Completely

9      understand.

10          BY MR. ROPER:

11     Q.   There we go.  Maybe this will help shed some

12 light for you.  Got three copies, so let me give you and

13 your attorney one, and Mr. O'Reilly.  Is that the permit

14 that you have?

15     A.   That's the license they gave me, yes.

16     Q.   Okay.  And will you agree with me, if you look

17 right at the very top, it says Florida Department of

18 Agriculture and Consumer Services, Division of Food

19 Safety?

20     A.   Yes.

21     Q.   Okay.  So did you ever have any other permit

22 besides this one?

23     A.   No.  I was told this was my license that I

24 needed to operate.

25     Q.   By whom?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    A.   When I called up -- I called up both

2  departments.  I was told that that department did not

3  handle me.  It would need to be the specific one for

4  anything that's prepackaged, that I would only do the

5  other one I was homemaking -- making my own ice pops.

6    Q.   And I'm sorry, because I didn't catch your

7  answer, if you did, but which department were you

8  talking with or to?

9    A.   I was talking to the one you mentioned prior,

10 but that is if I'm actually making my own stuff.

11   Q.   Okay.

12   A.   Which requires a commercial kitchen,

13 everything else, but since I was selling pre-packaged, I

14 would fall underneath that specific department to be

15 licensed.

16   Q.   Okay.  Let me hand you a copy of Florida

17 statute -- I'll hand it to your attorney and then ask

18 her to hand it to you, but for the record, I'm handing

19 you a copy of Florida Statute, Section 509.013.

20         THE VIDEOGRAPHER:  And so the permit was

21      Exhibit number 5, correct?

22         MR. ROPER:  Were we on 5?

23         THE VIDEOGRAPHER:  Yeah, the poster was 4.

24         MR. ROPER:  Okay.  There we go.

25         Yes, so for the record, I have labeled the



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1       permit from Florida Department of Agriculture and

2       Consumer Services, Division of Food Safety, as

3       Exhibit number 5.

4            (EXHIBIT 5 MARKED FOR IDENTIFICATION)

5           MR. ROPER:  Okay.  So --

6           MS. LAHART:  Mr. Roper.

7           MR. ROPER:  Yes.

8           MS. LAHART:  That is not the permit.  That is

9       an inspection report.

10          MR. ROPER:  Oh, I'm sorry.  You're right.

11           BY MR. ROPER:

12      Q.   But is this reflective of the permit that you

13  had?

14          MR. ROPER:  You're absolutely right, Counsel.

15          MS. LAHART:  No, we'll stipulate he has no

16      permit from the Department of Business and

17      Professional Regulation.

18          MR. ROPER:  Okay.

19          MS. LAHART:  And he's never applied for one.

20          THE WITNESS:  I did apply for one.  I was --

21          MS. LAHART:  No, you didn't.  Whatever. There's

22      no question pending now.

23           BY MR. ROPER:

24      Q.   Let me just get this final question in and

25  then we'll be done for at least today.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

1           In Chapter 509.013, first of all, it defines

2     in Subsection 1, what division means, the division of

3     hotels and restaurants of the Department of Business and

4     Professional Regulation.  You see that?

5           A.   Yes.

6           Q.   Okay.  You go -- flip over to second page,

7     5(a) of that statute defines public food service

8     establishment, right, as meaning, "Any building,

9     vehicle, place or structure or any room or division in

10    any building, vehicle, place or structure where food is

11    prepared, served, or sold for immediate consumption, or

12    in the vicinity of the premises, called for or taken out

13    by customers, or prepared prior to being delivered to

14    another location for consumption."

15          Do you see that?

16          A.   Yes.

17          Q.   Okay.  And then that's Subsection 5(a).  Right

18    below it, Subsection 5(b) says, "The following are

19    excluded from the definition in paragraphs sub (a)." And

20    if you go down to (b)6, one of those exceptions is, "Any

21    place of business issued a permit or inspected by the

22    Department of Agriculture and Consumer Services under

23    Section 500.12."

24          Do you see that?

25          A.   Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    Q.   Okay.  So would you agree or disagree with me

2  that, since the only license or permit that you had was

3  from the Florida Department of Agriculture and Consumer

4  Services, Division of Food Safety, that you would be

5  excluded under that statutory definition of Florida

6  Statute Section 509.013, Subsection 5(b)6?

7         MS. LAHART:  Objection as to form.  Please

8     answer the question, Mr. Lee.

9         THE WITNESS:  I don't know if I will be

10     excluded, no.

11         BY MR. ROPER:

12    Q.   Why wouldn't you, based on a plain reading of

13  a straightforward statute?

14         MS. LAHART:  Objection, argumentative.  Answer

15     him.

16         THE WITNESS:  Because I was told that I needed

17     to go specifically to this department to get

18     licensed under the agency that you're referring to.

19         BY MR. ROPER:

20    Q.   Okay.  Did your ice cream cart have any type

21  of mobile kitchen on it?

22    A.   No.

23    Q.   Did it contain any type of electricity?

24    A.   Yes.

25    Q.   What type of electricity did it contain?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      A.   A 12 volt.

2      Q.   What?

3      A.   12 volt for navigation and its own separate

4 source for the bike itself, for the temperature-

5 controlled ice box.

6      Q.   Okay.  Did it have -- did you serve any actual

7 prepared food beyond ice cream?

8      A.   No.

9      Q.   Did you have any type of gas in it?

10      A.   Say it one more time?

11      Q.   Gas?  Is it gas or --

12      A.   Gasp or gas?

13          MS. LAHART:  Gas.  G-A-S.

14          THE WITNESS:  Sorry.  There's no gas.  No, it's

15      electric.

16          BY MR. ROPER:

17      Q.   Did you have any self-contained utilities in

18 there, including for -- utilities for liquid waste

19 disposal?

20      A.   Yes.  There was a basket.

21          MR. ROPER:  Okay.  All right.  Unfortunately we

22      are nearing the end of the business day, and

23      pursuant to federal local rules, absent stipulation

24      of the counsel, we are going to adjourn this

25      deposition for today, and also in light of Madam

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    Videographer who has a video or another depo that's

2    starting at 5:00 p.m., so we're going to adjourn for

3    the time being, and we will take the matter up

4    later.

5        THE VIDEOGRAPHER:  Before we go off the record,

6    are there going to be any orders for the transcript

7    or video today?

8        MR. ROPER:  Yes, I will place an order for the

9    transcript and the video.

10       THE VIDEOGRAPHER:  Is there any rush on that?

11       MR. ROPER:  No.

12       THE VIDEOGRAPHER:  And would you like any

13   copies, Ms. LaHart?

14       MS. LAHART:  No, thank you.

15       THE VIDEOGRAPHER:  And then can we explain the

16   read or waive?

17       MR. ROPER:  Do you want to read or waive?

18       MS. LAHART:  If you would like, you have the

19   opportunity to review the transcript to see if the

20   court reporter accurately wrote down what you said.

21   You do not have the right to go back and change your

22   testimony, only to see if it was accurately

23   recorded.  Given that there's a video of your

24   testimony, I think that would be a complete waste of

25   time but -- so you waive?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1          THE WITNESS:  Yep.

2          THE VIDEOGRAPHER:  Thank you.  That concludes

3     today's deposition of Jesse Lee.  We're going off

4     the record at 4:53 p.m.

5          (DEPOSITION CONCLUDED AT 4:53 P.M. ET)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF ORANGE

     I, the undersigned, certify that the witness in the foregoing transcript personally appeared before me and was duly sworn.

Identification:  Produced Identification



_____

CHALEN CAFIERO

Court Reporter, Notary Public

Commission Expires: 08/08/2028

Commission No. HH 579949

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

1                C E R T I F I C A T E

2

3

4

5

6        I,  CHALEN CAFIERO, Court Reporter and Notary

7   Public, do hereby certify that I was authorized to and

8   did report the foregoing proceeding, and that said

9   transcript is a true record of the said proceeding.

10

11        I FURTHER CERTIFY that I am not of counsel for,

12   related to, or employed by any of the parties or

13   attorneys involved herein, nor am I financially

14   interested in said action.

15

16   Submitted on: February 3, 2025.

17

18

19

20

21   _____

22          CHALEN CAFIERO

23          Court Reporter, Notary Public

24

25



**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**



EXHIBIT
1



EXHIBIT

2



*This is a farther-away photo of the area where Plaintiff was arrested at the Gulfport casino, showing the broader area. It is currently cordoned off because of hurricane damage.*



EXHIBIT

3

# Barbra Banos is a bully!
# Know your rights!
# #BoycottBarbraBanos

## Economic Liberty

### Mobile Food Vendors

### Case

Economic liberty is your right to earn an honest living in the occupation of your choice, free from arbitrary and excessive government restrictions and regulations.

Mobile food vendors are individuals selling foods (other than fresh fruits and vegetables) from trucks, trailers or similar self-propelled conveyances, or non-fixed structures such as tables, booths or kiosks.

Select Year: 2020 | Go

Home
Senate
House
Citator
Statutes, Constitution, & Laws of Florida
**Florida Statutes**
**Search Statutes**
Search Tips
**Florida Constitution**
**Laws of Florida**
Legislative & Executive Branch Lobbyists
Information Center
Joint Legislative Committees & Other Entities
Historical Committees
Florida Government Efficiency Task Force
Legislative Employment
Legistore
Links

**Interpreter Services for the Deaf and Hard of Hearing**



## The 2020 Florida Statutes

| | | |
|---|---|---|
| **Title XXXIII**<br>REGULATION OF TRADE, COMMERCE, INVESTMENTS, AND SOLICITATIONS | **Chapter 509**<br>LODGING AND FOOD SERVICE ESTABLISHMENTS; MEMBERSHIP CAMPGROUNDS | **View Entire Chapter** |

**509.102    Mobile food dispensing vehicles; preemption.—**

(1)  As used in this section, the term "mobile food dispensing vehicle" means any vehicle that is a public food service establishment and that is self-propelled or otherwise movable from place to place and includes self-contained utilities, including, but not limited to, gas, water, electricity, or liquid waste disposal.

(2)  Regulation of mobile food dispensing vehicles involving licenses, registrations, permits, and fees is preempted to the state. A municipality, county, or other local governmental entity may not require a separate license, registration, or permit other than the license required under s. 509.241, or require the payment of any license, registration, or permit fee other than the fee required under s. 509.251, as a condition for the operation of a mobile food dispensing vehicle within the entity's jurisdiction. A municipality, county, or other local governmental entity may not prohibit mobile food dispensing vehicles from operating within the entirety of the entity's jurisdiction.

(3)  This section may not be construed to affect a municipality, county, or other local governmental entity's authority to regulate the operation of mobile food dispensing vehicles other than the regulations described in subsection (2).

(4)  This section does not apply to any port authority, aviation authority, airport, or seaport.

History.—s. 75, ch. 2020-160.

Copyright © 1995-2020 The Florida Legislature • Privacy Statement • Contact Us

**EXHIBIT**
4



Florida Department of Agriculture and Consumer Services
Division of Food Safety

**FOOD SAFETY INSPECTION REPORT**

Chapter 500, Florida Statutes
(850) 245-5520

Print Date: March 11, 2020



Visit # 3326-0012-42
Bureau of Food Inspection
Attention: Business Center
3125 Conner Boulevard, C-26
Tallahassee, FL 32399-1650

NICOLE "NIKKI" FRIED
COMMISSIONER

| | |
|---|---|
| Food Entity Number: | |
| Food Entity Name: | NakedPops |
| Date of Visit: | March 11, 2020 |
| Food Entity Address: | 5621 Tangerine Ave S Gulfport, FL33707-4157 |
| Food Entity Mailing Address: | 5621 Tangerine Ave S Gulfport, FL 33707-4157 |
| Food Entity Type/Description: | 164/ Mobile Vendor |
| Food Entity Owner: | WiteLee |

Owner Code:

## INSPECTION SUMMARY - Met Inspection Requirements

On March 11, 2020, NakedPops was inspected by LAWRENCE BURKE, a representative of the Florida Department of Agriculture and Consumer Services. Any violations observed during this inspection must be corrected to be in compliance with Chapter 500, Florida Statutes, and Rule 5K-4, Florida Administrative Code.

## PERMIT APPLICATION INFORMATION

The permit application information was verified with management or a qualified representative.

## COMPLIANCE KEY

IN = In Compliance   OUT = Not In Compliance   N/O = Not Observed   N/A = Not Applicable

## FOODBORNE ILLNESS RISK FACTORS AND PUBLIC HEALTH INTERVENTIONS

| Violation Number | Compliance Status | Violation Description |
|---|---|---|
| 1 | IN | Supervision: Person in Charge present, demonstrates knowledge, and performs duties |
| 2 | IN | Employee Health: Management, food employee and conditional employee; knowledge, responsibilities and reporting |
| 3 | IN | Employee Health: Proper use of restriction and exclusion |
| 4 | IN | Good Hygienic Practices: Proper eating, tasting, drinking, or tobacco use |
| 5 | IN | Good Hygienic Practices: No discharge from eyes, nose, and mouth |
| 6 | N/O | Preventing Contamination by Hands: Hands clean and properly washed |
| 7 | N/A | Preventing Contamination by Hands: No bare hand contact with ready-to-eat foods or approved alternate method properly followed |
| 8 | IN | Preventing Contamination by Hands: Adequate handwashing sinks, properly supplied and accessible |
| 9 | IN | Approved Source: Food obtained from approved source |
| 10 | N/A | Approved Source: Food received at proper temperature |
| 11 | IN | Approved Source: Food in good condition, safe and unadulterated |
| 12 | N/A | Approved Source: Required records available: shellstock tags, parasite destruction |
| 13 | N/A | Protection from Contamination: Food separated and protected |
| 14 | N/A | Protection from Contamination: Food-contact surfaces: cleaned and sanitized |



EXHIBIT

5

tabbies