UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:23-cv-02996-VMC-AEP

JESSE LEE,

    Plaintiff,

vs.

CITY OF GULFPORT and
JAMES O'REILLY

    Defendants.
_____/

## AFFIDAVIT OF JUSTIN SHEA

**STATE OF FLORIDA**
**COUNTY OF PINELLAS**

Before me, the undersigned authority, personally appeared Justin Shea, who makes this Affidavit in the county and state aforesaid, who having been first sworn, deposes and says:

1. My name is Justin Shea. I am over 18 years of age and have personal knowledge of the facts contained in this affidavit, which are true and correct and are the same as I would testify to at trial.

2. I am the Cultural Facilities Events Supervisor for the City of Gulfport. I have held this position since January of 2014. In this role, I oversee the Cultural Facilities & Events Department in the City of Gulfport. In my role, I operate out of the Gulfport Casino.

3. On July 27, 2020, in response to receiving a City Council handout from Mr. Lee from the July 21st, 2020 City Council meeting, I responded to Mr.

Lee's questions via a memorandum. In said memorandum, a copy of which is attached hereto as Ex. "A," I explained to Mr. Lee that the City's Code of Ordinances allows for the temporary suspension of certain provisions of the Code, and authorizes City services and accommodations for special events. This ordinance, Ordinance No. 2003-13, was adopted on May 20, 2003. I further advised him of the timeline for when the City drafts the special events calendar each year. Generally, organizations provide a general idea of the date on which they would like their event placed on the calendar and those dates are cross referenced with the Casino's calendar to ensure that there are no scheduled conflicts with rental events. The organization proposing to conduct a special event submits the first phase of the special event application package to the City, the special event application, the events guide, their site plan, their public safety agreements, and an application fee (if any). The information is then reviewed and submitted to the City Council for approval.

4. At that time, due to the COVID-19 pandemic, all special events had been cancelled, and applications for the fiscal year 2021 were projected to be submitted on a "phased-in" approach pending clearance for public health purposes.

5. I further made clear to Mr. Lee that per the City Council's resolution 2019-20, authorized pursuant to Chapter 25 of the City's Code, which provides for various City fees to be adopted and amended by resolution, there was a $50.00 nonrefundable special event fee for organizations making application to the City of

Gulfport who charge an admission fee and/or charge any type of sponsor/vendor/promoter/registration or participation fees. An exemption was provided in Resolution 2018-20, as I noted, for organizations that do not charge an admission fee, are free and open to the public, and do not charge any type of sponsor/vendor/promoter/registration or participation fees.

6. Regarding citations for mobile vending, I informed Mr. Lee that the City Manager was advised by Chief Vincent on June 9, 2020 that the Police Department had not issued any citations for mobile food vending violations, nor had the Gulfport code enforcement department issued any violation notices for mobile vending. This was in response to a photograph Mr. Lee sent me of a food truck operating downtown.

7. I also then informed Plaintiff, JESSE LEE, in August 2020, regarding the procedure for obtaining a permit to operate his ice-cream cart on the City's public rights-of-way, if he so desired, after he inquired about becoming a mobile ice cream vendor. I then explained to him the process for either being a vendor at a special event or going through the special event application process. A special event application was provided to him at the Gulfport Casino, where we met. Following this, to the best of my knowledge, Mr. Lee never applied for such a special event permit, nor indicated a desire to go either of these routes.

8. I responded to several emailed questions from Mr. Lee on many occasions in 2020 when he contacted me regarding special events and provided details regarding the same.

9. I have personally witnessed Mr. Lee engage in threatening verbal behavior not only towards City Manager James O'Reilly, but also towards me myself.

10. I also attended a meeting with Mr. Lee and State Representative Jennifer Webb at the Gulfport Casino front lobby area during the Summer of 2020 regarding his complaint about not being able to mobile vend in the City of Gulfport. During this meeting, Mr. Lee became visibly upset and again began using profanity. I advised him not to use language that is inappropriate for public discourse, especially when conducting City business. Despite this, Mr. Lee continued to be argumentative, frequently interrupting the State Representative and displaying profane and aggressive behavior throughout the meeting.

11. During the 4th of July parade in 2024, I personally witnessed Mr. Lee as he exhibited aggressive and argumentative behavior, verbally berating and harassing individuals attending the parade event. In an attempt to de-escalate the situation, I advised him that he was not acting in a respectful manner. In response, he directed profane language at me, telling me, "Mind your fucking business."

12. On a Wednesday afternoon in the Summer of 2024, I took time off from work to take a family member to a dentist appointment. After their appointment, I returned to work at the Gulfport Casino with said family member. While on the sidewalk outside the Casino, Mr. Lee approached us and engaged in confrontational and harassing behavior. His argumentative demeanor made my family member uncomfortable, and as a result, they have since refused to attend

City of Gulfport events with me due to their negative experience with Mr. Lee's behavior.

13. Regarding the area of the front of the Gulfport Casino in which I was informed that Plaintiff was standing when he was arrested on April 27, 2023, we have long used the decorative patio/landing pad for the Casino for catering vehicles as well as, at various times, parking for the Casino, although we no longer park there. It was confirmed to me that the decorative patio is an integral part of the Gulfport Casino facility. The decorative patio area is designated as a service zone for private events held within the Casino.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JUSTIN SHEA

BEFORE ME, the undersigned Notary Public, this day appeared JUSTIN SHEA, who is personally known to me or who has provided proper identification in the form of _____, and she acknowledged under oath that she executed the foregoing affidavit freely and voluntarily.

SWORN AND SUBSCRIBED before me this 28th day of May 2025, 2025.



NOTARY PUBLIC

_____

Page 5 of 6

Signature of Notary

_Lori N. Roach_
Printed Name of Notary

My Commission Expires 7/4/2026

# Exhibit

# "A"



CITY OF GULFPORT, FLORIDA
Office of the Cultural Facilities
Events Supervisor

Memorandum

DATE: Monday, July 27, 2020

TO: Mr. Jesse Lee

THROUGH: City Manager, James E. O'Reilly

FROM: Cultural Facilities Events Supervisor, Justin Shea

RE: Responses to your Questions from the July 21, City Council Meeting

Mr. Lee,

I received your City Council handout from the July 21st City Council Meeting. The City's responses are below.

**1a.** Section 17-30 of the City of Gulfport Code of Ordinances allows City Council, by resolution, to authorize the temporary suspension of certain provisions of the Code of Ordinances and authorizes City services and accommodations for special events. This ordinance, Ordinance No. 2003-13, was adopted on the 20th of May, 2003.

**1b.** During the springtime of each year, the City starts drafting the special events calendar. Organizations provide a general idea of the date in which they would like their event placed on the calendar. City Staff then cross references with the Casino rental calendar to make sure the rental events and special events do not conflict with each other. For example, we do not want to book a wedding at the Casino with a major street closure on Beach Blvd. Then, the organization submits the first phase of the special event application package to the City, the special event application, the events guide, their site plan, their public safety agreements, and an application fee (if any). The information is reviewed and submitted to City Council for approval. However, due to the uncertainty of the COVID-19 pandemic, all special events are cancelled until further notice. The special event application submittals for FY21 are projected to be submitted on a phased in approach. As soon as we have clearance that events are able to come back, we will ask event organizers to submit their applications to the City.

**1c.** On February 15, 2005, City Council passed Ordinance 2005-02, which created Chapter 25 of the Code of Ordinances providing for the organization of the City's fees into one section of the Code. Chapter 25 of the Code of Ordinances provides for various City fees to be adopted and amended by resolution. Beginning with the event application process in Fiscal year 2018-2019, City Council passed Resolution 2018-20 implementing a $50.00 nonrefundable special event fee for organizations making application to the City of Gulfport, Florida who charge an admission fee and/or charge any type of sponsor/vendor/promoter/registration or participation fees. In addition, Resolution 2018-20 provides an exemption from the application fee for organizations/groups that do not charge an admission fee, are free and open to the public, and do not charge any type of sponsor/vendor/promoter/registration or participation fees.

**1d.** The City desires that the events be free, open to the public, family friendly, have minimal impact on City Residents, and support a local community based organization.

**2a.** Annually, City Council approves a resolution providing for the City of Gulfport sponsored and cosponsored community based Special Events; including the associated waivers to the applicable Code of Ordinances, per section 17-30, and the authority to allow for the City Manager to provide specific services needed to hold each event for the proposed 2019-2020 City sponsored, co-sponsored, and community based events.

**2b.** The Application must be made by or on behalf of the President or CEO of the city based non-profit organization, which is the sponsor/promoter of the event. To add clarification for individuals, organizations make these applications to the City for special events.

**3a.** When will **this** become effective and enforceable? What are you referencing when you say this?

**4a.** Staff has not discussed with a majority of brick and mortar business.

**4b.** Not applicable.

**5a.** The City Manager was advised by Chief Vincent on June 9, 2020 that the Police Department has not issued any citations for mobile vending violations. In addition, Code Enforcement has not issued any violation notice for any citations for mobile vending violations.

**5b.** The State of Florida definition of mobile vending calls for a legal interpretation.

**6.** I cannot speak to that.


Respectfully,

*[signature]*

~Justin Shea
City of Gulfport
Cultural Facilities Events Supervisor



# (no subject)

**Jesse Lee** <mrjessele@gmail.com>
To: Jesse Lee <mrjessele@gmail.com>

Mon, Jun 15, 2020 at 9:39 AM

RCVD 15 JUN '20

==The City of Gulfport did not issue any type of license or permit to an individual to operate as a mobile food vendor (ice cream trucks or carts, food trucks, etc.) for the date of Saturday, June 13th, 2020.==



Requesting copies of all permits and licensing for this event on June 13th 2020 from City Manager and Permits Department.

JMr Lee 361-558-1704

On Mon, Jun 15, 2020 at 9:33 AM Jesse Lee <mrjessele@gmail.com> wrote: