UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:23-cv-02996-VMC-AEP

JESSE LEE,

    Plaintiff,

vs.

CITY OF GULFPORT and
JAMES O'REILLY

    Defendants.
_____/

## AFFIDAVIT OF JAMES O'REILLY

**STATE OF FLORIDA**
**COUNTY OF PINELLAS**

Before me, the undersigned authority, personally appeared James O'Reilly, who makes this Affidavit in the county and state aforesaid, who having been first sworn, deposes and says:

1. My name is James ("Jim") O'Reilly. I am over 18 years of age and have personal knowledge of the facts contained in this affidavit, which are substantively the same as I would testify to at trial.

2. I work for the City of Gulfport as its City Manager. I have served in this capacity since September 2008.

3. The City of Gulfport, despite being located within a large metropolis, is a City of about 12,000 residents. The City's City Hall complex is a single-story, relatively small complex. The front corridor area is a short entryway with the City

Council chamber doors to the right and the police department to the left, down the hallway. Multiple departments are housed within the City of Gulfport's modest-sized City Hall complex, including the city clerk's office, the utility building, finance, our human resources and risk management departments, and the City Manager's office. In close spatial proximity to City Hall are the fire department, the public works department, and the community development building—all within one contiguous campus.

4. As part of my job, I have had numerous personal and telephonic interactions with Plaintiff, JESSE LEE ("Lee"). Unfortunately, from early on in my personal interactions and relations with Lee, he has frequently, if not always, been hostile, aggressive, and confrontational with me.

5. I met and had interactions with Lee a couple of times in early 2019 to earnestly try to assist him in his efforts to open an ice-cream cart business that he expressed to me that he had an interest in opening and running in the City of Gulfport. When I explained that mobile vending has never been allowed on City rights-of-way in the City of Gulfport, and that the Gulfport Merchants Association was the entity responsible for issuing Special Event permits for vending in the Waterfront Redevelopment District area, he did not like the answer and insisted that he had previously observed mobile vending taking place. I made it clear at that time that if anyone was, I was not aware of it, particularly if it was happening on City-owned rights-of-way.

6. After I informed Mr. Lee of the same, he almost instantaneously launched into an angry diatribe in my first interaction with him, which took place over the phone in January 2019, over the course of 1 ½ hours, claiming that I was a liar, that mobile vending was clearly being permitted in some cases, and that he was being discriminated against. Lee repeatedly cursed at me and interrupted me anytime I would attempt to interject or give my input.

7. Following this initial, unproductive phone conversation which lasted over an hour and a half, I met with Lee in person a few days later. This meeting was an in-person replay of the prior phone call, with Lee constantly talking down to and insulting me, profanely cursing at me, and repeatedly interrupting me. The meeting was very loud and disruptive of the overall City Hall workplace, given the very close proximity of the adjacent departments and offices, but I felt it was my responsibility to try to assist him and see if I could help him achieve what he wanted. I explained to him the process for becoming a part of a special event, and how to apply with the Gulfport Merchants Association by filing an application with them, paying a fee, and providing proof of insurance, so that he could, if he wanted, still operate his ice-cream cart. Parts of the City's code are waived for special events, as the whole public right-of-way is often shut down for that special event, and Lee could have operated his ice-cream cart as part of a special event. This was made very clear to him by me at that time.

8. Between the two meetings with Lee in early 2019, several subsequent phone calls in mid-2020, and at least one in-person encounter with him in June of

2020, it became clear that Lee had a demonstrated pattern of deliberately attempting to disrupt and disrespect the workplace environment of the City of Gulfport, for me and all affected City employees. He seemed to me to be a volatile and unpredictable man, and I did have safety and welfare concerns in regard to what he might end up doing to one of my employees. An example of this behavior can be witnessed by a body-camera video of Mr. Lee throwing a CD at a Gulfport police officer, Joshua Stone, on July 22, 2021, after which Mr. Lee was arrested for battery on a law enforcement officer.

9. Lee also started to demonstrate a consistent tendency, beginning in 2020, to film—oftentimes close up and in people's faces—his interactions with City employees, including many who are or were not public-facing officials or "public figures." This made several of my employees very uncomfortable.

10. On September 4, 2020, with the above background being one I was fully cognizant of, Lee showed up to the Building Department and then City Hall, after he demanded in-person service at the Building Department, which was at the time closed for COVID-19, and was informed that that was not possible due to the COVID lockdown, and Mr. Lee then became physically aggressive by forcing open the Building Department entrance door. Lee pushed the handicap button to the Building Department door repeatedly, making it impossible for the Building Department to remain closed. He then expressed a desire over the phone to file a complaint against the individual who assisted him at the Building Department in a subsequent call with City Hall, allegedly because he was denied in-person service.

11. At that time, and based upon Mr. Lee's physically aggressive actions and verbal statements, I made the decision to trespass Lee from further consistently, carelessly, and inappropriately disrupting the workplace of City Hall and making it difficult for those working therein, for whom I am responsible, to do their public-service jobs. To facilitate the orderly and productive operation of the City Hall and the Building Department, which are part of one relatively small and homogenous municipal complex, I asked for a trespass warning to be issued to Lee, which a Gulfport police officer then delivered to him.

12. I did not personally direct the police to "permanently ban" Lee from the City Hall complex. The City's police department had a then-policy of "indefinitely" trespassing individuals, but the policy as to duration was decided at that time by the police officers delivering the trespass warnings. The actual duration of such warnings was never determined or decided by me or the City and was something one could appeal to me as City Manager to be reconsidered, revoked, or reduced/limited in scope.

13. Lee was further informed when he was issued the trespass warning on September 4, 2020 that he was not being limited from attending meetings of the Gulfport City Council or otherwise doing business with the City Hall, but that it would have to be over the phone, over email, or over the website. This was particularly important at that time due to the COVID-19 pandemic and lockdown.

14. Our City Hall has continued to do business with Lee via email, the City's website, and even in person at City Hall. He has been accompanied by

officers to do in-person business at City Hall on multiple occasions. Even with police escorts, unfortunately, he has still been insulting, aggressive, and demanding towards employees and police officers, and has often yelled or screamed at employees.

15. Following Lee's September 4, 2020 trespass, I was informed of numerous instances in which he aggressively approached City of Gulfport police officers and demanded that they take certain actions or conduct themselves in a certain manner.

16. Lee, due to a belief that any regulation of his ice-cream cart was preempted by state law also showed up on City rights-of-way with his ice-cream cart or stand without authorization multiple times in the summer of 2020, as well as October and November of 2020, and was ultimately ticketed by code enforcement for doing so.

17. Beach Boulevard, part of the Waterfront Redevelopment District in Gulfport, which is where Mr. Lee would always attempt to operate his ice-cream cart, is a relatively narrow, straight road which leads down to the Gulfport Casino and the bay area, with small, brick-and-mortar businesses and trees lining both sides of the road. A photograph depicting the roadway is attached to this affidavit as Ex. "A."

18. There was a period of regulatory uncertainty in the summer of 2020 during which we did not take any action as to any mobile vendors, pending legal

clarification as to the effects of the recent legislative bill, § 509.102, Fla. Stat., that passed in the legislature on March 12, 2020.

19. Our interpretation of the bill that was passed was that it prohibited us from requiring a license, registration, or permit as a condition for a "mobile food dispensing vehicle" (food truck)'s operation within our City; from requiring a fee for mobile food-dispensing vehicles beyond those established by DBPR as a condition for operation within our City; or from prohibiting mobile food-dispensing vehicles from operating within the entirety of the City's jurisdiction.

However, as a County Judge later ruled, Mr. Lee's ice-cream cart does not fit or meet the criteria for this food truck (mobile food dispensing vehicle) statute, is not regulated by DBPR, and is instead regulated pursuant to Chapter 500 by FDACS. Mr. Lee has never agreed to or appeared to understand this distinction.

20. An ordinance was passed by the City of Gulfport in August 2020, section 13-84, which regulates "mobile food-dispensing vehicles" or food trucks' operation in the City of Gulfport.

21. The ordinance allows food trucks to operate on private property with the permission of the property owner, or on City rights-of-way in conjunction with a special-event permit provided certain requirements are met. This is consistent with Fla. Stat. § 509.102 and with what a lot of jurisdictions in the State of Florida, to my knowledge, have done in response to the food truck bill, and is not inconsistent with the requirements of the bill.

22. I personally do not have any knowledge of whether the owner of "The Pig & Pole," referenced in Plaintiff's Complaint, had permission from a private property owner to be operating her food truck when she was observed by Plaintiff. I only know that, upon an investigation, she was not a part of a special event on the days in question. She could have operated her food truck consistently with section 13-84 by getting the permission of a private property owner.

23. Regardless, her operation was only investigated after the fact after Lee brought the issue up. We have never had anyone else refuse to leave a City right-of-way when asked to do so, or to refuse to make a good-faith effort to comply with City ordinances and regulations. Lee was only ticketed by code enforcement because he persistently showed up and attempted to operate his ice-cream cart without being part of a special event or having a permit for outdoor sales on private property (for which one can get a conditional-use permit in the CL-1, CL-2, and WRD zoning districts).

24. In February 2021, I was made aware of an instance in which Lee showed up downtown and was verbally and profanely taunting several businesses from the right-of-way and disrupting their businesses by harassing their customers and their managers. He was ultimately trespassed from the Art Village courtyard.

25. On July 22, 2021, Lee, following a vitriolic verbal interaction with Commander Stone of the Gulfport Police Department, struck Commander Stone in the back of his knee/hamstring with a CD that he considered inadequate/defective as a production in response to a public records request that

he had made, allegedly because it would not work on his computer. Lee was arrested for, and later pled guilty to, the felony offense of battery on a law enforcement officer.

26. When Lee showed back up to the Gulfport City Hall on September 14, 2021, and was verbally abusive to City employees and again disturbing the work environment of City Hall, and would not leave until an answer was provided to him for an alleged phone call he had received from City Hall, while claiming that he was doing a so-called "First Amendment audit" and filming City employees, I again directed a trespass warning to be issued to him. He had already been trespassed from the complex, but it was not clear that he understood that. Even from outside, Lee made my employees very uncomfortable with his filming and Mr. Lee was continually abusive verbally and loud and disruptive.

27. I had telephone conversations, to the best of my recollection, with Lee following his September 4, 2020 trespass in which I advised him of the right to appeal his trespass to me, but he made it very clear that he viewed such an appeal as meaningless and would not be interested in pursuing an appeal that I would decide.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JAMES O'REILLY

BEFORE ME, the undersigned Notary Public, this day appeared JAMES O'REILLY, who is personally known to me or who has provided proper identification in the form of _____, and she acknowledged under oath that she executed the foregoing affidavit freely and voluntarily.

SWORN AND SUBSCRIBED before me this 29th day of May, 2025.

[Notary Seal: LORI N. ROACH, NOTARY PUBLIC, STATE OF FLORIDA, MY COMMISSION EXPIRES 7-4-2026, COMMISSION NUMBER HH 283766]

**NOTARY PUBLIC**

_____
Signature of Notary

Lori N. Roach
Printed Name of Notary

My Commission