UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSE LEE                                          CASE NO. 8:23-cv-02996-VMC AEP

    Plaintiff

v.

CITY OF GULFPORT
&
JAMES O'REILLY

    Defendants

# PLAINTIFF JESSE LEE'S RESPONSE TO JAMES O'REILLY'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 Plaintiff JESSE LEE ("LEE" or "Plaintiff") by and through his undersigned counsel, and pursuant to Rule 56, Fed.R.Civ.P. and Local Rule 3.01, hereby files this Response to Defendant JAMES O'REILLY's ("O'REILLY") Motion for Summary Final Judgment [Doc. 88].

## INTRODUCTION

O'REILLY has moved for summary judgment on LEE's claims that his procedural and substantive due process rights were violated when, without explanation or a meaningful chance to appeal he was issued a trespass banning him from Gulfport's City Hall with an expiration denoted "Indefinite" and a subsequent trespass from Gulfport's Building Department with an expiration of "Never." (DE 87-1: pg 3 and 4) O'REILLY also asserts he is entitled to summary judgment as to LEE's claim of retaliatory arrest.

In support of this his summary judgment motion O'REILLY provides a disjointed and argumentative Statement of Material Facts replete with character assassinations that are in no way "material" or even relevant to LEE's claims. O'REILLY, like his co-defendant CITY OF GULFPORT apparently fails to understand that this case is about whether LEE's due process rights were violated and not about whether the trespass warnings issued to LEE were justified, or reasonable, or whether LEE somehow "forfeited any liberty interest he may have had." O'REILLY has also failed to show that there are no genuine disputes of material fact regarding the existence of probable cause for LEE's arrest at the Gulfport Casino.

# RESPONSE TO O'RIELLY'S STATEMENT OF MATERIAL FACT
# CONCLUSION

1.      O'REILLY's first "material fact" is an argumentative and extraneous narration of the alleged character of LEE's Amended Complaint. Whether LEE's alleged "misinterpretation or misunderstanding" of the laws pertaining to vending are "seemingly incorrigible" is a matter of opinion, not a fact, much less a material fact. Furthermore, O'REILLY's citation to LEE's 30 pg amended complaint is not a "pinpoint citation" to a particular part of the record as required by this Court's Order on Motions For Summary Judgment.

2.      Admitted.

3.      Admitted.

4.      Denied. LEE's sworn testimony that he applied for a permit is evidence. (DE 89-2 pg 31: 25-32:5)

5.      There is no paragraph 5 contained in O'REILLY's Motion For Summary Judgment.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      There is no paragraph 9 contained in O'REILLY's Statement of Material Facts.

10.     Admitted.

11.     Lori Roach was never identified as a potential witness pursuant to Rule 26 and therefore her statement cannot be used to support a summary judgment motion.[1] See *Jett v. Del Toro*, No. 5:22cv90-MW/MJF, 2023 U.S. Dist. LEXIS 237932, at *3 (N.D. Fla. Sep. 21, 2023). (A party who fails to provide information or identify a witness through initial disclosures or proper supplementation of discovery responses "is not allowed to use that information or witness to supply evidence on a motion ...unless the failure was substantially justified or is harmless.") Fed. R. Civ. P.37(c)(1); see also, *Steffek v. Client Servs.*, 948 F.3d 761, 768 (7th Cir. 2020) ("a motion for summary judgment supported by an affidavit from a witness not previously disclosed in the case ordinarily will cause problems that Rule 26(a)(1)(A)(i) and (e)(1) and case management plans are intended to prevent"). However, LEE does not dispute that he spoke

---

[1] GULFPORT's Rule 26 disclosures are attached as Exhibit 1. LEE's counsel has no record of receiving Rule 26 disclosures from O'REILLY.

with O'REILLY on the phone on the dates alleged.

12. As stated supra, the Affidavit of Lori Roach should not be considered in ruling upon O'REILLY's motion for summary judgment because she was never identified as a witness. *See, e.g., Martino v. Kiewit N.M. Corp.*, 600 F. App'x 908, 909 (5th Cir. 2015) (affirming order striking summary-judgment evidence that the proffering party failed to produce).

13. In response to the second Paragraph 12, admitted.

14. Deny that whether LEE was profane with a previously unidentified witness, or whether LEE has an opinion regarding whether "it was proper to speak with a public servant in such a manner" are material facts.

15. Whether LEE called Lori Roach names and which names he called her is not a material fact germane to any claim in this case.

30. O'REILLY's Statement of Material Facts does not contain Paragraphs 16-29. Paragraph 30 is not a statement of material fact. Rather, Paragraph 30 contains multiple allegations, none of which are material to whether LEE's due process rights were violated or there was reasonable cause for his arrest at the GULFPORT casino.

31. Deny that OREILLY issued a trespass warning "because of the COVID 19 lockdown." OREILLY testified LEE was trespassed based upon a complaint someone made, but he did not recall who made the complaint but thought that LEE's behavior with the building department has escalated and "he was pulling on the door or something." (DE 87-2 pg 17:24 -19:6.)

32. Denied. According to the Motion to Dismiss filed on behalf of O'Reilly:

> Mr. O'Reilly would also note that <u>while Plaintiff filed a racial discrimination complaint with the City,</u> there is no evidence or allegation that he pursued an appeal of the decision on that complaint through the state courts of Florida. (emphasis added) (DE 47: pg 15, footnote 6)

33. Deny that any of these multiple allegations are material facts relevant to any issue in this case. Deny that LEE threw a CD at Officer Stone's hamstring/rear knee area. (DE 89-2, pg 131:2-17, 135:7-15)

34. Deny that allegations regarding LEE's interactions with the identified Gulfport employee even if true are material facts probative of whether OREILLY's motion for summary judgment should be granted. Deny that LEE assaulted Officer Stone. (DE 89-2, pg 131:2-17)

35. Deny that O'REILLY's "impressions" of LEE constitute material facts probative of whether O'REILLY's motion for summary judgment should be granted.

36. Denied. LEE had been trespassed only from City Hall on September 14, as of 2021. (DE 87-1 pg 2-5) Deny that LEE's alleged conduct on September 14, 2021 is material to whether his due process rights were violated by being given the trespass stating its expiration was "Never." (DE 87-1 pg 4)

37. Paragraph 27 is not a statement of material fact. It is a rambling indictment of LEE's character taking up more than an entire page. Furthermore, Shirley Debucci was never identified as a potential witness pursuant to Rule 26 and therefore her statement cannot be used to support a summary judgment motion. Finally, that LEE used vulgar language is immaterial to the claims he has raised, as are the alleged death threats received by "some individuals" allegedly "in response to publicity effectuated by LEE" having supposedly sent "footage of incidents he has video taped to so-called "First Amendment Auditors."

38. Admit Vincent sent a threatening email to LEE. Deny that LEE was "within the curtilage of the building." (DE 89-2 pg 170:1-5, 173:20-174:3) (DE 87-3 pg 32:1-19) Admit that Gulfport's Police Chief arrested LEE.

39. Deny that the allegations in Paragraph 39 are material facts probative of whether O'REILLY's motion for summary judgment should be granted.

## RESPONSE TO O'REILLY'S MEMORANDUM OF LAW

### I. Summary Judgment Standard

This Court is well versed in the standards and presumptions that guide consideration of summary judgment motions. *United Nat'l Ins. Co. v. Sutton Place Ass'n, Inc*., No. 8:23-cv-2926-VMC-NHA, 2025 U.S. Dist. LEXIS 22973 (M.D. Fla. Feb. 10, 2025)

### II. OREILLY is Not Entitled to Qualified Immunity

To be entitled to qualified immunity, the defendant must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful conduct occurred. *Foy v. Sheriff of Jefferson Cty*., No. 23-11302, 2025 U.S. App. LEXIS 4899, at *11 (11th Cir. Mar. 3, 2025) citing *Christmas v. Harris Cnty*., Ga., 51 F.4th 1348, 1354 (11th Cir. 2022). If the defendant does so, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id*. To overcome the defendant's defense of qualified immunity, the plaintiff must show both: (1) that the defendant violated a constitutional right; and

(2) that the right violated was clearly established. *Id.*

There is no factual dispute that O'REILLY was acting withing his discretionary authority when he directed that trespass warnings be issued to LEE preventing him from returning to City Hall indefinitely and imposing a ban on LEE visiting the Building Department that expires "Never." O'REILLY confirmed that he determines the duration of a trespass (DE 87-2 pg 39:16-22) and that he has never directed that a trespass be issued for a shorter time than permanent or indefinite. (DE 87-2 pg 40 1-4.)

The 11th Circuit recognized more than a decade ago that issuing trespass warning preventing individuals from returning to city owned properties without a process to challenge the trespass warning is a due process violation. *Catron v. City of St. Petersburg*, 658 F.3d 1260 (11th Cir. 2011) O'REILLY attempts to distinguish the trespasses preventing LEE from returning to City Hall and the Building Department from those at issue in *Catron* because in *Catron* the plaintiffs were trespassed from a city park, not a city building. This distinction is meaningless. Nothing in *Catron* limits the holdings to parks, to the contrary the 11th Circuit, citing to the Supreme Court case *City of Chicago v. Morales*, 527 U.S. 41, 119 (1999) found "a private liberty interest in lawfully visiting city property that is open to the public," not just city parks. *Id.* at 1267. The *Catron* court concluded that Plaintiffs' factual allegations that the City prohibited them from being in city parks, on public sidewalks, and at bus shelters located on public sidewalks indicated "there is more than a sheer possibility" that Plaintiffs have been deprived of a constitutionally protected liberty interest. *Id.*

On July 11, 2019 and July 12, 2019 Gulfport police officials expressed concerns that the *Catron* case "would make the issuance of trespass warnings on our city owned property, without due process to challenge the warning, unconstitutional." (D 87-2, pg 113) Similar concerns had been expressed by another Gulfport police officer a couple months earlier. (D 87-2, pg 111). O'REILLY testified that he had been made aware of those concerns, (D 87-2 , pg 56:61-60) and in fact was even copied on the July 11, 2019 email.

O'REILLY's motion for summary judgment asserts that "it cannot be said under the factual circumstances that Mr. O'Reilly violated "clearly established law" by having LEE, who had been and was continuing to be abusive and disruptive, trespassed from two nonpublic fora (City Hall and the adjacent Building Department) pursuant to Florida's trespass statute." Clearly established law requires that all

persons be afforded due process, including those who have been "abusive and disruptive." LEE has shown a violation of his constitutional rights to due process. Not only was that right clearly established, OREILLY nonetheless persisted notwithstanding clear legal precedent brought to his attention by concerned Gulfport employees. O'REILLY's claim that he is entitled to qualified immunity is baseless.

### III. OREILLY Failed to Demonstrate He is Entitled to Summary Judgment Regarding LEE's Substantive Due Process Claims

O'REIILY repeats the mantra that "there is not right of unfettered access to public buildings" without pointing to any record evidence that LEE has ever asserted such a right. According to O'REILLY, "Courts have consistently held that the interior of government buildings—like the one in this case—are nonpublic fora." Because LEE has alleged the trespass warnings violate his Due Process rights, not his First Amendment Rights, whether City Hall and/or the Building Department are public fora is irrelevant. Different Amendments.

Next O'REILLY attempts to distinguish the case at hand from *Catron* on the basis that Catron involved a public park, "which is a quintessential traditional public forum, not at all comparable to a City Hall lobby, or Building Department entrance or lobby, both of which are nonpublic fora." He again misses the point, LEE does not assert a right to access City Hall or the Building Department because they are public fora but because they are city properties that are open to the public generally and he wishes to have the same access to those places for innocent purposes under ordinary conditions as other members of the public visit. (DE 28 ¶ 75, 81). This is not an unreasonable ask. See *Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115 (M.D. Fla. 2019) (Plaintiffs have a constitutionally protected liberty interest to be in parks or other city lands of their choosing that are open to the public generally. This right likely extends to City Hall.") *citing Cuellar v. Bernard*, No. SA-13-CV-91-XR, 2013 U.S. Dist. LEXIS 43145, 2013 WL 1290215, at *4-5 (W.D. Tex. Mar. 27, 2013).

For reasons unexplained O'REILLY's summary judgment motion references the right to interstate travel, even though LEE has never asserted a violation of his right to interstate travel. And yet again it is asserted that "LEE certainly has no unrestricted right to access any public space or building he desires to enter at any given time," providing no citation to record evidence that LEE has ever asserted such a right. He has not.

"Conscience-shocking" is admittedly a high bar, which O'REILLY asserts cannot possibly be met under the facts of this case. However, it cannot be said that trespassing citizens from city property permanently without prior warning, without notice of the alleged conduct that resulted in the issuance of the trespass and without providing an opportunity for any sort of pre or post deprivation hearing does not violate substantive due process. In *Catron* the 11th Circuit Court of Appeals did not address whether a person's interest in remaining in a a public place of his choice is a "fundamental right" for the purpose of substantive due process, but it did note that an individual's interest in being in parks or on other city lands "is as much a part of his liberty as the freedom of movement inside frontiers that is a part of our heritage, or the right to move to whatsoever place one's own inclination may direct." (citation omitted)

The ordinance at issue in *Catron* required trespass warnings to be for a limited time. For first-time violations, the trespass-warning period was limited to one year; for all other violations, the trespass-warning period could not exceed two years, yet the *Catron* court found "more than a sheer possibility" that by prohibiting the plainitffs "from being in city parks (in general, and in Williams Park specifically), on public sidewalks, and at bus shelters located on public sidewalks" the City had deprived plaintiffs of a constitutionally protected liberty interest. If trespass of comparative short duration can implicate a claim for violation of substantive due process, surely a permanent ban from city property can as well. See *Deans v. Las Vegas Clark Cty. Library Dist.*, No. 2:16-cv-02405-APG-PAL, 2018 U.S. Dist. LEXIS 242615, at *42-43 (D. Nev. May 24, 2018)( However, the trespass policy—and its incidental restriction on protected expressive activities—is greater than is essential to the furtherance of the District's interests. The District produces no evidence showing why a year-long ban from all libraries was tailored to its interests. The main justification offered for the length of the ban was that it was the national standard. The District offers no justification for why Deans' refusal to petition in the designated zone and subsequent refusal to leave the library for the day warranted a year-long ban. Nor did it offer a justification for why such violations of its Rules of Conduct warranted a ban from every library in the district.) Candidly, Deans' yearlong library ban was found to violate the First Amendment, which is not at issue here, but the case does suggest that the imposition of a permanent ban from the entire city hall campus is not just arbitrary but sufficiently oppressive and heavy handed to be "conscience shocking." A year and a half after the filing of the case and almost 5 years after LEE was trespassed from City Hall Defendants failed to produce a single case

upholding a municipality's permanent or even indefinite trespass of a citizen from public property that is generally open to the public.

OREILLY points out "a line of case law supporting the usage of the State of Florida's trespass statutes to trespass people from public property." Those cases are easily distinguishable. In *Adderley v. Florida*, 385 U.S. 39, 41 (1966), student protestors blocked a driveway to a jail not normally used by the public. The Court considered whether the protesters' criminal convictions for trespass were unconstitutional, and held they were not. In so ruling the Court determined that a jail did not constitute a public forum, traditional or otherwise, for "jails, built for security purposes," are not open to the public. There is a big difference between a jail driveway not open to the public generally and City Hall.

Finally, OREILLY cites *Downer v. State*, 375 So. 2d 840 (Fla. 1979) for the proposition "the fact that one is exercising First Amendment rights while violating otherwise proper restrictions upon their entry to a public facility does not insulate them from prosecution for trespass." LEE's claims do not involve criminal prosecution and are not based on the First Amendment.

**IV.     There are Disputed Material Facts Regarding the Existence of Probable Cause for LEE's Arrest**

OREILLY asserts that "[t]here should have been no doubt that he was on the Casino's property, as he was literally standing on the curtilage of that building directly adjacent to a sign which says "GULFPORT CASINO." Yet former Chief Vincent conceded that whether the place LEE was standing was considered part of the casino "depends on who you ask." (DE 87-3 pg 32:15-19)

OREILLY's motion asserts that "[t]here is no genuine issue of material fact that there was no clearly established right for Plaintiff to access, or be at, a private, invitation-only event on April 27, 2023." LEE was never at the event. At the time of his arrest he was 50 feet from the door to the casino. (DE 87-3 pg 32:11-14) LEE did not try to force his way into the casino (DE 87-3 pg 32:6-8) There is no evidence that LEE was violent or prevented invited guests from attending the event, and all he was doing when he was arrested was standing 50 feet away from the door filming Chief Vincent and "refusing to leave."

Mr. Vincent LEE opined that LEE was required to leave upon his command "[b]ecause the City Manager said he did not want him on the property during the event." (DE (DE 87-3 pg 33:6-11) However, the City Manager testified that he did not speak with Mr. Vincent regarding LEE's rumored plan to disrupt the Gulfport Volunteer appreciation luncheon until after LEE had been arrested. (DE 87-3 pg 24: 12- 25:18.)

O'REILLY also testified that he did not have anything to do with the decision to tell LEE he could not come to the casino, or to arrest him when he did. (DE 87-3 pg 32:8-14)

Former police chief Vincent was asked what he had done "to ensure that there was a legitimate reason for asking [LEE] to leave" and he testified that he was not required to determine whether there was a legitimate reason because even though the casino is city property "when it was being used for a private event, it's completely different. It's no longer public property." (DE 87-3 pg 34:25-35 :8.) There is no record evidence that portion of public property occupied by LEE when he was arrested, 50 feet away from the door, (DE 87-3 pg 32:11-14) was being used for the Gulfport Volunteer appreciation luncheon or that LEE's presence had any adverse impact on the event at all.

## V. O'REILLY Failed to Demonstrate He is Entitled to Summary Judgment Regarding LEE's Procedural Due Process Claims

O'REILLY first improperly "refers to and incorporates by reference the arguments made, and the case law cited, in his Motion to Dismiss filed in this case [Doc. 47 ¶¶ 17-22]." Local Rule 3.01(f) prohibits parties from incorporating by reference all or part of any other motion, legal memorandum, or brief.

Next O'REILLY asserts that LEE cannot prove a deprivation of a constitutionally protected liberty interest because the First Amendment does not guarantee unfettered right of access to public buildings simply because [they] are owned or controlled by the government. Defendants' incessant repetition of this undisputed assertion does not change the fact that LEE has never demanded unfettered access to city property.

O'REILLY reminds us that the "the interior of government buildings are nonpublic forums." While that statement is overly broad, it also misses the point. LEE has not alleged the trespass warnings violate his First Amendment rights. LEE's desires the ability to visit portions of the city hall campus that are open to the public generally for innocent purposes under the same conditions that apply other members of the public visit without fear of being arrested. (DE 28 ¶ 75, 81). This suit asserts that LEE's right to due process have been violated, not his right to free speech.

O'REILLY asserts that when Plaintiff was trespassed, "Gulfport's City Hall and Building Department were taking lockdown and other precautions for COVID-19, and the interior of the Building Department and City Hall were not opened up for unrestricted public access on September 4, 2020." This

only underscores that a trespass warning which "never" expires was unjustified.

O'REILLY's citation to *Occupy Ft. Myers v. City of Ft. Myers*, 882 F. Supp. 2d 1320 (M.D. Fla. 2011) is misplaced. The plaintiffs in *Occupy Ft Myers* sought to enjoin the City of Ft Myers from enforcing an ordinance that prevented them from camping overnight in a city park. The court held that while plaintiffs possess a private liberty interest in lawfully visiting city property that is open to the public, this liberty interest does not include sleeping or camping in a public park. *Id.* at 1338-9. LEE has not indicated a desire to sleep overnight at City Hall or on any other city owned property nor is there any evidence that he ever attempted to do so. The Court stated in dicta that the private liberty interests can be forfeited by "trespass or other violation of the law" but did not find that the plaintiffs had forfeited their right to be in the park under the same conditions as other park users, much less permanently. The *Woodbury v. City of Tampa Police Dep't* case cited by O'REILLY involved access to a public school. While typically on publicly owned property schools are not "generally open to the pubic" in contrast to the Gulfport Cit Hall.

O'REILLY asserts that LEE "forfeited any limited, at best, liberty interest he may have had by violating Florida law and causing disturbances" and therefore he cannot possibly establish a deprivation of a constitutionally protected liberty or property interest as required to demonstrate a procedural due process claim.

O'REILLY seems to think that LEE's having allegedly engaged in "abusive and disruptive actions" means he automatically forfeited his "any liberty interest he may have had" and that is where the inquiry should end. However, O'REILLY may not unilaterally decide that LEE has permanently forfeited his liberty interest in accessing city property. LEE was entitled to a process by which a neutral factfinder could consider whether LEE had forfeited his private liberty interest in lawfully visiting city property that is open to the public, and if so for what duration. See *Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115, 1127 (M.D. Fla. 2019) (Here, Plaintiff has an interest in being in City Hall during publicly accessible hours and to exercise his First Amendment rights. There is no indication that Plaintiff was afforded a meaningful opportunity to be heard before the criminal trespass notice was issued that deprived him of this interest.)

Apparently, Defendants would distinguish the plaintiffs in *Catron*, who had been trespassed from a city park based upon a city agents' determination the trespass warning recipients had "violated a city or state law" from this case because LEE's conduct was allegedly so much more egregious, and therefore LEE's

actions resulted in a de facto forfeiture of his private liberty interest in accessing city property. An individual's right to due process is not extinguished simply because he has allegedly been "abusive and disruptive." The determination this Court is tasked with making is not whether LEE forfeited his liberty interest, but whether the Defendants deprived him of that liberty interest without due process.

O'REILLY asserts that LEE "cannot meet the third element" of a due process claim, "constitutionally inadequate due process" because LEE "failed to avail himself of the remedies afforded by the Gulfport Police Department for appealing trespasses, which he became aware of in the aftermath." According to O'REILLY "although LEE's trespass warnings did not have an explicit appellate remedy written on them, his testimony suggests that he was nevertheless aware of the police-department policy, entitled "Written Directive 406," which was adopted shortly after his second trespass."

O'REILLY has failed to cite any authority that would require LEE to utilize an "appeal process" that did not exist at the time the challenged actions occurred, and as previously pointed out by this Court, "it is well settled law that exhaustion of state remedies is not a prerequisite to an action under 42 U.S.C. § 1983. (DE 67 pg 10)

Even if "Written Directive 406" had existed when LEE was trespassed and LEE had been provided notice of his right to appeal under "Written Directive 406," he could easily prove he was denied adequate due process. The only section of "Written Directive 406" pertaining to review of a trespass warning provides:

> *the trespassed individual may file an appeal with the City Manager's office to have the trespass warning repealed or amended. Upon notification by the City Manager's office of any changes regarding the status of a trespass warning, an officer will ensure that any relevant records and/or databases are appropriately updated.* (DE 1¶11.)

It is laughable to assert that right to appeal to the very same individual that directed the trespasses to be issued in the first place passes constitutional muster. Nothing in the much revered "Written Directive 406" requires the City Manager to consider the appeal, and no criteria are provided to govern the City Manager's decision as to whether to repeal or amend a trespass warning. This "appeal opportunity" is much like the one the 11th Circuit uniformly panned in *Catron*:

> The trespass warning states that the warning-recipient is "hereby notified that [the warning-recipient's] presence is no longer welcome ... on the property/premises described ... unless such prohibition is rescinded in writing by the City official having control over the premises." The City and

the district court point to the language in the trespass warning form, which implies that a trespass warning can be "rescinded in writing by the City official having control over the premises." The suggestion that a trespass warning—in some unspecified circumstance—can be rescinded does not establish (or give notice) that a procedure exists for a warning-recipient to seek the rescission. For example, nothing in the ordinance or in the language of the trespass warning obligates anyone on behalf of the City to listen, even for a moment, to a single word from a warning-recipient who wishes to call into question the correctness of the warning's issuance—even after the warning has been issued. And the "rescinded in writing" phrase is entirely consistent with the simple idea of mercy or clemency by grace on the part of a city official brought about by the official's own change of mind, with no prompting from or no meaningful opportunity to contribute information from the warning-recipient: this kind of rescission is disconnected from the right of due process.

Finally, O'REILLY "would note that the verbiage Plaintiff uses suggesting that he was "permanently banned" from City Hall is inconsistent with the facts. Reasonable restrictions on his access were imposed in light of his demonstrated tendency to be disruptive and abusive towards City officials — nothing more." First, Lee was given a trespass warning from Gulfport's City Hall with an expiration denoted "Indefinite" and a subsequent trespass from Gulfport's Building Department with an expiration of "Never." The characterization of these bans on accessing city property as "permanent" is entirely accurate. Second, the fact that O'RIELLY thinks the restrictions on LEE's access are "reasonable" does not change the fact that LEE was never provided an opportunity for meaningful review of those restrictions in which a neutral fact finder could consider whether they are reasonable based upon the circumstances. Whether the restrictions are "reasonable" is arguable and LEE was never provided an opportunity to have his arguments heard.

**WHEREFORE**, Plaintiff Jesse Lee respectfully requests that this Court deny Defendant James O'Reilly's Motion for Summary Judgment.

Respectfully submitted on this 19th day of June, 2025.

MARCY I. LAHART, PLLC

/s/ Marcy I. LaHart, Esq.
FL Bar No. 0967009
Marcy@floridaanimallawyer.com
861 S. 40th Street
Tacoma, WA 98418
(561) 358-5436

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of June, 2025 a true and correct copy of the foregoing has been furnished via CM/ECF electronic mail service to the Clerk of the Court who will send electronic notice to all counsel of record.

/s/*Marcy LaHart*
Marcy LaHart

.