UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSE LEE                                    CASE NO. 8:23-cv-02996-VMC AEP

    Plaintiff

v.

CITY OF GULFPORT
&
JAMES O'REILLY

    Defendants

## PLAINTIFF JESSE LEE'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF GULFPORT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff JESSE LEE (Hereinafter "LEE" or "Plaintiff"), by and through undersigned counsel and pursuant Fed. R. Civ. P 56 and Local Rule 3.01, files his response to Defendant CITY OF GULFPORT'S (Hereinafter "GULFPORT") Motion For Summary Judgment [DE 89].

## INTRODUCTION

GULFPORT asserts it is not preempted from regulating LEE's ice cream cart because the cart is a "public food service establishment" and not a "mobile food dispensing vehicle." [DE 89: ¶1-26.] This appears to be a post-hoc rationalization raised for the first time in a Motion To Dismiss filed on behalf of co-defendant City Manager James O'Reilly. [DE:47] Nonetheless, the statutes and the regulations of multiple agencies applicable to the various types of mobile contraptions from which different categories of food can be sold are hardly models of legislative clarity. After much consideration by his counsel, LEE concedes that Section 509.102(2)(a) Fla. Stat. does not prevent GULFPORT from regulating his ice cream cart.

However, the fact that GULFPORT has apparent authority to regulate the sale of frozen confections from mobile ice cream carts does not mean that GULFPORT may do so in a discriminatory or arbitrary fashion. Nor may the city restrict vending for the purpose of economic protectionism, *Diaz v. City of Fort Pierce,* 2019 Fla. Cir. LEXIS 74, *2-3 (As a matter of law, protectionism is not a valid exercise of a police power) or legally use intermediaries such as the Gulfport Merchants Association to achieve that unconstitutional objective. *See United States v. Jennings*, 653 F.2d 107, 110 (6th Cir. 1998) ("A governmental agent may not avoid constitutional restraints upon his conduct by procuring a private individual to perform a forbidden act for him.") However, this will be fodder for a future lawsuit. (DE 86)

As to GULFPORT's assertion that it is entitled to summary judgment as to LEE's claims of due process violations stemming from having been trespassed permanently/indefinitely from GULFPORT property, GULFPORT's arguments contradict its own prior pleadings and the sworn testimony of its own witnesses. GULFPORT has failed to demonstrate the absence of disputed material facts entitling it to judgment as a matter of law regarding the constitutionality of the trespasses issued to LEE. Similarly, GULFPORT has failed to prove the absence of material facts as to LEE's retaliatory arrest claim.

## RESPONSE TO STATEMENT OF MATERIAL FACTS

The Statement of Material Facts contained in GULFPORT's Motion For Summary Judgment fails to include pinpoint citations to the record and improperly includes legal argument in violations of this court's Order on Motions For Summary Judgment, both of which constitutes grounds for denial. (DE 20:4) The statement also intertwines allegations relating to various separate and distinct claims, and includes allegations of fact that are not material but wholly

irrelevant, making it difficult to draft a coherent response. Nonetheless, LEE responds as follows:

1. LEE denies that his "seemingly incorrigible" understanding of what GULFPORT itself describes as "this relatively complex, then-changing regulatory context" of "laws that regulate vendors" (DE 89 pg 14) "evolved" into the two trespasses he was issued. No record evidence establishes that LEE's misunderstanding of ice cream law underlay his trespass warnings. Mr. O'Rielly testified he did not remember why LEE was trespassed from City Hall but he believed it was because of LEE's "behavior with the building department" and that "he was pulling on the door or something." (DE 87-1 pg 18:4-19-6.)

2. Admitted.

3. Admitted.

4. Admitted.

5. Denied. LEE's sworn testimony that he applied for a permit is evidence. (DE 89-2 pg 31: 25-32:5) Suzanne King testified that "it was quite possible" that LEE had applied for a permit through "Manage my Market," the on-line portal used for Tuesday Market, and it would have been referred to someone else. (DE 83-4 pg14:25-16:20.)

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Lori Roach was never identified as a potential witness pursuant to Rule 26 [1] and therefore

---

[1] GULFPORT's Rule 26 disclosures are attached as Exhibit 1.

her statement cannot be used to support a summary judgment motion. See *Jett v. Del Toro*, No. 5:22cv90-MW/MJF, 2023 U.S. Dist. LEXIS 237932, at *3 (N.D. Fla. Sep. 21, 2023). (A party who fails to provide information or identify a witness through initial disclosures or proper supplementation of discovery responses "is not allowed to use that information or witness to supply evidence on a motion ...unless the failure was substantially justified or is harmless.") Fed. R. Civ. P.37(c)(1); see also, *Steffek v. Client Servs.*, 948 F.3d 761, 768 (7th Cir. 2020) ("a motion for summary judgment supported by an affidavit from a witness not previously disclosed in the case ordinarily will cause problems that Rule 26(a)(1)(A)(i) and (e)(1) and case management plans are intended to prevent"). However, LEE does not dispute that he spoke with O'REILLY on the phone on the dates alleged.

12. Deny that there existed a "process" to which LEE could avail himself to seek permission to legally operate his ice cream cart. Suzanne King testified that "nothing with wheels," such as LEE's ice cream cart are or ever were allowed at the weekly Tuesday Market or bi-weekly Art Walk, (DE 83-4 pg 29:4-24). Barbara Banno testified that the way to become a vendor at GULFPORT events was to apply online, but no food was sold during Tuesday Market and the bi-weekly night markets because they were "art driven" (Art Walk) (DE 85-3 pg 17:18-19:9.) She also testified LEE would not be able to sell popsicles or ice cream at Tuesday Market because the Gulfport Merchant's Association requires that "to participate you must make or have had a hand in making your product." (DE 85-3 pg 51:9-52:5]

13. Deny that this allegation is a material fact needed to determine any issue in this case.

14. Deny that this allegation is a material fact needed to determine any issue in this case.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Deny that how other jurisdictions regulate mobile food vending is a material fact relevant to any claim at issue in this case.

20. Admitted.

21. Admit that Plaintiff believed the GULFPORT was precluded by state law from requiring him to get a permit to sell ice cream from his ice cream cart and that he is a "lay person."

22. Deny that this allegation is a material fact needed to determine any issue in this case, or that someone should need to consult an attorney before attempting to get a permit to operate an ice cream cart.

23. Whether an encounter is "hostile and confrontational" is a matter of opinion, not a material fact. Deny that any of these multiple allegations are material facts.

24. Admitted.

25. Admit that LEE's ice cream cart is regulated by FDACS. The assertion that the amended complaint tried to "conflate" mobile food dispensing vehicles and ice cream carts is argumentative and improperly asserted as a "material fact."

26. Admit that LEE went to the Building Department on September 4, 2020, and then went to City Hall because he wished to file a complaint against a Gulfport employee. Deny that LEE's conduct on September 4, 2020 is material to whether his due process rights were violated by being trespassed for an indefinite duration. (DE 87-1,¶ 2)

27. Denied. According to the Motion to Dismiss filed on behalf of O'Reilly:

> Mr. O'Reilly would also note that <u>while Plaintiff filed a racial discrimination complaint with the City</u>, there is no evidence or allegation that he pursued an appeal of the decision on that complaint through the state courts of Florida. (emphasis added)
> (DE 47: pg 15, footnote 6)

28. Admit that LEE received the citations referenced.

29. Deny that any of these multiple allegations are material facts relevant to any issue in this case. Deny that LEE threw a CD <u>at</u> Officer Stone's hamstring/rear knee area. (DE 89-2, pg 131:2-17, 135:7-15)

30. Deny that allegations regarding LEE's interactions with the identified Gulfport employee even if true are material facts probative of whether GULFPORT's motion for summary judgment should be granted. Deny that LEE assaulted Officer Stone. (DE 89-2, pg 131:2-17)

31. Denied. LEE had been trespassed only from City Hall on September 14, as of 2021. (DE 87-1 ¶ 2-5) Deny that LEE's alleged conduct on September 14, 2021 is material to whether his due process rights were violated by being given the trespass stating its expiration was "Never." (DE 87-1 pg 4)

32. This is not a statement of material fact, it is a rambling assassination of LEE's character. Deny that allegations of name calling by LEE or unidentified social media posts by unidentified "First Amendment Auditors" are material to any issue in this case.

33. Admit Gulfport's Police Chief sent LEE a threatening email. Deny that LEE was "within the curtilage of the building." (DE 89-2 pg 170:1-5, 173:20-174:3) (DE 87-3 pg 32:1-19) Admit that Gulfport's Police Chief arrested LEE.

34. Deny that whether LEE "verbally threatened members of the Gulfport Council" is material to any issue in this case; and even if it was, the record citation contains no

evidence to support Gulfport's allegation.

**RESPONSE TO GULFPORTS'S MEMORANDUM OF LAW**

**I.    LEGAL STANDARD**

This Court is well versed in the standards and presumptions that guide consideration of summary judgment motions. *United Nat'l Ins. Co. v. Sutton Place Ass'n, Inc.,* No. 8:23-cv-2926-VMC-NHA, 2025 U.S. Dist. LEXIS 22973 (M.D. Fla. Feb. 10, 2025)


**II.    LEE Does Not Oppose Summary Judgment as to Count I**

In part II of its "memorandum of law" GULFPORT argues that it is entitled to Summary Judgment regarding Count I. LEE would disagree with GULFPORT's characterization of its differential treatment of mobile food vendors. However, while slow on the uptake, LEE's counsel eventually realized that GULFPORT's primary purpose in regulating mobile food vendors, ice cream carts, food trucks or tofu weenie stands, is economic protectionism designed to benefit one type of business, brick and mortar establishments, at the expense of another, mobile food vendors. This improperly motivated discriminatory practice will be addressed another day. LEE does not object to summary judgment being granted to GULFPORT on Count One of his Amended Complaint.

**III.    LEE Has Standing to Challenge Gulfport's Ordinance Regarding Mobile Food Vending.**

GULFPORT next claims it entitled to summary judgment on all counts that relate to Section 13-84(2) because LEE does not own a "mobile food-dispensing vehicle" i.e. a food truck and therefore he lacks standing to challenge the ordinance. However, the Code does not adopt or incorporate the state's definition of "mobile food dispensing vehicle." What the ordinance does say is that "[a] mobile food-dispensing vehicle shall not be used for vending a product unless the

vehicle has been designed and constructed specifically for such purpose." Sec. 13-84(1), Gulfport Code of Ordinances. LEE's ice cream cart has unequivocally been designed specifically for selling frozen confections.

Furthermore, the ordinance is not limited to "food trucks" with permits from the Department of Business and Professional Regulation, it provides that "[t]he mobile food-dispensing vehicle shall be licensed in accordance with the rules and regulations of any county, state and federal agency having jurisdiction over the mobile food-dispensing vehicle or products sold therein."

Finally, it is curious that GULFPORT makes such a big deal about LEE's alleged failure to apply for a permit "to either the City of Gulfport or the Gulfport Merchant's Association" (DE 89:¶ 5) if the ordinance does not even apply to him.

GULFPORT and LEE are apparently in agreement that although GULFPORT code provides that "operation of mobile food-dispensing vehicles on public property or within public rights-of-way for special events is permitted, subject to approval of the city council," notwithstanding the plain language of the ordinance, the city council does not ever consider applications from mobile-food vendors. Rather, would-be vendors must apply to the event management company that is co-sponsoring a special event with GULFPORT. Aspiring mobile food vendors must figure this out on their own, GULFPORT's ordinance does not inform mobile food vendors that if they want to sell their wares "in public rights-of-way, or on public property" they must apply to a third party, identify that third party, or explain how a vendor would apply to be approved to operate "in conjunction with a special event."

GULFPORT's ordinance allows some vendors special rights to use city owned property, "subject to approval of the city council" but contains no standards to guide the city council in

8

granting such approval, and accordingly is invalid. See *Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115, 1124 (M.D. Fla. 2019) (Maybe the plainest example of an unconstitutional grant of unbridled discretion is a law that gives a government official power to grant permits but that provides no standards by which the official's decision must be guided. In that case, the official can grant or deny a permit for any reason she wishes.) (internal citations omitted) See also *St. Petersburg v. Schweitzer*, 297 So. 2d 74 (Fla. 2nd DCA 1974) (holding invalid a zoning ordinance providing that the planning commission may grant special exceptions when no standards by which the commission could be guided were set forth in the ordinance).

GULFPORT's practice regarding vendors on city property is to leave the determination of which vendors are allowed to use city property for selling food entirely up to the unbridled discretion of third parties. However, GULFPORT cannot avoid a constitutional restraint on its power by delegating the determination to a private, interested party. *See generally New Motor Veh. Bd. v. Orrin W. Fox Co., 439 U.S. 96, 125 (1978)* ("[In] the very nature of things, one [private] person may not be entrusted with the power to regulate the business of another, and especially of a competitor.")

### IV. LEE's Substantive Due Process Rights Were Violated When He Was Permanently Banned From City Property

Next, GULFPORT asserts that Counts 3 and 4 of LEE's complaint, which assert that permanently banning LEE from city property violated his right to substantive due process should be "dismissed as a matter of law." This Court has already denied that request. [DE 67:8-11]

In conclusory fashion GULFPORT asserts that the "[t]he City did not have a formal or informal policy on trespass duration, or a formal trespass policy, at the time of Plaintiff's

9

trespass at the Building Department and City Hall on September 4, 2020 and September 14, 2021; any duration "policy" was subsequently developed by and followed by the Gulfport Police Department on its own." (DE 89 pg 19)

GULFPORT apparently fails to understand that the Gulfport Police Department and GULFPORT are the same legal entity. *Seltzer v. Mobile City Police Dep't*, No. 07-0383-WS-M, 2008 U.S. Dist. LEXIS 62952, at *5 (S.D. Ala. Aug. 6, 2008) citing *Pierre v. Schlemmer*, 932 F. Supp. 278, 279-80 (M.D. Fla. 1996) (Eleventh Circuit adheres to the approach that a city police department is not a separate legal entity which is subject to suit and is not a "person" for § 1983 purposes); *Eddy v. Miami*, 715 F. Supp. 1553, 1556 (S.D. Fla. 1989) ("Where a police department is an integral part of the city government as the vehicle through which the city government fulfills its policing functions, it is not an entity subject to suit."), see also *Howard v. Treeline Sports*, No. 24-CV-6783, 2025 U.S. Dist. LEXIS 16366, at *8 (E.D. Pa. Jan. 30, 2025) ("[W]e treat the municipality and its police department as a single entity for purposes of section 1983 liability.") (citation omitted)

GULFPORT's attempt to throw its own police department under the proverbial bus is even more incredulous considering written statements and the sworn deposition testimony of O'REILLY and GULFPORT's former police chief Robert Vincent admitting the existence of GULFPORT's trespass policy. O'REILLY testified under oath that <u>he</u> controls the duration of a trespass warning, (DE 87-2 pg 39:16-22) and that he has never directed that a trespass be issued for a shorter time than permanent or indefinite. (DE 87-2 pg 40 1-4.) When asked if it would be accurate to say that GULFPORT trespass warnings issued are either permanent or indefinite, O'RIELLY replied "they are indefinite." (DE 87-2 pg 40 1-4, 41:8-13.)

10

LEE's counsel read O'REILLY an email from GULFPORT's former police chief Robert Vincent that said: "[t]he City maintains a policy whereby supervisors of individual city facilities are empowered to issue trespass warnings whenever they have reason to believe an individual has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk," and asked if that was <u>still</u> GULFPORT's policy. O'REILLY confirmed that it is. (DE 87-2 pg 45: 8-21.)

Former Police Chief Vincent's deposition testimony was equally unequivocal. He testified that he had "never in 30 years with the police department," seen a trespass warning for a duration other than indefinite or permanent:

> *That's what I was taught when I first started, that it was, the trespass warning, once you issued it, was always in effect, unless the person who issued it, asked for it to be rescinded, and that's been the practice forever, as far as I knew.*

(DE 87-3 pg 11:7-15)

GULFPORT also asserts that the former city managers that allegedly drafted GULFPORT's trespass policy did not have authority to set policy for the city. Nonetheless, they apparently did set a trespass policy, and GULFPORT has followed the same policy "whereby supervisors of individual city facilities are empowered to issue trespass warnings whenever they have reason to believe an individual has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk" ever since. (DE 87-2 pg 45: 8-21.)

V. **There are Disputed Issues of Fact Regarding Whether Probable Cause Existed to Arrest Jesse Lee on April 23, 2023**

GULFPORT's summary judgement motion "refers to and incorporates by reference the arguments and references made compellingly in Mr. O'Reilly's Motion, Section III. The City incorporates by reference, and joins in, the arguments and case law

11

and relevant facts therein. . ." Local Rule 3.01(f) specifically prohibits parties from incorporating by reference all or part of any other motion, legal memorandum, or brief.

GULFPORT asserts that it is entitled to summary judgment regarding LEE's claim of retaliatory arrest because "Police Chief Vincent clearly had probable cause to arrest Plaintiff for trespass after he repeatedly refused his instructions to leave and continued to attempt to walk into a private event despite a trespass warning." No record citation is provided for this allegation.

Former police chief Vincent admitted that there had been no complaints regarding LEE "harassing people." He claims he saw LEE "approach several people as they were walking up to the building" and though he does not know what LEE said to them "it looked as they weren't interested." (DE 87-3 pg 31:13-22.) Attempting to engage passersby in conversation is not probable cause to be arrested for trespass, even if the passersby are disinterested.

Former police chief Vincent claimed that LEE created a public disturbance by "publicly and loudly" defying his directions to leave the property. However, he conceded LEE never entered the casino or try to force his way into the casino, and testified LEE was 50 feet away from the door when he was arrested while standing on property which was or was not part of the casino "depending on who you ask." (DE 87-3 pg 32:1-19.)

Mr. Vincent conceded that all LEE was doing when arrested was filming him, "and refusing to leave" which Mr. Vincent LEE was required to do"[b]ecause the City Manager said he did not want him on the property during the event." [DE (DE 87-3 pg 33:6-11) In stark contrast to the assertions of the former GULFPORT police chief, O'REILLY testified that he did not speak with Mr. Vincent regarding LEE's rumored plan to disrupt the Gulfport Volunteer appreciation luncheon until <u>after</u> LEE had been arrested. (DE 87-3 pg 24: 12- 25:18.) O'REILLY

12

also testified that he did not have anything to do with the decision to tell LEE he could not come to the casino, or to arrest him when he did. (DE 87-3 pg 32:8-14)

Former police chief Vincent was asked what he had done "to ensure that there was a legitimate reason for asking [LEE] to leave" and he testified that he was not required to determine whether there was a legitimate reason because even though the casino is city property "when it was being used for a private event, it's completely different. It's no longer public property." (DE 87-3 pg 34:25-35 :8.) There is no record evidence that the portion of public property occupied by LEE when he was arrested, 50 feet away from the door, (DE 87-3 pg 32:11-14) was being used for the Gulfport Volunteer appreciation luncheon.

Furthermore, the record evidence does not establish that LEE "attempted to walk into a private event despite prior a verbal trespass warning." According to arresting officer Vincent, LEE "was stopped at the door as he tried to go inside" and did not try to force his way inside. (DE 87-3 pg 35: 11-17.) There is zero evidence that LEE knew a private event was taking place on April 27, 2023, just as there is zero record evidence of LEE receiving a "prior verbal trespass warning" before he attempted to enter the casino. GULFPORT does not even identify who allegedly issued LEE a "verbal trespass warning" before he tried to walk into the casino. LEE's uncontroverted testimony is that he did not know there was an event at the casino, that he approached the casino only because he had observed a city council member drive by and wanted to set up an appointment with the council member, and that when LEE was informed there was a private event, he "stepped off." (DE 89-2 pg 174:15-175:8.)

GULFPORT also informs the Court "the City would note that there is again no evidence of a *Monell* custom or policy as to the allegations of Count Five." GULFPORT cites no authority for the proposition that it is necessary to prove the existence of a "policy or custom" to prevail in

13

a retaliatory arrest claim. A retaliatory arrest occurred when "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Lee v. City of Gulfport*, No. 8:23-cv-2996-VMC-AEP, 2025 U.S. Dist. LEXIS 10890, at *17 (M.D. Fla. Jan. 22, 2025) (citations omitted) LEE was merely standing on public property filming Officer Vincent when he was arrested. Being arrested is an adverse action that would deter a person of "ordinary firmness" from doing the same.

      **VI.**    **Whether Gulfport and O'Reilly were "categorically justified" in Issuing Trespass Warnings to LEE is Irrelevant**

GULFPORT dedicates the last four pages of its motion for summary judgment to citing cases which GULFPORT asserts support the infinite propriety of having permanently/indefinitely banned LEE from city property because LEE allegedly forfeited "any liberty interest." Even if he had forfeited his liberty interest in entering and remaining on public property, he did not forfeit his right to due process.

For support, GULFPORT cites a magistrate's recommendation that a pro se party's second amended complaint filed against 15 individual defendants be dismissed. GULFPORT asserts that the magistrate's recommended order determined the *pro-se* plaintiff's First amendment rights were not violated by being required to have an appointment to visit the Tax Collector's office, or when he was trespassed after warning. *Lewis v. Arnold*, No. 5:24-cv-13-MMH-PRL, 2024 U.S. Dist. LEXIS 219389, at *1-2 (M.D. Fla. Dec. 4, 2024) ("He was ultimately issued a trespass warning by law enforcement officers for attempting to enter a restricted area and advised that <u>he would be trespassed</u> if he returned to the building.") (emphasis

added) LEE received no warning prior to being trespassed from City Hall or the Building Department. Furthermore, LEE does not claim that his First Amendment rights were violated by the permanent/indefinite unappelable trespasses he was issued.

GULFPORT claims that LEE's trespasses were issued pursuant to §810.08 Fla. Stat., perhaps the biggest of GULFPORT's post hoc rationalizations to date. Nothing on the trespass warnings indicates they were issued pursuant to §810.08 Fla. Stat. O'REILLY was questioned repeatedly regarding the trespass warnings issued to LEE and GULFPORT's trespass policy, which he stated he implemented (DE 87-2 pg 47:19-21, 62:23-63:1). O'REILLY also conceded he controls the duration of trespasses and has never directed that a trespass be issued for a shorter time than permanent or indefinite. (DE 87-2 39:16-40:4.) O'REILLY never claimed that the trespass warnings issued to LEE were not issued pursuant to City policy. And even if the trespasses were issued pursuant to state law, that does not change the fact that LEE has a constitutionally protected liberty interest to be in City Hall and the Building department and other city owned properties open to the public and cannot be deprived of that constitutionally protected interest without due process. *Catron v. City of St. Petersburg*, 658 F.3d 1260 (11th Cir. 2011)

GULFPORT again asserts that LEE's trespass from City Hall was "categorically justified" as was his subsequent trespass from the building department. The issue before this Court is not whether LEE has forfeited his liberty interest in visiting city owned properties, it is whether GULFPORT violated his due process rights by issuing him an "indefinite" trespass from Gulfport City Hall and a trespass from the Building Department that expires "never," without informing him why the trespass warnings were issued or providing him a right to appeal either the issuance or duration of the trespass warnings.

GULFPORT next cites to *Reed v. City of Ft. Pierce*, No. 2:20-cv-14278-KMM, 2022 U.S. Dist. LEXIS 236974 (S.D. Fla. Dec. 20, 2022), which found that a trespass which *temporarily* barred plaintiff from attending public city commission meetings without being accompanied by a city police officer did not violate the plaintiff's First Amendment rights. GULFPORT alleges that "[i]n the instant case, Plaintiff's restrictions were very similar to those in *Reed*." [DE 89: pg 24] LEE has not alleged violation of his First Amendment rights, and GULFPORT's use of the past tense, "Plaintiff's restrictions *were* very similar" is in error. The trespass warnings issued to LEE do not *temporarily* exclude LEE from city property; LEE is still trespassed from City Hall and the Building Department.

GULFPORT's summary judgment motion concludes with the same gaslighting it has engaged in since this case was filed. It asserts that "Absent a First Amendment violation, it is unclear what source, if any, would support Plaintiff's having a liberty interested in unfettered access to the City's City Hall or Annex, a nonpublic forum." LEE has <u>never</u> alleged the right to "unfettered" access to city property; LEE wishes only to have the same access to city properties as any other member of the public. And if GULFPORT is unclear "what source" protects LEE's liberty interest in access to city owned properties, LEE's counsel respectfully suggests a through reading of *City of Chi. v. Morales*, 527 U.S. 41(1999) is in order. ("[t]he freedom to loiter for innocent purposes is part of the "liberty" protected by the Due Process Clause of the Fourteenth Amendment.") *Id.* at 53.

GULFPORT again denies the existence of a trespass policy and claims there is "simply **<u>no</u>** evidence of a *Monell* custom or policy" (emphasis in the original) despite sworn testimony to the contrary and letters and emails written by its former police chief stating that the city has a longstanding policy "whereby supervisors of individual city facilities are empowered to issue

trespass warnings whenever they have reason to believe an individual has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk." LEE has satisfied the requirements of *Monell* by demonstrating that he has been injured by GULFPORT's longstanding policy of issuing trespass warnings that are permanent or indefinite without providing a meaningful right to appeal. *Watts v. City of Hollywood, Fla.*, 146 F. Supp. 3d 1254, 1270 (S.D. Fla. 2015) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)( "[T]o demonstrate a Monell claim, the plaintiff must show: (1) the violation of a federal right occurred; (2) the existence of a municipal policy or custom; and (3) a causal connection between the violation and the municipal policy or custom.")

## CONCLUSION

WHEREFORE, for the reasons stated above, GULFPORT's Motion for Summary Judgment should be denied.

>MARCY I. LAHART, PLLC
>861 S. 40th Street
>Tacoma, WA 98418
>Telephone: (352) 545-7001
>Facsimile: (888) 400-1464
>Email: marcy@floridaanimallawyer.com
>
>BY: s/ Marcy I. LaHart
>Marcy I. LaHart, Esq.
>Florida Bar No. 0967009
>*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 19th day of June 2025, I electronically filed a true and correct copy of the foregoing with the Clerk of Court by using the CM/ECF system which will

17

send a copy of the electronic filing and notice of its filing via electronic mail service to all counsel of record.

BY: s/ Marcy I. LaHart
Marcy I. LaHart, Esq.