UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.:   8:23-cv-02996-VMC-AEP

JESSE LEE,

    Plaintiff,
v.

CITY OF GULFPORT and
JAMES O'REILLY

    Defendants.
_____/

### DEFENDANT, JAMES O'REILLY'S REPLY TO PLAINTIFF'S RESPONSE TO HIS MOTION FOR FINAL SUMMARY JUDGMENT

COMES NOW, Defendant JAMES O'REILLY ("Mr. O'Reilly"), and hereby files his Reply to Plaintiff's Response to his Motion for Final Summary Judgment, and states:

While Plaintiff's arguments regarding the *Catron* case deem its holding as being broadly applicable to **any** city property, there is no doubt that the liberty interest in being able to access traditional public fora, like city parks, is far greater than any liberty interest one may have in accessing administrative city buildings. Although in the *Catron* case the defendant appealed to the fact that the plaintiffs were trespassed from a St. Petersburg park, there was no evidence that they had *violated* any such trespass warnings, and so they were not clearly forfeiting their liberty interest, based on the facts that could properly be considered in ruling on a motion to dismiss. *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 n.4 (11th

Cir. 2011). Here, the liberty interest, if any, is far more limited in the instant case, and any restrictions commands a weaker degree of scrutiny.

Moreover, the record demonstrates clearly that Plaintiff forfeited any liberty interest by refusing to leave, and attempting to force his way into, the then-closed Building Department on September 4, 2020 when access thereto was restricted due to COVID-19, and by filming the private workplaces of City employees and demanding an immediate response to a public records request on September 14, 2021, just a few weeks after he had been arrested for assaulting a law enforcement officer at the same municipal complex.  The City's trespass policy only allowed trespass warnings to be issued *after* unacceptable personal behavior had occurred which posed concerns regarding a disruption of services or putting the safety or staff or the public at risk, which differentiates the situation here from the one with which the Eleventh Circuit was presented in *Catron*. Plaintiff thus does not get past element (1) of a § 1983 procedural due process claim.

Moreover, even if this Court were to find that Plaintiff did not forfeit his liberty interest on both occasions, the government's interest in preserving the sanctity of its workplace from someone with a demonstrated tendency to be physically and verbally abusive and towards its employees, to include an assault on a peace officer, and in ensuring the efficiency and smooth operation of its departments in its single-story City Hall, is compelling. In contrast, Plaintiff's liberty interest in accessing City Hall to do official business in person, if any, is limited and the deprivation occasioned by a trespass warning is minimal, and

reasonable. Moreover, the burden that additional process would have imposed, beyond the appeal process he *was* provided, upon the small City of Gulfport is significant, given the broad distrust LEE has of a wide range of City officials. *See* Doc. 92, ¶ 19. The City would therefore prevail on an *Eldridge* balancing test. *Mathews v. Eldridge*, 424 U.S. 319 (1976). While Plaintiff now argues that he has never asserted an unrestricted right of access, he has continually falsely claimed he was "permanently banned" from City Hall when he continues to be allowed to attend public meetings therein.

      Simply put, there is no case law that would have clearly established, or which Plaintiff has provided, for the purposes of qualified immunity, that someone's access to a government building could not be restricted based upon a pattern of repeated verbal abuse and violence directed towards police officers and other City staff and leadership, at the time of Mr. O'Reilly's challenged actions in this case. Plaintiff continuously cites to *Catron* and *Morales*, yet those <u>both</u> involved traditional public fora, with *Morales* only being a plurality opinion. The distinction seems to be wholly lost on Plaintiff. Strict scrutiny does not apply here; the City and Mr. O'Reilly's actions need only be reasonable. The same was true in *Sheets*, where the plaintiff's exclusion was deemed constitutional. See *Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115, 1120 (M.D. Fla. 2019).[1]

---

[1] "People recording without consent are not using City Hall under ordinary conditions or for its intended purpose. . . So when the City limits the use of City Hall based on a violation of the Ordinance, it is not violating liberty interests."

On Counts III and IV, it would be unprecedented and unjustified for this Court to find that the issuance of a trespass warning, given the facts in this case, and Plaintiff's undisputed and repeatedly aberrant behavior, was "conscience-shocking." Not only is there no precedent for such a finding, but even if this Court were to somehow find that was the case, there is no fundamental right at stake here. There *may* be a fundamental right to access traditional public fora—though the *Catron* court did not hold that—but the same cannot plausibly be said of nonpublic forum government buildings. This Court should therefore grant summary judgment on Counts III and IV.

On Count V, Plaintiff has already conceded that Mr. O'Reilly was not involved in his arrest on April 27, 2023. There is therefore no action attributable to Mr. O'Reilly of which it could be said that it violated a clearly established right. Regardless, Plaintiff concedes that he was asked to leave by Chief Vincent but refused to do so. *See* Doc. 94, p. 8 ("[A]ll he was doing was . . . 'refusing to leave.'"). While Plaintiff is dismissive of *Adderley v. Florida*, 385 U.S. 39 (1988), the U.S. Supreme Court acknowledged in that case that public access may be expressly limited to the extent necessary for the orderly functioning of the public facility. This case was one of the first few cases recognizing the government's right to preserve the property under its control for the use to which it is lawfully dedicated. In that case, the Court found that the mere fact that "one is exercising first amendment rights while violating otherwise proper restrictions upon their entry to a public facility does not insulate them from prosecution for trespass." That is

precisely why Plaintiff's arrest was appropriate here. Summary judgment should therefore be granted to Mr. O'Reilly on Count V.

Finally, on Counts VI and VII, the Middle District Court in *Occupy Fort Myers* held that the plaintiffs failed to establish likelihood of success on the merits because there was no liberty interest in plaintiffs' use of the park. *Occupy Fort Myers v. City of Fort Myers*, 882 F.Supp.2d 1320, 1338-39 (M.D. Fla. 2011). That is precisely where Plaintiff's § 1983 procedural due process claims fail here, when it comes to whether there was a clearly established constitutional violation. There was no clearly established liberty interest in Plaintiff's demands for an immediate explanation of why he had supposedly received a call from the Building Department, or in filming private workplaces, on September 14, 2021. On September 4, 2020, Plaintiff forfeited any liberty interest by attempting to force his way into the Building Department when it was closed due to the COVID-19 lockdown.

Plaintiff's assumption that he must have had equivalent desires to the plaintiffs in *Occupy* (to sleep overnight, or camp out in a park) for the same reasoning to apply under a forum analysis is absurd—Mr. O'Reilly has never claimed that LEE wanted to sleep overnight in City Hall. But, Plaintiff still had no liberty interest in accessing City Hall or the Building Department—both nonpublic fora—in the way he was attempting to do so on the dates in question.

Moreover, while utilizing available appeal procedures is not a prerequisite to an action, the case law is clear that a procedural due process violation does not

occur unless and until the government refuses to provide due process. "A demonstration that the decisionmaker was biased, however, is not tantamount to a demonstration that there has been a denial of procedural due process. As we mention above, unlike substantive due process violations, procedural due process violations do not become complete 'unless and until the state refuses to provide due process.'" *McKinney v. Pate*, 20 F.3d 1550, 1562 (11th Cir. 1994) (emphasis added). Here, Plaintiff had the ability to appeal his trespass warnings, and did speak to Mr. O'Reilly regarding his September 4, 2020 trespass. See Doc. 92, ¶ 19. There was therefore, for that additional reason, no violation of clearly established law on Counts VI and VII. This Court should therefore grant summary judgment to Mr. O'Reilly on Counts VI and VII of Plaintiff's Amended Complaint.

Finally, as for Plaintiff's arguments as to the alleged inadequacy of the City's Rule 26 initial disclosures, one of the factors a district judge may consider as to whether non-disclosure is substantially justified or harmless is the "surprise to the party against whom the evidence would be offered," and there is no question that there was no surprise to anyone, and especially Plaintiff, that Ms. Roach was a key witness with important testimony. Plaintiff's deposition confirmed as much. *Neeper v. Carnival Corp.*, 754 F. Supp. 3d 1252, 1259 (S.D. Fla. 2024); Doc. 89-2, 41:19–42:1, 59:25–60:16, 61:1-3, 63:3-13, 64:11-14, 65:16–66:8, 68:1-7, 70:19–71:5 (asked about Ms. Roach's affidavit, LEE said, "I was not made aware of that until later, but yes, I am aware of it."). Plaintiff himself produced, as part of his document production in response to the City's First Request to Produce, an

affidavit that Ms. Roach provided documenting the hostile work environment that Plaintiff had created in City Hall before he was trespassed therefrom. Plaintiff could have deposed Ms. Roach following his own deposition but chose not to do so. Any alleged failure to disclose her in a Rule 26 disclosure at the very beginning of this case was unintentional but nonetheless rendered moot and/or harmless thereafter.

Dated July 3, 2025.

                                            Respectfully submitted,

                                            */s/ Donovan A. Roper*
                                            DONOVAN A. ROPER, ESQUIRE

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 3rd day of July, 2025, I electronically submitted the foregoing with the Clerk of Court using the CM/ECF system, who will send electronic notice to all parties and pro se litigants.

                                            */s/ Donovan Roper*
                                            DONOVAN A. ROPER, ESQUIRE
                                            Florida Bar No.: 0858544
                                            IAN DEPAGNIER, ESQUIRE
                                            Florida Bar No.: 116385
                                            R. DUSTYN RING, ESQUIRE
                                            Florida Bar No.: 1049924
                                            **ROPER & ROPER, P.A.**
                                            116 North Park Avenue
                                            Apopka, FL 32703
                                            TEL:  (407) 884-9944
                                            FAX:  (407) 884-4343
                                            email@roperandroper.com
                                            dring@roperandroper.com
                                            lblackburn@roperandroper.com