UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:23-cv-02996-VMC AEP

JESSE LEE,
Plaintiff

vs.

CITY OF GULFPORT,
Defendant

DEPONENT: ANDREW SALZMAN ON BEHALF OF CITY OF GULPORT
DATE: JANUARY 21, 2025
TIME: 1:33 P.M. to 2:23 P.M.
LOCATION: 8950 DRIVE M.L.K. JR. STREET NORTH #160
SAINT PETERSBURG, FLORIDA 33702

REPORTER: LILIANNA CAVANAUGH
Lawyers' Reporting, Inc.
1655 Palm Beach Lakes Boulevard, Suite 405
West Palm Beach, FL 33401
(561) 242-0023 service@lawyersreporting.com

APPEARANCES

ON BEHALF OF THE PLAINTIFF, JESSE LEE:

Marcy I. LaHart, Esquire
Marcy I. LaHart, P.A.
249 Southeast Tuscawilla Road
Micanopy, Florida 32667
Telephone No.: (352) 545-7001
E-mail: marcy@floridaanimallawyer.com

ON BEHALF OF THE DEFENDANT, CITY OF GULFPORT:

Donovan A. Roper Esquire
Dustyn Ring, Esquire
Roper & Roper P.A.
116 North Park Avenue
Apopka, Florida 32703
Telephone No.: (407) 884-9944
E-mail: e-mail@roperandroper.com
donroper@roperandroper.com
dring@roperandroper.com

Also Present: Jesse Lee, Plaintiff

INDEX

| | Page |
|---|---|
| PROCEEDINGS | 5 |
| DIRECT EXAMINATION BY MS. LAHART | 5 |

EXHIBITS

| Exhibit | Page |
|---|---|
| 7 - Plaintiff's Notice of Taking Rule 30(b)(6) Deposition of the City of Gulfport | 6 |

STIPULATION

The (30)(b)(6) deposition of ANDREW SALZMAN ON BEHALF OF CITY OF GULFPORT was taken at LAWYERS REPORTING, 8950 DRIVE M.L.K. JR. STREET NORTH #160, SAINT PETERSBURG, FLORIDA 33702, on TUESDAY the 21st day of JANUARY 2025 at approximately 1:33 p.m. (ET); said deposition was taken pursuant to the Federal Rules of Civil Procedure Rule 26 and (30)(b)(6) Rules of Civil Procedure. It is agreed that LILIANNA CAVANAUGH, being a Notary Public and Court Reporter for the State of FLORIDA, may swear the witness and that the reading and signing of the completed transcript by the witness is not waived.

PROCEEDINGS

THE REPORTER: Standby. And we are now on the record.

And, Mr. Salzman, will you please state your full name for the record?

THE WITNESS: Andrew James Salzman.

THE REPORTER: And will you please raise your right hand? Do you solemnly swear or affirm that the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS: I do.

THE REPORTER: You may proceed.

DIRECT EXAMINATION

BY MS. LAHART:

Q. Good afternoon, Mr. Salzman.

A. Good afternoon.

Q. You understand that you're here to testify on behalf of the City of Gulfport?

A. Yes. That is my understanding.

Q. You understand that your answers must be based not only on your personal knowledge, but also based upon all information that is known or available to the City of Gulfport?

A. To the extent I have that knowledge, I'm happy to testify.

Q. You understand that your answers today will be binding in the City of Gulfport?
A. Yes, I do.
MS. LAHART: Will you please take a look at what is going to be marked as Exhibit 7?
(Exhibit 7 was marked for identification.)
MR. ROPER: Thank you.
THE WITNESS: Yes.
BY MS. LAHART:
Q. Have you seen that document before today?
A. Yes, I have.
Q. Have you read it before today?
A. Yes. Yes, I did.
Q. Are you prepared to give testimony on the subject areas that appear --
A. Not on all of them.
Q. -- on Page -- on the third page?
A. Yes, I see.
Q. You're not prepared to give testimony on all of them?
A. No, I don't know -- I don't know all of these. No.
Q. Can you tell me which ones you're not prepared to testify about?
A. There are some that I -- just so you know,

there are some I could probably give partial information, but not complete. I -- the ones I cannot testify about are -- two I couldn't give you a complete answer on. Three, I don't know. Four, every communication, probably not. Same as five. I mean, I'll give you the general communications that occurred. Six, not -- not the police department information. Seven, not the police department information. Eight, I can tell you what I did. Nine, I can give you a general answer on that. Ten, I cannot give you that information. Eleven, I cannot give you that information. Twelve, I cannot give you that information. Thirteen, I cannot. Fourteen, it's only by hearsay. Fifteen, I can just give you the general policy. Sixteen, I don't know. I mean that -- I didn't handle that matter. I mean 17 is -- is subjective. Eighteen I cannot answer. Nineteen I just -- I would have to look at those.

Q. What did you do to prepare to give testimony today, Mr. Salzman?

A. I think the only thing I did is look back at the case to some extent of Number 4 and 5, the two citation cases. I looked at the Pinellas County court file, looked at some of the matters on that. I looked at the response to the motion to dismiss, and I looked

to see if there was any communication in my file on -- on -- on -- meaning my records in my computer to see if there was anything that could answer any of these questions that you had.

Q. So if I understand you, you're prepared to give testimony on maybe three of the 19?

A. What -- if that's --

Q. Subject --

A. -- if that's what I said, then yes.

Q. Okay. Do you know why you were designated as the corporate representative?

A. No.

Q. Who would have more information about these topics than you do?

A. Well, I think the police ones would have to be the police chief unless it's -- and he's retired, so I would still assume he's the one who would be able to answer those questions. I didn't prosecute or was involved in the -- on the case on the trespass, so that wouldn't be me.

Q. When you say the case on the trespass, you mean the case from 2023?

A. Yeah, I didn't -- the only case that I was involved with Mr. Lee was the citations on the mobile food allegation, but we had it as a violation of an

ordinance on display or sale in the Waterfront District. And then the -- some general statements that if I was present, when there was any discussions on any of these matters, which is frankly limited. I mean, I wasn't involved in the police department in a lot of these things.

Q. Does the police department have separate counsel?

A. No.

Q. Is there anything about your physical, emotional or mental condition that would affect your ability to proceed today?

A. No.

Q. Is there any reason you can think of that you are not ready to testify on behalf of the City of Gulfport?

A. No.

Q. What is your role at the City of Gulfport?

A. I'm the city attorney.

Q. What are your duties in that capacity?

A. They vary. It could be -- I mean, they're pretty wide. It's almost like being a general counsel. I prepare ordinances. I attend meetings. I'm there to look at contracts, review resolutions, have general meetings on issues that are coming -- matters that are

coming before the city, help out in the -- if there's issues from employees, that they have questions.

For example, finance department on the policy or the procedure, things along those lines. When it comes to litigation, just some litigation I oversee. We obviously have private counsel through the city's insurance. If there are questions from the city clerk, I work with her. It could be public records question, some of those policies and procedures generally, and then answer questions or look at -- research things that council members may have on enacting policies, procedures, ordinances, things along those lines.

Q. You say that you oversee some litigation. Which cases do you oversee specifically?

A. I might be kept in the loop on cases, meaning I might receive a status report on cases that our defense counsel is handling. I -- I get involved more in some cases. For example, we had a clean water act case that went on for some period of time. I spent a lot of time on that case with the city manager and our original counsel. And then we ended up having another firm take over that case. I might be involved in a -- a grievance for police. I do -- I do a lot of labor and employment. So those issues I deal with for the city. So if there was a lawsuit on -- on an employment matter,

I'd probably have more activity involved in it, just from the very nature of my practice.

Q. Okay. Did you oversee the litigation brought by Ray Rodriguez regarding the trespass policy?

A. I oversaw -- overseeing is probably not the right -- I mean, I reviewed certain documents.

Q. Were you ever given a summary by opposing counsel?

A. On Ray Rodriguez? Probably. I -- I don't have independent knowledge of that.

Q. Okay. What has your role been in this litigation?

A. Some -- I've been present during some discussions between our council and city manager. That would probably be generally it.

Q. Have you read the complaint?

A. I would say that I did at least once read the complaint. I -- probably when it was first -- when you first filed it.

Q. Have you read the complaint since it was amended to include James O'Reilly individually?

A. I believe so, yes.

Q. You believe so, but you're not certain?

A. I couldn't tell you absolutely. No.

Q. Did you look at any documents to prepare to

testify today?

A. Other than what I previously told you, that would be it.

Q. Okay. Have you read any of the motions to dismiss that were filed in this case?

A. No, I have not.

Q. Have you ever researched the constitutionality of the city's trespass policy as it's described in Number 1?

A. I've researched the one that I wrote, which was dealing with the videoing of -- in certain areas of the city.

Q. Is that ordinance a revised trespass ordinance?

A. It -- well, to the extent any ordinance that you draft -- and let me just give you the general statement. Any ordinance that you draft that preempts those things, yes, it's -- I would say it's revised. I mean, if there are things that are current ordinances that are -- have nothing to do with that, then those would still be in existence.

Q. Okay. I'm going to ask you specifically about this trespass policy which says that the city has a policy whereby supervisors of individual city facilities are empowered to issue trespass warnings whenever they

have reason to believe an individual has caused or is likely to cause a disruption of services or put the safety of the staff or the public at risk.

A. Yes.

Q. Have you ever researched the constitutionality of that?

A. That provision?

Q. That policy, yes.

A. I do not believe so.

Q. Do you know the origin of that policy?

A. No. No, I don't.

Q. Do you know how long the City of Gulfport has had that policy?

A. No, I don't.

Q. Have you ever been asked to evaluate that policy?

A. No, I haven't.

Q. Have you ever been asked to evaluate whether trespass warnings can be given without a right of appeal?

A. A right of appeal?

Q. Yes.

A. No, I have not been asked that.

Q. Okay. Have you ever researched whether a permanent ban from city property is constitutional?

A. No, I have not researched that.

Q. What can you tell me regarding communications that were made concerning the prosecution of Mr. Lee for sale in the Waterfront District without a permit?

A. I think the communications that I had or with the -- any witnesses involved. I also had a conversation with, I think on more than one occasion, with Mr. Lee's attorney when he was being represented. It's my understanding, when talking to Mr. Lee's attorney, that he had written the provision that we were discussing, the legislation. What I did is, frankly, our position had been that we were not violating that section. And what I did was I said, I'm happy to have you, meaning his attorney, talk to all our witnesses and let me see what you have to say after that. And -- and I don't think, you know, what we were doing was just solely looking at the violation from the Waterfront District. And I informed him that we didn't require any specific regulation along those lines, other than that, which was allowed in general, you know, that we prohibit something in a particular area for everyone. That -- that's what we were looking at. And that was not a violation of that section.

So what I did is actually had talked to him on the phone at the city manager's office and said, I will

bring in every witness and you can talk to them and ask them whatever questions you want. Because frankly, you know, I -- I try to be pretty transparent with these things. I don't think that we violated this area and that I -- I thought that we were on good legal grounds. And I had him talk to every witness and the only thing I could tell you after that is he withdrew his counsel. I don't know if that had anything to do with our discussion or discussions he had with Mr. Lee. But I know after that I believe Mr. Lee proceeded pro bono.

MR. ROPER: Pro se.

THE WITNESS: I mean, not pro bono, pro se.

BY MS. LAHART:

Q. Okay. So you had conversations with witnesses, Mr. Lee's attorney, and with the city manager. Anybody else?

A. No.

Q. And it's my understanding that he was permitted because he did not have a permit to sell ice cream in the Waterfront District; is that correct?

A. Just you said he was -- I heard you say he was permitted. You mean he was cited?

Q. That's what I meant, yes.

A. That's okay. I just had -- yes, that is my understanding. There was a requirement for your sales

or display in the Waterfront District to have a special permit. The way the city does that is they have people come before the council to grant that special permit. I'm unaware of any time that they -- and they may have denied special permits, but I can't tell you when. Usually they're pretty good about that. You know, because there's limitations in special set -- either a set, like a market or a set occasion where they would allow that.

Q. Can you give me some examples of conduct activities that have been given a special permit like you were referring to?

A. I think the -- I think there is a, I want to call it a Tuesday market, but I could be wrong. But there's like, almost like a farmer's market or a merchant's activity. I know that those have occurred there.

Q. Do they get a special permit each week or do they have a permit for a certain period of time? How does that work?

A. So it would -- it would depend on what it is. For example, at -- if at the beginning of the year, some -- let's just say it's a Tuesday market and it's a Tuesday market twice a month. If they had that in advance and said, we're doing this for a period of time,

they would probably grant it as an overall, either an annual permit. If it was a -- a special occasion where they would have something and just, I'm trying to think, Gecko Fest, if they were having some kind of activity associated with that, it would be a one time occasion.

Q. Okay. Do you know if anybody has ever been given a special permit to operate a mobile food vending vehicle in the Waterfront District?

A. It is my understanding -- mobile. I would only be speculating. I don't know. And not specifically am I aware that unless it's part and parcel of one of the other activities. I don't think anyone's ever come and asked for just mobile vending of -- in the Waterfront District.

Q. Okay. Are there published criteria that apply to the special permit applications?

A. I think there is, but I couldn't tell you what it is. I think there's at lease criteria that you have to meet in order to apply for one.

Q. But you don't know what they are?

A. No, I'm sorry. I'm not involved in any of that.

Q. Did the fairly recent adoption of an ordinance concerning videotaping have anything to do with this lawsuit?

A. I don't -- I don't know.

Q. What was the impetus for adopting that ordinance?

A. There had been several situations, not just in Gulfport, in general where people were coming into offices and videotaping without permission and really disrupting people's ability to do their jobs, including some instances of security that had occurred in some governmental entities. And I had been monitoring, looking for, you know, when I heard about any ordinances that occurred. I believe that I had reviewed some and there was a general concern because there was violence that was happening in certain locations, not necessarily in Gulfport and that was the reason why it had been upheld on appeal. So that was -- which I think down south, I could be wrong. And that was the reason why. And I looked -- looked at the location that it had been upheld, and I got a copy of that ordinance. And I provided that, not just for Gulfport, but for other clients.

Q. I recall you said that you were not prepared to give testimony regarding Number 6 or Number 7; is that right?

A. Let me just look at this. No, I would not be able to tell you what the police department or their

policies or procedures. No, I was not involved in any of those.

Seven. No, I'm not aware of that. I couldn't answer that too for you.

Q. Are you under the impression that the ice cream cart that Mr. Lee was operating in the Waterfront District is a mobile food truck?

A. No, I do not -- I don't think it meets the definition off the top of my head. I think I looked at that and felt that it did not. And then there's set criteria, I think, that defines it, and I don't think he met that criteria.

Q. Do you know of whether ice cream is considered a hazardous substance?

A. I can only give you my personal opinion, which I would say is not a hazardous substance. It could be for calories, but not --

Q. Only to your waistline and your --

A. Right. So --

Q. -- your cholesterol level. All right. And you said you don't know anything about number nine?

A. I don't know the city employee. I don't know what efforts were taken. I was only brought into that after the citations were issued.

Q. Were you aware that Mr. Lee had a permit from

the Department of Agriculture for a mobile food vehicle, ordined vehicle?

MR. ROPER: Objection, the form of the question. Assumes facts not in evidence. You can answer.

THE WITNESS: Off the top of my head the answer is no, but I don't think that would've changed anything, because that wasn't what the violation was. The violation was not having a special permit to sell or display in the Waterfront District.

BY MS. LAHART:

Q. So it didn't matter whether he was licensed by the State of Florida or not?

MR. ROPER: Objection to form. You can answer.

THE WITNESS: No, it -- it did not. We didn't -- the fact that he was licensed wasn't relevant to this situation.

BY MS. LAHART:

Q. All right. Just going down this list of subjects, you said you didn't know anything about ten, 11, 12, 13 or 14; is that right?

A. That is correct.

Q. What can you tell me about Number 15?

A. Oh, the criteria to approve, I -- I mean, I know that you apply for a special event permit. I'm not

sure that anyone has been denied a special event permit. You know, when you say "public property within the public rights away", I mean, that's obviously different than the Waterfront Redevelopment District. Other than, you know, it's public property, but the Waterfront Redevelopment District has its own specific rules regarding what can be done in that area.

Q. And those rules apply both on public and private property?

A. It applies throughout the whole district is my understanding.

Q. Do you know why the trespass case against Mr. Lee was dismissed?

A. No, I don't.

Q. Have you ever observed Mr. Lee to threaten a city employee?

A. Threaten a city employee? I don't think I've observed. The only time I've observed -- if it's okay to answer it this way. The only time I've observed Mr. Lee is at city meetings, conversations that he and I had, I think, at and right after the civil infraction. And maybe if somebody pointed out there's something on a video at YouTube, but I don't recall him threatening a city employee. I don't know. They -- frankly, for my encounters with Mr. Lee is at some point generally he

gets upset and there's profanity. I don't know. Is it general threatening? I can't say that.

Q. So he has a -- had a tendency to lose his temper and use profanities?

A. Yes. Unfortunately, yes.

Q. Is someone forbidden from using profanity in public comment?

A. What generally the rule has been is if somebody uses profanity, the mayor who runs the meeting will say, please don't use that or don't use profanity. And if it repeats, then he will ask the person to stop speaking or ask the person to -- I think in one occasion he may have met -- said to the -- at least on one occasion, said to the police chief to please help Mr. Lee or escort Mr. Lee out of the room. So I know that happened at least once. It may have happened more than once.

Q. So if I understand, in the City of Gulfport, someone can be excluded from the City Council Chambers if they have used profanity during their three minutes of allotted public speech.

A. Excluded -- I would say the answer is excluded. They're allowed to come in and speak. They're allowed to return to their seat. They're just not allowed to disrupt and/or use profanity based language

after being asked to stop.

Q. You were the attorney that prosecuted the violation of the requirement for a permit in a waterfront -- in the Waterfront District, right?

A. Yes.

Q. Did that case adjudicate any equal protection issues?

A. I'm pausing only because I'm trying to remember some of the defenses that Mr. Lee raised, which he raised many defenses. I don't think that was one of the defenses that was raised. If -- if it was, the court obviously ruled in the city's favor. So any of the defenses were either -- I mean, I can't tell you what the judge was thinking because he didn't give us a written opinion on it.

I did feel -- if I can add, I did feel that whatever Mr. Lee's defenses were, he was allowed to present them in front of the judge. We -- I actually helped him make sure that he was able to introduce evidence that he wanted to introduce since he was, you know, acting on his own and wasn't as familiar with how the court proceedings were.

Q. I'm going to hand you what was marked as Exhibit 2 in the previous deposition.

Correct me if I'm wrong, but this is a --

appears to be an e-mail from the police chief to you with a copy to the city manager.

A. Yes.

Q. And is forwarding an e-mail from Josh Stone that says, "I think I found case law that would make the issuance of trespass warnings on our city owned property without due process to challenge the warning unconstitutional."

A. That is what it says. Yes.

Q. Did you provide an opinion regarding that matter?

A. I would be guessing if I gave you the answer off the top of my head. I don't know if I -- if -- I don't recall seeing a written opinion that I gave, but I -- I'm not going to tell you that I didn't, I just don't recall. Well, I don't think I gave a written one. I might have given an oral one is what I mean.

Q. If you did an oral opinion, do you know what it was?

A. I would've said that, of course you cannot trespass people from general areas that they're allowed to be in because the city has -- in city hall you obviously have public forum. An individual has a right, at least generally, to come in, pay their bills at the front counter. There is also, I'm not sure if you're

familiar with how the city hall is or the city complex, but there's also the police department right in there. And I don't believe, unless someone has caused a particular issue in there, that they would be prohibited from coming in to make any kind of complaint.

However, I am aware that Mr. Rodriguez, as opposed to Mr. Lee, had threatened city employees and so his particular actions could have resulted in prohibition from the last two areas. He's never -- never was prohibited from coming in to speak at a public meeting.

Q. When you say, he, are you talking about Mr. Lee or Mr. Rodriguez?

A. I'm sorry, Mr. Rodriguez we were talking about.

Q. Okay. Do you know if Jesse Lee is trespassed from the police department?

A. I don't know if he's trespassed from the police department.

Q. Do you know if he's trespassed from the fire department?

A. No, I'm not aware of that.

Q. Do you know who you gave your oral opinion to?

A. If I gave my oral opinion, I would've given it to Chief Vincent and the city manager, probably

together.

Q. Have you ever been asked to opine as to the constitutionality of the city's appeal procedure?

A. No, I've never been asked that. No.

Q. Have you ever researched whether it is constitutionally permissible to permanently ban somebody from city property?

MR. ROPER: Objection. Form of the question. Assumes facts not in evidence. You can answer.

THE WITNESS: I would tell you I think when it comes to trespass, I looked at the ordinance and I looked at the state statutes. To the extent I gave an opinion, it would be based on whatever language those particular areas provide as a -- as -- regarding directly -- I believe you asked me about the -- about being permanently?

BY MS. LAHART:

Q. Yes.

A. If it dealt -- if either one of those, any of the three, dealt with that, then I would've given an opinion. If they don't, then I wouldn't have. I'm not trying to be evasive. I can't tell you what my opinion was, but I can tell you that if they dealt with it, I would've given an opinion on it.

Q. Okay. Would you agree with me that different

criteria applied to trespassing somebody from private property as opposed to public property?

A. I would say that the -- I believe the statutes provide specific criteria and/or the cases associated with them.

Q. Could you please answer the question that I asked you? Do different criteria apply to trespassing somebody from private property versus public property?

A. Then I'll answer it this way. I -- without looking at the statutes, I can't give you that answer.

Q. Okay. Is the statute distinguished between public and private property?

A. I'd have to look at the statutes to give you that -- an opinion.

Q. Mr. Salzman, have you been involved in selecting, providing -- selecting or providing documents responsive to Mr. Lee's request for production?

A. I was asked to look at -- I believe, any communications I had, anything I had I turned over to either counsel. Or Mr. Lee's made some public records requests. I provided any of that to the city clerk that I had.

Q. Have you ever referred to Mr. Lee as the citizen in a -- an e-mail?

A. Not that I'm aware of.

Q. How did you go about finding the documents that you provided in response to either public records requests or the request for production about Mr. Lee?

A. So I would look in my computer and I'd put under -- under the -- Mr. Lee's name. I probably looked under anything that Chief Vincent might have had with Mr. Lee and/or the city manager with Mr. Lee. I think that would be the extent. I mean, I put in his name, but I would double check through those two to make sure I wasn't missing something.

Q. Mr. Salzman, I am aware that you serve as city attorney for a number of municipalities. How -- what is your process to preserve records that you generate on behalf of the municipality for purposes of public records now?

A. Well, I keep them.

Q. You keep them how?

A. On my computer. I have a -- a --

Q. Do you keep them by municipality or by year or --

A. By municipality.

Q. How do you do that specifically?

A. I have -- I'm not very computer-literate. I have, I think -- I don't know if it's called a cabinet or a section that says Gulfport and then I would take

that e-mail and put it in that particular area. So if it was -- if it was something like this, I would take it and put it in Gulfport.

Q. So you have a folder for each municipality?

A. Folder. I'm sorry, that's it. Yes.

Q. Okay. Did you have anything to do with responding to interrogatories that were served on the City of Gulfport?

A. I'm pausing just because I'm trying to remember if I looked at ones for Mr. Lee. The answers to interrogatories, I might have looked at them. I don't want to tell you that I didn't, but I don't have an independent recollection.

Q. Do you know if you've ever read the city's answers to the interrogatories that were served by Mr. Lee?

A. I don't believe so.

MS. LAHART: I'm going to step out with my client for a minute.

MR. ROPER: Sure.

(A recess was taken.)

BY MS. LAHART:

Q. -- in the modification to the City of Gulfport's code of ordinance regarding mobile food dispensing vehicles in public right of ways?

A. Thank you. Do you have the year that it was done?

Q. I can give you -- show you the actual language.

A. I -- I'm sorry. I'd have to look at the year. If it was when I was city attorney, the answer would be yes. So if it was from roughly 2010 or October of 2010 or thereafter, I would've been involved.

Q. Well, it's my understanding that it was after Section 509.102 Florida Statute's mobile food dispensing vehicles preemption was enacted.

A. Then I would've been involved.

Q. It would've been --

A. I'm sorry.

Q. -- 2020 or 2021.

A. Then I would've been involved. Yes.

Q. Okay. Can you tell me what the impetus was to adopt that language?

A. I'd only be guessing, but it might have been when the statute was enacted to make sure that we were following through with the change in the law.

Q. So if Mr. Lee had the blessing of the Gulfport Merchants Association to operate his ice cream cart at Tuesday market, would he need any additional permission from the city?

MR. ROPER: Objection. Assumes facts not in evidence. You can answer if you understand the question.

THE WITNESS: No, he would not. It was my understanding that there was some discrepancy or -- or disagreement between Mr. Lee and the merchants as to whether or not he was covered under their special permit.

BY MS. LAHART:

Q. What's your opinion on that?

A. As long as someone had a special permit they could -- and they could do displays or sales in the Waterfront Redevelopment District. Special event permit. Because otherwise all sales and displays are banned. It's only allowed under the exception of special event permit. My understanding is that you just had to have a permit.

Q. So I'm sorry if I'm being obtuse.

A. It's okay. I'm not -- maybe I'm not clear in - - in my answer.

Q. If the Gulfport Merchants Association or another entity, the Kiwanis Club, has a permit for a special event in the Waterfront District --

A. Yes.

Q. -- could an individual show up to that special

event and sell vendered hot dogs?

A. As long as they were part of whatever organization has a special permit. So if I just came up and they were doing that and even though they have a special event permit and I'm not part of that organization or I'm not covered in that organization, then I would not be allowed unless I had my own individual special event permit.

Q. Okay. So what does in conjunction with a special event permit mean?

A. That's part and parcel of that organization so -- that has the special permit. I mean, otherwise the special event permit is what allows the exception, right, for the Waterfront Redevelopment District to have sales or display. It's granted to a particular organization. We've talked about that. It could be granted to a -- I would assume to an individual counsel who wanted to do that. Those are the exceptions.

So if I was just coming up and I wasn't part of that, then I could not sell or display, because there's a blanket ban on that. The exception is a special permit. So if I'm not part of the special permit, I -- then I couldn't do it.

Q. Okay. Is that only on public property or is that on private property as well?

A. It's on the Waterfront Redevelopment District. I don't know -- can't tell you if there's a similar districts that have the same requirement without looking at the zoning ordinance.

MS. LAHART: Okay. I have nothing further.

THE WITNESS: Okay.

MR. ROPER: I don't have any cross examination And we'll read for Mr. Salzman. And then let's have a housekeeping discussion off the record as to --

THE REPORTER: All righty. Before we get off the record, Ms. LaHart, did you want to order the transcript?

MS. LAHART: I don't think I want to order the transcript since I didn't know anything about any of the subjects that I had listed on the corporate rep notice.

THE REPORTER: All righty.

MS. LAHART: No, thank you.

THE REPORTER: And Mr. Roper, did you want the transcript?

MR. ROPER: I'll take a copy if and when she orders it, but not at this time.

THE REPORTER: Absolutely.

MR. ROPER: Thank you.

(Deposition concluded at 2:23 p.m. (ET))

CERTIFICATE OF OATH

STATE OF FLORIDA
COUNTY OF ORANGE

I, the undersigned, certify that the witness in the foregoing transcript personally appeared before me and was duly sworn.

Identification: Produced Identification

Lilianna Cavanaugh
Court Reporter, Notary Public
State of Florida
Commission Expires: 08/16/2027
Commission Number: HH 434226

C E R T I F I C A T E

STATE OF FLORIDA)
COUNTY OF ORANGE)

I, Lilianna Cavanaugh, Court Reporter and Notary Public for the State of Florida at Large, do hereby certify that I was authorized to and did report the foregoing proceeding, and that said transcript is a true record of the said proceeding.

I FURTHER CERTIFY that I am not of counsel for, related to, or employed by any of the parties or attorneys involved herein, nor am I financially interested in said action.

Submitted on: May 16, 2024.

Lilianna Cavanaugh
Court Reporter, Notary Public

ERRATA

| PAGE | LINE | CHANGE | REASON |
| --- | --- | --- | --- |

I have read the entire transcript of my deposition taken in the captioned matter or the same has been read to me.I request that the following changes be entered upon the record for the reasons indicated. I have signed my name to the Errata Sheet and authorize you to attach the changes to the original transcript.

________________________ ___________________________

Date NAME

LAWYERS' REPORTING, INC.
1655 Palm Beach Lakes Boulevard, Suite 405
West Palm Beach, Florida 33401
(561) 242-0023

April 8, 2025

Andrew Salzman
C/O: Donovan A. Roper Esquire
Roper & Roper P.A.
116 North Park Avenue
Apopka, Florida 32703

RE: Jesse Lee vs. City of Gulfport

Dear Mr. Salzman,

This is a courtesy letter to inform you that the deposition given by you via Zoom on January 21, 2025, has been transcribed and is ready for your reading and signing.

If you will call my office any day Monday through Friday, between the hours of 9:00 a.m. to 4:00 p.m., to make arrangements to read and sign the transcript.

Sincerely,

Lilianna Cavanaugh
Court Reporter

**A**

**a.m (1)** 37:19
**ability (2)** 9:12 18:7
**able (3)** 8:17 18:25 23:19
**absolutely (2)** 11:24 33:23
**act (1)** 10:18
**acting (1)** 23:21
**action (1)** 35:15
**actions (1)** 25:8
**activities (2)** 16:11 17:12
**activity (3)** 11:1 16:16 17:4
**actual (1)** 30:3
**add (1)** 23:16
**additional (1)** 30:24
**adjudicate (1)** 23:6
**adopt (1)** 30:18
**adopting (1)** 18:2
**adoption (1)** 17:23
**advance (1)** 16:25
**AEP (1)** 1:3
**affect (1)** 9:11
**affirm (1)** 5:8
**afternoon (2)** 5:15,16
**agree (1)** 26:25
**agreed (1)** 4:10
**Agriculture (1)** 20:1
**allegation (1)** 8:25
**allotted (1)** 22:21
**allow (1)** 16:9
**allowed (8)** 14:20 22:23,24,25 23:17 24:21 31:15 32:7
**allows (1)** 32:13
**amended (1)** 11:21
**and/or (3)** 22:25 27:4 28:7
**Andrew (4)** 1:14 4:3 5:6 37:7
**annual (1)** 17:2
**answer (20)** 7:4,10 7:17 8:3,18 10:10 19:4 20:5,6,14 21:19 22:22 24:12 26:9 27:6,9,10 30:6 31:2,20
**answers (4)** 5:20 6:1 29:10,15
**anybody (2)** 15:16 17:6
**anyone's (1)** 17:12
**Apopka (2)** 2:16 37:9
**appeal (4)** 13:20,21 18:15 26:3
**appear (1)** 6:15
**APPEARANCES (...** 2:1
**appeared (1)** 34:7
**appears (1)** 24:1
**applications (1)** 17:16
**applied (1)** 27:1
**applies (1)** 21:10
**apply (5)** 17:15,19 20:25 21:8 27:7
**approve (1)** 20:24
**approximately (1)** 4:7
**April (2)** 35:17 37:4
**area (4)** 14:21 15:4 21:7 29:1
**areas (5)** 6:15 12:11 24:21 25:9 26:14
**arrangements (1)** 37:20
**asked (10)** 13:15,18 13:23 17:13 23:1 26:2,4,15 27:7,18
**associated (2)** 17:5 27:4
**Association (2)** 30:23 31:21
**assume (2)** 8:17 32:17
**Assumes (3)** 20:4 26:9 31:1
**attach (1)** 36:20
**attend (1)** 9:23
**attorney (8)** 9:19 14:8,10,14 15:15 23:2 28:12 30:6
**attorneys (1)** 35:14
**authorize (1)** 36:20
**authorized (1)** 35:8
**available (1)** 5:22
**Avenue (2)** 2:15 37:8
**aware (7)** 17:11 19:3 19:25 25:6,22 27:25 28:11

**B**

**b (2)** 4:3,9
**back (1)** 7:21
**ban (3)** 13:25 26:6 32:21
**banned (1)** 31:15
**based (4)** 5:20,21 22:25 26:13
**Beach (4)** 1:23,24 37:1,2
**beginning (1)** 16:22
**behalf (7)** 1:14 2:3,11 4:3 5:18 9:15 28:14
**believe (11)** 11:22,23 13:1,9 15:10 18:11 25:3 26:15 27:3,18 29:17
**bills (1)** 24:24
**binding (1)** 6:2
**blanket (1)** 32:21
**blessing (1)** 30:22
**bono (2)** 15:10,12
**Boulevard (2)** 1:23 37:1
**bring (1)** 15:1
**brought (2)** 11:3 19:23

**C**

**C (2)** 35:1,1
**C/O (1)** 37:7
**cabinet (1)** 28:24
**call (2)** 16:14 37:19
**called (1)** 28:24
**calories (1)** 19:17
**capacity (1)** 9:20
**captioned (1)** 36:17
**cart (2)** 19:6 30:23
**case (13)** 1:3 7:22 8:19,21,22,23 10:19 10:20,22 12:5 21:12 23:6 24:5
**cases (6)** 7:23 10:14 10:15,16,18 27:4
**cause (1)** 13:2
**caused (2)** 13:1 25:3
**Cavanaugh (6)** 1:22 4:10 34:16 35:6,23 37:23
**certain (5)** 11:6,23 12:11 16:19 18:13
**CERTIFICATE (1)** 34:1
**certify (3)** 34:6 35:8 35:12
**challenge (1)** 24:7
**Chambers (1)** 22:19
**change (2)** 30:21 36:3
**changed (1)** 20:7
**changes (2)** 36:18,21
**check (1)** 28:9
**chief (5)** 8:16 22:14 24:1 25:25 28:6
**cholesterol (1)** 19:20
**citation (1)** 7:23
**citations (2)** 8:24 19:24
**cited (1)** 15:22
**citizen (1)** 27:24
**city (48)** 1:11,14 2:11 3:9 4:4 5:18,22 6:2 9:15,18,19 10:1,7 10:20,24 11:14 12:12,23,24 13:12 13:25 14:25 15:15 16:2 19:22 21:16 21:17,20,24 22:18 22:19 24:2,6,22,22 25:1,1,7,25 26:7 27:21 28:7,11 29:8 29:23 30:6,25 37:12
**city's (5)** 10:6 12:8 23:12 26:3 29:14
**civil (3)** 4:8,9 21:21
**clean (1)** 10:18
**clear (1)** 31:19
**clerk (2)** 10:7 27:21
**client (1)** 29:19
**clients (1)** 18:20
**Club (1)** 31:22
**code (1)** 29:24
**come (4)** 16:3 17:13 22:23 24:24
**comes (2)** 10:5 26:11
**coming (6)** 9:25 10:1

18:5 25:5,10 32:19
**comment (1)** 22:7
**Commission (2)** 34:19,20
**communication (2)** 7:5 8:1
**communications (4)** 7:6 14:2,5 27:19
**complaint (4)** 11:16 11:18,20 25:5
**complete (2)** 7:2,3
**completed (1)** 4:13
**complex (1)** 25:1
**computer (3)** 8:2 28:4,18
**computer-literate ...** 28:23
**concern (1)** 18:12
**concerning (2)** 14:3 17:24
**concluded (1)** 33:25
**condition (1)** 9:11
**conduct (1)** 16:10
**conjunction (1)** 32:9
**considered (1)** 19:13
**constitutional (1)** 13:25
**constitutionality (3)** 12:7 13:5 26:3
**constitutionally (1)** 26:6
**contracts (1)** 9:24
**conversation (1)** 14:7
**conversations (2)** 15:14 21:20
**copy (3)** 18:18 24:2 33:21
**corporate (2)** 8:11 33:15
**correct (3)** 15:20 20:22 23:25
**council (4)** 10:11 11:14 16:3 22:19
**counsel (10)** 9:8,22 10:6,17,21 11:8 15:7 27:20 32:17 35:12
**counter (1)** 24:25
**County (3)** 7:23 34:4 35:4
**course (1)** 24:20
**court (9)** 1:1 4:11 7:23 23:12,22 34:17 35:6,24 37:24
**courtesy (1)** 37:16
**covered (2)** 31:7 32:6
**cream (4)** 15:20 19:6 19:13 30:23
**criteria (8)** 17:15,18 19:11,12 20:24 27:1,4,7
**cross (1)** 33:7
**current (1)** 12:19

**D**

**Date (2)** 1:15 36:25
**day (2)** 4:6 37:19
**deal (1)** 10:24
**dealing (1)** 12:11
**dealt (3)** 26:19,20,23
**Dear (1)** 37:14
**Defendant (2)** 1:11 2:11
**defense (1)** 10:17
**defenses (5)** 23:9,10 23:11,13,17
**defines (1)** 19:11
**definition (1)** 19:9
**denied (2)** 16:5 21:1
**department (11)** 7:7 7:8 9:5,7 10:3 18:25 20:1 25:2,17 25:19,21
**depend (1)** 16:21
**DEPONENT (1)** 1:14
**deposition (7)** 3:9 4:3 4:7 23:24 33:25 36:16 37:16
**described (1)** 12:8
**designated (1)** 8:10
**different (3)** 21:3 26:25 27:7
**DIRECT (2)** 3:4 5:13
**directly (1)** 26:15
**disagreement (1)** 31:6
**discrepancy (1)** 31:5
**discussing (1)** 14:11
**discussion (2)** 15:9 33:9
**discussions (3)** 9:3 11:14 15:9
**dismiss (2)** 7:25 12:5
**dismissed (1)** 21:13
**dispensing (2)** 29:25 30:10
**display (5)** 9:1 16:1 20:10 32:15,20
**displays (2)** 31:12,14
**disrupt (1)** 22:25
**disrupting (1)** 18:7
**disruption (1)** 13:2
**distinguished (1)** 27:11
**district (19)** 1:1,1 9:1 14:4,18 15:20 16:1 17:8,14 19:7 20:10 21:4,6,10 23:4 31:13,23 32:14 33:1
**districts (1)** 33:3
**DIVISION (1)** 1:2
**document (1)** 6:10
**documents (4)** 11:6 11:25 27:16 28:1
**dogs (1)** 32:1
**doing (3)** 14:16 16:25 32:4
**Donovan (2)** 2:12 37:7
**donroper@ropera...** 2:19
**double (1)** 28:9
**draft (2)** 12:16,17
**dring@roperandr...** 2:20
**DRIVE (2)** 1:16 4:5
**due (1)** 24:7
**duly (1)** 34:8
**Dustyn (1)** 2:13
**duties (1)** 9:20

**E**

**E (2)** 35:1,1
**e-mail (6)** 2:9,18 24:1,4 27:24 29:1
**e-mail@roperandr...** 2:18
**efforts (1)** 19:23
**Eight (1)** 7:8
**Eighteen (1)** 7:17
**either (6)** 16:7 17:1 23:13 26:19 27:20 28:2
**Eleven (1)** 7:11
**emotional (1)** 9:11
**employed (1)** 35:13
**employee (4)** 19:22 21:16,17,24
**employees (2)** 10:2 25:7
**employment (2)** 10:24,25
**empowered (1)** 12:25
**enacted (2)** 30:11,20
**enacting (1)** 10:11
**encounters (1)** 21:25
**ended (1)** 10:21
**entered (1)** 36:18
**entire (1)** 36:16
**entities (1)** 18:9
**entity (1)** 31:22
**equal (1)** 23:6
**Errata (2)** 36:1,20
**escort (1)** 22:15
**Esquire (4)** 2:4,12,13 37:7
**ET (2)** 4:7 33:25
**evaluate (2)** 13:15,18
**evasive (1)** 26:22
**event (10)** 20:25 21:1 31:13,16,23 32:1,5 32:8,10,13
**evidence (4)** 20:4 23:20 26:9 31:2
**examination (3)** 3:4 5:13 33:7
**example (3)** 10:3,18 16:22
**examples (1)** 16:10
**exception (3)** 31:15 32:13,21
**exceptions (1)** 32:18
**excluded (3)** 22:19 22:22,23
**Exhibit (4)** 3:7 6:5,6 23:24
**EXHIBITS (1)** 3:6

**existence (1)** 12:21
**Expires (1)** 34:19
**extent (5)** 5:24 7:22 12:15 26:12 28:8

**F**

**F (1)** 35:1
**facilities (1)** 12:24
**fact (1)** 20:16
**facts (3)** 20:4 26:9 31:1
**fairly (1)** 17:23
**familiar (2)** 23:21 25:1
**farmer's (1)** 16:15
**favor (1)** 23:12
**Federal (1)** 4:8
**feel (2)** 23:16,16
**felt (1)** 19:10
**Fest (1)** 17:4
**Fifteen (1)** 7:14
**file (2)** 7:24 8:1
**filed (2)** 11:19 12:5
**finance (1)** 10:3
**financially (1)** 35:14
**finding (1)** 28:1
**fire (1)** 25:20
**firm (1)** 10:22
**first (2)** 11:18,19
**five (1)** 7:5
**FL (1)** 1:24
**Florida (14)** 1:1,16 2:7,16 4:6,11 20:13 30:10 34:3,18 35:3 35:7 37:2,9
**folder (2)** 29:4,5
**following (2)** 30:21 36:18
**food (6)** 8:25 17:7 19:7 20:1 29:24 30:10
**forbidden (1)** 22:6
**foregoing (2)** 34:7 35:9
**form (3)** 20:3,14 26:8
**forum (1)** 24:23
**forwarding (1)** 24:4
**found (1)** 24:5
**Four (1)** 7:4
**Fourteen (1)** 7:13
**frankly (4)** 9:4 14:11 15:2 21:24
**Friday (1)** 37:19
**front (2)** 23:18 24:25
**full (1)** 5:5
**further (2)** 33:5 35:12

**G**

**Gecko (1)** 17:4
**general (12)** 7:6,9,14 9:2,22,24 12:16 14:20 18:5,12 22:2 24:21
**generally (5)** 10:9 11:15 21:25 22:8 24:24
**generate (1)** 28:13
**give (21)** 5:9 6:14,19 7:1,3,6,9,10,11,12 7:14,19 8:6 12:16 16:10 18:22 19:15 23:14 27:10,13 30:3
**given (9)** 11:7 13:19 16:11 17:7 24:17 25:24 26:20,24 37:16
**go (1)** 28:1
**going (6)** 6:5 12:22 20:19 23:23 24:15 29:18
**good (4)** 5:15,16 15:5 16:6
**governmental (1)** 18:9
**grant (2)** 16:3 17:1
**granted (2)** 32:15,17
**grievance (1)** 10:23
**grounds (1)** 15:5
**guessing (2)** 24:12 30:19
**Gulfport (20)** 1:11 2:11 3:9 4:4 5:18 5:23 6:2 9:16,18 13:12 18:5,14,19 22:18 28:25 29:3,8 30:22 31:21 37:12
**Gulfport's (1)** 29:24
**GULPORT (1)** 1:14

**H**

**hall (2)** 24:22 25:1
**hand (2)** 5:8 23:23
**handle (1)** 7:16
**handling (1)** 10:17
**happened (2)** 22:16 22:16
**happening (1)** 18:13
**happy (2)** 5:24 14:13
**hazardous (2)** 19:14 19:16
**head (3)** 19:9 20:6 24:13
**heard (2)** 15:21 18:10
**hearsay (1)** 7:14
**help (2)** 10:1 22:14
**helped (1)** 23:19
**HH (1)** 34:20
**hot (1)** 32:1
**hours (1)** 37:19
**housekeeping (1)** 33:9

**I**

**ice (4)** 15:19 19:5,13 30:23
**identification (3)** 6:6 34:10,10
**impetus (2)** 18:2 30:17
**impression (1)** 19:5
**include (1)** 11:21
**including (1)** 18:7
**independent (2)** 11:10 29:13
**INDEX (1)** 3:1
**indicated (1)** 36:19
**individual (6)** 12:24 13:1 24:23 31:25 32:8,17
**individually (1)** 11:21
**inform (1)** 37:16
**information (8)** 5:22 7:2,7,8,11,12,13 8:13
**informed (1)** 14:18
**infraction (1)** 21:21
**instances (1)** 18:8
**insurance (1)** 10:7
**interested (1)** 35:15
**interrogatories (3)** 29:7,11,15
**introduce (2)** 23:19 23:20
**involved (14)** 8:19,24 9:5 10:17,22 11:1 14:6 17:21 19:1 27:15 30:8,12,16 35:14
**issuance (1)** 24:6
**issue (2)** 12:25 25:4
**issued (1)** 19:24
**issues (4)** 9:25 10:2 10:24 23:7

**J**

**James (2)** 5:6 11:21
**January (3)** 1:15 4:6 37:16
**Jesse (5)** 1:6 2:3,22 25:16 37:12
**jobs (1)** 18:7
**Josh (1)** 24:4
**JR (2)** 1:16 4:5
**judge (2)** 23:14,18

**K**

**keep (3)** 28:16,17,19
**kept (1)** 10:15
**kind (2)** 17:4 25:5
**Kiwanis (1)** 31:22
**know (43)** 6:21,21,25 7:4,15 8:10 13:10 13:12 14:16,20 15:3,8,10 16:6,16 17:6,10,20 18:1,10 19:13,21,22,22 20:20,25 21:2,5,12 21:24 22:1,15 23:21 24:13,18 25:16,18,20,23 28:24 29:14 33:2 33:14
**knowledge (3)** 5:21 5:24 11:10
**known (1)** 5:22

**L**

**labor (1)** 10:23
**LaHart (17)** 2:4,5 3:4 5:14 6:4,9 15:13 20:11,18 26:17 29:18,22 31:9 33:5,11,13,18
**Lakes (2)** 1:23 37:1
**language (4)** 22:25 26:13 30:4,18
**Large (1)** 35:7
**law (2)** 24:5 30:21
**lawsuit (2)** 10:25 17:25
**Lawyers' (2)** 1:23 37:1
**LAWYERS (1)** 4:4
**lease (1)** 17:18
**Lee (28)** 1:6 2:3,22 8:24 14:3 15:9,10 19:6,25 21:13,15,20 21:25 22:15,15 23:9 25:7,13,16 27:23 28:3,7,7 29:10,16 30:22 31:6 37:12
**Lee's (7)** 14:8,9 15:15 23:17 27:17 27:20 28:5
**legal (1)** 15:5
**legislation (1)** 14:11
**let's (2)** 16:23 33:8
**letter (1)** 37:16
**level (1)** 19:20
**licensed (2)** 20:12,16
**Lilianna (6)** 1:22 4:10 34:16 35:6,23 37:23
**limitations (1)** 16:7
**limited (1)** 9:4
**LINE (1)** 36:3
**lines (3)** 10:4,12 14:19
**list (1)** 20:19
**listed (1)** 33:15
**litigation (5)** 10:5,5 10:13 11:3,12
**location (2)** 1:16 18:17
**locations (1)** 18:13
**long (3)** 13:12 31:11 32:2
**look (11)** 6:4 7:18,21 9:24 10:10 11:25 18:24 27:13,18 28:4 30:5
**looked (12)** 7:23,24 7:24,25 18:17,17 19:9 26:11,12 28:5 29:10,11
**looking (5)** 14:17,22 18:10 27:10 33:3
**loop (1)** 10:15
**lose (1)** 22:3
**lot (3)** 9:5 10:20,23

**M**

**M.L.K (2)** 1:16 4:5
**manager (6)** 10:20 11:14 15:16 24:2 25:25 28:7
**manager's (1)** 14:25
**Marcy (2)** 2:4,5
**marcy@floridaani...** 2:9
**marked (3)** 6:5,6 23:23
**market (6)** 16:8,14 16:15,23,24 30:24
**matter (5)** 7:16 10:25 20:12 24:11 36:17
**matters (3)** 7:24 9:4 9:25
**mayor (1)** 22:9
**me.I (1)** 36:18
**mean (17)** 7:5,15,16 8:22 9:4,21 11:6 12:19 15:12,22 20:24 21:3 23:13 24:17 28:8 32:10 32:12
**meaning (3)** 8:2 10:15 14:14
**meant (1)** 15:23
**meet (1)** 17:19
**meeting (2)** 22:9 25:11
**meetings (3)** 9:23,25 21:20
**meets (1)** 19:8
**members (1)** 10:11
**mental (1)** 9:11
**merchant's (1)** 16:16
**merchants (3)** 30:23 31:6,21
**met (2)** 19:12 22:13
**Micanopy (1)** 2:7
**MIDDLE (1)** 1:1
**minute (1)** 29:19
**minutes (1)** 22:20
**missing (1)** 28:10
**mobile (8)** 8:24 17:7 17:9,13 19:7 20:1 29:24 30:10
**modification (1)** 29:23
**Monday (1)** 37:19
**monitoring (1)** 18:9
**month (1)** 16:24
**motion (1)** 7:25
**motions (1)** 12:4
**municipalities (1)** 28:12
**municipality (4)** 28:14,19,21 29:4

**N**

**name (5)** 5:5 28:5,8 36:20,25
**nature (1)** 11:2
**necessarily (1)** 18:13
**need (1)** 30:24
**never (3)** 25:9,10 26:4
**nine (2)** 7:9 19:21
**Nineteen (1)** 7:17
**North (4)** 1:16 2:15 4:5 37:8
**Notary (4)** 4:10 34:17 35:6,24
**notice (2)** 3:8 33:16
**number (8)** 7:22 12:9 18:22,22 19:21 20:23 28:12 34:20

**O**

**O'Reilly (1)** 11:21
**OATH (1)** 34:1
**Objection (4)** 20:3 20:14 26:8 31:1
**observed (4)** 21:15 21:18,18,19
**obtuse (1)** 31:18
**obviously (4)** 10:6 21:3 23:12 24:23
**occasion (6)** 14:7 16:8 17:2,5 22:12 22:14
**occurred (4)** 7:6 16:16 18:8,11
**October (1)** 30:7
**office (2)** 14:25 37:19
**offices (1)** 18:6
**Oh (1)** 20:24
**okay (21)** 8:10 11:3 11:11 12:4,22 13:24 15:14,24 17:6,15 21:18 25:16 26:25 27:11 29:6 30:17 31:19 32:9,24 33:5,6
**once (3)** 11:17 22:16 22:17
**ones (4)** 6:23 7:2 8:15 29:10
**operate (2)** 17:7 30:23
**operating (1)** 19:6
**opine (1)** 26:2
**opinion (13)** 19:15 23:15 24:10,14,18 25:23,24 26:13,21 26:22,24 27:14 31:10
**opposed (2)** 25:7 27:2
**opposing (1)** 11:7
**oral (4)** 24:17,18 25:23,24
**ORANGE (2)** 34:4 35:4
**order (3)** 17:19 33:11 33:13
**orders (1)** 33:22
**ordinance (11)** 9:1 12:13,14,15,17 17:23 18:3,18 26:11 29:24 33:4
**ordinances (4)** 9:23 10:12 12:19 18:10
**ordined (1)** 20:2

**organization (5)** 32:3 32:6,6,11,16
**origin (1)** 13:10
**original (2)** 10:21 36:21
**overall (1)** 17:1
**oversaw (1)** 11:5
**oversee (4)** 10:5,13 10:14 11:3
**overseeing (1)** 11:5
**owned (1)** 24:6

**P**

**P.A (3)** 2:5,14 37:8
**p.m (5)** 1:15,15 4:7 33:25 37:19
**page (5)** 3:2,7 6:17 6:17 36:3
**Palm (4)** 1:23,24 37:1,2
**parcel (2)** 17:11 32:11
**Park (2)** 2:15 37:8
**part (6)** 17:11 32:2,5 32:11,19,22
**partial (1)** 7:1
**particular (6)** 14:21 25:4,8 26:14 29:1 32:15
**parties (1)** 35:13
**pausing (2)** 23:8 29:9
**pay (1)** 24:24
**people (3)** 16:2 18:5 24:21
**people's (1)** 18:7
**period (3)** 10:19 16:19,25
**permanent (1)** 13:25
**permanently (2)** 26:6 26:16
**permissible (1)** 26:6
**permission (2)** 18:6 30:24
**permit (29)** 14:4 15:19 16:2,3,11,18 16:19 17:2,7,16 19:25 20:9,25 21:1 23:3 31:8,11,14,16 31:17,22 32:3,5,8 32:10,12,13,22,23
**permits (1)** 16:5
**permitted (2)** 15:19 15:22
**person (2)** 22:11,12
**personal (2)** 5:21 19:15
**personally (1)** 34:7
**PETERSBURG (2)** 1:16 4:5
**phone (1)** 14:25
**physical (1)** 9:10
**Pinellas (1)** 7:23
**Plaintiff (3)** 1:6 2:3 2:22
**Plaintiff's (1)** 3:8
**please (6)** 5:4,7 6:4 22:10,14 27:6
**point (1)** 21:25
**pointed (1)** 21:22
**police (13)** 7:7,8 8:15 8:16 9:5,7 10:23 18:25 22:14 24:1 25:2,17,19
**policies (3)** 10:9,11 19:1
**policy (10)** 7:15 10:3 11:4 12:8,23,24 13:8,10,13,16
**position (1)** 14:12
**practice (1)** 11:2
**preemption (1)** 30:11
**preempts (1)** 12:17
**prepare (3)** 7:19 9:23 11:25
**prepared (5)** 6:14,19 6:23 8:5 18:21
**present (4)** 2:22 9:3 11:13 23:18
**preserve (1)** 28:13
**pretty (3)** 9:22 15:3 16:6
**previous (1)** 23:24
**previously (1)** 12:2
**private (6)** 10:6 21:9 27:1,8,12 32:25
**pro (4)** 15:10,11,12 15:12
**probably (10)** 7:1,5 11:1,5,9,15,18 17:1 25:25 28:5
**procedure (4)** 4:8,9 10:4 26:3
**procedures (3)** 10:9 10:12 19:1
**proceed (2)** 5:12 9:12
**proceeded (1)** 15:10
**proceeding (2)** 35:9 35:10
**proceedings (3)** 3:3 5:1 23:22
**process (2)** 24:7 28:13
**Produced (1)** 34:10
**production (2)** 27:17 28:3
**profanities (1)** 22:4
**profanity (6)** 22:1,6 22:9,10,20,25
**prohibit (1)** 14:20
**prohibited (2)** 25:4 25:10
**prohibition (1)** 25:9
**property (13)** 13:25 21:2,5,9 24:6 26:7 27:2,2,8,8,12 32:24 32:25
**prosecute (1)** 8:18
**prosecuted (1)** 23:2
**prosecution (1)** 14:3
**protection (1)** 23:6
**provide (3)** 24:10 26:14 27:4
**provided (3)** 18:19 27:21 28:2
**providing (2)** 27:16 27:16
**provision (2)** 13:7 14:10
**public (22)** 4:10 10:8 13:3 21:2,3,5,8 22:7,21 24:23 25:10 27:2,8,12,20 28:2,14 29:25 32:24 34:17 35:7 35:24
**published (1)** 17:15
**purposes (1)** 28:14
**pursuant (1)** 4:8
**put (5)** 13:2 28:4,8 29:1,3

**Q**

**question (5)** 10:8 20:4 26:8 27:6 31:3
**questions (6)** 8:4,18 10:2,7,10 15:2

**R**

**R (1)** 35:1
**raise (1)** 5:7
**raised (3)** 23:9,10,11
**Ray (2)** 11:4,9
**read (10)** 6:12 11:16 11:17,20 12:4 29:14 33:8 36:16 36:17 37:20
**reading (2)** 4:12 37:17
**ready (2)** 9:15 37:17
**really (1)** 18:6
**reason (5)** 9:14 13:1 18:14,16 36:3
**reasons (1)** 36:19
**recall (4)** 18:21 21:23 24:14,16
**receive (1)** 10:16
**recess (1)** 29:21
**recollection (1)** 29:13
**record (6)** 5:3,5 33:9 33:11 35:10 36:19
**records (6)** 8:2 10:8 27:20 28:2,13,15
**Redevelopment (5)** 21:4,6 31:13 32:14 33:1
**referred (1)** 27:23
**referring (1)** 16:12
**regarding (7)** 11:4 14:2 18:22 21:7 24:10 26:15 29:24
**regulation (1)** 14:19
**related (1)** 35:13
**relevant (1)** 20:16
**remember (2)** 23:9 29:10
**rep (1)** 33:15
**repeats (1)** 22:11
**report (2)** 10:16 35:8
**Reporter (13)** 1:22 4:11 5:2,7,12 33:10

33:17,19,23 34:17 35:6,24 37:24
**Reporting (3)** 1:23 4:4 37:1
**representative (1)** 8:11
**represented (1)** 14:8
**request (3)** 27:17 28:3 36:18
**requests (2)** 27:21 28:3
**require (1)** 14:18
**requirement (3)** 15:25 23:3 33:3
**research (1)** 10:10
**researched (6)** 12:7 12:10 13:5,24 14:1 26:5
**resolutions (1)** 9:24
**responding (1)** 29:7
**response (2)** 7:25 28:2
**responsive (1)** 27:17
**resulted (1)** 25:8
**retired (1)** 8:16
**return (1)** 22:24
**review (1)** 9:24
**reviewed (2)** 11:6 18:11
**revised (2)** 12:13,18
**right (15)** 5:8 11:6 13:19,21 18:23 19:19,20 20:19,21 21:21 23:4 24:23 25:2 29:25 32:14
**rights (1)** 21:3
**righty (2)** 33:10,17
**Ring (1)** 2:13
**risk (1)** 13:3
**Road (1)** 2:6
**Rodriguez (5)** 11:4,9 25:6,13,14
**role (2)** 9:18 11:11
**room (1)** 22:15
**Roper (17)** 2:12,14 2:14 6:7 15:11 20:3 20:14 26:8 29:20 31:1 33:7,19,21,24 37:7,8,8
**roughly (1)** 30:7
**rule (3)** 3:8 4:9 22:8
**ruled (1)** 23:12
**rules (4)** 4:8,9 21:6,8
**runs (1)** 22:9

**S**

**safety (1)** 13:3
**SAINT (2)** 1:16 4:5
**sale (2)** 9:1 14:4
**sales (4)** 15:25 31:12 31:14 32:15
**Salzman (11)** 1:14 4:3 5:4,6,15 7:20 27:15 28:11 33:8 37:7,14
**says (4)** 12:23 24:5,9 28:25
**se (2)** 15:11,12
**seat (1)** 22:24
**section (4)** 14:13,23 28:25 30:10
**security (1)** 18:8
**see (4)** 6:18 8:1,2 14:15
**seeing (1)** 24:14
**seen (1)** 6:10
**selecting (2)** 27:16,16
**sell (4)** 15:19 20:10 32:1,20
**separate (1)** 9:7
**serve (1)** 28:11
**served (2)** 29:7,15
**service@lawyersre...** 1:24
**services (1)** 13:2
**set (4)** 16:7,8,8 19:10
**Seven (2)** 7:8 19:3
**Sheet (1)** 36:20
**show (2)** 30:3 31:25
**sign (1)** 37:20
**signed (1)** 36:19
**signing (2)** 4:12 37:17
**similar (1)** 33:2
**Sincerely (1)** 37:21
**situation (1)** 20:17
**situations (1)** 18:4
**Six (1)** 7:7
**Sixteen (1)** 7:15
**solely (1)** 14:17
**solemnly (1)** 5:8
**somebody (5)** 21:22 22:9 26:6 27:1,8
**sorry (6)** 17:21 25:14 29:5 30:5,14 31:18
**south (1)** 18:16
**Southeast (1)** 2:6
**speak (2)** 22:23 25:10
**speaking (1)** 22:12
**special (26)** 16:1,3,5 16:7,11,18 17:2,7 17:16 20:9,25 21:1 31:7,11,13,16,23,25 32:3,5,8,10,12,13 32:22,22
**specific (3)** 14:19 21:6 27:4
**specifically (4)** 10:14 12:22 17:11 28:22
**speculating (1)** 17:10
**speech (1)** 22:21
**spent (1)** 10:19
**staff (1)** 13:3
**Standby (1)** 5:2
**state (8)** 4:11 5:4 20:13 26:12 34:3 34:18 35:3,7
**statement (1)** 12:17
**statements (1)** 9:2
**STATES (1)** 1:1
**status (1)** 10:16
**statute (2)** 27:11 30:20
**Statute's (1)** 30:10
**statutes (4)** 26:12 27:3,10,13
**step (1)** 29:18
**STIPULATION (1)** 4:1
**Stone (1)** 24:4
**stop (2)** 22:11 23:1
**STREET (2)** 1:16 4:5
**subject (2)** 6:15 8:8
**subjective (1)** 7:16
**subjects (2)** 20:20 33:15
**Submitted (1)** 35:17
**substance (2)** 19:14 19:16
**Suite (2)** 1:23 37:1
**summary (1)** 11:7
**supervisors (1)** 12:24
**sure (6)** 21:1 23:19 24:25 28:9 29:20 30:20
**swear (2)** 4:11 5:8
**sworn (1)** 34:8

**T**

**T (2)** 35:1,1
**take (5)** 6:4 10:22 28:25 29:2 33:21
**taken (5)** 4:4,8 19:23 29:21 36:16
**talk (3)** 14:14 15:1,6
**talked (2)** 14:24 32:16
**talking (3)** 14:9 25:12,14
**TAMPA (1)** 1:2
**Telephone (2)** 2:8,17
**tell (17)** 6:23 7:9 11:24 14:2 15:7 16:5 17:17 18:25 20:23 23:13 24:15 26:10,22,23 29:12 30:17 33:2
**temper (1)** 22:4
**ten (2)** 7:10 20:20
**tendency (1)** 22:3
**testify (6)** 5:17,25 6:24 7:3 9:15 12:1
**testimony (6)** 5:9 6:14,19 7:19 8:6 18:22
**thank (4)** 6:7 30:1 33:18,24
**thing (2)** 7:21 15:6
**things (7)** 9:6 10:4,10 10:12 12:18,19 15:4
**think (29)** 7:21 8:15 9:14 14:5,7,16 15:4 16:13,13 17:3,12,17 17:18 18:15 19:8,9 19:11,11 20:7 21:17,21 22:12 23:10 24:5,16

26:10 28:7,24 33:13
**thinking (1)** 23:14
**third (1)** 6:17
**Thirteen (1)** 7:13
**thought (1)** 15:5
**threaten (2)** 21:15,17
**threatened (1)** 25:7
**threatening (2)** 21:23 22:2
**three (4)** 7:4 8:6 22:20 26:20
**time (10)** 1:15 10:19 10:20 16:4,19,25 17:5 21:18,19 33:22
**today (6)** 6:1,10,12 7:20 9:12 12:1
**told (1)** 12:2
**top (3)** 19:9 20:6 24:13
**topics (1)** 8:14
**transcribed (1)** 37:17
**transcript (9)** 4:13 33:12,14,20 34:7 35:9 36:16,21 37:20
**transparent (1)** 15:3
**trespass (12)** 8:19,21 11:4 12:8,13,23,25 13:19 21:12 24:6 24:21 26:11
**trespassed (3)** 25:16 25:18,20
**trespassing (2)** 27:1 27:7
**truck (1)** 19:7
**true (1)** 35:9
**truth (3)** 5:10,10,10
**try (1)** 15:3
**trying (4)** 17:3 23:8 26:22 29:9
**Tuesday (5)** 4:6 16:14,23,24 30:24
**turned (1)** 27:19
**Tuscawilla (1)** 2:6
**Twelve (1)** 7:12
**twice (1)** 16:24
**two (4)** 7:3,22 25:9 28:9

**U**

**unaware (1)** 16:4
**unconstitutional (1)** 24:8
**undersigned (1)** 34:6
**understand (6)** 5:17 5:20 6:1 8:5 22:18 31:2
**understanding (9)** 5:19 14:9 15:18,25 17:9 21:11 30:9 31:5,16
**Unfortunately (1)** 22:5
**UNITED (1)** 1:1
**upheld (2)** 18:15,18
**upset (1)** 22:1
**use (4)** 22:4,10,10,25
**uses (1)** 22:9
**Usually (1)** 16:6

**V**

**vary (1)** 9:21
**vehicle (3)** 17:8 20:1 20:2
**vehicles (2)** 29:25 30:11
**vendered (1)** 32:1
**vending (2)** 17:7,13
**versus (1)** 27:8
**video (1)** 21:23
**videoing (1)** 12:11
**videotaping (2)** 17:24 18:6
**Vincent (2)** 25:25 28:6
**violated (1)** 15:4
**violating (1)** 14:12
**violation (6)** 8:25 14:17,23 20:8,9 23:3
**violence (1)** 18:12
**vs (2)** 1:9 37:12

**W**

**waistline (1)** 19:18
**waived (1)** 4:13
**want (6)** 15:2 16:13 29:12 33:11,13,19
**wanted (2)** 23:20 32:18
**warning (1)** 24:7
**warnings (3)** 12:25 13:19 24:6
**wasn't (6)** 9:4 20:8 20:16 23:21 28:10 32:19
**water (1)** 10:18
**waterfront (17)** 9:1 14:4,17 15:20 16:1 17:8,14 19:6 20:10 21:4,5 23:4,4 31:13 31:23 32:14 33:1
**way (3)** 16:2 21:19 27:9
**ways (1)** 29:25
**we'll (1)** 33:8
**we're (1)** 16:25
**We've (1)** 32:16
**week (1)** 16:18
**went (1)** 10:19
**West (2)** 1:24 37:2
**wide (1)** 9:22
**withdrew (1)** 15:7
**witness (14)** 4:12,13 5:6,11 6:8 15:1,6 15:12 20:6,15 26:10 31:4 33:6 34:6
**witnesses (3)** 14:6,14 15:15
**work (2)** 10:8 16:20
**would've (9)** 20:7 24:20 25:24 26:20 26:24 30:8,12,13,16
**wouldn't (2)** 8:20 26:21
**written (4)** 14:10 23:15 24:14,16
**wrong (3)** 16:14 18:16 23:25
**wrote (1)** 12:10

**X**

**Y**

**Yeah (1)** 8:23
**year (4)** 16:22 28:19 30:1,5
**YouTube (1)** 21:23

**Z**

**zoning (1)** 33:4
**Zoom (1)** 37:16

**0**

**08/16/2027 (1)** 34:19

**1**

**1 (1)** 12:9
**1:33 (2)** 1:15 4:7
**11 (1)** 20:21
**116 (2)** 2:15 37:8
**12 (1)** 20:21
**13 (1)** 20:21
**14 (1)** 20:21
**15 (1)** 20:23
**160 (2)** 1:16 4:5
**1655 (2)** 1:23 37:1
**17 (1)** 7:16
**19 (1)** 8:6

**2**

**2 (1)** 23:24
**2:23 (2)** 1:15 33:25
**2010 (2)** 30:7,7
**2020 (1)** 30:15
**2021 (1)** 30:15
**2023 (1)** 8:22
**2025 (5)** 1:15 4:6 35:17 37:4,16
**21 (2)** 1:15 37:16
**21st (1)** 4:6
**242-0023 (2)** 1:24 37:2
**249 (1)** 2:6
**26 (1)** 4:9

**3**

**30 (2)** 4:3,9
**30(b)(6) (1)** 3:8
**32667 (1)** 2:7
**32703 (2)** 2:16 37:9
**33401 (2)** 1:24 37:2
**33702 (2)** 1:16 4:6
**352 (1)** 2:8

**4**

**4 (1)** 7:22
**4:00 (1)** 37:19
**405 (2)** 1:23 37:1

**407 (1)** 2:17
**434226 (1)** 34:20

**5**

**5 (3)** 3:3,4 7:22
**509.102 (1)** 30:10
**545-7001 (1)** 2:8
**561 (2)** 1:24 37:2

**6**

**6 (4)** 3:9 4:3,9 18:22

**7**

**7 (5)** 3:8 6:5,6 18:22 35:17

**8**

**8 (1)** 37:4
**8:23-cv-02996-VM...** 1:3
**884-9944 (1)** 2:17
**8950 (2)** 1:16 4:4

**9**

**9:00 (1)** 37:19