UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSE LEE,

      Plaintiff,

v.                                Case No. 8:23-cv-2996-VMC-AEP

CITY OF GULFPORT and
JAMES O'REILLY,

      Defendants.
_____/

**ORDER**

This matter is before the Court on consideration of
Plaintiff Jesse Lee's Amended/Corrected Motion for Partial
Summary Judgment (Doc. # 108), Defendant James O'Reilly's
Motion for Summary Judgment (Doc. # 88), and Defendant City
of Gulfport's Motion for Summary Judgment (Doc. # 89) and
Motion to Strike Exhibits to, and New Arguments in,
Plaintiff's Reply to City's Response to His Motion for Partial
Summary Judgment (Doc. # 109). For the reasons that follow,
Defendants' Motions for Summary Judgment are granted, and Mr.
Lee's Motion is denied. Gulfport's Motion to Strike is granted
to the extent the Court strikes Mr. Lee's new argument
regarding the substantive due process challenge to Gulfport's
trespass policy. Counts II, IX, and XII are dismissed for
lack of standing. Summary judgment is granted in favor of
Defendants on Counts I, III, IV, V, VI, and VII. The only

1

remaining counts are Counts X and XI, which seek declaratory and injunctive relief.

I.  **Background**:

A.  **The Parties**

Mr. Lee moved to Gulfport in October 2018. (Doc. # 89 at 2 ¶ 2). Shortly thereafter, he decided he wanted to operate an ice cream cart. (Doc. # 89-2 at 26:5-20). Accordingly, Mr. Lee purchased "a cooler that attaches to a two-wheeled stand, as well as an umbrella, for his ice-cream business." (Doc. # 89 at 2 ¶ 4; Doc. # 89-2 at 32:11-33:16, 198-99). Mr. Lee intended to sell pre-packaged ice cream from his cart. (Doc. # 89-2 at 189:12-15).

In early 2019, Mr. Lee had two meetings with Mr. O'Reilly, the City Manager of Gulfport, regarding Gulfport's mobile vending laws and was told of Gulfport's then-policy prohibiting mobile vending. (Doc. # 88-6 at 1 ¶ 2; Doc. # 89-2 at 49:4-51:24; Doc. # 89-6). Although Mr. Lee did not obtain a permit from the Gulfport Merchants Association to sell ice cream in Gulfport, he nevertheless operated his cart throughout 2020 based upon his belief that regulation of the cart was preempted by state law. (Doc. # 89-2 at 72:21-73:14; Doc. # 89-8 at 6 ¶ 16). Ultimately, Code Enforcement gave Mr. Lee two tickets for selling products in the Waterfront Redevelopment District without a permit in violation of

Gulfport Code § 22-6.12(b). (Doc. # 89-8 at 6 ¶ 16; Doc. # 66-1 at 9:19-10:2, 16:19-17:4). After a bench trial in the County Court for the Sixth Judicial Circuit, the court rejected Mr. Lee's assertion that Gulfport's regulation of his ice cream cart was preempted by state law as the cart was not a "mobile food dispensing vehicle" within the meaning of Florida Statute § 509.102. (Doc. # 66-1 at 99:10-21, 103:5-13). Accordingly, the court found Mr. Lee guilty of the charges. (Id. at 103:5-6).

### B.    The Trespass Warnings

On September 4, 2020, Mr. Lee went to the Building Department,[1] which is part of the Gulfport City Hall "campus," to request a permit for a yard sale. (Doc. # 89-2 at 91:23-92:10; Doc. # 89-16 at 18:25-19:5). Although there was a sign on the door stating that the building was closed due to COVID-19 precautions, Mr. Lee knocked on the door to try to speak with someone about the permit. (Doc. # 89-2 at 91:23-93:16). An employee opened the door to speak with Mr. Lee, who became upset when the employee refused to accept his paperwork immediately. (Doc. # 89-2 at 94:1-95:15; Doc. # 92-2 at 5-6). As the employee attempted to shut the door, Mr. Lee

---

[1] The Building Department is also known as the Community Development Building. (Doc. # 88-6 at 1-2 ¶ 3; Doc. # 89-16 at 16:6-21).

repeatedly pressed "the handicap button on the outside of the door so that the door couldn't be shut or be locked." (Doc. # 92-2 at 5-6; Doc. # 89-2 at 147:11-148:6). Another employee then called the police, who arrived at the scene to find Mr. Lee causing a disturbance and refusing to leave the premises. (Doc. # 92-2 at 3, 5-6). At the direction of Mr. O'Reilly, the police gave Mr. Lee a written trespass warning and informed him that if he returned to City Hall, other than to attend City Council meetings, he would be placed under arrest. (Doc. 87-1 at 3; Doc. # 88-6 at 5 ¶ 11; Doc. # 92-2 at 3). Mr. Lee was still allowed to conduct business in-person at City Hall if he was accompanied by a police escort. (Doc. # 88-6 at 4-5 ¶ 14).

On July 22, 2021, Mr. Lee was arrested for battery on a law enforcement officer after he threw a CD that hit Gulfport Police Commander Stone in the back of his leg in the City Hall lobby. (Doc. # 89-2 at 131:2-20, 135:6-15; Doc. # 89-16 at 71:3-7). Mr. Lee claims that did not intend to hit Commander Stone and that he was merely "throwing the disc past the door line because [he] could not go through the City Hall doors to resolve [his] own problem." (Doc. # 89-2 at 131:2-17). Nevertheless, Mr. Lee pleaded guilty to the charge. (Doc. # 89-2 at 131:23-8).

On September 14, 2021, Mr. Lee returned to the Building Department to ask why he had received a call from someone from the Department earlier that morning. (Doc. # 89-2 at 138:2-12, 144:16-22, 151:15-23). Mr. Lee refused to leave the premises until he received an answer. (Doc. # 88-6 at 9 ¶ 27). While waiting, Mr. Lee recorded Gulfport employees and posted the video to his Facebook page. (Doc. # 88-6 at 9 ¶ 27; Doc. # 89-2 at 144:20-25, 148:13-151:6). Although it was the position of Mr. O'Reilly and the Gulfport Police Department that Mr. Lee's prior written trespass warning applied to the entire City Hall complex, Mr. O'Reilly directed police officers to give Mr. Lee a second written trespass warning that specifically stated that Mr. Lee was not to enter the Building Department. (Doc. # 87-1 at 4; Doc. # 88-6 at 9 ¶ 27; Doc. # 89-16 at 17:18-20:17).

The written trespass warnings issued to Mr. Lee did not have an expiration date or state that they could be appealed to the City Manager's office. (Doc. # 87-1 at 3-4; Doc. # 92 at 18 ¶ 18; Doc. # 93 at 17 ¶ 18; Doc. # 108 at 6 ¶ 18).

**C.**   **The Arrest at the Gulfport Casino**

On April 27, 2023, Gulfport held a private event for the city's volunteers at the Gulfport Casino. (Doc. # 89-2 at 168:21-169:3; Doc. # 89-16 at 27:8-13). Prior to the event, Police Chief Robert Vincent sent an email to Mr. Lee stating

that he had heard that Mr. Lee was planning on showing up at the event to cause a disturbance. (Doc. # 89-16 at 27:11-28:8). Accordingly, Chief Vincent stated that this was a private event, that Mr. Lee was not welcome on the property, and that if he came onto the property and refused to leave, he would be arrested for trespassing. (Doc. # 28-4; Doc. # 89-16 at 28:15-21). Mr. Lee admits that he received this email but claims that he did not read it until the next day. (Doc. # 89-2 at 171:23-172:16).

According to Mr. Lee, he was unaware that there was a private event at the Casino at the time he arrived. (Doc. # 89-2 at 174:23-175:3). Rather, Mr. Lee states that he came to the Casino because he saw City Councilmember Ian O'Hara drive by and that he approached the Casino to try to make an appointment with Mr. O'Hara. (Doc. # 89-2 at 174:19-175:5).

The entrance to the Casino is slightly elevated and is accessible by a ramp and by a set of stairs. (Video referred to as Video 5 in Doc. # 97 (hereinafter "Video"); Doc. # 89-2 at 200). Mr. Lee attempted to enter the event but was stopped at the door. (Doc. # 89-16 at 35:11-14). Chief Vincent told Mr. Lee to leave the property several times. (Doc. # 89-16 at 31:23-32:5). Mr. Lee left the elevated area and stood about six feet from the ramp as he filmed Chief Vincent and repeatedly asked why he was not allowed to remain on the

premises. (Video; Doc. # 89-2 at 173:20-175:8, 180:13-24).
Chief Vincent told Mr. Lee to leave the area in which he was
standing as he was trespassing, but Mr. Lee refused as he did
not think the area in which he was standing was part of the
Casino. (Doc. # 89-2 at 167:7-170:5, 180:13-181:21). As Mr.
Lee refused to leave the property, which Chief Vincent
considered to be part of the Casino premises, Mr. Lee was
arrested for trespass. (Doc. # 89-2 at 171:13-15, 180:13-
181:10; Doc. # 89-16 at 32:11-33:8). The trespassing charge
ultimately was dropped. (Doc. # 89-16 at 35:18-36:9).

### D.  **Procedural History**

Mr. Lee initiated this civil rights action against
Defendants on December 29, 2023. (Doc. # 1). The operative
complaint is the amended complaint, in which Mr. Lee, a Latino
man, claims that Mr. O'Reilly directed the police to issue
two trespass warnings against him, which "permanently banned"
him from Gulfport City Hall and the Building Department,
without explaining why or how to challenge the warnings. (Doc.
# 28 at ¶¶ 7, 13, 48, 66-67, 77-78; Doc. # 28-2; Doc. # 28-
3). The amended complaint separately alleges that Gulfport
and Mr. O'Reilly retaliated against Mr. Lee by having him
arrested for trespass while "standing on public property"
outside of a private event at the Gulfport Casino. (Doc. # 28
at ¶¶ 89-90, 150).

The amended complaint asserts the following twelve claims against Defendants: an equal protection claim under 42 U.S.C. § 1983 (Count I); that Gulfport's mobile food vendor ordinance is unconstitutionally vague (Count II); substantive due process claims for each trespass ban under Section 1983 (Counts III and IV); a First Amendment retaliation claim for the arrest at the Casino under Section 1983 (Count V); procedural due process claims for each trespass ban under Section 1983 (Counts VI and VII); that the trespass policy is void for vagueness (Count VIII); declaratory relief for the mobile food vendor ordinance (Count IX); declaratory relief for the trespass policy (Count X); injunctive relief for the trespass bans (Count XI); and injunctive relief for the mobile food vending preclusion (Count XII).

The Court granted in part and denied in part Gulfport's motion to dismiss the amended complaint and denied Mr. O'Reilly's motion to dismiss the amended complaint. (Doc. # 67). The Court dismissed with prejudice Count VIII, which challenged Gulfport's trespass policy as void for vagueness, and Count X to the extent it sought related declaratory relief. (Id. at 13-15). Thus, only Counts I, II, III, IV, V, VI, VII, IX, X, XI, and XII remain. Defendants filed their answers and affirmative defenses on February 18, 2025. (Doc. ## 77, 78).

8

Mr. Lee moves for summary judgment on his claims arising from the alleged substantive and procedural due process violations, Counts III, IV, VI, and VII. (Doc. # 108). Defendants move for summary judgment on Counts III, IV, V, VI, and VII. (Doc. ## 88, 89). Gulfport additionally moves for summary judgment on Counts I, II, IX, and XII. (Doc. # 89). Each party responded and replied. (Doc. ## 92, 93, 94, 95, 98, 99, 100, 101). Additionally, Gulfport moves to strike parts of Mr. Lee's response to its Motion for Summary Judgment (Doc. # 109). Mr. Lee responded. (Doc. # 110). The Motions are ripe for review.

## II.  <u>Legal Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g</u>

Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex Corp., 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true, and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary

judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004); see also United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed . . . ." (quotation omitted)).

## III. **Analysis**

### A.   **Count I**

Count I is a race-based equal protection claim arising from Gulfport's actions in preventing Mr. Lee from operating an ice cream cart. (Doc. # 28 at ¶¶ 102-09). "Proof of

racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977); Hernandez v. New York, 500 U.S. 352, 353 (1991).

Gulfport argues that it is entitled to summary judgment on Count I as there is no evidence that Gulfport intentionally discriminated against Mr. Lee based upon his race. (Doc. # 89 at 14). In response, Mr. Lee apparently abandons his claim of racial discrimination, asserting that his counsel has since "realized that GULFPORT's primary purpose in regulating mobile food vendors . . . is economic protectionism designed to benefit . . . brick and mortar establishments." (Doc. # 95 at 7). Accordingly, Mr. Lee does not oppose a grant of summary judgment to Gulfport on Count I. (Id.).

Based on Mr. Lee's concession and the applicable law, Gulfport is granted summary judgment on Count I. See Parks v. City of Warner Robins, Ga., 43 F.3d 609, 616 (11th Cir. 1995) (affirming grant of summary judgment for the defendant city on equal protection claim where there was no evidence of discriminatory intent).

## B.   Counts II, IX, and XII

Count II of the amended complaint alleges that Gulfport's ordinance regulating "mobile food-dispensing

12

vehicles," City of Gulfport Code of Ordinances § 13-84, is unconstitutionally vague. (Doc. # 28 at ¶¶ 110-20). Count IX seeks a declaration that Code § 13-84(2) is facially unconstitutional and unconstitutional as applied to Mr. Lee. (Id. at ¶¶ 192-95). Count XII seeks an injunction preventing Gulfport from further enforcement of Code § 13-84(2). (Id. at ¶¶ 220-23).

Gulfport argues that it is entitled to summary judgment on Counts II, IX, and XII because Mr. Lee lacks standing to challenge Code § 13-84(2) as "he does not own, and has never owned, a 'mobile food-dispensing vehicle,' i.e. a food truck." (Doc. # 89 at 18). In response to Gulfport's statement of material facts, Mr. Lee admits that he "does not own a mobile food dispensing vehicle," and, therefore, Gulfport's regulation of his ice cream cart is not preempted by Florida Statute § 509.102, which limits the ability of local governments to regulate such vehicles. (Doc. # 95 at 5 ¶ 20; Doc. # 89 at 7 ¶ 20). Nevertheless, Mr. Lee argues that he has standing to challenge Code § 13-84(2) because "the Code does not adopt or incorporate the state's definition of 'mobile food dispensing vehicle.'" (Doc. # 95 at 7). The Court agrees with Gulfport.

When an "attack on standing occurs via a motion for summary judgment, the plaintiffs can no longer rest on their

allegations, but must set forth by affidavit or other evidence specific facts which for the purpose of summary judgment will be taken as true." Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 (11th Cir. 1993) (internal quotation marks omitted). "To demonstrate his standing to bring a vagueness challenge (or any other challenge, for that matter), [the plaintiff] must show that: (1) he has suffered, or imminently will suffer, an injury-in-fact; (2) the injury is fairly traceable to the operation of the rules; and (3) a favorable judgment is likely to redress the injury." Harrell v. The Fla. Bar, 608 F.3d 1241, 1253 (11th Cir. 2010). "An injury in fact requires the plaintiff to show that he *personally* has suffered some actual or threatened injury." Granite State Outdoor Advert., Inc. v. City of Clearwater, Fla., 351 F.3d 1112, 1116 (11th Cir. 2003) (emphasis in original) (internal quotation marks omitted). "While this requirement is hard to define precisely, we know that the plaintiff must at least claim to *personally* suffer some harm." Id. (emphasis in original).

Where an ordinance does not expressly define a term, a court interprets the term "using the normal tools of statutory interpretation." United States v. Vineyard, 945 F.3d 1164, 1171 (11th Cir. 2019) (internal quotation marks omitted). "The starting point for statutory interpretation is the

language of the statute." United States v. Dawson, 64 F.4th 1227, 1236 (11th Cir. 2023). "If the language of the statute is clear and unambiguous, [courts] will go no further and will employ that plain meaning." Id. "The plain meaning of a statutory term, however, does not turn solely on dictionary definitions of its component words in isolation." Id. at 1237. "Rather, [t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole." Yates v. United States, 574 U.S. 528, 537 (2015) (internal quotation marks omitted); Dawson, 64 F.4th at 1237.

Here, Mr. Lee is correct that the Code does not expressly define the term "mobile food-dispensing vehicle" or incorporate the state's definition of the term. However, it is undisputed that Gulfport enacted Code § 13-84 in August 2020 in response to the Florida legislature's passage of Florida House Bill 1193 on June 30, 2020. That Bill preempted local laws that ban or make certain regulations regarding mobile food-dispensing vehicles and created Florida Statute § 509.102. 2020 Florida House Bill No. 1193; Fla. Stat. § 509.102 (2020); (Doc. # 66-1 at 93:19-94:7; Doc. # 89-8 at 7 ¶¶ 20-21; Doc. # 89-11).

15

Florida Statute § 509.102(2)(a) defines a "mobile food dispensing vehicle" as "any vehicle that is a public food service establishment and that is self-propelled or otherwise movable from place to place and includes self-contained utilities, including, but not limited to, gas, water, electricity, or liquid waste disposal." Fla. Stat. § 509.102(1)(a). A "public food service establishment" is "any building, vehicle, place, or structure, or any room or division in a building, vehicle, place, or structure where food is prepared, served, or sold for immediate consumption on or in the vicinity of the premises; called for or taken out by customers; or prepared prior to being delivered to another location for consumption." Fla. Stat. § 509.013(5)(a). However, any "place of business issued a permit or inspected by the Department of Agriculture and Consumer Services under s. 500.12" is not a public food service establishment. Fla. Stat. § 509.013(5)(b)(6). Nether is any "place of business where the food available for consumption is limited to ice, beverages with or without garnishment, popcorn, or prepackaged items sold without additions or preparation." Fla. Stat. § 509.013(5)(b)(7).

Here, although Mr. Lee admits that he does not own a mobile food-dispensing vehicle within the meaning of Florida Statute § 509.102 (Doc. # 95 at 4 ¶ 20), he offers no argument

16

as to why his ice cream cart should nevertheless be deemed a mobile food-dispensing vehicle within the meaning of Code § 13-84. At most, he emphasizes that the cart "has been designed specifically for selling frozen confections." (Id. at 8). The only support Mr. Lee offers for this point is a citation to Code § 13-84(1), entitled "Vehicle requirements," which states that "[a] mobile food-dispensing vehicle shall not be used for vending a product unless the vehicle has been designed and constructed specifically for such purpose." Contrary to Mr. Lee's contention, it does not follow that all vehicles designed and constructed specifically to dispense food are "mobile food-dispensing vehicles" subject to regulation by Code § 13-84. Accordingly, the Court finds Mr. Lee's argument unpersuasive.

Considering the broader context of Code § 13-84, which was enacted shortly after and in direct response to the Florida legislature's enactment of Florida Statute § 509.102, and in the absence of any evidence to the contrary, the Court finds that the plain meaning of "mobile food-dispensing vehicle" as used in Code § 13-84 is the same as set forth in Florida Statute § 509.102. See Dawson, 64 F.4th at 1236-37 (considering and comparing the language of a neighboring statute in interpreting the meaning of an undefined statutory term).

17

As Mr. Lee admittedly does not own a mobile food-dispensing vehicle, he has not shown an injury in fact regarding the alleged vagueness of Code § 13-84, and thus lacks standing to challenge the ordinance. See Harrell, 608 F.3d at 1257 ("As for the remaining four rules, however, Harrell has not shown an injury-in-fact, and he therefore lacks standing to challenge them."); Granite State, 351 F.3d at 1117 ("Granite State does not have standing to challenge Article 4 of the Code because it has suffered no injury with regard to the City's permitting and appeals process.").

Accordingly, Counts II, IX, and XII are dismissed for lack of standing.

## C.   **Counts III and IV**

Counts III and IV allege that Gulfport's trespass policy, facially and as applied to Mr. Lee, violates the substantive due process clause of the Fourteenth Amendment. (Doc. # 28 at ¶¶ 121-40).

Mr. Lee argues that he is entitled to summary judgment on his substantive due process claims because "[p]ermanently or indefinitely banning a citizen from city properties under threat of arrest via a trespass warning, without revealing the basis of the trespass or providing an opportunity for review by a neutral decision maker, is arbitrary or conscience shocking in a constitutional sense." (Doc. # 108 at 16)

18

(internal quotation marks omitted). In response and in support of their own Motions, Gulfport and Mr. O'Reilly argue that they are entitled to summary judgment on Counts III and IV because Mr. Lee "has no constitutionally protected liberty interest in using Gulfport's City Hall in the manner in which he has continuously, when allowed access, used it over time" and, in any event, that issuing trespass warnings to someone disturbing a nonpublic forum does not shock the conscience. (Doc. # 92 at 10-12; Doc. # 93 at 9-11; Doc. # 88 at 13-18; Doc. # 89 at 19). Mr. O'Reilly also argues that he is entitled to qualified immunity on Counts III and IV. (Doc. # 88 at 10-12; Doc. # 93 at 2-4). Gulfport further argues that it cannot be held liable because Mr. Lee has not presented any argument or evidence that he was injured because of a municipal custom or policy. (Doc. # 89 at 19-20; Doc. # 92 at 11-12). The Court agrees that Defendants are entitled to summary judgment on Counts III and IV.

"The test in this Circuit as to whether there has been a violation of [substantive] due process in the context of section 1983 has two prongs." Executive 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1541 (11th Cir. 1991). The Court must determine (1) that "there has been a deprivation of a constitutionally protected interest," and (2) that "the deprivation was the result of an abuse of governmental power

19

sufficient to raise an ordinary tort to the stature of a constitutional violation." Id.

While the right is "neither fundamental . . . nor limitless," the Eleventh Circuit has "recognized a 'constitutionally protected liberty interest,' for purposes of due process, 'to be in parks or on other city lands . . . that are open to the public generally.'" Peery v. City of Miami, 977 F.3d 1061, 1071 (11th Cir. 2020) (quoting Catron v. City of St. Petersburg, 658 F.3d 1260, 1266 (11th Cir. 2011)). "This right likely extends to City Hall." Sheets v. City of Punta Gorda, Fla., 415 F. Supp. 3d 1115, 1127 (M.D. Fla. 2019). However, "a person may forfeit this liberty right by trespass or other violation of law." Catron, 658 F.3d at 1266; see Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994) ("The Constitution does not confer the right to trespass on public lands.").

### 1.  Mr. Lee Was Not Deprived of a Constitutionally Protected Liberty Interest

Here, the Court assumes that Mr. Lee had a liberty interest in accessing the Gulfport City Hall complex, including the Building Department, under the conditions in which these buildings are typically open to members of the public. Sheets, 415 F. Supp. 3d at 1127; Catron, 658 F.3d at 1267 n.5 (recognizing that "a resident of St. Petersburg has

some federal right to use St. Petersburg parks under the ordinary conditions in which these parks are made available to the general public.").

However, Mr. Lee forfeited any liberty interest he had in accessing the City Hall complex, other than for attending City Council meetings, when he refused to leave the premises as required by the applicable Florida trespass law, Florida Statute § 810.08, after causing the previously described disruptions. Catron, 658 F.3d at 1266; In re Watkins, No. 23-11718, 2024 WL 1174182, at *1, *5 (11th Cir. Mar. 19, 2024) (affirming district court's denial of Watkins's motion for leave to file a complaint asserting, inter alia, a due process claim arising from his suspension from a public library, and noting that because Watkins "arguably violated the law by disturbing the peaceful environment of the library," he "may have forfeited his liberty interest and no procedural-due-process violation took place"); Patrick v. McGuire, No. 8:24-cv-999-MSS-NHA, 2024 WL 4803217, at *8 (M.D. Fla. Nov. 15, 2024) (holding that plaintiff "forfeited her right to access the [Pasco County Tax Collector's] Office when she failed to comply with the Office's policy and the requests that she either comply with the policy or leave"); Sheets, 415 F. Supp. 3d at 1128 ("Put simply, neither Sheets nor any other person has an absolute right to visit City Hall. So when the City

21

limits the use of City Hall based on a violation of the
Ordinance, it is not violating liberty interests.").
Accordingly, there was no substantive due process violation,
and Defendants are entitled to summary judgment on that basis.

### 2. Even If Mr. Lee Did Not Forfeit His Liberty Interest, Defendants' Actions Did Not Violate Mr. Lee's Due Process Rights

The Supreme Court has "distinguished between
substantive-due-process violations that the government
commits in its legislative versus its executive capacities."
Littlejohn v. Sch. Bd. of Leon Cnty., Fla., 132 F.4th 1232,
1240 (11th Cir. 2025) (citing Cnty. of Sacramento v. Lewis,
523 U.S. 833, 846 (1998)). "If legislative action implicates
a fundamental right, that action must survive strict
scrutiny." Id. at 1239. "If it involves a right that is not
fundamental, we subject that action to rational-basis
review." Id. at 1243.

"When executive action is involved, only the most
egregious official conduct can be said to be arbitrary in the
constitutional sense." Id. at 1240 (internal quotation marks
omitted). "And to satisfy that standard, . . . the cognizable
level of executive abuse of power is that which shocks the
conscience." Id. (internal quotation marks omitted).
"[C]onduct intended to injure in some way unjustifiable by
any government interest is the sort of official action most

likely to rise to the conscience-shocking level." <u>Sacramento</u>, 523 U.S. at 849. Only "the most egregious conduct meets this standard." <u>Littlejohn</u>, 132 F.4th at 1243 (internal quotation marks omitted).

"Executive acts characteristically apply to a limited number of persons and typically arise from the ministerial or administrative activities of members of the executive branch." <u>Id.</u> at 1242 (internal quotation marks omitted). "Legislative acts, on the other hand, generally apply to a larger segment of — if not all of — society; laws and broad-ranging executive regulations are the most common examples." <u>Id.</u> (internal quotation marks omitted).

In Mr. Lee's Motion, he asserts that "O'REILLY's unilateral decision to direct the GULFPORT police to issue permanent trespass warnings to LEE is indisputably an executive rather than a legislative decision." (Doc. # 108 at 15). In response and in support of their own Motions for Summary Judgment, Gulfport and Mr. O'Reilly agree and argue that, even if Defendants deprived Mr. Lee of a constitutionally protected liberty interest, it cannot be said that "issuing a trespass warning to someone who violates a law, by way of attempting to enter a restricted area, or is disruptive of official public business, is either unreasonable or 'egregious' conduct, or conscience-shocking."

23

(Doc. # 88 at 16-18; Doc. # 89 at 19; Doc. # 92 at 9-10; Doc. # 93 at 9-10). However, in reply, Mr. Lee argues that "the 'shocks the conscience' standard does not apply in determining whether generally applicable government policies like GULFPORT's trespass policy violate substantive due process" and that Defendants' actions are subject to rational basis review. (Doc. # 98 at 5) (quoting Littlejohn, 132 F.4th at 1242). As Gulfport argues in its Motion to Strike (Doc. # 109 at 5-6), Mr. Lee improperly raised this argument for the first time in his reply. WBY, Inc. v. DeKalb Cnty., Georgia, 695 F. App'x 486, 492 (11th Cir. 2017). Accordingly, the Court grants Gulfport's Motion to Strike to the extent of striking this new argument. In any event, Mr. Lee has not demonstrated a substantive due process violation under either test.

### i.   Mr. Lee's As-Applied Challenge to the Trespass Policy Does Not Shock the Conscience

"Because the role of the executive is to *apply*, or to enforce, statutes, any as-applied challenge necessarily implicates executive, rather than legislative, action." Hillcrest Prop., LLP v. Pasco Cnty., 915 F.3d 1292, 1302 (11th Cir. 2019) (emphasis in original). Accordingly, Mr. Lee's as-applied challenge to Gulfport's trespass policy is a challenge to executive action. Littlejohn, 132 F.4th at 1242; Hillcrest, 915 F.3d at 1302. The Court must determine whether

24

Defendants' actions in applying the trespass policy to Mr. Lee shocked the conscience. <u>Littlejohn</u>, 132 F.4th at 1243. Defendants' actions did not rise to that level.

Here, Mr. Lee was issued a trespass warning on September 4, 2020, because he refused to leave the premises of the Building Department, which was not open to the public due to COVID-19 precautions. Despite this, Mr. Lee hit the handicap access button to keep the door to the building open multiple times. As a result, at Mr. O'Reilly's direction, the police responded to the scene, gave Mr. Lee a written trespass warning, and told him he would be placed under arrest if he returned to City Hall, other than to attend City Council meetings. (Doc. # 87-1 at 3; Doc. # 88-6 at 5 ¶ 11; Doc. # 92-2 at 3). Mr. Lee was informed when he was issued the trespass warning "that he was not being limited from attending meetings of the Gulfport City Council or otherwise doing business with the City Hall, but that it would have to be over the phone, over email, or over the website." (Doc. # 88-6 at 5 ¶ 13).

Mr. O'Reilly directed that the police issue another trespass warning to Mr. Lee as a result of the September 14, 2021 incident. During that incident, Mr. Lee was "verbally abusive to City employees and again disturbing the work environment of City Hall, and would not leave until an answer

25

was provided to him for an alleged phone call he had received from City Hall, while claiming that he was doing a so-called 'First Amendment audit' and filming City employees." (Doc. # 88-6 at 9 ¶ 26).

The written trespass warning from the 2020 incident says "Expiration: Indefinite." (Doc. # 87-1 at 3). The written trespass warning from the 2021 incident says "Expiration: Never." (Id. at 4). However, Mr. O'Reilly explained that, at the time, Gulfport had a policy of "'indefinitely' trespassing individuals," but that the individual could appeal the issuance, duration, or scope of a trespass warning to him as City Manager. (Doc. # 88-6 at 5 ¶ 12). If Mr. O'Reily refused to change his determination, the individual could appeal that decision to the City Council. (Doc. # 88-7 at 21:22-23:7; Doc. # 89-16 at 55:16-56:12). There is no evidence that Mr. Lee received written notice of his right to appeal. (Doc. # 88-7 at 41:19-21, 48:12-15). Mr. Lee testified that the reason he did not appeal his trespass warnings was because he believes the "person violating [his] rights should not be the one who has the authority to make those decisions." (Doc. # 89-2 at 166:1-12).

Here, Defendants' actions in issuing trespass warnings indefinitely banning Mr. Lee from accessing the City Hall campus due to his failure to leave the premises when directed

do not amount to conscience-shocking conduct. Although it would have been better if the written trespass warnings explicitly stated the reasons for which the warnings were issued or the method by which Mr. Lee could appeal the warnings, this omission does not render the trespass warnings egregious. See Littlejohn, 132 F.4th at 1243-44 (noting that "[o]nly the most egregious conduct meets this standard" (internal quotation marks omitted)).

### ii.    **Mr. Lee's Facial Challenge to the Trespass Policy Is Unsuccessful as the Policy Survives Rational Basis Review**

To the extent Mr. Lee challenges Gulfport's trespass policy on its face (Doc. # 28 at ¶¶ 122, 132), he is challenging a legislative act. See Kentner v. City of Sanibel, 750 F.3d 1274, 1280 (11th Cir. 2014) ("Because plaintiffs are challenging the Ordinance on its face rather than contesting a specific zoning or permit decision made under the auspices of the Ordinance, we conclude that they are challenging a legislative act."). "Substantive due process challenges that do not implicate fundamental rights are reviewed under the 'rational basis' standard." Id. As the Eleventh Circuit has recognized, an individual's liberty interest "to be in parks or on other city lands . . . that are open to the public generally" is not a fundamental right. Peery, 977 F.3d at 1071 (internal quotation marks omitted). Therefore, Gulfport

must prevail if the trespass policy "is rationally related to the achievement of some legitimate government purpose." Bannum, Inc. v. City of Fort Lauderdale, Fla., 157 F.3d 819, 822 (11th Cir. 1998). "This standard is highly deferential and [courts] hold legislative acts unconstitutional under a rational basis standard in only the most exceptional of circumstances." Kentner, 750 F.3d at 1281 (internal quotation marks omitted).

Mr. Lee challenges Gulfport's policy in which "supervisors of individual city facilities [were] empowered to issue trespass warnings whenever they have reason to believe an individual has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk." (Doc. # 88-7 at 42:8-21).

First, the Court must identify "a legitimate government purpose — a goal — which the enacting government body *could* have been pursuing." Bannum, 157 F.3d at 822 (internal quotation marks omitted) (emphasis in original). As a government, "no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated," the government has a legitimate interest "in limiting the use of its property to its intended purpose." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 800 (1985) (citation omitted); U.S.

_Postal Serv. v. Council of Greenburgh Civic Associations_, 453 U.S. 114, 129-30 (1981) ("[T]he State . . . has power to preserve the property under its control for the use to which it is lawfully dedicated." (internal quotation marks omitted)). Public safety is also a legitimate governmental interest. _Bannum_, 157 F.3d at 823.

Next, the Court must determine whether a rational basis exists for the municipality to believe that the policy "would further the hypothesized purpose." _Bannum_, 157 F.3d at 822 (internal quotation marks omitted). Here, the second prong of the rational basis test is satisfied. The trespass policy, which permits supervisors of city facilities to issue trespass warnings if they have reason to believe an individual has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk, is sufficiently related to the legitimate governmental interests of public safety and limiting the use of its property to its intended purpose. Therefore, Mr. Lee's facial challenge to the trespass policy is meritless because the policy survives rational basis review. _See Kentner_, 750 F.3d at 1281; _Bannum_, 157 F.3d at 824.

### 3.   **Qualified Immunity**

As there was no constitutional violation, Mr. O'Reilly is entitled to qualified immunity on Counts III and IV. _See_

<u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11th Cir. 1996)
("Without a constitutional violation, there can be no
violation of a clearly established constitutional right."
(internal quotation marks omitted)).

### 4.  <u>Municipal Liability</u>

As the trespass policy itself is not unconstitutional
and as Mr. O'Reilly did not unconstitutionally apply the
policy to Mr. Lee, Gulfport cannot be held liable under
Section 1983. <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378,
387 (1989).

Therefore, Defendants are granted summary judgment on
Counts III and IV.

Further, in Gulfport's Motion to Strike, it argues that
this Court should strike Exhibit A to Mr. Lee's reply in
support of summary judgment, which is a compilation of
trespass warnings issued to other individuals on city-owned
properties that Gulfport produced in response to Mr. Lee's
first request to produce, as well as any argument that these
trespass warnings are evidence of a municipal custom or
policy. (Doc. # 109 at 2, 4-5). As the evidence and argument
is offered solely in rebuttal to Gulfport's contention that
Mr. Lee failed to provide evidence of a municipal custom or
policy, which the Court need not address, the Court denies
the Motion as moot to the extent it seeks to strike Exhibit

A to Mr. Lee's reply and argument related to the trespass
warnings in that Exhibit.

### D.  **Counts VI and VII**

Counts VI and VII allege that indefinitely banning Mr.
Lee from City Hall and the Building Department pursuant to
Gulfport's trespass policy violated the procedural due
process clause of the Fourteenth Amendment. (Doc. # 28 at ¶¶
153-78).

"A Section 1983 procedural due process claim requires a
plaintiff to prove three elements: (1) a deprivation of a
constitutionally-protected liberty or property interest; (2)
state action; and (3) constitutionally-inadequate process."
Catron, 658 F.3d at 1266 (internal quotation marks omitted).
As previously explained, Defendants did not deprive Mr. Lee
of a constitutionally protected liberty interest in issuing
the trespass warnings. Mr. Lee had already forfeited any
liberty interest he had in accessing the City Hall complex,
other than for attending City Council meetings, when he caused
disruptions and refused to leave the premises as required by
the applicable Florida trespass law, Florida Statute §
810.08. Catron, 658 F.3d at 1266; In re Watkins, 2024 WL
1174182, at *5; Patrick, 2024 WL 4803217, at *8; Sheets, 415
F. Supp. 3d at 1128.

As there was no constitutional violation, Mr. O'Reilly is entitled to qualified immunity on Counts VI and VII, Cottrell, 85 F.3d at 1490, and Gulfport cannot be held liable under 42 U.S.C. § 1983. City of Canton, 489 U.S. at 387. Accordingly, Defendants are granted summary judgment on Counts VI and VII.

### E.    Count V

In Count V, the Section 1983 First Amendment retaliation claim against Mr. O'Reilly and Gulfport, Mr. Lee alleges that Defendants "had a premeditated plan to arrest" Mr. Lee at the Casino and that his arrest for violation of Florida Statue § 810.09 "was not based upon any legitimate concern for safety or property but rather [Mr. Lee's] lengthy history of criticizing [Gulfport]." (Doc. # 28 at ¶¶ 93, 143, 147).

Mr. O'Reilly and Gulfport argue that they are entitled to summary judgment on Count V because there is no genuine dispute as to whether Chief Vincent had probable cause to arrest Mr. Lee for trespass after he refused to leave the premises after receiving a verbal trespass warning. (Doc. # 88 at 18-20; Doc. # 89 at 20). Gulfport argues that it is entitled to summary judgment for the additional reason that there is "no evidence of a [Monell v. Department of Social Services, 436 U.S. 658 (1978)] custom or policy as to the allegations in Count Five." (Doc. # 89 at 20-21). In response,

Mr. Lee argues that there are genuine issues of fact regarding the circumstances of his arrest that preclude a finding that Defendants are not entitled to judgment as a matter of law. (Doc. # 94 at 8-9; Doc. # 95 at 11-13). Mr. Lee further asserts that it is not "necessary to prove the existence of a 'policy or custom' to prevail in a retaliatory arrest claim." (Doc. # 95 at 13-14).

The Court agrees with Defendants that there is no genuine dispute of material fact as to whether there was probable cause for Mr. Lee's arrest. Therefore, the Court will not reach Gulfport's additional argument regarding the lack of evidence of a municipal policy or custom.

"To bring a First Amendment claim for retaliation, a plaintiff generally must show: (1) he 'engaged in constitutionally protected speech,' (2) 'the defendant's retaliatory conduct adversely affected that protected speech,' and (3) 'a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech.'" Jennings v. Smith, No. 23-14171, 2024 WL 4315127, at *4 (11th Cir. Sept. 27, 2024) (quoting DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1289 (11th Cir. 2019)). Moreover, "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of

probable cause for the arrest." Nieves v. Bartlett, 587 U.S. 391, 402 (2019).

"Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Carter v. Butts Cnty., Ga., 821 F.3d 1310, 1319 (11th Cir. 2016) (internal quotation marks omitted). "This probable cause standard is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007).

"Florida state law criminalizes trespass on property other than a structure or conveyance — such as a public park — where a person, 'without being authorized, licensed, or invited,' 'willfully enters upon or remains' on the property '[a]s to which notice against entering or remaining is given . . . by actual communication to the offender.'" Watkins v. Shields, 861 F. App'x 812, 816 (11th Cir. 2021) (quoting Fla. Stat. § 810.09(1)(a)); Watkins v. Broward Sheriff Off., 824 F. App'x 865, 868 (11th Cir. 2020).

Here, it is undisputed that, prior to the volunteer luncheon, Chief Vincent heard that Mr. Lee and another

individual were planning to show up at the event to cause a
disturbance. (Doc. # 89-16 at 27:24-28:8). Accordingly, Chief
Vincent sent Mr. Lee an email warning him that he was not
welcome at the private event and explaining that he would be
arrested for trespass if he were to come and refuse to leave.
(Doc. # 28-4; Doc. # 89-16 at 28:15-21). Mr. Lee attempted to
enter the event but was stopped at the door. (Doc. # 89-16 at
35:11-14). Although Chief Vincent told Mr. Lee to leave the
property several times, Mr. Lee remained standing about six
feet from the ramp leading up to the entrance. (Doc. # 89-16
at 31:23-32:5; Video; Doc. # 89-2 at 173:20-174:8, 180:13-
181:10). Mr. Lee was arrested for trespass after he refused
to leave the property, which Chief Vincent considered to be
part of the Casino premises. (Doc. # 89-2 at 171:13-15,
180:13-181:10; Doc. # 89-16 at 32:11-33:8).

As it is undisputed that Mr. Lee was not invited to the
event at the Casino and refused to leave the area next to the
access ramp despite Chief Vincent's instructions, the only
element of trespass seriously at issue is whether Chief
Vincent had probable cause to believe that Mr. Lee was not
authorized to remain where he was standing at the time of his
arrest. Mr. Lee points out that, when questioned whether the
area in which Mr. Lee was standing at the time of his arrest
was considered part of the Casino, Chief Vincent testified,

35

"It depends on who you ask." (Doc. # 89-16 at 32:15-18).
However, Chief Vincent continued his testimony by stating
that he considered it part of the Casino. (Id. at 32:18-19).
Chief Vincent further testified that he asked Mr. O'Reilly,
who worked at the Casino when he was the Parks and Recreation
Director, and a criminal court judge, both of whom believed
the area was part of the Casino premises. (Id. at 32:20-
33:5).

Mr. Lee has not identified any evidence that
demonstrates there is a genuine issue as to whether the facts
and circumstances within Chief Vincent's "knowledge, of which
he has reasonably trustworthy information, would cause a
prudent person to believe, under the circumstances shown,"
that Mr. Lee had violated Florida Statute § 810.09(1)(a)(1)
by refusing to leave the area by the ramp after being asked
to leave. Carter, 821 F.3d at 1319. Indeed, Mr. Lee has not
offered any evidence that the area in which he was standing
was not Casino property other than his conclusory testimony
that it was "not part of the casino." (Doc. # 89-2 at 179:1-
5, 180:21-24).

Mr. Lee also notes that there is a discrepancy between
the testimony of Chief Vincent and Mr. O'Reilly regarding
whether Mr. O'Reilly told Chief Vincent that Mr. Lee was not
welcome at the Casino on April 27, 2023. (Doc. # 94 at 8-9;

Doc. # 88-7 at 24:12-25:21 32:8-14; Doc. # 89-16 at 27:11-21, 33:9-11). However, this discrepancy is not material as it remains undisputed that Mr. Lee was not welcome at the Casino because he was not invited to the private event. Allen, 121 F.3d at 646; (Doc. # 28-4; Doc. # 94 at 4 ¶ 38; Doc. # 88-7 at 26:14-18; Doc. # 89-16 at 34:25-35:8).

Considering the undisputed evidence that Mr. Lee was not welcome at the private event at the Casino and refused to obey Chief Vincent's command that he leave what Chief Vincent believed to be part of the Casino premises, the Court agrees with Defendants that there is no genuine issue of material fact that Chief Vincent had probable cause to arrest Mr. Lee for violation of Florida Statute § 810.09. See Watkins v. Broward Sheriff Off., 824 F. App'x at 868 (finding that defendant police officer had probable cause to believe that plaintiff "was actively committing the offense of trespass on property other than a structure or conveyance when she arrested him, regardless of whether the signs that she viewed as 'no trespassing' signs actually met the statutory notice requirements," because the officer "had been informed that the property manager had complained to the police that [plaintiff] refused to leave the property after being asked to do so, and she knew that he remained on the property when she arrived"); Joyce v. Crowder, 509 F. App'x 969, 970 (11th

Cir. 2013) (holding that the arresting officers had probable cause to arrest plaintiffs as (1) the officers were told by a sergeant that plaintiffs were on the west side of the fence on private property and (2) the officers reasonably assumed that plaintiffs had to have crossed the fence, thus constituting probable cause that plaintiffs had the notice required by Florida law for violation of its trespassing statute"); Harvey v. City of Stuart, 296 F. App'x 824, 828 (11th Cir. 2008) (finding that defendants had probable cause to arrest plaintiff who was "standing at a location where they knew he did not live and where 'No Trespassing' signs were posted"). The Court grants summary judgment on Count V in favor of Defendants.

### F.    <u>Counts X and XI</u>

No party moved for summary judgment on Counts X and XI, which seek declaratory and injunctive relief regarding Gulfport's trespass policy. Accordingly, these counts remain pending.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Plaintiff Jesse Lee's Amended/Corrected Motion for Partial Summary Judgment (Doc. # 108) is **DENIED.**

(2)    Defendant James O'Reilly's Motion for Summary Judgment (Doc. # 88) is **GRANTED**. Summary judgment in favor of Mr. O'Reilly is granted on Counts III, IV, V, VI, and VII.

(3)    Defendant City of Gulfport's Motion for Summary Judgment (Doc. # 89) is **GRANTED**. Summary judgment in favor of Gulfport is granted on Counts I, III, IV, V, VI, and VII.

(4)    Defendant City of Gulfport's Motion to Strike Exhibits to, and New Arguments in, Plaintiff's Reply to City's Response to His Motion for Partial Summary Judgment (Doc. # 109) is **GRANTED** in part and **DENIED** in part as set forth herein.

(5)    Counts II, IX, and XII are dismissed for lack of standing.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 13th day of November, 2025.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE